**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PAUL M. BREAKMAN, in a representative capacity acting for the interests of the general public, <br><br> *Plaintiff,* <br><br> v. <br><br> AOL LLC, <br><br> *Defendant.* | Civil Action No. 1:08cv00246 (JDB) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO TRANSFER AND DISMISS FOR IMPROPER FORUM

Defendant AOL LLC ("AOL"), by counsel, pursuant to 28 U.S.C. § 1406(a) and Rule 12(b)(3) of the Federal Rules of Civil Procedure and Local Civil Rule 7(a), files this Memorandum in Support of its Motion to Transfer and Dismiss the complaint ("Complaint") filed by Plaintiff Paul M. Breakman ("Breakman").

### STATEMENT OF FACTS

Breakman filed this lawsuit in a representative capacity against AOL for alleged unlawful trade practices under the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. Code §§ 28-3901, *et seq.* (Compl. ¶ 4.) In pertinent part, Breakman alleges:

22. Defendant AOL has failed to disclose material facts which has tended to mislead, and misled, District of Columbia consumers who purchased AOL's Dial-Up ISP Service at $23.90-$25.90 per month and AOL continues to mislead District of Columbia consumers who continue to purchase AOL's Dial-Up ISP service at $23.90-$25.90 per month. Intending to deceive District of Columbia consumers to continue to purchase AOL's Dial-Up ISP Service at $23.90-$25.90 per month, Defendant further willfully violate the DCCPPA by knowing concealment, and/or suppression and omission of material facts by continuing to automatically debit $23.90-$25.90 from its loyal existing members' accounts for

Dial-Up ISP Service, while offering essentially the same Dial-Up Service to new members for $9.95.

24. By and through, the aforesaid unlawful trade practices, Defendant AOL has injured District of Columbia consumers by obtaining monies from said District of Columbia consumers to which the Defendant AOL is not entitled.

(Compl. ¶¶ 22 and 24.) Breakman seeks damages from AOL "for each individual District of Columbia consumer, and not by way of common right in a common fund" for in part "[a]ctual damages for each individual District of Columbia consumer in an amount to be determined at trial; [t]reble damages or $1,500 per violation of the DCCPPA for each District of Columbia consumer." (Compl. ¶ 25.)

Each AOL consumer in the District of Columbia that Breakman purports to represent is or was an AOL member (Compl. ¶¶ 4, 24 and 25), and each of them agreed to the AOL Terms of Service, which include the AOL Member Agreement ("Member Agreement"). (See Declaration of Hassan Sudler at ¶ 11.) Everyone who has become an AOL Member during the last ten years has been required systematically – as a prerequisite to becoming a Member – to proceed through a computerized registration process that enabled the prospective Member to read and review the entire Member Agreement on his or her computer screen, and that required him or her to affirmatively agree to the Member Agreement as a condition of using the AOL online service. (*Id.*)

The current version of the AOL Member Agreement, and all prior versions of that agreement for at least the past ten years, have contained a clear forum selection provision requiring that all disputes or claims between AOL and any of its members be adjudicated in a Virginia court. In the version of the Member Agreement that was in effect from August 2003 through August 2, 2006, the forum selection provision reads as follows:

> **You [i.e., the Member] expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of the AOL Services resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or AOL Services.**

(*Id.* ¶ 15, Ex. B at § 16(A).)[1]

The version of the Member Agreement that has been in effect since August 2, 2006, as well as all prior versions during the past ten years, contains a similar provision selecting Virginia courts as the <u>only</u> fora for disputes with AOL. (*Id.* ¶ 14.)[2] Since at least November 1995, every version of the AOL Member Agreement has provided that AOL may make changes to the agreement, and that a Member's continued use of the AOL online service after the promulgation of such changes constitutes acceptance of the changes.[3] (*Id.* ¶ 12, Ex. A at § 9, B at §9, C at "The America Online Member Agreement," D at ¶ 1(B).) Accordingly, the version of the Member Agreement that binds each of the AOL consumers that Breakman purports to represent is subject

---

[1]    Paragraph 16(a) of the August 2003 Member Agreement, headed "Choice of Law; Choice of Forum," provides in its entirety as follows:

> The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Member Agreement and your membership. <u>You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of the AOL Services resides in the courts of Virginia</u> and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or AOL Services. The foregoing provision may not apply to you depending on the laws of your jurisdiction. This Agreement shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods.

(Sudler Declaration Ex. B at § 16(A)) (emphasis added).)

[2]    The only material change that appears in the version of the forum selection provision promulgated in early August 2006 is the addition of the words "this Member Agreement" immediately after the words "your membership." (*Compare* Sudler Decl. Ex A at §16(A) with *id.*, Ex B at § 16 (A); *see also id*, Ex. C at § 8 & Ex. D at § 11(A).)

[3]    In June 1998 and July 2003, when AOL introduced material changes to the Member Agreement, it provided AOL Members with prominent notice regarding such changes, encouraged them to read the entire document, and advised them of their right to terminate their membership if they did not agree to the changes. (Sudler Decl. ¶¶ 18, 20, Exs. E & F.)

to the terms of either the version of the Member Agreement that was in effect from August 2003 to August 2006, which includes the forum selection provision quoted above in bold, or the more recent and current version, which contains a nearly identical provision.[4]

ARGUMENT

The District of Columbia customers of AOL whom Breakman purports to represent accepted a forum selection clause that established Virginia as the exclusive forum for any dispute with AOL. That forum selection clause is enforceable. Thus, to the extent Breakman has stated a cause of action upon which relief can be granted in this matter, the appropriate forum to adjudicate this matter lies within the Commonwealth of Virginia. Accordingly, this Court should transfer this case to the United States District Court for the Eastern District of Virginia, or in the alternative, dismiss the case outright.

I.    THE PROPER VENUE FOR THIS LAWSUIT LIES IN THE COURTS OF VIRGINIA.

When a private plaintiff, like Breakman, who has suffered no injury files a representative action pursuant to a state consumer protection law, alleging that certain of defendant's contractual provisions violate a consumer protection act, the plaintiff is bound by the provisions of the contract just as defendant's customers would be bound had they filed the action themselves. *See Net2phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 585 (2003) (reversing a lower court decision denying motion to dismiss for improper forum). Here, the express terms of the forum selection provision – to which each of the District of Columbia consumers Breakman purports to represent is bound – provides that "exclusive jurisdiction for

---

[4]    This action was filed January 23, 2008. The DCCPPA does not have its own statute of limitations. In the District of Columbia, claims "for which a limitation is not otherwise specially prescribed" are subject to a three-year limitations period. See D.C. Code § 12-301(8) (2001). Thus, the only AOL Member Agreements implicated in this action are those which were in place from January 24, 2005 through the present.

<u>any claim or dispute with AOL</u> or relating in way to your membership or your use of AOL services resides in the courts of Virginia." (Sudler Decl. ¶¶ 15, 16, Ex. A, B) (emphasis added).)

There is no dispute that this forum selection provision encompasses the claim set forth in Breakman's Complaint. Breakman's claim against AOL (and on behalf of others against AOL) constitutes "<u>any</u> claim or dispute <u>with AOL</u>" and is therefore squarely within the scope of the provision's plain language. Moreover, Breakman's claim "relat[e]s" to the AOL memberships and use of the AOL service by the District of Columbia AOL consumers he purports to represent. Specifically, the Complaint alleges that "AOL has failed to disclose material facts which has tended to mislead, and misled, District of Columbia consumers who purchased AOL's Dial-Up ISP Service at $23.90-$25.90 per month and AOL continues to mislead District of Columbia consumers who continue to purchase AOL's Dial-Up ISP service at $23.90-$25.90 per month." (Compl. ¶ 22.) Furthermore, throughout the Complaint, Breakman describes the alleged harm as the District of Columbia AOL consumers' payment of $23.90 or $25.90 per month rather than $9.95 per month for subscriber fees to AOL. (*See, e.g.,* Compl. ¶¶ 13, 19, 20, 22 and 25.)

Finally, application of the clause is mandatory because the forum selection clause provides that "<u>exclusive</u> jurisdiction" over any claim or dispute with AOL lies with a court in Virginia. *See, e.g., Byrd v. Admiral Moving & Storage, Inc.*, 355 F. Supp. 2d 234, 238 (D. D.C. 2005); *Koch v. America Online, Inc.,* 139 F. Supp. 2d 690, 695 (D. Md. 2000) (holding AOL's forum selection provision mandatory). "In cases in which forum selection clauses have been held to require litigation in a particular court, the language of the clauses clearly required exclusive jurisdiction." *Byrd*, 355 F. Supp. at 238 (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). Thus, the exclusive jurisdiction over this matter rests with the courts of the Commonwealth of Virginia.

II.    THE FORUM SELECTION CLAUSE IN AOL'S MEMBER AGREEMENT IS
       PRESUMPTIVELY VALID AND HAS BEEN ENFORCED BY COURTS
       THROUGHOUT THE COUNTRY

Contractual forum selection clauses are prima facie valid even where the clause is

contained in a form consumer contract that is not subject to negotiation. *See Carnival Cruise*

*Lines v. Shute*, 499 U.S. 585, 589-95 (1991); *see also The Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1, 10 (1972).

As the United States Supreme Court held in the landmark case of *Carnival Cruise Lines*,

these principles apply equally to forum selection provisions that are part of standardized form

contracts that large businesses routinely enter into with large numbers of consumers. 499 U.S. at

93-94. In that case, two cruise ship passengers from the state of Washington filed suit against

the cruise line after one of them was injured on a cruise. *Id.* at 588. They filed their suit in

Washington, contrary to the forum selection clause contained in the form contract printed on the

back of their tickets, which required that all disputes be brought in Florida, the home state of the

cruise line. *Id.* at 587-88. The Supreme Court noted that the forum selection clause had not been

the subject of negotiation and that it was "routine and doubtless nearly identical to every

commercial passage contract issued by petitioner and most other cruise lines." *Id.* at 593.

Notwithstanding the plaintiffs' arguments that the clause was unreasonable, the Supreme Court

held that the clause required dismissal. As it explained, several compelling considerations

militate in favor of enforcing forum selection clauses in consumer contracts:

- A company with a nationwide customer base has a legitimate interest in
  limiting the fora in which it potentially could be subject to suit. *Id.* at 594.

- A forum selection clause "has the salutary effect of dispelling any confusion
  about where suits arising from the contract must be brought and defended,
  sparing litigants the time and expense of pretrial motions to determine the
  correct forum and conserving judicial resources that otherwise would be
  devoted to deciding those motions." *Id.* at 593-94.

6

- Customers who enter into agreements containing forum selection clauses like that at issue in this case "benefit in the form of reduced [charges] reflecting savings that the [company] enjoys by limiting the fora in which it may be sued." *Id.* at 594.

Thus, the Supreme Court concluded that the forum selection clause was valid and enforceable.

The Supreme Court's rationale applies even more forcefully here. In this case, the District of Columbia consumers that Breakman purports to represent each entered into a standard customer agreement with AOL containing a forum selection clause that requires that all claims against AOL be brought in a Virginia court. Unlike *Carnival Cruise Lines*, where the plaintiffs had an opportunity to review the clause <u>after</u> purchasing and receiving the cruise tickets, the consumers here, like all AOL Members, were given the opportunity to review the terms of the Member Agreement, including the forum selection clause, <u>before</u> becoming members. (Sudler Decl. ¶ 11.) Further, as another court applying the AOL Member Agreement has explained, enforcement of the forum selection provision in AOL's Member Agreement serves the same sorts of salutary purposes that the Supreme Court highlighted in *Carnival Cruise Lines*: (1) AOL otherwise would be subject to litigation in every forum across the country; (2) enforcing the parties' forum choices conserves judicial resources by obviating the need for pretrial motions regarding the appropriate forum; and (3) consumers benefit from such provisions because service providers' costs are reduced by the limitation on the fora in which they can be sued and these savings can be passed on to consumers. *Muni v. America Online, Inc.*, No. 99-300, slip op. at 9-10 (D. N.J. Aug. 6, 1999) (attached as Appendix Ex 11.)

Not surprisingly, courts across the United States have concluded that the forum selection provision contained in the AOL Member Agreement is valid and enforceable. In *Koch v. America Online, Inc.*, 139 F. Supp. 2d 690, 694 (D. Md. 2000), the court enforced the AOL

forum selection clause, finding that "[t]here is no evidence in this case that AOL chose Virginia in bad faith or in an effort to discourage meritorious suits. Rather, it is headquartered in that state and has a legitimate interest in protecting itself from being sued in all 50 states." On that basis, the *Koch* court dismissed the complaint. 139 F. Supp. 2d at 695-96.

Numerous other courts, including the D.C. Superior Court, have also enforced the AOL Member Agreement's forum selection provision. *See Pierre v. AOL Time Warner, Inc.*, No. 03-009778 (D.C. Super. Ct. April 27, 2004) (attached as Appendix Ex. 1) (dismissing claim without prejudice to plaintiff's ability to re-file against AOL in a Virginia court); *Abramson v. America Online, Inc.*, 393 F. Supp. 2d 438 (N.D. Tex. 2005) (enforcing AOL's forum selection provision and transferring the case to the Eastern District of Virginia).[5]

Likewise, courts have enforced forum selection provisions similar to the one found in AOL's Member Agreement in cases involving form contracts promulgated by other online service providers. *See, e.g., Person v. Google Inc.*, 456 F. Supp. 2d 488 (S.D. N.Y. 2006) (attached as Appendix Ex. 10) (enforcing Google's forum selection provision requiring suit to be

---

[5]        *See also, Hughes v. McMenamon*, 204 F. Supp. 178 (D. Mass. 2002) (enforcing AOL's forum selection provision and dismissing; *Motise v. America Online, Inc.*, 346 F. Supp. 2d 563 (S.D. N.Y. 2004) (enforcing AOL's forum selection provision and transferring the case to the Eastern District of Virginia); *Finlay v. America Online, Inc.*, No. 02-2417 mem. op. (E.D. Penn. Oct. 7, 2002) (attached as Appendix Ex. 2) (enforcing AOL's forum selection provision and transferring the case to the Eastern District of Virginia); *Behn v. America Online, Inc.*, No. 4:97-00244 (E.D. Mo. Mar. 25, 1997) (attached as Appendix Ex. 3) (enforcing AOL's forum selection provision and transferring the case to the Eastern District of Virginia); *America Online, Inc. v. Booker*, 781 So. 2d 423 (Fla. Dist. Ct. App. Feb. 7, 2001) (enforcing AOL's forum selection provision and dismissing); *Celmins v. America Online, Inc.*, 748 So.2d 1041 (Fla. Dist. Ct. App. 1999) (enforcing AOL's forum selection provision and dismissing); *Hess v. America Online*, No. 02D01-0405-SC-10583 (Ind. Super. Ct. April 13, 2005) (attached as Appendix Ex. 12) (enforcing AOL's forum selection provision and dismissing); *Gates v. AOL Time Warner, Inc.*, No. 604141/02, 2003 WL 21375367 (N.Y. Sup. Ct. May 15, 2003) (attached as Appendix Ex. 4) (enforcing AOL's forum selection clause and dismissing); *Dilorenzo v. America Online, Inc.*, No. 605867/06, slip op. at 3-6 (N.Y. Sup. Ct. Jan. 22, 1999) (attached as Appendix Ex. 5) (enforcing AOL's forum selection provision and dismissing); *Spera v. America Online, Inc.*, No. 067 16/97, slip op. (N.Y. Sup. Ct. Jan. 27, 1998) (attached as Appendix Ex. 6) (enforcing AOL's forum selection provision and dismissing); *Schwartz v. America Online*, No. A0300529 (Ohio C.P. Oct. 12, 2004) (attached as Appendix Ex. 7) (enforcing AOL's forum selection clause and dismissing); *St. Rocco's Parish Fed. Credit Union v. AOL Time Warner, Inc. and America Online, Inc.*, No. 428553 (Ohio C.P. Oct. 10, 2001) (attached as Appendix Ex. 8) (granting AOL's motion to dismiss for improper forum); *Groff v. America Online, Inc.*, No. PC 97-0331, 1998 WL 307001, *5 (R.I. Super. Ct. May 27, 1998) (attached as Appendix Ex. 9) (enforcing AOL's forum selection provision and dismissing, reasoning that the Plaintiff "had the option to refuse the service and the contract offered by [AOL].").

brought in California); *Nazaruk v. Ebay, Inc.*, No. 06-242, 2006 WL 2666429, slip op. (D. Utah Sept. 14, 2006) (attached as Appendix Ex. 13) (enforcing eBay's forum selection provision requiring suit to be brought in California).[6]

Thus, under the applicable federal standards and the overwhelming bulk of the case law, the forum selection clause in the AOL Member Agreement is valid and should be enforced.

III.    THE COURT SHOULD TRANSFER THIS MATTER TO UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

AOL moves this Court to transfer this case to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a), which states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See Van Dusen v. Barrack,* 376 U.S. 612, 634 (1964) ("[Section] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid"); *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465 (1962).

Where venue is improper, the court has the discretion to transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a) or dismiss the case under Rule 12(b)(3). *Simpson v. Fed. Bureau of Prisons,* 496 F. Supp. 2d 187, 194 (D. D.C. 2007); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 789 (D.C. Cir. 1983) ("The decision whether a transfer or a dismissal is in the interest of justice, however, rests within the sound

---

[6]    *See also, Koresko v. RealNetworks, Inc.,* 291 F. Supp. 2d 1157, 1163 (E.D. Cal. 2003) (enforcing forum selection clause and dismissing based on contract entered when plaintiff obtained computer software over the Internet and accepted the terms of the contract by clicking "I agree"); *Kilgallen v. Network Solutions, Inc.,* 99 F. Supp. 2d 125, 129 (D. Mass. 2000) (enforcing Internet domain name agreement requiring that exclusive jurisdiction is in Virginia); *Forrest v. Verizon Communications, Inc.,* 805 A.2d 1007, 1012-13 (D.C. 2002) (enforcing Verizon's forum selection provision); *Barnett v. Network Solutions, Inc.,* 38 S.W.3d 200 (Tex. App. 2001) (enforcing forum selection provision contained in form contract governing registration of registrar of Internet domain names); *Caspi v. Microsoft Network, LLC,* 732 A.2d 528, 530 (N.J. Super. Ct. App. Div. 1999) (holding that nearly identical forum selection provision in agreement between internet service provider and its subscribers is valid and enforceable).

discretion of the district court."). As explained above, venue does not lie in this court but in a court in the Commonwealth of Virginia. Accordingly, AOL requests that the Court exercise its discretion by transferring this case to the Eastern District of Virginia because AOL is headquartered in Dulles, Virginia, which is within the boundaries of the Eastern District of Virginia.

## IV.    IF THE COURT IS NOT INCLINED TO TRANSFER THIS MATTER TO VIRGINIA DISMISSAL IS AN APPROPRIATE MEANS OF ENFORCING A FORUM SELECTION CLAUSE.

In the alternative this Court should dismiss the Plaintiff's complaint outright. As the Supreme Court confirmed in *Carnival Cruise Lines,* dismissal is an appropriate means of enforcing a forum selection provision. 499 U.S. at 588-98 (holding that the forum selection provision was "dispositive" in resolving the question whether the case should be dismissed where the provision stated that the covered claims "shall be litigated, if at all, in and before a Court located in the State of Florida.")

This Court has previously dismissed lawsuits for improper venue. *See L&L Construction Assocs. v. Slattery Skanska, Inc.*, No. 05-1289, 2006 U.S. Dist. LEXIS 14969 (D. D.C. 2006). In that case, the Court stated that "[i]n granting the motion to dismiss for forum non conveniens, the Court must determine that the motion is timely, that an adequate forum exists which possesses jurisdiction over the case, that the private and public interests weigh in favor of dismissal and that plaintiff can reinstate its suit in the alternative forum without undue prejudice." *Id.* at *5-6. *See also Pain v. United Tech. Corp.*, 637 F.2d 775, 784-85 (D.C. Cir. 1980). All three of these conditions are satisfied in this case.

First, this motion is clearly timely. Rule 81(c) of the Federal Rules of Civil Procedure states: "[a]fter removal . . . a defendant who did not answer before removal must answer or

present other defenses or objections under these rules within . . . 5 days after the notice of removal is filed." The notice of removal in this action was filed on February 13, 2008, and this responsive pleading has been filed on or before February 21, 2008.[7]

Next, Virginia is and adequate forum that possesses jurisdiction over this case. This Court has previously held that when a valid forum selection clause is in place, the court must defer to the expressed intent of the parties unless plaintiff can demonstrate that enforcement would be unjust or that the contract is invalid due to fraud or overreaching. *L&L Construction Associates* at \*8-9; citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Here, Breakman cannot demonstrate that the forum selection clause is invalid. The burden of invalidating a forum selection clause is heavy. *See Carnival Cruise Lines*, 499 U.S. at 591-92 (commenting that a court is unlikely to set aside a forum selection clause even when the designated forum is remote). As demonstrated above, the forum selection provision of the AOL Membership Agreement has been upheld throughout the United States by dozens of courts. In all of those cases there has not been a single finding of fraud related to the forum selection provision, and none exists here.

Because the forum selection provision in the contracts between the District of Columbia consumers of AOL whom Breakman purports to represent and AOL is valid, Breakman's Complaint should be dismissed on improper venue grounds pursuant to Federal Rule of Civil Procedure 12(b)(3).[8]

---

[7]    *See* Fed. R. Civ. P. 6 ("When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation . . . 'legal holiday' includes . . . Washington's Birthday.")

[8]    While AOL urges dismissal of the Class Action Complaint based on improper venue, AOL in the alternative moves the Court to transfer this case to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a), which states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Where venue is improper, the court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. §

CONCLUSION

For the foregoing reasons, the forum selection clause in the AOL Member Agreement is enforceable, and requires this case to be brought in a Virginia court. Accordingly, this Court is an improper venue for this action, and this Court should transfer or dismiss Breakman's Complaint.

Dated: February 21, 2008

Respectfully submitted,

**AOL LLC**

*By Counsel*

**MCGUIREWOODS LLP**
1750 Tysons Boulevard
Suite 1800, Tysons Corner
McLean, Virginia 22102
Tel:  (703) 712-5000
Fax:  (703) 712-5220
E-mail:  mglassman@mcguirewoods.com
         kdeturris@mcguirewoods.com
         aramana@mcguirewoods.com
*Counsel for Defendant AOL LLC*

/s/ _____
M. Melissa Glassman (D.C. Bar No. 417074)
Kevin F. X. De Turris (D.C. Bar No. 491708)
Anand V. Ramana (D.C. Bar No. 489478)

---

1406(a).  AOL is headquartered in Dulles, Virginia, which is within the boundaries of the Eastern District of Virginia.

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2008, a copy of the foregoing pleading was sent by first-class U.S. mail, postage prepaid, to the following:

Jeffrey Harris
Walter E. Diercks
Rubin, Winston, Diercks, Harris & Cooke, LLP
1155 Connecticut Avenue, N.W.
6th Floor
Washington, D.C.  20036

Andrew A. August
Kevin F. Rooney
Pinnacle Law Group
425 California Street, Suite 1800
San Francisco, California  94104

Giancarlo Terilli
Law office of Giancarlo Terilli, LLC
225 Broadway, Suite 2812
New York, NY 10007

/s/_____
Kevin F. X. De Turris (D.C. Bar No. 491708)
**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, Virginia  22102
Tel:  (703) 712-5000
Fax:  (703) 712-5220
Email:  kdeturris@mcguirewoods.com
*Attorney for Defendant AOL LLC*

\5070851.4

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PAUL M. BREAKMAN, in a representative capacity acting for the interests of the general public, <br><br> *Plaintiff,* <br><br> v. <br><br> AOL LLC, <br><br> *Defendant.* | Civil Action No. 1:08cv00246 (JDB) |

**DECLARATION OF HASSAN SUDLER IN SUPPORT OF AOL'S MOTION TO
TRANSFER AND DISMISS FOR IMPROPER VENUE**

I, Hassan Sudler, do hereby declare:

1.       I am a Litigation Paralegal Specialist employed by Defendant AOL LLC ("AOL") in Dulles, Virginia.   If called as a witness, I could and would testify competently as to the matters set forth herein, which are true of my own personal knowledge.

2.       In the course of my duties in the AOL Legal Department, I have become familiar with AOL's Terms of Service ("TOS") and how members must agree to it before becoming AOL members.  Further, as part of my job responsibilities, I may, in response to legal process or other requests pertaining to litigation, search and retrieve files maintained by the company in the normal course of business.

3.       For more than a year, I have been designated as one of the AOL employees who routinely provide affidavits or declarations where it is necessary in a court proceeding to establish the existence and contents of the contractual agreement

entered into between AOL and a particular AOL member. I have provided such affidavits and declarations on more than fifteen occasions.

4.      I have personal knowledge of certain AOL business records, including records pertaining to (a) the current version of the AOL Membership Agreement; and (b) the all prior versions of the TOS and AOL Member Agreements that have, over the past ten years, established and governed the contractual relationship between AOL and each of its members and that set forth the terms under which AOL has provided the AOL online service to each of its members.

5.      Since July 1998, the AOL TOS has consisted of three elements: the Member Agreement, the Community Guidelines, and the Privacy Policy.

6.      A true and complete copy of the Member Agreement, which AOL promulgated on or about August 2, 2006 ("August 2006 Member Agreement") is attached as Exhibit A.

7.      The Member Agreement that was in effect prior to the August 2006 Member Agreement was promulgated in August 2003 (with one modification in April 2006 to reflect AOL's name change from America Online, Inc. to AOL LLC).

8.      A true and complete copy of the Member Agreement that was in effect from August 2003 until August 2006 ("August 2003 Member Agreement") is attached as Exhibit B.

9.      The Member Agreement that was in effect prior to the August 2003 Member Agreement was promulgated in July 1998.

10.     A true and complete copy of the Member Agreement that was promulgated in July 1998 ("July 1998 Member Agreement") is attached as Exhibit C.

11.    The Member Agreement that was in effect prior to July 1998 Member Agreement was promulgated in May 1997.

10.    A true and complete copy of the Member Agreement that was promulgated in May 1997 ("May 1998 Member Agreement") is attached as Exhibit D.

11.    Everyone who has become an AOL member during the last ten years has been required systematically – as a prerequisite to becoming a member – to proceed through a computerized registration process that enabled the prospective member to read and review the entire Member Agreement on his or her computer screen, and that required him or her to affirmatively agree to the Member Agreement as a condition of using the AOL online service.  Throughout that period the elements of this computerized registration process have included (and presently still include) the following steps:

A.    The prospective AOL member has to initiate the registration process by loading the AOL software onto his/her computer or activating AOL software already present on his/her computer.  After the individual provides basic information such as his/her name, address, phone number, and desired billing method, and before the registration process is completed, he/she is automatically presented with a screen explaining that use of the AOL service is conditioned on acceptance of the AOL Member Agreement.

B.    The prospective member is then given the opportunity to review the entire the effective AOL Member Agreement by clicking on a "Read Now" button.  The prospective member then must click on an on-screen button indicating his or her assent to the Member Agreement in order to proceed with his or her registration and become a subscriber to the AOL service.

C.     If the prospective member chooses not to accept the Member Agreement,
he or she must abandon the registration process and therefore may not become an AOL
member at that time.

D.     In sum, for at least the past ten years, it has not been possible for a person
to become an AOL member unless and until he or she has first been presented with an
opportunity to read and review the entire Member Agreement and then has affirmatively
chosen to accept the terms of that agreement by clicking an on-screen button indicating
assent to those terms.

12.     The first section of the May 1997 Member Agreement states that AOL
may change the terms of the agreement "at any time;" that any such change would take
effect thirty (30) days after the date of its being posted on the AOL online service; that
the member agrees to "review the TOS periodically to be aware of such changes; and that
the member may terminate their membership if any change is unacceptable.    The
agreement specifically states that the member's "continued use of AOL following the
Effective Date of any changes to the TOS constitutes acceptance of all such changes."  In
all other versions of the TOS since at least November 1995, AOL has similarly reserved
the right to change the terms of the Member Agreement at any time, and has permitted
the member to terminate service if he or she deems any provision to be unacceptable.

13.     At all times during the last ten years, the Terms of Service have contained
a forum selection provision providing that the exclusive jurisdiction for any claim or
dispute between any AOL member and AOL resides in the courts of Virginia.

14.     Section 16(a) of the August 2006 Member Agreement contains the
following forum selection clause: "You expressly agree that exclusive jurisdiction for any

claim or dispute with AOL or relating in any way to your membership, this Member Agreement, or your use of the AOL Services resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or AOL Services."

15.    Section 16(a) of the August 2003 Member Agreement contains the following forum selection clause: "You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of the AOL Services resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or AOL Services."

16.    Section 8 of the July 1998 Member Agreement contains the following forum selection clause: "You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunications providers and content providers."

17.    Section 11(A) of the May 1997 Member Agreement contains the following forum selection provision: "Member expressly agrees that exclusive jurisdiction for any claim or dispute resides in the courts of the Commonwealth of Virginia.  Member further agrees and expressly consents to the exercise of personal jurisdiction in the Commonwealth of Virginia in connection with any dispute or claim

involving AOL, Inc." Forum selection provisions with identical language are found in all versions of the agreement dating back to November 1996.

18.    According to AOL's business records, when AOL introduced a new version of the TOS that took effect in July 1998, members encountered a pop-up window informing them of this fact on the first occasion when they signed on to the AOL service after June 3, 1998. The text of that pop-up window stated: "AOL has posted an updated version of its Terms of Service (TOS), which explains the rules, rights and responsibilities of AOL members. This version will become effective July 15, 1998." This pop-up window permitted the user to click on a button labeled "GO TO TERMS OF SERVICE" that linked to the July 1998 TOS. AOL users were encouraged to review the full text of the revised TOS at that time.

19.    A true and complete copy of a screen shot of this pop-up window is attached as Exhibit E.

20.    Shortly before AOL introduced the new version of its Member Agreement in August 2003, it distributed via e-mail a "Notice to AOL Members" on July 2, 2003, announcing the change of the TOS. The Notice provided a summary of changes made to the Member Agreement, and stated: "For more specific and extensive details on the changes made to the Member Agreement, please visit **AOL Keyword: TOS Changes**" (emphasis in original). The Notice explained that the new Member Agreement would take effect on August 3, 2003, "after which date it will govern **you and all authorized users of your account, as well as** other members of the AOL service. If you do not agree to the new terms, you will need to cancel your membership before the changes take effect." (emphasis in original).

21.    A true and correct copy of this Notice to Members is attached as Exhibit F.

22.    The complete text of the AOL Terms of Service is now, and throughout the past ten years, has been available to every AOL member at all times through AOL Online at Keyword "TOS." Similarly, throughout the that same period, it is and has been available by clicking on the AOL Help (which is on the AOL Welcome screen) and typing "TOS" or "Terms of Service" in the box and clicking "Search."

23.    AOL is headquartered in Dulles, Virginia. All of AOL's membership records are maintained on computers located in Virginia. Virtually all of the technical and managerial staff responsible for the Member Agreement is located in Virginia. All AOL documents relevant to the AOL Member Agreement are located in Virginia.

24.    As part of my responsibilities as the Program Manager for Regulatory Order for AOL, I have reviewed the Complaint in this action. To the best of my knowledge, there are no AOL employees or AOL records relating to the controversy between the Plaintiff and AOL that are located in the District of Columbia. Based upon my experience and personal knowledge, the witnesses who are employed by AOL and who may have personal knowledge and information pertaining to the Plaintiff's allegations are based substantially at AOL's headquarters in Dulles, Virginia. In addition, any documents in AOL's control that may relate to the Complaint would likely be located in Dulles, Virginia. Similarly, any computer records or other evidence in AOL's control that may be pertinent to the Plaintiff's allegations will most likely be found in Dulles, Virginia.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 21st day of February, 2008.

/s/ Hassan Sudler[1]
_____

Hassan Sudler
Program Manager for
Regulatory Order for AOL LLC

_____

[1] The original signed document is in the possession of McGuireWoods LLP, Counsel for AOL LLC per LCvR 5.4(b)(5).

# Ex. A

# AOL TERMS OF SERVICE

The foundation of our relationship with our members is the AOL Terms of Service, frequently referenced as "TOS." The Member Agreement, Community Guidelines and Privacy Policy collectively comprise the Terms of Service, and they apply to all AOL members and users. They outline our commitments to you, as well as your rights and responsibilities as an AOL member.

All AOL members should review the Terms of Service. You can do so by clicking on each of the buttons at left. Following is a brief summary of the three elements of TOS

· The **Member Agreement** (AOL Keyword: <u>Member Agreement</u>) contains the basic legal terms of an AOL membership.

· The **Community Guidelines** (AOL Keyword: <u>Community Guidelines</u>) is the core code of conduct for the AOL community.

· The **Privacy Policy** (AOL Keyword: <u>Privacy Policy</u>) sets out how we use your information and what choices you have.

For additional information on how to have a more safe and secure online experience, please visit AOL Keyword: <u>Safety</u>.

# THE AOL MEMBER AGREEMENT

Welcome to AOL. By registering for AOL or using AOL services, software and products, you agree to be bound by this Member Agreement and the rules and policies published on AOL (including AOL's Community Guidelines and Privacy Policy). You also agree to transact electronically with AOL.

## 1. ABOUT THE AOL TERMS OF SERVICE

This Member Agreement, the Community Guidelines and the Privacy Policy collectively make up the AOL Terms of Service. The AOL Terms of Service govern your AOL membership and your use of the AOL Online Service and any of the AOL Services (as defined below). Certain features and services offered by AOL and its Suppliers (such as AOL Call Alert, AIM, and AOL Music Now) contain additional terms or guidelines that supplement this Member Agreement and will govern the use of those services. You will have an opportunity to review the additional terms before you sign up or use those services.

## 2. DEFINITIONS

AOL will use the following terms in this Member Agreement:

**a. Account** - The original account you open when you register for AOL membership through which you obtain access to the AOL Online Service and other AOL Services, and all sub-accounts or other accounts opened under your original account.

**b. AOL Online Service** - The primary U.S. online information, entertainment, communications and transactions service, including all Software for accessing the AOL Online Service, which is offered under various subscription plans, including Internet connectivity subscription plans.

**c. AOL Services** - The AOL Online Service and all other websites, software, services and products

offered by AOL.

**d. Content** - Information, software, games, communications, photos, video, graphics, music, sound and other materials provided by or through the AOL Services.

**e. Software** - Any software made available from AOL or a Supplier, whether preinstalled, given on a medium, provided by download or made available online that enable you to access and use AOL Services.

**f. Supplier** - Any third-party distributor of AOL Services, any third-party provider of Software for AOL Services, any third-party provider of Content for AOL Services and any third-party telecommunications provider.

## 3. QUALIFICATIONS FOR MEMBERSHIP

To use the AOL Services, you must be a U.S. resident and legally able to enter into contracts. AOL reserves the right to limit you to one free trial or promotion of a paid subscription plan that cannot be combined with other offers.

## 4. REGISTRATION FOR MEMBERSHIP

You must register in your own name and provide true and current information. AOL will open an Account for you when you complete your registration. You will select (or AOL will assign you) a primary screen name that will be identified with your Account for the life of your account. You can use this primary screen name to log on to AOL Services and to send e-mail. You will not be able to change your primary screen name; however, depending on your plan, you will have the opportunity to open sub-accounts by creating additional screen names. Screen names may not be vulgar, used by someone else, or impersonate someone else. AOL in its sole discretion may reject the use or assignment of a screen name. All AOL screen names affiliated with your Account are the property of AOL and, at AOL's sole discretion, expire upon the cancellation or termination of your Account. Please visit Keyword: Screen Names to review all guidelines regarding screen names. If you open a sub-account for a child under the age of 13, you certify that you are the child's parent or guardian and you agree to AOL's policies and practices in areas on the AOL Online Service created for children's screen names and others areas of AOL Services created for children.

## 5. YOUR RESPONSIBILITY FOR USE OF YOUR ACCOUNT

You are responsible for all activity on your Account (including activities on any sub-accounts or any of the sub-accounts you may spin-off as a separate account). You must supervise the use of your Account by others, including minors and teen-agers. You and your Account may be subject to disciplinary action or termination if your Account is used inappropriately.

You agree to comply with all applicable laws, rules and regulations regarding your membership and use of AOL Services. You agree to abide by the AOL Community Guidelines and you acknowledge that AOL has the right to enforce them in its sole discretion. AOL may take any action against your Account, ranging from a warning to termination, if you or anyone using your Account violates the AOL Community Guidelines or any other term of the AOL Terms of Service. AOL is not required to provide notice prior to terminating your Account.

You agree to keep confidential the passwords associated with your Account and passwords that you use with all other AOL Services. You agree to indemnify and hold harmless AOL for losses incurred by

AOL or another party due to someone else using your Account or password as a result of your failure to use reasonable care to keep your Account information confidential.

## 6. UNSOLICITED BULK COMMUNICATIONS

You may not use AOL's communication tools, such as e-mail, instant messaging, voice, fax and chat services to send unsolicited bulk communications, including through e-mail or instant messages. Similarly, you may not authorize others to use your Account or sub-accounts to send unsolicited bulk communications, or cause unsolicited bulk communications to be sent by someone else. You may not harvest or collect information about AOL users from AOL Services, including "screen names", and use that information for the purpose of sending unsolicited bulk communications. Any violation of these provisions may result in immediate termination of your Account and further legal action. You agree that AOL may take any legal and technical remedies to prevent unsolicited bulk communications from entering, utilizing or remaining within AOL's networks.

## 7. BILLING AND CHARGES

### a. Information about charges and fees

AOL charges monthly, in advance, for certain AOL Online Service subscription plans and other AOL Services. Surcharges apply if you use certain payment methods (such as payment from your checking account) or use certain telephone numbers for Internet connectivity through the AOL Online Service. Additional fees may apply when you subscribe to other supplemental or enhanced services. All charges are nonrefundable unless provided otherwise in your subscription plan.

You can go to Keyword: Help, then selecting Accounts & Billing; go to AOL Keyword: My Account; or contact an AOL customer service representative at 1-800-827-6364 to get information about billing or to determine the status of your bill and the amount of any surcharge. AOL may, in its discretion, post charges to your payment method individually or may aggregate your charges with other purchases you make from AOL.

**Any trial promotion for fee-based AOL Services (such as free trial time for a paid subscription plan to the AOL Online Service) must be used within the specified time of the trial. You must cancel your Account before the end of the trial period to avoid being charged a membership fee.** Please note, however, that even during any free trial or other promotion, you will still be responsible for any purchases and surcharges incurred using your Account, sub-accounts, or any new accounts you open or "spin-off" for any of your sub-accounts.

### b. Your payment responsibilities

You must select a payment method to pay AOL for any subscription fees and all purchases made from AOL. You must give AOL accurate billing and payment information and keep this information up-to-date through AOL Keyword: My Account. AOL will bill you through the payment method that is associated with your Account. You agree to pay AOL for all charges incurred under your Account, including all applicable taxes, fees and surcharges. You authorize AOL to charge your designated payment method for these charges and to retain information about the payment method associated with your Account. If AOL does not receive payment from your designated payment method, you agree to pay all amounts due upon demand by AOL.

Every time you use an AOL Service, you reaffirm that (i) AOL is authorized to charge your designated payment method; (ii) AOL may submit charges incurred under your Account for payment; and (iii) you

will be responsible for such charges, even if your membership is canceled or terminated.

After 30 days from the date of any unpaid charges, your Account will be deemed delinquent and AOL may terminate or suspend your Account for nonpayment. AOL reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late charge if your payment is more than 30 days past due and to use alternate means to collect any unpaid charges. You are liable for any fees, including attorney and collection fees incurred by AOL in its efforts to collect any remaining balances from you.

**You are responsible for all charges incurred under your Account, including applicable taxes, fees, surcharges and purchases made by you or anyone you allow to use your Account (including your children, family or friends).**

You must notify AOL about any billing problems or discrepancies within 90 days after they first appear on your Account statement. If you do not bring them to AOL's attention within 90 days, you agree that you waive your right to dispute such problems or discrepancies.

## 8. COMMUNICATIONS CHARGES

You are responsible for obtaining and maintaining at your expense all equipment and services needed to access AOL Services. If you are using AOL's dial-up Internet connectivity services, you are responsible for any telephone charges you may incur by accessing AOL Services. The use of any AOL dial-up Internet connectivity number is the same as making a telephone call to that number and thus may result in additional charges on your telephone bill depending on your location and calling plan. The locations and area codes listed in connection with these numbers are not necessarily indicative of whether a call will be local or toll free for you. You should select your AOL dial-up Internet connectivity numbers carefully. Please call your local phone company to ensure that the dial-up number(s) you select will be local calls for your calling plan. This is especially important if there have been changes in area code designations, in your telephone service providers, or in your calling plan. AOL has no information on whether your use of a particular dial-up Internet connectivity number will result in phone charges.

You are also responsible for any communications charges you may incur by accessing AOL Services through a third-party network, such as a cable or wireless carrier. Your carrier may charge service fees for alerts, text messaging (including receiving/sending instant messages and e-mail), web browsing and other services that require the use of airtime and wireless data services. Check with your carrier to verify the fees that may apply to you.

AOL also provides several surcharged 800 or 888 phone numbers to subscribers of its Internet connectivity services. These numbers are not toll-free. You agree to pay the applicable surcharge to AOL if you choose to use these surcharged numbers. Information on the amount of this surcharge and on available dial-up phone numbers is located at AOL Keyword: Access. Note that you can incur long-distance or toll charges or surcharges for 800 or 888 phone numbers even during your free trial.

## 9. CHANGES TO THE SERVICE

AOL in its sole discretion may change or discontinue any or all aspects of the AOL Services without notice, including access to support services, Content and other products or services ancillary to the AOL Services or an AOL membership.

AOL may modify the AOL Terms of Service, change its fees and change its billing methods at any time. AOL will provide you with notice of any change in pricing or material changes to the Terms of Service at least thirty (30) days in advance. If you disagree with any proposed change, your sole

remedy is to cancel your membership before such change takes effect. Otherwise, you will be bound by the revised terms if you keep your membership. AOL will not refund any charges if you choose to cancel your membership for this reason.

For certain subscription plans, AOL reserves the right to log off accounts that are inactive for an extended period of time and you may not use tools that defeat AOL's automatic log-off feature.

# 10. CONTENT

### a. Your Use of Content as an AOL Member

AOL, its Suppliers and its members who lawfully post Content on AOL Services own the property rights to that Content. The Content is protected by copyright, trademark, patent, trade secret, international treaties, laws and other proprietary rights, and also may have security components that protect digital information only as authorized by AOL or Supplier. You agree that you will not take any action to interfere with AOL's or its Suppliers' ownership of or rights in the Content and you will not attempt to circumvent any mechanisms for preventing the unauthorized reproduction or distribution of the Content.

You may use any Content available on the AOL Services, but only for personal, non-commercial purposes. You may be given the opportunity to download certain Content such as music and photos, but you may do so only to the extent as authorized for that particular Content and only for your personal use. You may not use the Content in a manner that exceeds the rights granted for your use of the Content, which includes unauthorized copying or distribution of the Content or creating an unauthorized derivative work.

### b. Content You Post

You may only post Content that you created or which you have been given permission to post by the owner of the Content. You may not post or distribute Content that is illegal or that violates the AOL Community Guidelines. By posting or submitting Content on any AOL Service, you represent and warrant that (i) you own all the rights to this Content or are authorized to use and distribute this Content on the AOL Services and (ii) this Content does not and will not infringe any copyright or any other third-party right nor violate any applicable law or regulation.

Although you or the owner of the Content retain ownership of all right, title, and interest in Content that you post to any AOL Service, AOL owns all right, title, and interest in any compilation, collective work or other derivative work created by AOL using or incorporating this Content. In addition, by posting Content on an AOL Service, you grant AOL, its parent, affiliates, subsidiaries, assigns, agents and licensees the irrevocable, perpetual, worldwide right to reproduce, display, perform, distribute, adapt and promote this Content in any medium.

### c. Content on the AOL Services or the Internet

AOL is not required to pre-screen Content available on the AOL Services, although AOL reserves the right to do so in its sole discretion. AOL is not liable for Content that is provided by others. AOL reserves the right to remove Content that, in its sole judgment, does not meet its standards or does not comply with the AOL Community Guidelines, but AOL is not responsible for any failure or delay in removing such material. AOL is not responsible for content available on the Internet, although AOL reserves the right to block access to any Internet area containing illegal or other harmful content being used for purposes that are unlawful or injurious to AOL or its members. You acknowledge that third-

party sites on the Internet may have their own terms and conditions that govern your use of those sites.

**d. Exporting of Content or Software**

You agree to abide by U.S. and other applicable export control laws and not to transfer, by electronic transmission or otherwise, any Content or Software subject to restrictions under such laws to a national destination prohibited under such laws, or to any person or entity prohibited under such laws, without first obtaining, and then complying with, any requisite government authorization. You further agree not to upload to AOL any data or software that cannot be exported without prior written government authorization and notification of AOL, including, but not limited to, certain types of encryption software. This assurance and commitment shall survive termination of this Member Agreement.

## 11. LICENSE

AOL and the Suppliers grant you a personal, non-exclusive, non-transferable, limited license to install the Software on any computer or device from which you wish to access the AOL Services and to use the Software to connect to and use the AOL Services in accordance with this Member Agreement. AOL occasionally will provide automatic Software and technology upgrades to improve your member experience, such as virus and spam screening technologies, although these upgrades may not be consistent across all platforms and devices. You agree to accept and to take no action to interfere with such automatic upgrades, scanning, and related services. Also, the Software may be subject to a license agreement that accompanies the Software.

You may only use the Software to access and use AOL Services. You may not copy the Software except to install it on your computer or other devices. You may not sell the Software or incorporate it (or any portion of it) into another product. You may not reverse engineer, decompile or disassemble the Software or otherwise attempt to derive the source code (except where expressly permitted by law). You may not obtain the communications protocol for accessing AOL Services unless expressly authorized by AOL. You may not modify, adapt or create derivative works from the Software in any way or remove proprietary notices in the Software. You agree to abide by all laws and regulations in effect regarding your use of the Software and the AOL Services. Finally, you may not authorize or assist any third party to do any of the things described in this paragraph.

The Software is a "commercial item," as that term is defined in 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the Software with only those rights set forth herein.

## 12. DISCLAIMER OF WARRANTIES

YOUR USE OF AOL SERVICES, SOFTWARE AND THE INTERNET IS AT YOUR SOLE RISK. THE AOL SERVICES AND SOFTWARE ARE PROVIDED "AS IS," "WITH ALL FAULTS" AND "AS AVAILABLE" FOR YOUR USE, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, UNLESS SUCH WARRANTIES ARE LEGALLY INCAPABLE OF EXCLUSION. SPECIFICALLY, AOL AND THE SUPPLIERS DISCLAIM IMPLIED WARRANTIES THAT THE AOL SERVICES AND SOFTWARE ARE MERCHANTABLE, OF SATISFACTORY QUALITY, ACCURATE, FIT FOR A PARTICULAR PURPOSE OR NEED, OR NON-INFRINGING. AOL AND THE SUPPLIERS DO NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE SOFTWARE OR AOL SERVICES WILL MEET YOUR REQUIREMENTS OR THAT THE OPERATION OF THE SOFTWARE OR AOL SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS IN THE SOFTWARE OR AOL

SERVICES WILL BE CORRECTED. AOL AND THE SUPPLIERS DO NOT WARRANT OR
MAKE ANY REPRESENTATIONS REGARDING THE USE OR THE RESULTS OF THE USE OF
THE SOFTWARE, AOL SERVICES, OR RELATED DOCUMENTATION IN TERMS OF THEIR
CORRECTNESS, ACCURACY, RELIABILITY, OR OTHERWISE. NO ORAL OR WRITTEN
INFORMATION OR ADVICE GIVEN BY AOL OR AN AOL AUTHORIZED REPRESENTATIVE
SHALL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THIS
WARRANTY. AOL PROVIDES THE AOL SERVICES AND SOFTWARE ON A
COMMERCIALLY REASONABLE BASIS AND DOES NOT GUARANTEE THAT MEMBERS
WILL BE ABLE TO ACCESS OR USE THE AOL SERVICES (EITHER DIRECTLY OR
THROUGH THIRD-PARTY NETWORKS) AT TIMES OR LOCATIONS OF THEIR CHOOSING,
OR THAT AOL WILL HAVE ADEQUATE CAPACITY FOR THE AOL SERVICES AS A WHOLE
OR IN ANY SPECIFIC GEOGRAPHIC AREA.

## 13. LIMITATION OF LIABILITY

AOL'S ENTIRE LIABILITY AND YOUR EXCLUSIVE REMEDY WITH RESPECT TO THE USE
OF ANY SOFTWARE PROVIDED OR USED BY AOL SHALL BE THE REPLACEMENT OF
ANY AOL SOFTWARE FOUND TO BE DEFECTIVE. YOUR SOLE AND EXCLUSIVE REMEDY
FOR ANY OTHER DISPUTE WITH AOL IS THE CANCELLATION OF YOUR ACCOUNT AS
DETAILED BELOW IN SECTION 15. IN NO EVENT SHALL AOL'S CUMULATIVE LIABILITY
TO YOU FOR ANY AND ALL CLAIMS RELATING TO THE USE OF THE AOL SERVICES
EXCEED THE TOTAL AMOUNT OF SERVICE FEES THAT YOU PAID DURING A ONE-YEAR
PERIOD FOR THE SPECIFIC AOL SERVICE AT ISSUE.

AOL AND ITS SUPPLIERS SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL,
INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGE ARISING FROM YOUR USE
OF THE AOL SERVICES, SOFTWARE, THE INTERNET OR FOR ANY OTHER CLAIM
RELATED IN ANY WAY TO YOUR MEMBERSHIP WITH AOL. THESE EXCLUSIONS FOR
INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES
INCLUDE, WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, LOST DATA, LOSS OF
GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY
OTHER COMMERCIAL DAMAGES OR LOSSES, EVEN IF AOL HAD BEEN ADVISED OF THE
POSSIBILITY THEREOF AND REGARDLESS OF THE LEGAL OR EQUITABLE THEORY
UPON WHICH THE CLAIM IS BASED. BECAUSE SOME STATES OR JURISDICTIONS DO
NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL
OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, AOL AND ITS
SUPPLIER'S LIABILITY IN SUCH STATE OR JURISDICTION SHALL BE LIMITED TO THE
EXTENT PERMITTED BY LAW. EXCEPT FOR OFFERS EXPRESSLY MADE OR
GUARANTEED BY AOL, AOL AND ITS SUPPLIERS DO NOT ENDORSE, WARRANT OR
GUARANTEE ANY PRODUCT OR SERVICE OFFERED THROUGH AOL AND WILL NOT BE
A PARTY TO OR IN ANY WAY BE RESPONSIBLE FOR MONITORING ANY TRANSACTION
BETWEEN YOU AND THIRD-PARTY PROVIDERS OF PRODUCTS OR SERVICES.

## 14. INDEMNIFICATION

Upon a request by AOL, you agree to defend, indemnify and hold harmless AOL and its Suppliers
from all liabilities, claims and expenses, including attorneys' fees, that arise from a breach of the AOL
Terms of Service for which you are responsible or from the use of AOL Services or the Internet, or in
connection with your transmission of any Content on AOL Services. AOL reserves the right, at its own
expense, to assume the exclusive defense and control of any matter otherwise subject to

indemnification by you. In that event, you shall have no further obligation to provide indemnification for AOL in that matter.

## 15. TERMINATION

Either you may cancel or AOL may terminate your membership or subscription to an AOL Service at any time. You can cancel a fee-based subscription plan for use of the AOL Online Service by calling, by sending a fax, or by sending a letter to AOL's Customer Service Department. Cancellation will take effect within 72 hours of receipt of your request. Complete information on AOL's cancellation procedures is available at AOL Keyword: Cancel. AOL will send you written confirmation of the cancellation of your fee-based subscription plan to the AOL Online Service. If you cancel near the end of your billing period and are inadvertently charged for the next month's fee, call AOL to have the charges reversed. If you signed up for certain supplemental or enhanced services for an extra fee (such as AOL Music Now), you should consult the specific cancellation policies and procedures for those services. If your membership or subscription to AOL Services is canceled or terminated, including based on inactivity in your use of a free service, any data you have stored on such AOL Services may not be retrieved later.

Except as otherwise provided in Section 13 above, cancellation of your Account is your sole right and remedy with respect to any dispute with AOL. This includes, but is not limited to, any dispute related to, or arising out of: (1) any term of this Member Agreement or AOL's enforcement or application of this Member Agreement; (2) any policy or practice of AOL, including AOL's Community Guidelines and the AOL Privacy Policy, or AOL's enforcement or application of these policies; (3) the Content available on AOL Services or the Internet or any change in Content provided by AOL; (4) your ability to access and/or use the AOL Services; or (5) the amount or type of fees, surcharges, applicable taxes, billing methods, or any change to the fees, applicable taxes, surcharges or billing methods.

In the event that your Account is terminated or canceled, no online time or other credits will be credited to you or can be converted to cash or other form of reimbursement. You understand and agree that you no longer will have access to any of the AOL Services associated with your deactivated Screen Name or Account. AOL must give you express permission before it will reactivate you Account if AOL previously terminated your membership for violating the AOL Terms of Service (including its Community Guidelines) or due to an outstanding balance. Active AOL members may not allow former AOL members whose memberships have been terminated to use their Accounts.

## 16. GENERAL LEGAL TERMS

This Member Agreement, as published over the AOL Online Service, the terms of your subscription plan provided at registration and billing terms posted on the AOL Online Service constitute the entire and only agreement regarding your AOL membership and your Account. This Member Agreement supersedes all representations, agreements and other communications regarding your membership. Only AOL can amend this Member Agreement by posting the changes on the AOL Online Service. If any term of this Member Agreement is found by a court of competent jurisdiction to be invalid, illegal or unenforceable, the term shall be considered to be stricken from this Member Agreement as if it had not been included from the beginning and the remainder of the Member Agreement enforced according to its terms.

You agree that this Member Agreement is not intended to confer and does not confer any rights or remedies from AOL upon any person other than you. You also agree that the AOL Community Guidelines and other guidelines posted on AOL Services, including AOL's enforcement of those policies, are not intended to confer, and do not confer, any rights or remedies upon any person.

The AOL Online Service and AOL Services are provided by AOL LLC and its affiliates.

### a. Choice of Law; Choice of Forum

The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Member Agreement, your membership, and your use of AOL Services. You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership, this Member Agreement, or your use of the AOL Services resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or AOL Services. The foregoing provision may not apply to you depending on the laws of your jurisdiction. This Agreement shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods.

### b. Electronic Delivery Policy and Your Consent

By affirmatively signing up for an AOL Service, you consent to receive all communications, including notices, agreements, legally required disclosures or other information in connection with any AOL Service electronically from AOL (collectively, "Notices"). You agree that AOL generally can send you electronic Notices by (i) e-mail to your primary screen name, and/or (ii) by "pop up notice" on an AOL Service and/or by (iii) posting the Notices on a main page or channel page of the relevant service. You agree that certain supplemental or enhanced services made available to AOL members may also have their own Notice procedures.

You must check your primary master screen name regularly for Notices from AOL. AOL will send important Notices about your AOL membership, including any Notices concerning violations of any sub-accounts, to your primary screen name.

You must have a personal computer with a modem connected to a communications source (telephone, wireless or broadband), a Windows-based operating system with AOL Software version 2.5 or higher, or a Macintosh-based operating system with AOL Software for Macintosh in order to access electronic communications. You will need a printer attached to your personal computer to print any Notices. You can retrieve an electronic copy and a printable version of the AOL Terms of Service at AOL Keyword: TOS. The delivery of any Notice from AOL is effective when sent by AOL, regardless of whether you read the communication when you receive it. You may withdraw your consent to receive notices electronically by calling or by sending a fax or letter to AOL's Customer Service at the address and phone number listed at AOL Keyword: Cancel; however, if you choose to withdraw consent, AOL may terminate your membership and subscriptions to any AOL Services. All registrations, agreements, and terms will be completed electronically and will be deemed for all legal purposes to be in writing and legally enforceable as a signed writing.

### c. Information for California Residents

Under California Civil Code Section 1789.3, California AOL members are entitled to the following specific consumer rights information:

**Pricing Information.** Current rates for using the AOL Online Service may be obtained by calling 1-800-827-6364. AOL reserves the right to change fees, surcharges, and monthly membership fees or to institute new fees at any time upon thirty (30) days prior notice.

**Complaints.** The Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs may be contacted in writing at 1020 N. Street, #501, Sacramento, CA 95814, or by telephone at 1-916-445-1254.

**d. Privacy Policy**

The AOL Privacy Policy explains how AOL collects, uses, and discloses personal information in connection with your AOL membership, as well as the choices AOL gives you about such uses and disclosures. You can review the current version of this policy by clicking Privacy Policy or visiting AOL Keyword: Privacy. By your affirmative act of either registering for AOL as a new member, or registering for a new AOL Service, or continuing to use the AOL Services following your registration, you authorize the collection, use, and disclosure of personal information by AOL as provided for under AOL's then-current Privacy Policy.

Last Updated: 8-02-06

# Ex. B

## THE AMERICA ONLINE MEMBER AGREEMENT

Welcome and thank you for joining America Online ("AOL"). By registering for AOL membership or using AOL services and products, you agree to be bound by this Member Agreement and the rules and policies published on AOL (including AOL's Community Guidelines and Privacy Policy). You also agree to transact electronically with AOL.

### 1.    ABOUT THE AOL TERMS OF SERVICE

This Member Agreement, the Community Guidelines and the Privacy Policy collectively make up the AOL Terms of Service. The AOL Terms of Service govern your AOL membership and your use of the AOL Online Service and any of the AOL Services (as defined below). Certain features and services offered by AOL and its Suppliers (such as AOL Call Alert, AOL Instant Messenger, Broadband for AOL, and MusicNet on AOL) contain additional terms or guidelines that supplement this Member Agreement and will govern the use of those services. You will have an opportunity to review the additional terms before you sign up or use those services.

### 2.    DEFINITIONS

AOL will use the following terms in this Member Agreement:

a.   **Account** – The original account you open when you register for AOL membership through which you obtain access to the AOL Online Service and other AOL Services, and all sub-accounts or other accounts opened under your original account.

b.   **AOL Online Service** – The primary U.S. subscription online information, entertainment, communications and transactions service, including all Software for accessing and using the service.

c.   **AOL Services** – The AOL Online Service and all other websites, services and products offered by AOL.

d.   **Content** – Information, software, games, communications, photos, video, graphics, music, sound and other materials provided by or through the AOL Services.

e.   **Software** – Any software made available from AOL or a Supplier, whether preinstalled, given on a medium, provided by download or upgrade, or made available online that enable you to access and use AOL Services.

f.   **Supplier** – Any third-party distributor of AOL Services, any third-party provider of Software for AOL Services, and any third-party provider of Content for AOL Services and any third-party telecommunications provider.

### 3.    QUALIFICATIONS FOR MEMBERSHIP

You must be a U.S. resident, at least 18 years of age and legally able to enter into contracts to qualify for AOL membership. If you are not yet 18 years old, you may use AOL Services only if the account was created and registered by your parent or guardian. AOL reserves the right to limit you to one free trial or promotion that cannot be combined with other offers.

## 4.    REGISTRATION FOR MEMBERSHIP

You must register in your own name and provide true and current information. AOL will open an Account for you when you complete your registration. You will select (or AOL will assign you) a primary screen name that will be identified with your Account for the life of your account. You can use this primary screen name to log on to AOL Services and to send e-mail. You will not be able to change your primary screen name; however, depending on your plan, you will have the opportunity to open sub-accounts by creating additional screen names. Screen names may not be vulgar, used by someone else, or impersonate someone else. AOL in its sole discretion may reject the use or assignment of a screen name. All AOL screen names affiliated with your Account are the property of AOL and, at AOL's sole discretion, expire upon the cancellation or termination of your Account. Please visit Keyword: Screen Names to review all guidelines regarding screen names. If you open a sub-account for a child under the age of 13, you certify that you are the child's parent or guardian and you agree to AOL's policies and practices in areas on the AOL Online Service created for children's screen names and others areas of AOL Services created for children.

## 5.    YOUR RESPONSIBILITY FOR USE OF YOUR ACCOUNT

You are responsible for <u>all</u> activity on your Account (including activities on any sub-accounts or any of the sub-accounts you may spin-off as a separate account). You must supervise the use of your Account by others, including minors and teen-agers. You and your Account may be subject to disciplinary action or termination if your Account is used inappropriately.

You agree to comply with all applicable laws, rules and regulations regarding your membership and use of AOL Services. You agree to abide by the AOL Community Guidelines and you acknowledge that AOL has the right to enforce them in its sole discretion. AOL may take any action against your Account, ranging from a warning to termination, if you or anyone using your Account violates the AOL Community Guidelines or any other term of the AOL Terms of Service. AOL is not required to provide notice prior to terminating your Account.

You agree to keep confidential the passwords associated with your Account and passwords that you use with all other AOL Services. You agree to indemnify and hold harmless AOL for losses incurred by AOL or another party due to someone else using your Account or password as a result of your failure to use reasonable care to keep your Account information confidential.

6.    **UNSOLICITED BULK COMMUNICATIONS**

You may not use AOL's communication tools, such as e-mail, instant messaging and chat services to send unsolicited bulk communications, including through e-mail or instant messages. Similarly, you may not authorize others to use your Account or sub-accounts to send unsolicited bulk communications, or cause unsolicited bulk communications to be sent by someone else. You may not harvest or collect information about AOL users from AOL Services, including "screen names", and use that information for the purpose of sending unsolicited bulk communications. Any violation of these provisions may result in immediate termination of your Account and further legal action. You agree that AOL may take any legal and technical remedies to prevent unsolicited bulk communications from entering, utilizing or remaining within AOL's networks.

7.    **BILLING AND CHARGES**

a.    **Information about charges and fees**

AOL charges monthly, in advance, for the AOL Online Service. Surcharges apply if you use certain payment methods (such as payment from your checking account) or certain telephone numbers to access the AOL Online Service. Additional fees may apply when you subscribe to other supplemental or enhanced services. All charges are nonrefundable unless provided otherwise in your subscription plan.

You can go to Keyword: Help, then selecting Accounts & Billing; go to AOL Keyword: Billing; or contact an AOL customer service representative at 1-800-827-6364 to get information about billing or to determine the status of your bill and the amount of any surcharge.

**Any trial promotion (such as free trial time) must be used within the specified time of the trial. You must cancel your Account before the end of the trial period to avoid being charged a membership fee.** Please note, however, that even during any free trial or other promotion, you will still be responsible for any purchases and surcharges incurred using your Account, sub-accounts, or any new accounts you open or "spin-off" for any of your sub-accounts.

b.    **Your payment responsibilities**

You must select a payment method to pay AOL for membership fees and all purchases made from AOL. You must give AOL accurate billing and payment information and keep this information up-to-date through AOL Keyword: Billing. AOL will bill you through your Account that is assigned to your primary screen name. You agree to pay AOL for all charges incurred under your Account, including all applicable taxes, fees and surcharges. You authorize AOL to charge your designated payment method for these charges. If AOL does not receive payment from your designated payment method, you agree to pay all amounts due upon demand by AOL.

Every time you use an AOL Service, you reaffirm that (i) AOL is authorized to charge your designated payment method; (ii) AOL may submit charges incurred under your Account for payment; and (iii) you will be responsible for such charges, even if your membership is canceled or terminated.

After 30 days from the date of any unpaid charges, your Account will be deemed delinquent and AOL may terminate or suspend your Account for nonpayment. AOL reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late charge if your payment is more than 30 days past due and to use alternate means to collect any unpaid charges. You are liable for any fees, including attorney and collection fees incurred by AOL in its efforts to collect any remaining balances from you.

**You are responsible for all charges incurred under your Account, including applicable taxes, fees, surcharges and purchases made by you or anyone you allow to use your Account (including your children, family or friends).**

You must notify AOL about any billing problems or discrepancies within 90 days after they first appear on your Account statement. If you do not bring them to AOL's attention within 90 days, you agree that you waive your right to dispute such problems or discrepancies.

## 8.    COMMUNICATIONS CHARGES

You are responsible for obtaining and maintaining at your expense all equipment and services needed to access AOL Services. If you are using AOL's dial-up access, you are responsible for any telephone charges you may incur by accessing AOL Services. The use of any AOL access number is the same as making a telephone call to that number and thus may result in additional charges on your telephone bill depending on your location and calling plan. The locations and area codes listed in connection with these numbers are not necessarily indicative of whether a call will be local or toll free for you. You should select your AOL access numbers carefully. Please call your local phone company to ensure that the access number(s) you select will be local calls for your calling plan. This is especially important if there have been changes in area code designations, in your telephone service providers, or in your calling plan. AOL has no information on whether your use of a particular access number will result in phone charges.

You are also responsible for any communications charges you may incur by accessing AOL Services through a third-party network, such as a cable or wireless carrier. Your carrier may charge service fees for alerts, text messaging (including receiving/sending instant messages and e-mail), web browsing and other services that require the use of airtime and wireless data services. Check with your carrier to verify the fees that may apply to you.

AOL also provides several surcharged 800 or 888 access phone numbers. These access numbers are not toll-free. You agree to pay the applicable surcharge to AOL if you

choose to use these surcharged numbers to access AOL. Information on the amount of this surcharge and on available access phone numbers is located at AOL Keyword: Access. Note that you can incur long-distance or toll charges or surcharges for 800 or 888 access even during your free trial.

## 9.    CHANGES TO THE SERVICE

AOL in its sole discretion may change or discontinue any or all aspects of the AOL Services without notice, including access to support services, Content and other products or services ancillary to the AOL Services or an AOL membership.

AOL may modify the AOL Terms of Service, change its fees and change its billing methods at any time. AOL will provide you with notice of any change in pricing or material changes to the Terms of Service at least thirty (30) days in advance. If you disagree with any proposed change, your sole remedy is to cancel your membership before such change takes effect. Otherwise, you will be bound by the revised terms if you keep your membership. AOL will not refund any charges if you choose to cancel your membership for this reason.

AOL reserves the right to log off accounts that are inactive for an extended period of time and you may not use tools that defeat AOL's automatic log-off feature.

## 10.    CONTENT

### a.    Your Use of Content as an AOL Member

AOL, its Suppliers and its members who lawfully post Content on AOL Services own the property rights to that Content. The Content is protected by copyright, trademark, patent, trade secret, international treaties, laws and other proprietary rights, and also may have security components that protect digital information only as authorized by AOL or Supplier. You agree that you will not take any action to interfere with AOL's or its Suppliers' ownership of or rights in the Content and you will not attempt to circumvent any mechanisms for preventing the unauthorized reproduction or distribution of the Content.

You may use any Content available on the AOL Services, but only for personal, non-commercial purposes  You may be given the opportunity to download certain Content such as music and photos, but you may do so only to the extent as authorized for that particular Content and only for your personal use. You may not use the Content in a manner that exceeds the rights granted for your use of the Content, which includes unauthorized copying or distribution of the Content or creating an unauthorized derivative work.

### b.    Content You Post

You may only post Content that you created or which you have been given permission to post by the owner of the Content. You may not post or distribute Content that is illegal or

that violates the AOL Community Guidelines. By posting or submitting Content on any AOL Service, you represent and warrant that (i) you own all the rights to this Content or are authorized to use and distribute this Content on the AOL Services and (ii) this Content does not and will not infringe any copyright or any other third-party right nor violate any applicable law or regulation.

Although you or the owner of the Content retain ownership of all right, title, and interest in Content that you post to any AOL Service, AOL owns all right, title, and interest in any compilation, collective work or other derivative work created by AOL using or incorporating this Content. In addition, by posting Content on an AOL Service, you grant AOL, its parent, affiliates, subsidiaries, assigns, agents and licensees the irrevocable, perpetual, worldwide right to reproduce, display, perform, distribute, adapt and promote this Content in any medium.

### c.    Content on the AOL Services or the Internet

AOL is not required to pre-screen Content available on the AOL Services, although AOL reserves the right to do so in its sole discretion. AOL is not liable for Content that is provided by others. AOL reserves the right to remove Content that, in its sole judgment, does not meet its standards or does not comply with the AOL Community Guidelines, but AOL is not responsible for any failure or delay in removing such material. AOL is not responsible for content available on the Internet, although AOL reserves the right to block access to any Internet area containing illegal or other harmful content being used for purposes that are unlawful or injurious to AOL or its members. You acknowledge that third-party sites on the Internet may have their own terms and conditions that govern your use of those sites.

### d.    Exporting of Content or Software

You agree to abide by U.S. and other applicable export control laws and not to transfer, by electronic transmission or otherwise, any Content or Software subject to restrictions under such laws to a national destination prohibited under such laws (currently, Cuba, Iran, Iraq, Libya, North Korea, Sudan and Syria or national thereof), or to any person or entity prohibited under such laws, without first obtaining, and then complying with, any requisite government authorization. You further agree not to upload to AOL any data or software that cannot be exported without prior written government authorization and notification of AOL, including, but not limited to, certain types of encryption software. This assurance and commitment shall survive termination of this Member Agreement.

### 11.    LICENSE

AOL and the Suppliers grant you a personal, non-exclusive, non-transferable, limited license to install the Software on any computer or device from which you wish to access the AOL Services and to use the Software to connect to and use the AOL Services in accordance with this Member Agreement. AOL occasionally will provide automatic Software and technology upgrades to improve your member experience, such as virus

and spam screening technologies, although these upgrades may not be consistent across all platforms and devices. You agree to accept and to take no action to interfere with such automatic upgrades, scanning, and related services.

You may only use the Software to access and use AOL Services. You may not copy the Software except to install it on your computer or other devices. You may not sell the Software or incorporate it (or any portion of it) into another product. You may not reverse engineer, decompile or disassemble the Software or otherwise attempt to derive the source code (except where expressly permitted by law). You may not obtain the communications protocol for accessing AOL Services unless expressly authorized by AOL. You may not modify, adapt or create derivative works from the Software in any way or remove proprietary notices in the Software. You agree to abide by all laws and regulations in effect regarding your use of the Software and the AOL Services. Finally, you may not authorize or assist any third party to do any of the things described in this paragraph.

The Software is a "commercial item," as that term is defined in 48 C.F.R. 2.101, consisting of "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the Software with only those rights set forth herein.

### 12.    DISCLAIMER OF WARRANTIES

YOUR USE OF AOL SERVICES, SOFTWARE AND THE INTERNET IS AT YOUR SOLE RISK. THE AOL SERVICES AND SOFTWARE ARE PROVIDED "AS IS," "WITH ALL FAULTS" AND "AS AVAILABLE" FOR YOUR USE, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, UNLESS SUCH WARRANTIES ARE LEGALLY INCAPABLE OF EXCLUSION. SPECIFICALLY, AOL AND THE SUPPLIERS DISCLAIM IMPLIED WARRANTIES THAT THE AOL SERVICES AND SOFTWARE ARE MERCHANTABLE, OF SATISFACTORY QUALITY, ACCURATE, FIT FOR A PARTICULAR PURPOSE OR NEED, OR NON-INFRINGING. AOL AND THE SUPPLIERS DO NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE SOFTWARE OR AOL SERVICES WILL MEET YOUR REQUIREMENTS OR THAT THE OPERATION OF THE SOFTWARE OR AOL SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS IN THE SOFTWARE OR AOL SERVICES WILL BE CORRECTED. AOL AND THE SUPPLIERS DO NOT WARRANT OR MAKE ANY REPRESENTATIONS REGARDING THE USE OR THE RESULTS OF THE USE OF THE SOFTWARE, AOL SERVICES, OR RELATED DOCUMENTATION IN TERMS OF THEIR CORRECTNESS, ACCURACY, RELIABILITY, OR OTHERWISE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY AOL OR AN AOL AUTHORIZED REPRESENTATIVE SHALL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THIS WARRANTY. AOL PROVIDES THE AOL SERVICES AND SOFTWARE ON A COMMERCIALLY REASONABLE BASIS AND DOES NOT GUARANTEE THAT MEMBERS WILL BE ABLE TO ACCESS

OR USE THE AOL SERVICES (EITHER DIRECTLY OR THROUGH THIRD-PARTY NETWORKS) AT TIMES OR LOCATIONS OF THEIR CHOOSING, OR THAT AOL WILL HAVE ADEQUATE CAPACITY FOR THE AOL SERVICES AS A WHOLE OR IN ANY SPECIFIC GEOGRAPHIC AREA.

### 13.    LIMITATION OF LIABILITY

AOL'S ENTIRE LIABILITY AND YOUR EXCLUSIVE REMEDY WITH RESPECT TO THE USE OF ANY SOFTWARE PROVIDED OR USED BY AOL SHALL BE THE REPLACEMENT OF ANY AOL SOFTWARE FOUND TO BE DEFECTIVE. YOUR SOLE AND EXCLUSIVE REMEDY FOR ANY OTHER DISPUTE WITH AOL IS THE CANCELLATION OF YOUR ACCOUNT AS DETAILED BELOW IN SECTION 15.  IN NO EVENT SHALL AOL'S CUMULATIVE LIABILITY TO YOU FOR ANY AND ALL CLAIMS RELATING TO THE USE OF THE AOL SERVICES EXCEED THE TOTAL AMOUNT OF SERVICE FEES THAT YOU PAID DURING A ONE-YEAR PERIOD FOR THE SPECIFIC AOL SERVICE AT ISSUE.

AOL AND ITS SUPPLIERS SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGE ARISING FROM YOUR USE OF THE AOL SERVICES, SOFTWARE, THE INTERNET OR FOR ANY OTHER CLAIM RELATED IN ANY WAY TO YOUR MEMBERSHIP WITH AOL. THESE EXCLUSIONS FOR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES INCLUDE, WITHOUT LIMITATION,  DAMAGES FOR LOST PROFITS, LOST DATA, LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY OTHER COMMERCIAL DAMAGES OR LOSSES, EVEN IF AOL HAD BEEN ADVISED OF THE POSSIBILITY THEREOF AND REGARDLESS OF THE LEGAL OR EQUITABLE THEORY UPON WHICH THE CLAIM IS BASED. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, AOL AND ITS SUPPLIER'S LIABILITY IN SUCH STATE OR JURISDICTION SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW.  EXCEPT FOR OFFERS EXPRESSLY MADE OR GUARANTEED BY AOL, AOL AND ITS SUPPLIERS DO NOT ENDORSE, WARRANT OR GUARANTEE ANY PRODUCT OR SERVICE OFFERED THROUGH AOL AND WILL NOT BE A PARTY TO OR IN ANY WAY BE RESPONSIBLE FOR MONITORING ANY TRANSACTION BETWEEN YOU AND THIRD-PARTY PROVIDERS OF PRODUCTS OR SERVICES.

### 14.    INDEMNIFICATION

Upon a request by AOL, you agree to defend, indemnify and hold harmless AOL and its Suppliers from all liabilities, claims and expenses, including attorneys' fees, that arise from a breach of the AOL Terms of Service for which you are responsible or from the use of AOL Services or the Internet, or in connection with your transmission of any Content on AOL Services.  AOL reserves the right, at its own expense, to assume the

exclusive defense and control of any matter otherwise subject to indemnification by you. In that event, you shall have no further obligation to provide indemnification for AOL in that matter.

## 15.    TERMINATION

Either you may cancel or AOL may terminate your membership at any time. You can cancel your membership by calling, by sending a fax, or by sending a letter to AOL's Customer Service Department. Cancellation will take effect within 72 hours of receipt of your request. Complete information on AOL's cancellation procedures is available at AOL Keyword: Cancel. AOL will send you written confirmation of your cancellation. If you cancel near the end of your billing period and are inadvertently charged for the next month's fee, call AOL to have the charges reversed. If you signed up for certain supplemental or enhanced services for an extra fee (such as Broadband services or MusicNet on AOL), you should consult the specific cancellation policies and procedures for those services.

Except as otherwise provided in Section 13 above, cancellation of your Account is your sole right and remedy with respect to any dispute with AOL. This includes, but is not limited to, any dispute related to, or arising out of: (1) any term of this Member Agreement or AOL's enforcement or application of this Member Agreement; (2) any policy or practice of AOL, including AOL's Community Guidelines and the AOL Privacy Policy, or AOL's enforcement or application of these policies; (3) the Content available on AOL Services or the Internet or any change in Content provided by AOL; (4) your ability to access and/or use the AOL Services; or (5) the amount or type of fees, surcharges, applicable taxes, billing methods, or any change to the fees, applicable taxes, surcharges or billing methods.

In the event that your Account is terminated or canceled, no online time or other credits will be credited to you or can be converted to cash or other form of reimbursement. AOL must give you express permission before it will reactivate you Account if AOL previously terminated your membership for violating the AOL Terms of Service (including its Community Guidelines) or due to an outstanding balance. Active AOL members may not allow former AOL members whose memberships have been terminated to use their Accounts.

## 16.    GENERAL LEGAL TERMS

This Member Agreement, as published over the AOL Online Service, the terms provided at registration and billing terms posted on the AOL Online Service constitute the entire and only agreement regarding your AOL membership and your Account. This Member Agreement supersedes all representations, agreements and other communications regarding your membership. Only AOL can amend this Member Agreement by posting the changes on the AOL Online Service. If any term of this Member Agreement is found by a court of competent jurisdiction to be invalid, illegal or unenforceable, the term shall be considered to be stricken from this Member Agreement as if it had not been included

from the beginning and the remainder of the Member Agreement enforced according to its terms.

You agree that this Member Agreement is not intended to confer and does not confer any rights or remedies from AOL upon any person other than you. You also agree that the AOL Community Guidelines and other guidelines posted on AOL Services, including AOL's enforcement of those policies, are not intended to confer, and do not confer, any rights or remedies upon any person.

### a.    Choice of Law; Choice of Forum

The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Member Agreement and your membership. You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of the AOL Services resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or AOL Services. The foregoing provision may not apply to you depending on the laws of your jurisdiction. This Agreement shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods.

### b.    Electronic Delivery Policy and Your Consent

By affirmatively signing up for an AOL Service, you consent to receive all communications, including notices, agreements, legally required disclosures or other information in connection with any AOL Service electronically from AOL (collectively, "Notices"). You agree that AOL generally can send you electronic Notices by (i) e-mail to your primary screen name, and/or (ii) by "pop up notice" on an AOL Service and/or by (iii) posting the Notices on a main page or channel page of the relevant service. You agree that certain supplemental or enhanced services made available to AOL members may also have their own Notice procedures.

You must check your primary master screen name regularly for Notices from AOL. AOL will send important Notices about your AOL membership, including any Notices concerning violations of any sub-accounts, to your primary screen name.

You must have a personal computer with a modem connected to a communications source (telephone, wireless or broadband), a Windows-based operating system with AOL Software version 2.5 or higher, or a Macintosh-based operating system with AOL Software for Macintosh in order to access electronic communications. You will need a printer attached to your personal computer to print any Notices. You can retrieve an electronic copy and a printable version of the AOL Terms of Service at AOL Keyword: TOS. The delivery of any Notice from AOL is effective when sent by AOL, regardless of whether you read the communication when you receive it. You may withdraw your consent to receive notices electronically by calling or by sending a fax or letter to AOL's Customer Service at the address and phone number listed at AOL Keyword: Cancel; however, if you choose to withdraw consent, AOL may terminate your membership and

subscriptions to any AOL Services. All registrations, agreements, and terms will be completed electronically and will be deemed for all legal purposes to be in writing and legally enforceable as a signed writing.

### c.    Information for California Residents

Under California Civil Code Section 1789.3, California AOL members are entitled to the following specific consumer rights information:

**Pricing Information.**  Current rates for using AOL may be obtained by calling 1-800-827-6364.  AOL, Inc. reserves the right to change fees, surcharges, and monthly membership fees or to institute new fees at any time upon thirty (30) days prior notice.

**Complaints.**  The Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs may be contacted in writing at 1020 N. Street, #501, Sacramento, CA 95814, or by telephone at 1-916-445-1254.

### d.    Privacy Policy

The AOL Privacy Policy explains how AOL collects, uses, and discloses personal information in connection with your AOL membership, as well as the choices AOL gives you about such uses and disclosures. You can review the current version of this policy by clicking Privacy Policy or visiting AOL Keyword: Privacy.  By your affirmative act of either registering for AOL as a new member, or registering for a new AOL Service, or continuing to use the AOL Services following your registration, you authorize the collection, use, and disclosure of personal information by AOL as provided for under AOL's then-current Privacy Policy.

# Ex. C

AOL MEMBER AGREEMENT EFFECTIVE 7/15/1998

Introduction

To review any section of the Member Agreement, click on the blue, underlined text. You may then print, save or search that section. To review, print, save or search the full text of the Member Agreement, click here.

The America Online Member Agreement

The America Online Member Agreement is a legal document that details your rights and obligations as an AOL member. You cannot become an AOL Member until you have accepted the terms of the Member Agreement. The Member Agreement provides very important information about your AOL membership, so you should take the time to read and understand it. If you have questions about the Member Agreement, or about your rights and responsibilities as an AOL member, please contact us by e-mail by clicking here. You should also take the time to review the AOL Privacy Policy and the AOL Community Guidelines which reflect AOL's current policies. The Internet and online world is changing rapidly and as technology and AOL's business continue to evolve, these policies may have to be updated or revised. Since these Privacy Policies and Community Guidelines may change, you should check Keyword: TOS for the most current versions.

For the same reasons, it may be necessary for AOL to update or revise certain provisions of the Member Agreement. By joining AOL and accepting the Member Agreement you agree that AOL may change the terms of this Member Agreement. If AOL makes material changes or revisions to the Member Agreement, we will provide notice to you thirty days in advance. If you don't agree to the changes proposed by AOL, or to any of the terms in this Member Agreement, your only remedy is to cancel your AOL membership.

1. The Basics of Your AOL Membership
2. Charges and Billing
3. Online Conduct and Content
4. AOL Software Licenses
5. Warranty
6. Indemnification
7. Termination and Cancellation
8. Law and Legal Notices

1.      The Basics of your AOL Membership

This Agreement is your entire agreement with AOL and governs your use of the AOL Internet online service. There may be additional terms and conditions if you use affiliate services like our international areas, other AOL services or products such as AOL Instant Messenger(TM) service or third-party software and/or services. To access the AOL

service you must accept the terms of this Agreement and comply with the AOL Community Guidelines. To be an AOL member, you must be at least 18 years old. If you are not yet eighteen years old, you may still use AOL, but only if the account was created and registered by your parent or guardian. Because we give out free trial offers, we reserve the right to limit you to just one free trial.

When you accept this Agreement and complete the AOL registration process, you become the "master account" holder, and AOL provides you with a limited, non-exclusive license for no more than the term of your membership to use the screen name you select for your "master account." AOL also allows you to have additional "sub-accounts" or screen names of your choice. [Note: If you are using AOL 5.0, you're allowed to have up to six additional "sub-accounts"]. Your screen name is your online identity. You may not use a screen name that is used by someone else, and your screen name cannot be vulgar, or be used in any way that violates the other parts of the Member Agreement or the Community Guidelines.

As the master account holder, you are responsible for all activity on your account and on any of the sub-accounts, and violations or warning accrued by the sub-account can lead to termination of the master account. If warnings or violations are received by sub-accounts, the master account will also receive notification. You may also receive important notices about your membership from time to time that may not be provided to the sub-accounts, so it is important for you to regularly check your master account mailbox. Because you are responsible for all use of your account, you should supervise the use of your account by others. This is especially important when children are using the service; children are safer online and get more out of the experience with adult supervision. It is important that you not reveal your password to other users and AOL will never ask you for your password. You agree not to reveal your password to other users and you agree to indemnify and hold AOL harmless for any improper or illegal use of your account. This includes illegal or improper use by someone to whom you have given permission to use your account. Your account is at risk if you let someone use it inappropriately. If your membership is terminated for violating this Agreement or the Community Guidelines, AOL's express permission will be necessary before you are allowed to use AOL again.

2.      Charges and Billing

AOL reserves the right to change our fees or billing methods at any time and AOL will provide notice of any such change at least thirty days in advance in the same manner described above for changes to the Member Agreement. AOL also has the right to collect applicable taxes and impose premium surcharges for some areas of the service and these surcharges may apply even during your free trial. The answers to many common billing questions can be found by going to Keyword: Help, then selecting Accounts &Billing, going to Keyword: Billing, or by contacting an AOL customer service representative at 1-800-827-6364. If you don't like the changes in fees or billing methods, you may cancel your membership at any time, but AOL will not refund any remaining portion of the monthly fee when you cancel your membership. IF YOU HAVE JOINED AOL AS A

TRIAL MEMBER, YOU SHOULD UNDERSTAND THAT YOUR FREE TRIAL
TIME MUST BE USED WITHIN THE SPECIFIED TIME OF THE TRIAL AND TO
AVOID BEING CHARGED A MEMBERSHIP FEE, YOU MUST CANCEL YOUR
ACCOUNT BEFORE THE END OF THE TRIAL PERIOD.

As the master account holder, you are responsible for all charges incurred, including
applicable taxes and purchases made by you or anyone you allow to use your account or
sub-accounts, including your children, other members of your family or friends. This
means that, unless your account or credit card information is obtained unlawfully or
fraudulently by someone other than those authorized to use your account or sub-account,
you will be responsible for all usage and purchases under your account or sub-accounts.

There may be extra charges to access certain premium content on AOL. AOL will
provide notice of any extra charge before you enter the premium area. You are
responsible for any charges for premium content incurred using your account (including
sub-accounts) and these charges apply even during the free trial. AOL's Parental
Controls allow you to prevent sub-accounts from accessing premium or surcharged
content. For more information go to Keyword: Parental Controls. Some Web sites
charge separate fees, which are not included in the cost of your AOL membership. AOL
provides access to a large number of third-party vendors, who provide content, goods and
or services on the AOL service or the Internet. Any separate charges or obligations you
incur in your dealings with these third-parties are your responsibility and are not part of
the fee charged for your AOL membership.

Most members pay by credit card. For most billing plans we will be charging your
designated card every month, but some charges may accumulate on your account before
they are charged to your card. If you don't have a credit card, you can authorize AOL to
make electronic fund transfers from your checking account. There is an additional
surcharge for this payment option and you should go to Keyword: Billing and read about
AOL's Billing Methods for more information. By selecting this billing option and
providing AOL with your debit/checking account information, you authorize AOL to
debit your checking account for charges incurred using AOL. Every time you use AOL,
you re-affirm that AOL is authorized to charge your credit card or withdraw funds via
electronic transfer from your checking account, depending on which payment method
you have selected. You also agree to authorize AOL to charge purchases you make
online to the credit card you supplied to AOL when you joined or to debit your checking
account if you selected that option during the registration process.

Charges, Billing & Free Time

We expect you to pay your account balance on time. We will give you 30 days from the
date on your account statement to pay your bill. AOL will assess an additional 1.5% (or
the highest amount allowed by law, whichever is lower) per month late charge if your
payment is more than 30 days past due. That amount is also due immediately. You are
responsible and liable for any fees, including attorney and collection fees, that AOL may
incur in its efforts to collect any remaining balances from you. You also agree that you

will be billed for and will pay any outstanding balances if you cancel your membership or are terminated. You should let us know about any billing problems or discrepancies within 90 days after they first appear on your account statement. If you do not bring them to AOL's attention within 90 days, you agree that you waive your right to dispute such problems or discrepancies.

AOL has an extensive network of access phone numbers throughout the country, but it is still possible that the nearest AOL access number might be a long distance or toll call from your location. Any telephone charges incurred connecting to AOL are your responsibility. Since these charges are your responsibility, you should contact your local telephone company if you have a question about whether an AOL access number is a long distance or toll call from your location. AOL also provides several surcharged 800 or 888 access phone numbers (for the current surcharge rate go to Keyword: Access). If you choose to use these surcharged numbers to access AOL, you agree to pay the currently applicable surcharge to AOL. If you have other questions about access phone numbers, you should consult Keyword: Access. It is important to note that you can incur long distance or toll charges or surcharges for 800 or 888 access even during your free trial.

3.    Online Conduct and Content

By content, we mean the text, software, communications, images, sounds and other information provided online. Most content on the AOL service is provided by AOL, our members, our affiliates, or independent content providers under license. In general, AOL does not pre-screen content available on the AOL service. AOL does not assume any responsibility or liability for content that is provided by others. AOL does reserve the right to remove content that, in AOL's judgment, does not meet its standards or does not comply with AOL's current Community Guidelines, but AOL is not responsible for any failure or delay in removing such material. Keep in mind that AOL is not responsible for content available on the Internet, although we reserve the right to block access to any Internet area containing illegal or other harmful content or otherwise being used for purposes that are unlawful or injurious to AOL or its members.

One of the most exciting aspects of this medium is that individual members have the ability to create their own content and voice their own opinions. AOL encourages Members to participate and express their views -- after all, that is what makes your experience interactive. But it is important to remember that there are rules and standards that you must abide by as an AOL Member. These rules and standards are described in the AOL Community Guidelines. As an AOL Member, you agree to follow the AOL Community Guidelines and you acknowledge that AOL has the right to enforce them in its sole discretion. This means that if you, or anyone using your account, violate the AOL Community Guidelines, AOL may take action against your account. This can range from the issuance of a warning about a violation to the termination of your account. You understand AOL is not required to provide notice prior to terminating your account for violating these rules and standards, but it may choose to do so. Additionally, as an AOL

member, you may have access to other AOL branded services, such as AOL Instant Messenger(TM) service, that are available to both AOL members and to other Internet users. When using these AOL branded services, your conduct remains subject to this Member Agreement; however, non-AOL members who use these services are not subject to this Member Agreement and as a result you understand that these other users may not be governed by the same rules or standards. Because of the changing nature of the Internet and Online Services, the Community Guidelines may change at any time. You can always find the most current version of the AOL Community Guidelines at Keyword: TOS.

Unsolicited Bulk E-mail
Your AOL membership allows you to send and receive e-mail to and from other AOL members and users of the Internet. This does not mean that you may use AOL to send unsolicited bulk e-mail or junk e-mail. Information about unsolicited bulk e-mail can be found at Keyword: Junk Mail. Your AOL membership and your authorization to use the AOL e-mail service do not allow you to send unsolicited bulk e-mail or to cause unsolicited bulk e-mail to be sent by someone else. You may not use the Member Directory or any other area of AOL to harvest or collect information, including screen names, about AOL members, and the use of such information for the purpose of sending unsolicited bulk e-mail is strictly prohibited. Any violation of these provisions can subject your AOL account to immediate termination and further legal action. If you have received junk e-mail and want to report it, simply use the Forward button on the e-mail screen and send the e-mail to screen name TOS Spam. AOL also reserves the right to take any and all legal and technical remedies to prevent unsolicited bulk e-mail from entering, utilizing or remaining within the AOL Network.

Proprietary Rights
Much of the content available on our service is owned by others, and is protected by copyrights, trademarks, and other intellectual property rights. It is very easy to copy things in cyberspace, but just because it is easy doesn't mean it is acceptable or legal. Any content that you upload or download while using the service must be authorized; this means you must have the legal right to upload or download the content. You must not copy, transmit, modify, distribute, show in public or in private or create any derivative works from any of the content you find on AOL, unless you have the legal right to. Making unauthorized copies of any content found on AOL can lead to the termination of your AOL account and may even subject you to further legal action beyond the termination of your membership. Similarly, other content owners may take criminal or civil action against you. In that event, you agree to hold harmless AOL and its subsidiaries, affiliates, related companies, employees, officers, directors and agents.

Bear in mind that some areas of AOL are "public," like message boards, forums, or the Member Directory, and other members will have access to your posted material and might copy, modify or distribute it. By submitting or posting content there, you are representing that you are the owner of such material or have authorization to distribute it. Once you post content on AOL, you expressly grant AOL the complete right to use, reproduce, modify, distribute, etc. the content in any form, anywhere.

4.    AOL Software License

AOL provides you with a limited license to use our software, which you agree to use in accordance with these rules. You may not sub-license, or charge others to use or access, our software without first obtaining written permission from us. We will occasionally provide automatic upgrades to improve your online experience, and we employ virus-screening technology to assist in the protection of our network and our members. We reserve the right to log off accounts that are inactive for an extended period of time and we prohibit the use of tools that defeat AOL's automatic log-off feature.

AOL grants to you a non-exclusive, limited license to use AOL software to connect to AOL from authorized locations in accordance with this agreement. This license is subject to the restriction that, except where expressly permitted by law, you may not translate, reverse-engineer or reverse-compile or decompile, disassemble or make derivative works from AOL software. You may not modify AOL software or use it in any way not expressly authorized by this Agreement. You understand that AOL's introduction of various technologies may not be consistent across all platforms and that the performance and some features offered by AOL may vary depending on your computer and other equipment.

5. Warranty

MEMBER EXPRESSLY AGREES THAT THE USE OF AOL, AOL SOFTWARE, AND THE INTERNET IS AT MEMBER'S SOLE RISK. AOL, AOL SOFTWARE, AOL PRODUCTS, THIRD-PARTY VIRUS CHECKING TECHNOLOGY AND THE INTERNET ARE PROVIDED "AS IS" AND "AS AVAILABLE" FOR YOUR USE, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, UNLESS SUCH WARRANTIES ARE LEGALLY INCAPABLE OF EXCLUSION. AOL PROVIDES THE AOL SERVICE ON A COMMERCIALLY REASONABLE BASIS AND DOES NOT GUARANTEE THAT MEMBERS WILL BE ABLE TO ACCESS OR USE THE SERVICE AT TIMES OR LOCATIONS OF THEIR CHOOSING, OR THAT AOL WILL HAVE ADEQUATE CAPACITY FOR THE SERVICE AS A WHOLE OR IN ANY SPECIFIC GEOGRAPHIC AREA. AOL'S ENTIRE LIABILITY AND YOUR EXCLUSIVE REMEDY WITH RESPECT TO THE USE OF ANY SOFTWARE PROVIDED OR USED BY AOL SHALL BE THE REPLACEMENT OF ANY AOL SOFTWARE FOUND TO BE DEFECTIVE. YOUR SOLE AND EXCLUSIVE REMEDY FOR ANY OTHER DISPUTE WITH AOL IS THE CANCELLATION OF YOUR ACCOUNT AS DETAILED BELOW IN SECTION 7. IN NO CASE SHALL AOL BE LIABLE FOR CONSEQUENTIAL DAMAGES ARISING FROM YOUR USE OF AOL, THE INTERNET OR FOR ANY OTHER CLAIM RELATED IN ANY WAY TO YOUR MEMBERSHIP WITH AOL. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, AOL'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. AOL

DOES NOT ENDORSE, WARRANT OR GUARANTEE ANY PRODUCT OR
SERVICE OFFERED THROUGH AOL AND WILL NOT BE A PARTY TO OR IN
ANY WAY BE RESPONSIBLE FOR MONITORING ANY TRANSACTION
BETWEEN YOU AND THIRD-PARTY PROVIDERS OF PRODUCTS OR
SERVICES.

6_Indeminification

Upon a request by AOL, you agree to defend, indemnify and hold harmless AOL and its
affiliated subsidiaries, employees, contractors, officers, directors, telecommunications
providers and content providers from all liabilities, claims and expenses, including
attorneys fees, that arise from a breach of this Member Agreement for which you are
responsible or from the use of AOL or the Internet, or in connection with your
transmission of any Content on AOL. AOL reserves the right, at its own expense, to
assume the exclusive defense and control of any matter otherwise subject to
indemnification by a Member. In that event, the member shall have no further obligation
to provide indemnification for AOL in that matter.

7.    Termination and Cancellation

Either you or AOL may terminate or cancel your membership at any time. You
understand and agree that the cancellation of your account is your sole right and remedy
with respect to any dispute with AOL. This includes, but is not limited to, any dispute
related to, or arising out of: (1) any term of this Agreement or AOL's enforcement or
application of this Agreement; (2) any policy or practice of AOL, including AOL's
Community Guidelines and the AOL Privacy Policy, or AOL's enforcement or
application of these policies; (3) the content available through AOL or the Internet or any
change in content provided through AOL; (4) your ability to access and/or use AOL; or
(5) the amount or type of fees, surcharges, applicable taxes, billing methods, or any
change to the fees, applicable taxes, surcharges or billing methods.

You can cancel your membership by delivering notice to AOL's Customer Service
Department at 1-888-265-8008, by sending your cancellation request via US Mail to:
AOL, PO Box 1600, Ogden UT 84401, or by fax at 1-801-622-7969. Cancellation will
take effect within 72 hours of receipt of your request, and AOL will send you written
confirmation. If you cancel near the end of your billing period and are inadvertently
charged for the next month's fee contact AOL at the toll free number above to have the
charges reversed. AOL reserves the right to collect fees, surcharges or costs incurred
before you cancel your AOL membership. In addition, you are responsible for any
charges incurred to third-party vendors or content providers prior to your cancellation.

In the event that your account is terminated or canceled, no refund, including any
membership fees, will be granted; no online time or other credits (e.g., points in an online
game) will be credited to you or can be converted to cash or other form of
reimbursement. Active AOL Members may not allow former Members or other agents
whose memberships have been terminated to use their accounts. Any delinquent or

unpaid accounts or accounts with unresolved issues with the Community Action department or other AOL departments must be concluded before you may re-register with AOL, Inc.

8.    Law and Legal Notices

The Member Agreement represents your entire agreement with AOL. You agree that this Member Agreement is not intended to confer and does not confer any rights or remedies upon any person other than the parties to this Agreement. You also understand and agree that the AOL Community Guidelines and the AOL Privacy Policy, including AOL's enforcement of those policies, are not intended to confer, and do not confer, any rights or remedies upon any person. If any part of this Agreement is held invalid or unenforceable, that portion shall be construed in a manner consistent with applicable law to reflect, as nearly as possible, the original intentions of the parties, and the remaining portions shall remain in full force and effect. The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Agreement and your membership. As noted above, member conduct may be subject to other local, state, national, and international laws. You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunication providers and content providers.

You agree to abide by U.S. and other applicable export control laws and not to transfer, by electronic transmission or otherwise, any content or software subject to restrictions under such laws to a national destination prohibited under such laws, without first obtaining, and then complying with, any requisite government authorization. You further agree not to upload to AOL any data or software that cannot be exported without prior written government authorization, including, but not limited to, certain types of encryption software. This assurance and commitment shall survive termination of this agreement. Control laws currently prohibit the export of any browser with 128-bit encryption, including Internet Explorer, available through AOL. Control laws also prohibit nationals of Cuba, Iran, Iraq, Libya, North Korea, Sudan and Syria from gaining access to certain content on AOL.

Information for California Residents:
Under California Civil Code Section 1789.3, California Members are entitled to the following specific consumer rights information:

Pricing Information. Current rates for using AOL may be obtained by calling 1-800-827-6364. AOL, Inc. reserves the right to change fees, surcharges, monthly membership fees or to institute new fees at any time upon thirty (30) days prior notice, as provided for in the Member Agreement at Section 2.

Complaints. The Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs may be contacted in writing at 1020 N. Street, #501, Sacramento, CA 95814, or by telephone at 1-916-445-1254.

**Information for Minnesota Residents:**
Minnesota Statute Chapter 325M requires Internet service providers to obtain consent from their subscribers who are Minnesota residents in connection with certain disclosures of personal information. Please read the following carefully if you are an AOL member who resides in Minnesota.

When you register for and use the AOL service, the AOL Privacy Policy explains how AOL collects, uses, and discloses personal information in connection with your AOL membership, as well as the choices AOL gives you about such uses and disclosures. You can review the current version of this policy by clicking Privacy Policy or visiting Keyword: "Privacy." By your affirmative act of either registering for AOL as a new member, or continuing to use the AOL service following your registration, you authorize the collection, use, and disclosure of personal information by AOL as provided for under AOL's then-current Privacy Policy.

# Ex. D

i sted on 4/19?

# AOL, Inc.'s Terms of Service Agreement

For quick tips on how to make the most out of AOL, check out the Rules of the Road at keyword "TOS." All defined terms are referenced at the end of this document.

## 1. TERMS OF SERVICE AGREEMENT AND RULES OF THE ROAD

A. America Online, Inc. ("AOL, Inc.") provides its America Online® service ("AOL") to you as a registered subscriber or authorized user ("Member" or "you"), subject to the terms of this agreement and AOL, Inc.'s operating rules or the "Rules of the Road" ("Rules"). Both of these documents are binding agreements and we shall refer to them collectively as "TOS" (you may access the TOS by using keyword "TOS"). The TOS comprises the entire agreement between AOL, Inc. and you, superseding any prior agreements between you and AOL, Inc. with respect to its subject matter. Additionally, you may be subject to additional terms and conditions that may apply when you use affiliate services (*e.g.*, the International Areas), third-party content, software, or services.

B. AOL, Inc. may change the TOS at any time, and such change shall take effect thirty (30) days after the date of the last TOS change as posted in the Terms of Service area (again, at keyword "TOS") ("Effective Date"). The Front Screen of the Terms of Service area will provide the date of the last TOS change. AOL, Inc. will also supplement such notice of TOS changes within the monthly "Steve Case Community Update Area." You agree to review the TOS periodically to be aware of such changes. If any change is unacceptable to you, you may terminate your membership as provided in Section 10 below. Your continued use of AOL following the Effective Date of any such change to the TOS constitutes acceptance of all such changes.

## 2. YOUR ACCOUNT INFORMATION

A. You certify that <u>YOU ARE AT LEAST EIGHTEEN (18) YEARS OLD.</u> You agree to provide AOL, Inc. with accurate, complete, and current registration information. Failure to do this shall constitute a breach of this agreement and unauthorized access to AOL. Unauthorized access to AOL could result in immediate termination of your account and subject you to civil and criminal liability. Unless you have prior written authorization from AOL, Inc., you may not register for additional master accounts.

B. By registering as a Member, you will receive a password, a "master account," choice of an associated screen name, and the ability to have up to four other "sub-accounts" and associated screen names; provided, you may not select or use a screen name of another person (unless it is also your name), a name in violation of a third party's property rights, or a screen name that AOL, Inc. deems offensive or otherwise inappropriate. AOL, Inc. owns all screen names and licenses them to you. Additionally, you may not use your screen name in violation of the TOS or in ways AOL deems inappropriate (*e.g.*, sending or causing to be sent mass e-mail solicitations). AOL, Inc. reserves the right to delete any such screen name or to request deletion.

C. You are entirely liable for all activities conducted through your master account and any sub-accounts. A Member may not permit another individual to use the Member's master account without direct supervision by the Member. A Member may permit another individual, including a minor, to use

1                                                                                          18274

e Member's sub-accounts subject to the following limitations:  The Member must agree to (1) supervise the other individual's use of the Member's accounts, (2) assume any and all resulting liabilities of such use, including responsibility for any and all content accessed on AOL or the Internet, (3) hold AOL harmless for any such use of AOL for a person other than the Member, and (4) acknowledge that the decision to allow another individual to use the account is made by the Member and not AOL, Inc. Because AOL, Inc. sends important notices about your membership to the master account holder, you agree to check the master account regularly and bear the risk of failing to do so.

D.  Members who have had their AOL membership terminated may not access AOL without AOL, Inc.'s prior express written (including e-mail) permission.  Members may not allow a former Member or other agent whose membership has been terminated to use their account.  For additional information on re-registration and multiple accounts, see Section 10 below.

## 3.  Charges and Billing Practices

A.  You may obtain current rates and surcharges for using AOL by calling AOL, Inc.'s Customer Service at 1-800-827-6364 or by selecting "Billing" under "Member Services" (or keyword "Billing").  AOL, Inc. explains billing practices under "Explain Billing Terms."  Such rates do not include any sales, use, value-added, personal property, or other governmental tax or levy imposed on goods or services billed to Member's account.  You are responsible for any such taxes.

B.  If you have elected to pay for AOL by credit card and AOL, Inc. does not receive payment om the card issuer or its agents, you agree to pay all amounts due upon demand by AOL, Inc.  Each .me you use AOL you agree and reaffirm that AOL, Inc. is authorized to charge your designated card or withdraw funds via electronic funds transfer from your checking account, whichever situation applies.  Your card issuer agreement governs your use of your designated card in connection with AOL, and you must refer to that agreement and not this TOS with respect to your rights and liabilities as a card holder.  You agree that AOL, Inc. may, at its option, accumulate charges incurred during your billing cycle and submit them as one or more aggregate charges during or at the end of each cycle for electronic funds transfer from your checking account or credit card as applicable.  This means that accumulated charges may appear on the statement you receive from your bank or card issuer.  Further, you agree that AOL, Inc. may delay obtaining authorization from your card issuer until submission of the accumulated charges.  You acknowledge that if you want to see the components of accumulated charges you may do so by using keyword "Billing."

C.  If AOL, Inc. does not receive the full amount of your AOL account balance within thirty (30) days of the invoice date, an additional 1.5% (or the highest amount allowed by law, whichever is lower) per month late charge may be added to your bill and immediately become due and payable.  Member shall be liable for all attorney and collection fees arising from AOL, Inc.'s efforts to collect any unpaid balance of your account(s).  You agree to be billed for and to pay any outstanding balance in the event of cancellation or termination of your AOL account.  Unless you notify AOL, Inc. of any discrepancies within ninety (90) days after they first appear on your account statement, they will be deemed acceptable by you for all purposes, including resolution of inquiries made by your card issuer.  You release AOL, Inc. from all liabilities and claim of loss resulting from any error or discrepancy that is not reported to AOL, Inc. within ninety (90) days of its publication.

2                                                                                              18274

D. AOL, INC. RESERVES THE RIGHT, AT ANY TIME, TO CHANGE ITS FEES AND BILLING METHODS, INCLUDING THE ADDITION OF SUPPLEMENTAL FEES OR SEPARATE CHARGES FOR ONLINE AREAS, CONTENT, OR SERVICES PROVIDED BY AOL, ITS AFFILIATES, OR ICPS, EFFECTIVE THIRTY (30) DAYS AFTER AN ONLINE POSTING IN THE BILLING AREA OF AOL (AGAIN, AT KEYWORD "BILLING"). AOL, INC. MAY ALSO ELECT, AT ITS DISCRETION, TO SUPPLEMENT SUCH NOTICE OF BILLING CHARGES THROUGH POP-UPS OR E-MAIL TO YOUR MASTER ACCOUNT SCREEN NAME OR THROUGH THE U.S. MAIL TO THE MASTER ACCOUNT HOLDER. If any such change is unacceptable to you, you may terminate your membership as provided in Section 10 below. Your continued use of AOL following the effective date shall constitute your acceptance of such change. Your membership fees are payable in advance and are not refundable in whole or part.

E. You are responsible for all charges associated with connecting to AOL. YOU AGREE THAT ANY TELEPHONE CHARGES INCURRED ARE YOUR RESPONSIBILITY. DEPENDING ON YOUR PARTICULAR LOCATION, THE NEAREST ACCESS NUMBER MAY NOT BE A LOCAL PHONE CALL AND YOU MAY BE SUBJECT TO LONG DISTANCE CHARGES. You should check with your local phone company to determine whether any specific access number is a local call. If you access AOL from certain access numbers, you may be assessed communication surcharges on your AOL bill. These apply even if you are using your trial hours or have selected an unlimited access plan. For more information see keyword "Access." You are responsible for all activities and charges under your master and sub-account(s), including any unauthorized charges to your account. You acknowledge that if you want to see the detailed components of accumulated charges, you may do so by using the keyword "Billing."

## 4. RIGHTS AND RESPONSIBILITIES

A. *CONTENT.*

You acknowledge that:
(i) AOL contains information, communications, software, photos, video, graphics, music, sounds, and other material and services (collectively "Content");
(ii) Such Content is provided under license by Independent Providers of Content ("ICPs"), other Members, AOL, Inc. and its affiliates; and
(iii) At minimum, AOL, Inc. owns a copyright in the selection, coordination, arrangement, and enhancement of such Content.

Each Member and any user of Member's master account or sub-account must evaluate, and bear the risk associated with any reliance on the accuracy, completeness or usefulness of any Content. AOL, Inc. does not pre-screen Content as a matter of policy: however AOL, Inc., its affiliates, and ICPs shall have the right, but not the responsibility, to remove Content that they deem harmful, offensive or otherwise in violation of the TOS. Accordingly, you acknowledge that neither AOL, Inc., its affiliates, nor any ICP shall assume or have any liability for any action or inaction by AOL, Inc. or its affiliates, or any ICP, with respect to Content on, or Content changes within, AOL.

B. *PROPRIETARY RIGHTS.*

You acknowledge the following:

3

18274

(i)   AOL, Inc. permits access to Content that is protected by copyrights, trademarks, and other intellectual and proprietary rights ("Rights");

(ii)  These Rights are valid and protected in all media and technologies existing now or later developed; and

(iii) Except as explicitly provided otherwise, the TOS, applicable copyright and other laws govern your use of Content (see the Rules, Section D, for details).

You agree that you may upload to the software files, message boards, or otherwise transmit on or through AOL only Content that (1) is not subject to any Rights, or (2) any holder of Rights has given express authorization for distribution on AOL. You represent that if you upload any files, you have the legal authorization to do so. You agree that AOL, Inc. may employ virus-checking technology to protect its system and its members from viruses. By submitting Content to any "public area" of AOL (*e.g.*, message boards, forums, the Member Directory), you grant AOL, Inc. and its affiliates the royalty-free, perpetual, irrevocable, non-exclusive right (including any moral rights) and license to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, communicate to the public, perform and display the Content (in whole or in part) worldwide and/or to incorporate it in other works in any form, media or technology now known or later developed, for the full term of any rights that may exist in such Content. You also warrant that the holder of any Rights, including moral rights in such Content, has completely and effectively waived all such Rights and validly and irrevocably granted to you the right to grant the license stated above. You also permit any Member and authorized user to access, display, view, store and reproduce the Content for personal use. Subject to the foregoing, the owner of Content placed on AOL retains any and all Rights that may exist in such Content.

*CONDUCT AND COMMUNICATION*

You acknowledge that AOL may contain material that may be inappropriate for minors. AOL offers Parental Control tools that enables the master account holder to restrict access to certain AOL and Internet areas and features, but makes no warranties with respect to such tools. You recognize that AOL, from time-to-time may provide member empowerment tools, such as Parental Controls, to enhance your experience online or on the Internet. See keyword: "Reach Out" for details. You also recognize that communication over AOL often occurs in real time or is posted on one of AOL's thousands of message boards or libraries. You acknowledge that AOL, Inc. cannot, and does not intend to, screen communication in advance for accuracy or conformance to the TOS or any laws. However, AOL, Inc. may elect, at its sole discretion, to monitor some, all, or none of AOL's public areas for adherence to the TOS. Accordingly, you acknowledge that neither AOL, Inc., its affiliates, nor any ICP shall assume or have any liability for any action or inaction by AOL, Inc., its affiliates, or any ICP with respect to Content on AOL. Any conduct by a Member that in AOL, Inc.'s sole discretion restricts or inhibits any other Member, person or entity from using or enjoying AOL or another service shall entitle AOL, Inc. to immediately terminate membership without notice. You agree to use AOL only for lawful purposes. You may not use, or allow others to use, your AOL account, either directly or indirectly, to:

(1)   post, transmit, or promote any unlawful, harmful, threatening, abusive, harassing, defamatory, vulgar, obscene, hateful, racially, ethnically or otherwise objectionable Content;

(2)   harass, threaten, embarrass, or cause distress, unwanted attention or discomfort upon another Member or user of AOL or other person or entity;

4                                                                                                18274

(3)    post, transmit, promote, link, or facilitate the distribution of sexually explicit or other Content which is deemed by AOL, Inc. to be offensive;

(4)    disrupt the normal flow of dialogue in a chat room or on a message board or otherwise act in a manner that negatively affects other Members, users, individuals or entities, such as causing the screen to "scroll" faster than other Members or users are able to type to it or any action to a similar disruptive effect;

(5)    impersonate any person or entity, including, but not limited to, an AOL, Inc. official, an ICP, forum leader, guide or host, or communicate under a false name or a name that you are not entitled or authorized to use, or impersonate a minor;

(6)    post or transmit, or cause to be posted or transmitted, chain letters or pyramid schemes;

(7)    post or transmit, or cause to be posted or transmitted, any unsolicited advertising, promotional materials, or other forms of solicitation to other Members, individuals or entities, except in those areas that are expressly designated for such a purpose (*e.g.*, the classified areas), or collect or harvest screen names of other Members, without permission;

(8)    post or transmit, or cause to be posted or transmitted, any communication or solicitation designed or intended to obtain password, account, or private financial information from any Member;

(9)    violate any operating rule, policy or guideline of any other interactive service, including, but not limited to, the operating policies of the International Areas; or

(10)   intentionally or unintentionally violate any applicable local, state, national, international or foreign law, including, but not limited to, any rules or regulations having the force of law.

Please see the Rules for additional examples of prohibited conduct. AOL, Inc. reserves the right to protect its Members and AOL from offensive e-mail communication, including, but not limited to, the right to block mass e-mail solicitations, or "junk e-mail."

You also agree and accept that as new products become available on or through AOL, your use of these products is subject to TOS. In addition to Content and services provided by ICPs, AOL, Inc., and its affiliates, others may offer Content, software or other services to Members with their own terms and conditions relating to your use. Failure to abide by these terms and conditions may result in termination of membership. Furthermore, other such networks, including Internet areas, may subject Members to their own usage policies.

## 5. PRIVACY POLICY

### A. INTRODUCTION

(i) *General*. Because protecting your privacy is very important to AOL, Inc., we have established a privacy policy that safeguards your personal information, and are committed to protecting its confidentiality. We will limit the collection and use of personal information, or Individual Information (as defined below), to what is necessary to administer our business, provide you with the highest quality service, and offer you opportunities we think will be of interest. We will NOT disclose any Individual Information except in limited circumstances as specifically provided below. We actively

18274

rticipate in industry associations and community groups to support strong and effective privacy guidelines and practices in the interactive environment.

(ii) *Types of Individual Information.* Individual Information is any information, data or records that relate to your AOL membership or use of AOL and identifies you or your individual Member account. The three types of Individual Information are: (1) "identity and billing information," such as your name, street address, telephone number, billing information, and any screen names associated with your account; (2) "navigational and transactional information," such as information about where you go or what you buy through AOL; and (3) "private communications," such as the contents of e-mail, or private chat room or instant message communications.

(iii) *The Internet.* Please be aware that AOL is a private online service that allows access to the Internet, but is not the Internet. AOL, Inc. does not control the content, services, or areas available through the Internet (with minor exceptions, such as the AOL home page), and providers of Internet sites or services have separate data and privacy practices independent of AOL, Inc. Internet areas may appear to be seamlessly incorporated into AOL, but generally you can tell you are on the Internet whenever AOL's logo spins on the upper right corner of your screen or when you click on icons labeled as Newsgroups, Web, Link, FTP, Gopher, or other items relating to the Internet.

(iv) *Independent Content and Service Providers.* Companies that are independent from AOL, Inc. operate many of the online areas that you visit. Although AOL, Inc. will seek to require these independent companies (*e.g.,* ICPs, including advertisers and merchants) to adhere to our strong privacy rinciples, AOL, Inc. does not bear responsibility for their policies or actions. Be aware that when you voluntarily disclose personal information (such as your screen name) in public areas (*e.g.,* the Member Directory, chat rooms, message boards, Internet newsgroups), others may collect and use your information. (When you visit Internet sites, your AOL screen name or other identity information generally is not identifiable.) Also, ordering products through AOL often requires you to provide an independent company with limited Individual Information to enable fulfillment of your order.

B. *MEMBER IDENTITY AND BILLING INFORMATION.*

(i) *Collection and Storage.* We maintain the following types of identity and billing information: your name, street address, telephone number(s), length of membership, and payment information. If you wish to view your identity information and billing, please go to keyword "Billing." We may also keep information on your communications with our Customer Service or Community Action departments, and general account history, such as accumulated usage credits or written complaints relating to your account. We safeguard Individual Information from unauthorized access and only authorized employees or agents who need to carry out legitimate business functions are permitted access to Members' Individual Information. Employees who violate AOL, Inc.'s privacy policies are subject to disciplinary actions, including termination where appropriate. We may use agents, who are bound by strict confidentiality guidelines, to perform storage, processing, and other limited functions on AOL, Inc.'s behalf.

(ii) *Use.* We use identity and billing information to administer our business, ensure that you are properly billed and offer you opportunities (*e.g.,* pop-ups or e-mail) that may be of interest.

18274

(iii) *Disclosure.* From time to time, we make our mailing list available to select independent companies that offer products and information we think may interest you. AOL, Inc. carefully screens all requests to use its mailing list to ensure appropriateness. If you do not want your name released to these companies, simply indicate this upon accessing the "Member Mailing Preferences Form," using keyword "Marketing Preferences" and double-clicking on the heading "Tell Us What Your Mailing Preferences Are." If you do not want to receive "pop-up" product information screens, select "Tell Us What Your Pop-up Preferences Are." You understand that you will receive occasional pop-ups and e-mails containing important information about AOL or your membership.

We do not release Members' telephone numbers, credit card numbers, or checking account numbers (or other Individual Information, such as navigational or transactional information or private communications content). Our policy is not to disclose identity information to third parties that would link a Member's screen name(s) with a Member's actual name, unless required to do so by law or legal process served on AOL, Inc. (*e.g.*, a subpoena). AOL, Inc., at its sole discretion, reserves the right to make exceptions to this policy in extraordinary circumstances (such as a bomb or suicide threat, or instances of suspected illegal activity) on a case-by-case basis.

When feasible, we do allow our Members to access and verify their Member Identity and Billing Information. We also allow our Members to request corrections to this Information. (See Keyword: "Billing".) AOL generally retains account history records for around six months.

AOL, Inc. intends to abide by applicable laws governing the disclosure to governmental entities of Individual Information and other records. If we are under a legal obligation to disclose Individual Information to a private citizen or entity, we may make efforts under the circumstances to notify the affected Member(s) in advance of releasing it in order to provide the Member(s) an opportunity to pursue any available legal protection

C. *NAVIGATIONAL AND TRANSACTIONAL INFORMATION.*

(i) *Collection.* We may collect and store certain navigational and transactional information, such as data on the choices you make from the range of available services or merchandise, and the times and ways you use AOL and the Internet.

(ii) *Use.* AOL, Inc. uses navigational and transactional information to personalize AOL and for programming and editorial research. For example, we use this information to understand our Members' reactions to menu items, Content, services and merchandise offered through AOL and to customize AOL based on our Members' interests.

(iii) *Disclosure.* AOL, Inc. will not disclose to third parties navigational or transactional information (*e.g.*, where you go or what you buy on or through AOL), except to comply with applicable law or valid legal process.(*e.g.*, search warrant or court order).

D. *PRIVATE COMMUNICATIONS*

(i) *Collection and Storage.* The AOL computer system does not record or retain any chat room communications, instant message communications, oral online communications or records of with whom you communicate in chat rooms or through instant messages or oral online communications. The AOL

7                                                                                                      18274

e-mail system retains the contents of private e-mail communications for a limited period only -- the current default is about two (2) days after it is read. E-mail that is sent but not read is permanently deleted from the system after about twenty-five to thirty (25-30) days. (Consequently, to keep copies of any communications, you should store them on your personal computer hard drive or in print form.) You agree that AOL, Inc. may employ e-mail virus-checking technology to protect its system and its members from viruses.

(ii) *Use.* AOL, Inc. treats private communications on or through AOL as strictly confidential. AOL, Inc. does not access, use or disclose the contents of private communications, except in limited circumstances as specifically provided below. You acknowledge that private communications directed at a person or entity, including AOL, Inc., may be used or disclosed by the intended recipient(s) without restrictions relating to privacy or confidentiality.

(iii) *Disclosure.* AOL, Inc. does not access or disclose the contents of private communications (*e.g.*, e-mail, instant messages, Member-created private rooms, oral online communications), unless it in good faith believes that such action is necessary (1) to comply with applicable law or valid legal process (*e.g.*, search warrant or court order); (2) to protect the rights or property of AOL, Inc.; or (3) in emergencies when AOL, Inc. believes that physical safety is at risk. AOL, Inc. reserves the right to treat as public any private chat room whose directory or room name is published or becomes generally known or available. AOL, Inc. reserves the right to access password protected member web sites for conformance to TOS.

## 6. INTERNATIONAL CONTENT AND THE INTERNET

A. *AOL INTERNATIONAL AREAS.*

You acknowledge that your use of AOL allows access to International Areas (as defined at the end of this agreement) containing Content originating from AOL, Inc. and its affiliates, other Members and users of AOL, ICPs, as well as other third parties which may originate from countries other than the United States ("International Content"). Your access to and use of the International Areas and International Content will be governed (in addition to the TOS) by separate terms and operating policies and applicable national laws and customs.

B. *INTERNET*

AOL offers Members access to the Internet. The Internet is not owned, operated, or managed by AOL, Inc. or any of its affiliates. You agree that your Internet use is solely at your own risk and is subject to all applicable local, state, national, international and foreign laws and regulations. Neither AOL, Inc., its affiliates, ICPs, nor telecommunications providers for AOL, Inc., shall be held responsible or liable, directly or indirectly, for any loss or damage caused or alleged to have been caused by your use of or reliance on any content, goods or services available through the Internet, or your inability to access the Internet or any of its sites. This paragraph's provisions shall apply with equal force even where AOL features or displays a link with any particular Web site. Accordingly, AOL, Inc. and its affiliates specifically disclaim any responsibility or liability for any conduct, content, goods and services available on or through the Internet (including, without limitation, any part of the Web). AOL, Inc. retains the right, but not the obligation, at its sole discretion and without prior notice or liability, to restrict and/or terminate a Member's access to the Internet via AOL or to AOL if your use of the Internet, in AOL,

8                                                                                    18274

Inc.'s sole discretion, violates any applicable law or regulation, any prohibitions on your conduct in connection with the Internet, or otherwise inhibits any other user from enjoying the Internet or AOL. The foregoing does not limit the other rights available to AOL, Inc. under the Rules (see Sections 2C and 2E of the Rules for details). Additionally, AOL, Inc. retains the right, but not the obligation, in its sole discretion and without prior notice or liability, to block or otherwise limit the distribution within AOL of mass e-mail solicitations or other Internet content.

## 7. AOL SOFTWARE LICENSES

AOL, Inc. grants to you a non-exclusive, limited license to use AOL software to connect to AOL from authorized locations in accordance with this agreement. This license is subject to the restriction that, except where expressly permitted by law, you may not translate, reverse-engineer or reverse-compile or decompile, disassemble or make derivative works from, AOL software. You may not modify AOL software or use it in any way not expressly authorized in these Rules. You agree and accept that AOL's introduction of various technologies may not be consistent across all platforms (*e.g.*, Macintosh).

## 8. WARRANTY

MEMBER EXPRESSLY AGREES THAT THE USE OF AOL, AOL SOFTWARE, AND THE INTERNET ARE AT MEMBER'S SOLE RISK. AOL, AOL SOFTWARE, AOL PRODUCTS, AND THE INTERNET ARE PROVIDED "AS IS" AND "AS AVAILABLE" FOR YOUR PERSONAL USE, WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, UNLESS SUCH WARRANTIES ARE LEGALLY INCAPABLE OF EXCLUSION. AOL, INC. PROVIDES THE AOL SERVICE ON A COMMERCIALLY REASONABLE BASIS AND DOES NOT GUARANTEE THAT MEMBERS WILL BE ABLE TO ACCESS THE SERVICE AT A TIME OR LOCATION OF THEIR CHOOSING, OR THAT IT WILL HAVE ADEQUATE CAPACITY FOR THE SERVICE AS A WHOLE OR FOR PARTICULAR PRODUCTS. AOL, INC.'S ENTIRE LIABILITY AND YOUR EXCLUSIVE REMEDY WITH RESPECT TO USE OF AOL, AOL SOFTWARE, AND THE INTERNET SHALL BE THE REPLACEMENT OF ANY AOL SOFTWARE FOUND TO BE DEFECTIVE. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, AOL, INC.'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. AOL, INC. DOES NOT ENDORSE, WARRANT OR GUARANTEE ANY PRODUCT OR SERVICE OFFERED THROUGH AOL, EXCEPT AS EXPRESSLY PROVIDED ELSEWHERE, AND WILL NOT BE A PARTY TO OR IN ANY WAY MONITOR ANY TRANSACTION BETWEEN YOU AND THIRD-PARTY PROVIDERS OF PRODUCTS OR SERVICES.

## 9. INDEMNIFICATION

Upon AOL, Inc.'s request, Member agrees to defend, indemnify and hold harmless AOL, Inc., its affiliated companies, its employees, contractors, officers, directors, telecommunications providers, ICPs from all liabilities, claims and expenses, including attorneys' fees, that arise from breach of the TOS by use of, or in connection with, the transmission of any Content on AOL or the Internet by or through Member's master or sub-accounts. AOL, Inc. reserves the right, at its own expense, to assume the

9                                                                                    18274

lusive defense and control of any matter otherwise subject to indemnification by Member hereunder. In such event, Member shall have no further obligation to provide indemnification for such matter.

## 10. TERMINATION

A. Either you or AOL, Inc. may terminate your membership at any time. This is your sole right and remedy with respect to any dissatisfaction with AOL, including, but not limited to, (1) any TOS term, policy or practice of AOL, Inc. in operating AOL, (2) Content available through AOL or change therein, or (3) any amount or type of fees, surcharges, billing methods, or change therein. You can terminate your membership by delivering notice to AOL, Inc.'s Customer Service Department at 1-800-827-6364, or by sending your cancellation request via US Mail to: AOL, PO Box 1559, Ogden UT 84401. Your termination will take effect within a reasonable time after AOL, Inc.'s receipt of your notice as described above.

B. In the event that your account is terminated or canceled, no refund, including any membership fees, will be granted; no online time or other credits (*e.g.*, points in an online game) will be credited to you or can be converted to cash or other form of reimbursement. Members whose accounts AOL, Inc. has terminated may not access AOL without AOL, Inc.'s prior express written permission. Active AOL Members may not allow former Members or other agents whose memberships have been terminated to use their accounts. Any delinquent or unpaid accounts or accounts with unresolved issues with the Community Action department or other AOL departments must be concluded before you may re-register with AOL, Inc. Members using multiple accounts without prior express written permission from AOL, Inc. shall have their membership terminated.

## 11. LAW

A. To the extent any conflict between this agreement and the Rules exists, this agreement shall take precedence. If any part of the TOS is held invalid or unenforceable, that portion shall be construed consistent with applicable law to reflect, as nearly as possible, the original intentions of the parties, and the remaining portions remain in full force and effect. The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern the TOS and your membership. As noted above, Member conduct may be subject to other local, state, and national laws. Member expressly agrees that exclusive jurisdiction for any claim or dispute resides in the courts of the Commonwealth of Virginia. Member further agrees and expressly consents to the exercise of personal jurisdiction in the Commonwealth of Virginia in connection with any dispute or claim involving AOL, Inc.

B. You agree to abide by U.S. and other applicable export control laws and not to transfer, by electronic transmission or otherwise, any Content or software subject to restrictions under such laws to a national destination prohibited under such laws, without first obtaining, and then complying with, any requisite government authorization. You further agree not to upload to AOL any data or software that cannot be exported without prior written government authorization, including, but not limited to, certain types of encryption software. This assurance and commitment shall survive termination of this agreement. Control laws currently prohibit the export of the 128-bit version of any browser, including Internet Explorer, available through AOL. Control laws also prohibit nationals of Cuba, Iran, Iraq, Libya, North Korea, Sudan and Syria from gaining access to certain Content on AOL.

## 12. LEGAL NOTICES

Under California Civil Code Section 1789.3, California Members are entitled to the following specific consumer rights information:

1. <u>Pricing Information</u>. Current rates for using AOL may be obtained by calling 1-800-827-6364. AOL, Inc. reserves the right to change fees, surcharges, monthly membership fees or to institute new fees at any time upon thirty (30) days' prior notice, as provided for in the Terms of Service at Section 3.

2. <u>Complaints</u>. The Complaint Assistance Unit of the Division of Consumer Services of the Department of Consumer Affairs may be contacted in writing at 1020 N. Street, #501, Sacramento, CA 95814, or by telephone at 1-916-445-1254.

### DEFINITIONS AND REFERENCES

"TOS" = The Terms of Service and the Rules of the Road, collectively
"AOL" = The America Online® service
"America Online," "AOL, Inc." or "we" = America Online, Inc.
"Member" or "you" = A registered subscriber or authorized user of AOL
"Rules" = Rules of the Road
"Effective Date" = Thirty (30) days after the date of the last TOS change as posted in the Terms of Service area
"Content" = Information, communications, software, photos, video, graphics, music, sounds and other material and services, collectively
"ICPs" = Independent providers of Content
"Rights" = Copyrights, trademarks, and other intellectual and proprietary rights
"Public Areas" = Areas on AOL that are freely open to all Members, including, but not limited to, public chat rooms, online forums, message boards, and software libraries.
"International Content" = Content originating from AOL Inc. and its affiliates, other Members and users of AOL, ICPs, as well as other third parties which may originate from countries other than the United States
"Individual Information" = Any information, data or records that relate to your AOL membership or use of AOL and identifies you or your individual Member account
"International Areas" = Areas within AOL containing International Content
"PP2" or "Personal Publisher 2" = Product available to AOL Members to create their own web site using AOL publishing tools.

Posted on 4/1/97

### The America Online Service

#### Rules of the Road

#### 1. Preamble

*Whereas*, we seek to provide you with the most enjoyable and rewarding online experience available;

*We* seek to create online communities that can be enjoyed by everyone and recognize that the fostering of different vibrant communities with diverse viewpoints, supported by a vast array of content and services, drive AOL's popularity;

*We* recognize that your personal privacy and security online are of utmost importance to you;

*We* recognize that safeguarding intellectual property online is essential to the growth and vitality of AOL and the interactive medium; and

*In* light of these goals, your AOL experience is bounded only by a set of common-sense rules that ask you to be civil and respect others when you are online.

*We,* therefore present to you these *Rules of the Road,* our policies for operating the AOL service and for guiding you through the vast and enriching world of AOL and cyberspace.



These Rules of the Road ("Rules") describe how America Online, Inc. ("America Online," "AOL, Inc." or "we") operates the America Online® service ("AOL" or the "AOL Service") and how you may use AOL. The Rules also provide some practical tips for using AOL. Please carefully read these Rules, and their companion, the Terms of Service, and refer to them as necessary (together, these two documents are referred to as "TOS"). Both were presented to you when you first signed on to AOL and comprise the entire agreement between you and AOL, Inc. You can view the Terms of Service or these Rules on AOL at any time without hourly usage charges in the Member Services area or at keyword "TOS." Unless the context requires otherwise, terms used in the Rules have the meanings given in the Terms of Service.

## 2. Getting On and Using AOL

A. <u>ACCESS</u>

(i) Equipment. Most of you will access AOL through your residential telephone line, a modem and a personal computer. (Remember that when you are connected to AOL, your telephone or other communications equipment, such as a fax, cannot be operated on the same line at the same time.) A variety of personal computers and devices can grant you access to AOL. For specific technical questions, use the keywords "Help" or "Modem." The Troubleshooting Help area is within keyword "Modem." Access numbers used to connect to AOL may be owned or operated by independent network service providers other than AOL, Inc. <u>IF YOU ARE ACCESSING AOL FROM CERTAIN NUMBERS, YOU MAY BE ASSESSED COMMUNICATIONS SURCHARGES. YOU CAN FIND OUT MORE INFORMATION BY USING KEYWORD "BILLING."</u>

(ii) Telephone Charges. Don't forget: <u>DEPENDING ON WHERE YOU ARE, THE NEAREST ACCESS NUMBER MAY NOT BE A LOCAL PHONE CALL AND YOU MAY BE SUBJECT TO LONG DISTANCE CHARGES.</u> For more information, please check with your telephone service provider regarding telephone charge information. We are expanding the list of local numbers continuously. If you cannot find an access number that is a local call, check the monthly "New Access Number Updates," which is in the Member Services area. You can also call your long distance telephone company to ask about the availability of calling plans offering a flat rate or to pre-purchase blocks of calling time at a discount. Instead of conventional long distance, Members who do not have access to a local number can also use

"AOLnet 800 Number Access," operated by AOL, Inc., for a surcharge. See keyword "Access" for more information.

B. YOUR AOL ACCOUNT

(i) You must be at least eighteen (that's 18) years old to register for AOL and obtain a Member's master account. That said, a parent or legal guardian may authorize a minor to use his or her master account under the supervision of an adult who assumes responsibility for such use. Because many parents want to manage their children's access to Content on AOL and the Internet, we offer easy-to-use and powerful Parental Control tools, which enable the master account holder to restrict access to certain AOL and Internet areas and features that may not be appropriate for children and teens. For details, refer to Parental Control in the Member Services area or keywords "Parental Control," "My AOL," or "Reach Out."

(ii) Upon your enrollment as a Member, you will select a unique password. You are responsible for protecting its confidentiality. For security purposes, we recommend that you change your password often (by entering the Change Your Personal Password area in the Member Services area). NEVER RESPOND TO AN ONLINE REQUEST FOR A PASSWORD. Employees or representatives of AOL, Inc. will never ask for a Member's password. Although AOL offers features (including flash sessions) that allow you to bypass the password protection, please recognize that these features give anyone who can access your computer easy access to your master and sub-accounts. Therefore, you use these features at your own risk and are responsible for any misuse.

(iii) Upon registering with AOL, you will be asked to choose one or more screen names available from AOL to identify yourself. Be creative and have fun with the screen names you choose. But also be reasonable and responsible in your selection. Vulgar or otherwise offensive screen names can upset Members and are prohibited. If you are unsure about a screen name, send us an e-mail using the "Write to Community Action Staff" button under keyword "TOS," and select the "Names/Profiles Violations" button.

(iv) Be responsible with your screen names and don't misrepresent yourself to other members. AOL does not permit adult members to impersonate children or children to impersonate adults online.

(v) Current rates for using AOL may be obtained from Customer Service at 1-800-827-6364, or by selecting "Billing" under "Member Services" (you can access this area directly if you

go to keyword "Billing"). We explain billing practices under "Explain Billing Terms." You can also request an online statement of charges by using keyword "Billing."

C. ONLINE CONDUCT

(i) Public areas are online areas freely open to all Members, such as public chat rooms, online forums and message boards. We try to enforce our Rules to ensure enjoyment by all Members, but we simply don't have the practical capability, nor the intention, to play the role of Big Brother (or your mother :) ), by screening communication in advance. However, you should be aware that certain chat rooms may be used for activity that violates our TOS. We take appropriate action when we are notified of such activities. Members found in chat rooms where TOS violations occur run the risk of a written warning as well as being bumped from the service, even though they themselves may not have violated TOS. AOL realizes that some members are unaware of the purpose of these rooms and may occasionally stray into them. That is why AOL provides the opportunity to appeal the warning.

(ii) We may prohibit or delete conduct, communication, or Content on AOL that we think violates applicable law or is harmful to other Members, the communities that comprise AOL, or the rights of AOL, Inc., its affiliates or others. That said, neither AOL, Inc., its affiliates nor its ICPs, have the practical ability to restrict conduct, communication or Content that might violate the Rules *prior* to transmission on AOL or the Internet, nor can they ensure prompt editing or removal of offending Content *after* online posting.

(iii) We ask you to be civil and to show respect for others. Don't interfere with another Member's enjoyment. If you do, we may give you a warning or, at our discretion, terminate your membership. A warning indicates that your language or conduct does not comply with the Terms of Service or these Rules. If you receive such a warning, take the time to read the Terms of Service and these Rules again. They are posted in the Member Services area and at keyword "TOS." With the exercise of some plain common sense, they're easy to comply with. Let's look at some examples of prohibited conduct:

(a) **Offensive Communication.** AOL, a community-oriented service composed of many different communities of people, strives to provide an interesting, stimulating and fun place for all Members. Using vulgar, abusive or hateful language undermines this goal and is not allowed. Please use your best

18275-1                                                4

judgment and be respectful of other Members. Remember, children may be online. If you use vulgar or abusive language online, even if masked by symbols or other characters, a Guide or Room Host may give you an "on-screen warning." In some cases, your use of AOL may be terminated immediately.

(b) **Harassment.** When a Member targets another to cause distress, embarrassment, unwanted attention or other discomfort, this is harassment. We don't allow harassment and may suspend or terminate a Member who harasses others. You may have a disagreement with someone's point of view -- we encourage lively discussion in our chat rooms and message boards -- but personal attacks are not allowed. Also prohibited are attacks based on a person's race, national origin, ethnicity, religion, gender, sexual orientation, disability or other identification. If you have a disagreement with someone's point of view, stick to the subject, don't focus on the person.

(c) **Graphic Files.** AOL, Inc. prohibits the transfer or posting on AOL, or pointing to or referencing, sexually explicit images or other Content it deems offensive.

(d) **Room and Message Board Disruption.** This is what it sounds like. Don't interfere with the normal flow of dialogue in a chat room or on a message board. Disruption may occur in different ways, including repeated interruptions of conversation, actions that antagonize, harass or create hostility, or posting off-topic. Scrolling is another form of disruption that's prohibited. "Scrolling" means repeatedly causing the screen to roll faster than Members are able to type to it. It is caused by a user entering a set of random characters or by repeatedly entering a carriage return or any such action resulting in a similar disruptive effect. If you witness disruption in a public chat room or on a message board that violates the Rules, you may contact an AOL Service Guide by using the keyword "Guide Pager."

(e) **Impersonation.** This can involve the portrayal of another person or entity, such as the impersonation of AOL, Inc. staff or an independent content provider ("ICP"), authorized Guide or Host, or communication under a false name or a name that you are not authorized to use, such as a celebrity. Members may not pretend to be AOL, Inc. personnel or other persons in any

online communication, for example by using screen names, Member profiles, chat dialogue and message postings.

(f) **Chain Letters and Pyramid Schemes.** Certain chain letters and pyramid schemes are illegal. Transmission of chain letters and pyramid schemes of any kind is not allowed on AOL. This material places an unnecessary load on our e-mail system and is considered a nuisance by many Members. Not only are chain letters (or messages that offer a product or service based on the *structure* of a chain letter) of questionable legality, they are a waste of resources and AOL does not permit them.

(g) **Advertising, Solicitation and Name Harvesting.** Unless you obtain express permission from the Member in advance, you may not use AOL to send unsolicited advertising, promotional material or other forms of solicitation to another Member except in areas designated for such a purpose (e.g., the classified area). You may not use AOL to collect or "harvest" screen names of other Members without the express prior permission of the Member. AOL, Inc. reserves the right to block or filter mass e-mail solicitations on or through AOL. Additionally, you must adhere to AOL's Privacy Policy (see Section 5 of the Terms of Service).

(h) **Password Solicitation.** It's absolutely prohibited to solicit or attempt to obtain a Member's password, account or financial information. The best protection against someone improperly obtaining your password, account or financial information is to NEVER give out your password. "Loose lips sink ships!" Remember, AOL employees or representatives will NEVER ask you for your password online. So if someone asks you for it, refuse and report the incident to Member Services immediately.

(i) **Operating Policies.** Operating policies exist for everyone's benefit. Please be a responsible Member of our community and follow them whether the policies are AOL's or its affiliates' (*e.g.*, the policies of our International Areas), or another interactive service's. When you visit areas that are new to you, check out the rules or guidelines -- they are usually pretty easy to find and, just like these Rules, will make your interactive experience more enjoyable. Most International Areas will follow the norms and practices of that country, so "When in Rome, do as the Romans do!"

(j) **Laws.** Contrary to what some may think, the law DOES apply in cyberspace! So follow the law, including applicable local, state, national, international and foreign law. Just like in the "paper-based" world, ignorance is no excuse! For more information on the evolving law of cyberspace and other legal issues, check out keyword "Legal."

You may contact our Community Action Staff about any violation by using the "Report A Violation" icon located in the TOS area of the Members Services area, which is available without hourly usage charges.

D. CONTENT

(i)  The essence of this medium is interactivity:  the ability to communicate and share ideas, opinions and information with others -- whether that's your next-door neighbor or someone on the other side of the globe.  With the awesome power of interactivity comes important responsibilities, both as a poster and a reader of Content.  We encourage Members to freely voice their diverse ideas and opinions -- that's the essence and the beauty of the medium.  But that also means you've got to exercise judgment -- even skepticism at times -- when viewing some online Content.  At minimum, you should be as careful in your evaluation of it as you are in everyday life.  As a matter of policy, we don't endorse or oppose any opinion expressed by a Member, or information or material provided by an ICP or other independent parties.  And with all the Content that is posted everyday by so many people and organizations, there's really no practical way for us to monitor it.  If we are notified about Content that doesn't conform to our TOS, we'll try to investigate.  As we indicated in the Terms of Service, if we decide it violates our TOS, we'll ask for its removal or remove it ourselves.

(ii)  Intellectual property laws apply with equal force to Content found on AOL and the Internet.  If you do any of the following you may be liable to the rights holder for copyright or trademark infringement:  Copying pictorial images, logos or blocks of text you find on AOL or the Internet; copying excerpts from online news services to distribute to others; taking online discussions of others even when you've participated in the discussion and posting them elsewhere.  Basically, you may not transmit over AOL or to the Internet, material that is subject to any person or entity's rights, including copyright, without the express permission of the rights holder.  If no specific restrictions apply directly or indirectly to a particular item, however, you may make a reasonable number of copies provided that the copies are only for your personal use and that all proprietary-rights notices are reproduced unchanged.

This means that you may upload to AOL's software files and message boards or otherwise transmit on or through AOL only two types of Content. One type is "public domain" content, which is content that is not subject to any copyright, trademarks, or other intellectual and proprietary rights protection. The other type is content protected by copyright, trademark, moral rights, or other intellectual and proprietary rights, but the holder of those Rights has expressly authorized distribution on AOL or the Internet without restriction. When you obtain permission to submit or post copyrighted material on AOL, your posting should contain a phrase such as "Copyright owned by [name of the owner]; used by permission." The unauthorized submission of copyrighted material that is otherwise subject to any third-party rights, constitutes a breach of our TOS and may also make you liable to the rights holder. Remember, you, not AOL, Inc. or its affiliates or independent contractors, are exclusively responsible for any liability resulting from infringement of rights arising from such submission or transmission. The maxim "Ignorance is no excuse" applies!

To that end, AOL has created a new online area for its members called The Reach Out Zone and reachable through keyword: "Reach Out Zone." This area contains lots of helpful information for members. One topic we cover is the importance of respecting intellectual property and tips on how to avoid violating another's rights in the online environment. Taking the time to familiarize yourself with The Reach Out Zone in general, and with intellectual property rules in particular, will enhance your experience on AOL and in cyberspace. That is because AOL recognizes that safeguarding intellectual property is essential to the growth and vitality of the interactive medium and wants you to recognize this too. We have a process in place that can assist you if you believe your intellectual property rights have been infringed. We will, when properly notified, attempt to investigate the claim, which may involve contacting the poster and may, when warranted, take appropriate action. Our process is designed to balance our desire to assist others who seek to protect their rights online with our desire to promote free speech and information flow on AOL. AOL, Inc. reserves the right to remove or hide any material in its discretion. For more information, see Keyword: "Reach Out Zone."

(iii) Public areas on AOL are those that generally are accessible to other Members, such as public chat rooms, message boards and file uploads. Don't forget, as we stated in the Terms of Service, if you submit Content to any public area, you have represented that you are the copyright owner, or are authorized by the copyright owner, to submit the Content and you

are authorized to grant and have granted AOL Inc. a broad license to it (see the Terms of
Service, Section 4B for more details on this).

(iv)  AOL allows you, without leaving the comfort of your home or office, to visit
destinations, review and create Content, and interact with Members of AOL's international
services world-wide.  These International Areas may provide additional, different, or varying
rules concerning Member conduct, communication or Content.  When visiting these
International Areas, please refer to such local rules and be mindful that the provider of such
International Areas and their Guides and Hosts may give you an on-screen warning or, in some
cases, terminate your use of AOL immediately should you violate such rules.  And, as in the
case of an actual visit to such international destinations, your communication, conduct, and
Content is subject to applicable law and you should act accordingly.  Furthermore, the law of
"cyberspace" will continue to evolve and adapt to the social, political, and economic changes
engendered by the rapid expansion of the Internet online experience.  Use these Rules as your
guide, but be mindful of applicable and changing legal rules.

As we mentioned in the Terms of Service, because of the export control laws of the
United States and other countries, you need to be careful not to transfer through AOL any
Content that is regulated by these laws to a prohibited destination without proper authorization.
This includes certain types of encryption software and software containing encryption
functionality.

E.  INTERNET ACCESS AND CONDUCT

AOL provides you with access to the Internet not only through our Internet Channel but
also through links available in Content areas.  Generally, the Internet consists of the following
areas available through AOL: e-mail, newsgroups, Gopher and WAIS, FTP, and the World Wide
Web (for more information, see the "Internet Connection" area on AOL).  You are connected to
the Internet via the World Wide Web generally whenever the spinning AOL triangular logo
appears at the top right-hand corner of your screen.  The Internet is a separate, independent
network of computers and is not part of AOL.  YOUR USE OF THE INTERNET IS SOLELY AT
YOUR OWN RISK.  When using the Internet and all of its components, Members must conduct
themselves responsibly according to the Internet's own particular code of conduct, broadly
referred to as "netiquette."  Participating successfully on the Internet is really a matter of
common sense.  Because AOL, Inc. wants to be a good Internet citizen, we require those of

18275-1                                    9

you who surf the Internet to observe standard netiquette and any other policies of the particular sites or forums you might visit. To get you started, we've listed some of the basics:

(a) **Don't Send Chain Letters.** Chain letters are prohibited on AOL and are inappropriate on the Internet. Posting a chain letter to an Internet newsgroup (or via e-mail on the Internet) may result in your AOL account being terminated.

(b) **Don't Send Commercial Communications or Solicitations.** The vast majority of newsgroups and mailing lists on the Internet are not commercial in nature, and participants in such groups may object strongly to commercial postings, solicitations, or advertisements. Internet protocol does not allow the sending of mass e-mail solicitations, or "spam."

(c) **No Other Inappropriate Postings.** Each newsgroup and mailing list on the Internet focuses on a particular set of topics, and participants do not welcome postings unrelated to these topics. We suggest that all Members become familiar with the guidelines, themes, and culture of the specific newsgroups and mailing list in which they wish to participate. Posting or distributing patently inappropriate material on the Internet (*e.g.*, sending mass e-mail solicitations, sexually explicit or otherwise offensive materials) may result in suspension or termination of your AOL account(s).

(d) **Respect Copyright and Proprietary Materials.** You may not transmit to the Internet material that is subject to any person or entity's Rights, including copyright, without the express permission of the rights holder. Such transmittal may result in termination of your membership and possible civil and criminal liability.

(e) **Use of Personal Publishing Tools.** AOL, Inc. provides Members with personal publishing tools, such as Personal Publisher 2 ("PP2"), to enable Members to create personal web sites (see keyword "Personal Publisher"), and use of such publishing tools is subject to these Rules and TOS. Remember, you are responsible for the Content that appears on your web site. Obey copyright and other applicable laws. AOL, Inc. reserves the right to suspend or terminate at its discretion Members' AOL accounts and to require the removal of links or other Content on or through Members' home pages or personal Internet sites if providing such Content or links causes undue strain on any AOL server or is otherwise a violation of TOS. AOL, Inc. may from time to time, supplement PP2 with new products. If AOL, Inc. provides a password protection

option within PP2, and you choose to use it, AOL will still be able to access your PP2 site.

You should be aware that the Internet contains content, goods and services that you may find obscene, improper, hurtful or otherwise offensive and that may not be suitable for certain Members or for minors. (Check out keyword "Parental Controls" if you don't want your child using the Internet.) AOL, Inc. does not have the capability or right to monitor, review or restrict any content, goods or services made available by third parties on the Internet. Nor does AOL, Inc. have the capability or right to edit or remove any such questionable content after its posting on the Internet. In addition, you should be aware that the Internet provides access to users who are not part of AOL. You may find their conduct and communication harmful or offensive, but they are generally not subject to our rules and policies.

## 3. Purchasing Products and Services through AOL

You can purchase products and services in many different areas online and on the Internet. As with any purchase of a product or service through any medium or in any environment, you should use your best judgment. Exercise caution where appropriate, for example, with blind opportunity ads, mass e-mail solicitations and "get rich quick" schemes. AOL, Inc. cannot mediate disputes and cannot assume responsibility for any outcome. Be careful, be smart. Have fun!

## 4. Finale

You made it! You've reached the end of our rules and policies which are intended to make your trip through cyberspace enjoyable. While some of this sounds complicated, it's really not -- good common sense will always be your best guide.

These Rules will always be here for your reference. After all, these Rules really do enhance your experience on AOL and ensure that AOL will be an enjoyable service for all Members. We have tried to explain our terms clearly, but if any aspect remains unclear, please let us know through keyword "TOS."

18275-1                                11

# Ex. E



**IMPORTANT NOTICE**    _ □ X

## Important Notice:  Updated Terms of Service

AOL has posted an updated version of its Terms of
Service (TOS), which explains the rules, rights and
responsibilities of AOL members. This version will
become effective July 15, 1998.

AOL's policies are now easier to read, understand and
use. We've rewritten them in "plain English," made
them searchable and divided them into three sections:

**AOL Member Agreement:** The basic relationship
between AOL and its members.  This includes details





[ OK ]    [ GO TO TERMS OF SERVICE ]



**IMPORTANT NOTICE**

**Important Notice: Updated Terms of Service**

about the rights and responsibilities of master account holders, such as account charges and our billing and cancellation procedures. Individual notice will be sent to members (for example, through an online notice like this or e-mail) of important modifications to this document.

**AOL Community Guidelines:** AOL's rules for online behavior, based on common sense, courtesy and civility.

OK        GO TO TERMS OF SERVICE



## IMPORTANT NOTICE

### Important Notice: Updated Terms of Service

**AOL Privacy Policy:** AOL's strong commitment to protecting its members' privacy through seven principles.

The updated TOS reflects the same basic values and principles that have always governed AOL, but we urge you to read all three documents carefully and we encourage your feedback. To review AOL's updated TOS, click on Go to Terms of Service, below.



OK            GO TO TERMS OF SERVICE

# Ex. F



Notice to AOL Members

**Official AOL Mail**

Subject:  Notice to AOL Members
Date:     7/2/2003 1:24:32 PM Eastern Daylight Time
From:     AOL MemberInfo
BCC:      cjneave
Sent on:  JBO 2.5 sub 0

Reply
Forward
Reply All
Add Address
Print

Dear Member,

To keep pace with the many changes that sweep through the online world, AOL must occasionally update our Member Agreement, also known as the **Terms of Service (or TOS)** -- the terms that govern our relationship with our members. We have not updated that agreement in more than five years, since 1998.

However, the evolution of our business and services, changes in recent law, and commitments that we need to fulfill with our vendors demand that we change it at this time.

We have taken the opportunity to update our Community Guidelines to make them easier to understand. The basic philosophy remains the same -- **to be** respectful of others online. We have distilled the guidelines into four principles and added links to resources to help you best manage your online experience. Please take the time to review the Community Guidelines at AOL Keyword: TOS. Also remember that anyone using your AOL account

Save    Delete    ◀ Prev    490 of 672    Next ▶

Dear Member,

To keep pace with the many changes that sweep through the online world, AOL must occasionally update our **Member Agreement**, also known as the **Terms of Service (or TOS)** -- the terms that govern our relationship with our members. We have not updated that agreement in more than five years, since 1998.

However, the evolution of our business and services, changes in recent law, and commitments that we need to fulfill with our vendors demand that we change it at this time.

We have taken the opportunity to update our Community Guidelines to make them easier to understand. The basic philosophy remains the same -- to be respectful of others online. We have distilled the guidelines into four principles and added links to resources to help you best manage your online experience. Please take the time to review the Community Guidelines at AOL Keyword: TOS. Also remember that anyone using your AOL account should review these as well.

Please note that these changes, which take effect **August 3, 2003,** *do not* involve a price increase.

**WHAT'S CHANGED**

Specific changes to the Member Agreement are summarized below. In addition, we have reorganized the Member Agreement to make it easier for you to understand what rights and obligations you have as an AOL member.

Complete information about these changes, as well as the full updated Member Agreement, will be made available at AOL Keyword: TOS. If you prefer to review a translated version of the Member Agreement in Spanish, you will be able to do so shortly at **AOL Keyword: TOS**. (Si usted prefiere repasar el Convenio de Usuario revisado en español, puede hacerlo proximamente en AOL Keyword: TOS.)

We've tried to minimize the "legalese" in this summary, but we know you may still have questions or other feedback.

**To ask questions about the Member Agreement,** please visit **AOL Keyword: TOS,** click on the button labeled "Questions?" and then click the "Ask the Staff" button.

**To send us general feedback** about the AOL service, please visit **AOL Keyword: Tell Us What You Think**.

**SUMMARY OF CHANGES TO THE MEMBER AGREEMENT**

- We are committed to fighting spam, and we want to be sure that we can fight not only e-mail spam but also other forms of spam you might receive. Our Member Agreement always made clear

that we do not tolerate spam. We updated the Member Agreement to make sure that our **members understand that none of our communications tools should be used to send spam, whether by e-mails, in chat areas, or by instant messages.**

- As you know, **we and our partners are providing great new entertainment, communications and software features on AOL.** The changes to the Member Agreement explain in more detail what legal rights you have with these features and what obligations you have when you use and access these features.

- Similarly, we provide **more detail on the rights you have when you put content on the AOL service** (such as a posting on a message board) as well as the rights and obligations you have when you use the content owned by others, like photographs and music.

- We've **simplified the billing section** to make more options available in the future on how you can pay for your AOL membership.

- We have always disclosed what warranties we can and cannot offer you with the AOL services. To fulfill our obligations with our partners, **the new Member Agreement also defines what warranties our partners believe should be disclaimed in exchange for making software, features and services available to you.**

- We have always disclosed what liabilities we are not willing to assume. Again, to fulfill our obligations to our partners, **we disclose what liabilities our partners are not willing to assume when they make their products available to us for use with the AOL service.**

- To comply with new and pending state laws, we note that **all AOL members authorize the collection, use, and disclosure of personal information by AOL** as provided in AOL's Privacy Policy.

- We want to make sure that you understand that certain **extra costs may be involved when you access AOL services** from a variety of communications services, like phone lines, toll free numbers or wireless services. For this reason, we created a new section to discuss communications charges.

- You probably take for granted that you have been communicating electronically with AOL since you first started the service. **Recent laws require that we make sure you remain willing to communicate and transact with us electronically.** Therefore, we added a new electronic notice policy in the Member Agreement.

For more specific and extensive details on the changes made to the Member Agreement, please visit **AOL Keyword: TOS Changes.**

Again, the new Member Agreement will take effect on August 3, 2003, after which date it will govern **you and all authorized users of your account, as well as** other members of the AOL service. If you do not agree to the new terms, you will need to cancel your membership before the changes take effect.

Thank you for being an AOL member.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PAUL M. BREAKMAN, in a representative capacity acting for the interests of the general public,<br><br>*Plaintiff,*<br><br><br><br>v.<br>AOL LLC,<br><br>*Defendant.* | Civil Action No. 1:08cv00246 (JDB)<br><br><br>**APPENDIX TO DEFENDANT'S MEMORANDUM IN SUPPORT OF RULE 12(b)(3) MOTION TO DISMISS** |

## TABLE OF CONTENTS

Title                                                                    Exhibit

*Pierre v. AOL Time Warner, Inc.*, No. 03-009778 (D.C. Super. Ct. April 27, 2004)...................................................................................1

*Finlay v. America Online, Inc.*, No. 02-2417 mem. op. (E.D. Penn. Oct. 7, 2002)....................................................................................2

*Behn v. America Online, Inc.*, No. 4:97-00244 (E.D. Mo. Mar. 25, 1997)...................3

*Gates v. AOL Time Warner, Inc.*, No. 604141/02, 2003 WL 21375367 (N.Y. Sup. Ct. May 15, 2003)...................................................................4

*Dilorenzo v. America Online, Inc.*, No. 605867/06, slip op. at 3-6 (N.Y. Sup. Ct. Jan. 22, 1999).......................................................................5

*Spera v. America Online, Inc.*, No. 067 16/97, slip op. (N.Y. Sup. Ct. Jan. 27, 1998)....................................................................................6

*Schwartz v. America Online*, No. A0300529 (Ohio C.P. Oct. 12, 2004).....................7

*St. Rocco's Parish Fed. Credit Union v. AOL Time Warner, Inc. and America Online, Inc.*, No. 428553 (Ohio C.P. Oct. 10, 2001)...............................................8

*Groff v. America Online, Inc.*, No. PC 97-0331, 1998 WL 307001, *5 (R.I. Super. Ct. May 27, 1998)...........................................................................................9

*Person v. Google Inc.*, 456 F. Supp. 2d 488, 2006 WL 2884444 (S.D.N.Y. Oct. 11, 2006)...........................................................................................................10

*Muni v. America On-Line, Inc.,* No. 99-300, slip op. (D. N.J. Aug. 6,1999) ...............11

*Hess v. America On Line,* No. 02001-0405-SC-10583 (Ind. Super. Ct. April 13, 2005).........................................................................................................12

*Nazaruk v. Ebay, Inc.,*
    No. 06-242, 2006 WL 2666429, slip op. (D. Utah Sept. 14, 2006).......................13

**EXHIBIT 1**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

FRANCIS PIERRE                          )
             **Plaintiff**                )          C.A. No. 03-9778
                                      )
                                      )          **Calendar 1**
AOL TIME WARNER, INC.                    )          **Judge Zoe Bush**
            **Defendant**               )
_____)

### <u>Order Granting Defendant's Motion To Dismis</u>

      Before the Court is Defendant, AOL Time Warner, Inc.'s Motion to Dismiss.

Plaintiff, Francis Pierre has not filed an opposition.  As set forth below, Defendant's

Motion must be **GRANTED.**

      Plaintiff's Complaint alleges that "as a direct and proximate cause of actions of

Defendant AOL Time Warner, Inc., Plaintiff" suffers "(1) severe and continuing

emotional distress and mental anguishes and (2) continuing financial hardship and

economic damages."  <u>See</u> Complaint pg. 2.  Plaintiff's cause of action arises from an

alleged billing error for internet services and software provided by AOL.

      Defendant moves for a dismissal, in part, on the basis that Plaintiff (1) improperly

named AOL Time Warner, Inc. as a defendant and (2) that claims must be brought in

Virginia.  Defendant states that Plaintiff's claims are against AOL, which is a wholly

distinct and legally separate corporate entity from AOL Time Warner, Inc.  Further,

Defendant argues that any claims Plaintiff has against AOL internet service must be

brought in Virginia because by "accepting the offer of a free trial membership, Plaintiff

agreed that he would bring any claim or dispute he had with AOL or relating in any way

to his membership or use of AOL, in Virginia." <u>See</u> Defendant's Motion pg. 3. Plaintiff

points to the forum selection clause in which the Member Agreement Terms of Service

states that:

> The laws of the Commonwealth of Virginia, excluding its conflicts-of-law
> rules, govern this Member Agreement and your membership. You
> expressly agree that exclusive jurisdiction for any claim or dispute with
> AOL or relating in any way to your membership or your use of the AOL
> Services resides in the courts of Virginia and you further agree and further
> expressly consent to the exercise of personal jurisdiction in the courts of
> Virginia in connection with any such dispute including any claim
> involving AOL or AOL services.

This Court finds that in the instant case Plaintiff failed to bring its claims against

the proper entity. AOL and AOL Time Warner, Inc. are separate entities.   "As a general

rule, a parent corporation is not liable for the acts of a subsidiary." <u>AOL Time Warner</u>

<u>Inc. v. Gates</u>, 2003 Misc. LEXIS 751, at *6 (N.Y. Sup. Ct. May 15, 2003) ("The acts

upon which plaintiffs' Complaint rests were committed by or happened on the computer

service operated by AOL.  The only connection between AOL and AOL Time Warner is

that AOL is a subsidiary of AOL Time Warner ....").

Further, the Agreement entered between Plaintiff and Defendant sets forth a

forum selection clause in which all claims will be brought in Virginia.

> It is well accepted policy that forum selection clauses are prima facie
> valid.  In order to set aside a clause, a party must show that enforcement
> would be unreasonable and unjust or that the clause is invalid because of
> fraud or overreaching, such that a trial in the contractual forum would be
> so gravely difficult and inconvenient that the challenging party would, for
> all practical purposes, be deprived of his or her day in court.

Id. at *4 (citations omitted).   In the present case, Plaintiff has neither opposed to Defendant's Motion nor does the Court find that trial in Virginia would be gravely difficult and inconvenient.

Based on the reasons set forth above, it is this *12th* day of February 2004, hereby

**ORDERED** that Defendant, AOL Time Warner, Inc.'s Unopposed Motion to Dismiss is **GRANTED**.

**SO ORDERED.**

_Zoe Bush_
The Honorable Zoe Bush
(Signed in Chambers)

DOCKETED  FEB 13 2004

MAILED FEB 13 2004

Copies mailed to:

Jessica E. Morrison
Jonathan T. Blank
McGuire Woods LLP
1050 Connecticut Avenue, N.W.
Suite 1200
Washington DC 20036

Francis Pierre
4201 4th Street, S.E.
Washington DC 20032

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH B. FINLAY, JR.,              :    CIVIL ACTION
JILL R. FINLAY, and their minor     :
daughter                            :
                                    :
            v.                      :
                                    :
AMERICA ONLINE, INC.                :    NO. 02-2417

FILED OCT 04 2002

ENTERED
OCT 7 2002
CLERK OF CC

<u>MEMORANDUM</u>

Dalzell, J.                                    October 4, 2002

        Joseph Finlay, Jill Finlay, and their minor daughter
have filed this action against America Online.  In their amended
complaint, they allege that Joseph and Jill Finlay subscribed to
America Online for their thirteen year old daughter and
identified her as a "young teen" to restrict her access to online
material.  Some unknown person allegedly hacked into their
daughter's e-mail account.  The hacker sent vulgar e-mail using
her e-mail address and altered her user profile to add false and
obscene personal attributes.

        The Finlays maintain that America Online was negligent
for failing to protect against the misappropriation of their
daughter's e-mail address and password.  They also assert a claim
of defamation stemming from comments America Online's legal
counsel allegedly made after this suit was filed, calling the
lawsuit "frivolous".  America Online moves to dismiss under Fed.
R. Civ. P. 12(b)(6) and 12(b)(3) for failure to state a claim and
improper venue.

Because a forum selection clause directs this controversy to Virginia, we will grant the motion to dismiss in part

Forum Selection Clause

The America Online Membership Agreement, governing the Finlays' subscription to America Online, provides in relevant part:

> 8.  LAW AND LEGAL NOTICES
> ....You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia....

App. to Mot. to Dismiss, Ex. A.1, at 4.

Under the plain terms of the forum selection clause, venue is exclusively "in the courts of Virginia." Any action that "relates in any way" to membership or use of America Online is embraced by this comprehensive forum selection provision.

The Finlays here complain that America Online failed to exercise ordinary care as their daughter's Internet service provider. The other count, claiming defamation, arises out of comments the lawyers made about this case after it was filed; it, too, is therefore bottomed on the relationship between the minor Finlay as customer and America Online as Internet service provider. The forum selection clause, by its terms, thus dictates that this action be brought "in the courts of Virginia."

As will be seen, however, the presence of this broad clause does not necessarily end our inquiry.

2

## Discussion

We examine defendant's motion to change venue under 28 U.S.C. § 1404 ("Change of Venue"), rather than 28 U.S.C. § 1406 ("Cure or waiver of defects"), since venue is proper in this district under 28 U.S.C. § 1391. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878-79 (3d Cir. 1995). A forum selection clause, while significant, is not dispositive of venue. Id. at 880.

A court must balance the conveniences to determine appropriate venue. § 1404(a); Jumara, 55 F.3d at 879. In balancing the relevant factors -- such as plaintiff's preference of venue, defendant's preference of venue, location of evidence, and convenience of witnesses and parties -- we must give deference to the plaintiff's choice of venue measured by where plaintiff has filed. Id.

When the parties have agreed to a forum selection clause, although the "framework" is the same, the calculus changes. Id. at 880. "[A] forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum.... [W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Id. Forum selection clauses serve salutary purposes, such as averting time-consuming litigation about venue, and saving parties to the contract from the prospect of suit in multiple fora. Carnival Cruise Lines , Inc. v. Shute, 499 U.S. 585, 594 (1991).

3

A forum selection clause is "'prima facie valid.'" _Id._ at 589. "Where the forum selection clause is valid, which requires that there have been no 'fraud, influence, or overweening bargaining power,' the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." _Jumara_, 55 F.3d 880.

The Finlays may overcome the forum selection clause in only two ways. First, they may show that the forum selection clause is invalid as the product of undue influence or fraud. Second, they may try to show that, despite the parties' voluntary agreement to Virginia as the forum state, venue in that Commonwealth is inconvenient. _Id._ To show that the balance of conveniences favors this district, when the parties have expressly chosen Virginia, the plaintiffs bear a "heavy burden." _Carnival Cruise Lines_, 499 U.S. at 595.

The Finlays do not attempt to argue that venue in Virginia is inconvenient. Nor could they as a matter of law. The Finlay family lives in Pennsylvania. In _Carnival Cruise Lines_, 499 U.S. at 587, 594-95, the Supreme Court determined that plaintiffs living in Washington State could not by that fact alone establish that venue in Florida was inconvenient sufficiently to set aside a valid forum selection clause.

The Finlays instead try to show that the forum selection clause is invalid. They do not allege that America Online procured the clause by fraud or undue influence, or that they did not have notice of it. _Id._ at 595. Instead they assert

4

it should be invalidated because the America Online Membership
Agreement is a "contract of adhesion". A contract of adhesion,
as the Finlays describe it, is one where the parties are "not of
equal bargaining power and the buyer must adhere to the terms of
the form contract that are not negotiable", Pl.'s Resp. to Mot.
to Dismiss, at 26, which will certainly do as a definition.[1]
Carnival Cruise Lines forecloses the argument that a forum
selection clause in a contract of adhesion is ineffective. In
Carnival Cruise Lines, the Supreme Court upheld a forum selection
clause in just such a form contract.[2]

---

[1] Black's defines adhesion contract as:

> Standardized contract form offered to
> consumers of goods and services on
> essentially "take it or leave it" basis
> without affording consumer realistic
> opportunity to bargain and under such
> conditions that consumer cannot obtain
> desired product or services except by
> acquiescing in form contract....

Black's Law Dictionary 40 (6th ed. 1990).

[2] The document in Carnival Cruise Lines was
indisputably a contract of adhesion:

> [R]espondents' passage contract was purely
> routine and doubtless nearly identical to
> every commercial passage contract issued by
> petitioner and most other cruise lines. In
> this context, it would be entirely
> unreasonable for us to assume that
> respondents - or any other cruise passenger -
> would negotiate with petitioner the terms of
> a forum-selection clause in an ordinary
> commercial cruise ticket. Common sense
> dictates that a ticket of this kind will be a
> form contract the terms of which are not
> subject to negotiation, and that an
> individual purchasing the ticket will not
> (continued...)

5

The Finlays add that the forum selection clause is defective because it is unconscionable. Since the only respect in which it is allegedly unconscionable is that the Finlays did not have the bargaining power to negotiate it, this contention is merely a recasting of the contract of adhesion argument that Carnival Cruise Lines dispatched. But by way of further comment, a contract term is unconscionable only if it would result in oppression or unfair surprise. 13 Pa. Consol. Stat. Ann. § 2302 ("Uniform Commercial Code Comment"). There is nothing oppressive about the Finlays litigating this action near the south bank of the Potomac.[3]

Since a valid forum selection clause dictates that venue must be in Virginia, and the Finlays cannot meet their "heavy burden" of showing the balance of conveniences nevertheless favors venue here, we will grant the motion to dismiss in part. The case will be transferred to the Eastern District of Virginia,[4] rather than dismissed, as that less Draconian course "makes better sense." Salovaara v. Jackson

_____

[2](...continued)
have bargaining parity with the cruise line.

Id. at 593 (citation omitted).

[3] Court in the Eastern District of Virginia is held in Alexandria, 28 U.S.C. § 127(a).

[4] According to the U.S. Business Directory available on lexis.com, America Online is in Sterling, Loudoun County, Virginia, which makes it about thirty-five miles from the Eastern District's Alexandria station. See http://www.mapquest.com/directions.

6

<u>Nat'l Life Ins. Co.</u>, 246 F.3d 289, 299 (3d Cir. 2001).  An Order
follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH B. FINLAY, JR. at al.,   :    CIVIL ACTION
JILL R. FINLAY, and their minor :
daughter                      :
                         :
         v.            :
                         :
AMERICA ONLINE, INC.       :    NO. 02-2417

## ORDER

AND NOW, this 4th day of October, 2002, upon consideration of defendant's motion to dismiss, plaintiffs' response thereto, defendant's reply thereto, and plaintiff's surreply thereto, and in accordance with the accompanying Memorandum it is hereby ORDERED that:

1.    The motion to dismiss (Doc. No. 5) is GRANTED to the extent it challenges venue under 28 U.S.C. § 1404; and

2.    This action shall be TRANSFERRED to the United States District Court for the Eastern District of Virginia.

BY THE COURT:

_____
Stewart Dalzell, J.

# EXHIBIT 3

FILED

MAR 25 1997

U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

PHILLIP BEHN,              )

     Plaintiff,          )

     vs.                  )        No. 4:97 cv 00244 SNL

AMERICA ONLINE, INC.,     )

     Defendant.         )

### ORDER

     This matter is before the Court on the Defendant's Motion to Dismiss or, in the alternative, to Transfer (#17). Pursuant to 28 U.S.C. § 1404(a), the Court concludes that this cause of action should be transferred to the United States District Court for the Eastern District of Virginia.

     Accordingly,

     IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss or, in the alternative, to Transfer (#17) is GRANTED.

     IT IS FURTHER ORDERED that this case be transferred to the United States District Court for the Eastern District of Virginia.

     Dated this 25 day of March, 1997.

UNITED STATES DISTRICT JUDGE

20

**EXHIBIT 4**

Not Reported in N.Y.S.2d, 2003 WL 21375367 (N.Y.Sup.), 2003 N.Y. Slip Op. 51002(U)

Motions, Pleadings and Filings

Supreme Court, New York County,
Part 59.
Jayne **GATES**, Margaret Sanchez, and Donna Swan, Plaintiffs,
v.
**AOL TIME WARNER** INC., and Does 1-100, Defendant Name Line 3, Defendants.
Index No. 604141/02.
May 15, 2003.

**Background:** Members of Gay, Lesbian, Bisexual and Transgender (GLBT) community brought action against Internet service provider alleging that provider failed to police its chat rooms which caused members to be harassed and threatened by hate speech from other users.

**Holdings:** On provider's motion to dismiss, the Supreme Court, New York County, James, J., held that:
(1) clause in service agreement between Internet service provider and its New York users, designating Virginia as forum in which any claim was to be litigated, was enforceable, and
(2) parent corporation was not liable for acts of subsidiary.

Motion granted.

West Headnotes

[1] KeyCite Notes 

☞95 Contracts
    ☞95I Requisites and Validity
        ☞95I(F) Legality of Object and of Consideration
            ☞95k127 Ousting Jurisdiction or Limiting Powers of Court
                ☞95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. Most
Cited Cases

Clause in service agreement between Internet service provider and its New York users, designating Virginia as forum in which any claim was to be litigated, was enforceable, although Virginia law did not provide for class actions and violation of New York consumer protection statute was alleged; inclusion of forum selection clause was not product of fraud, and Virginia courts could determine whether New York's consumer protection laws were violated McKinney's General Business Law § 349.

[2] KeyCite Notes 

☞101 Corporations
    ☞101IX Members and Stockholders
        ☞101IX(D) Liability for Corporate Debts and Acts
            ☞101k215 k. Nature and Grounds in General. Most Cited Cases

As a general rule, a parent corporation is not liable for the acts of a subsidiary.

Present: , Justice.

**\*1** The following papers, numbered 1 to 3 were read on this motion to dismiss.

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE
Upon the foregoing papers,

Defendant AOL Time Warner Inc. (AOLTW) moves to dismiss plaintiffs' complaint on the grounds that it is barred by a forum selection in the Terms of Service (TOS) agreement between AOL and the plaintiffs and because AOLTW is not a proper party to this lawsuit.

Plaintiffs in their complaint state that they have brought this action on behalf of themselves and other members of the Gay, Lesbian, Bisexual and Transgender (GLBT) community who have been harassed and threatened by other users in AOL sponsored chat rooms. America Online, Inc., (AOL) is an internet service provider which provides its members with access to the internet as well as other interactive services including chat rooms.

The complaint defines the class as "[a]ll persons who use AOL GLBT services or who subscribed to AOL Internet service as a result of marketing targeted to the GLBT community after January 1, 1996. Plaintiffs contend that AOLTW violated <u>General Business Law § 349</u> by engaging in a deceptive business practice in that defendant failed to provide the service promised in its marketing and advertising toward the GLBT community. In particular, plaintiffs argue that AOLTW failed to police its chat rooms causing members of the class to be harassed and threatened by hate speech from other members.

AOLTW seeks dismissal of the complaint on the ground that plaintiffs cannot maintain their suit in this forum because of a forum selection clause in the TOS agreement each member agrees to when subscribing to the AOL service. The AOL Member TOS Agreement which has been in effect since July 1998 states in relevant part:

8. LAW AND LEGAL NOTICES
The Member Agreement represents your entire agreement with AOL. You agree that this Member Agreement is not intended to confer and does not confer any rights or remedies upon any person other than the parties to this Agreement. You also understand and agree that the AOL Community Guidelines and the AOL Privacy Policy, including AOL's enforcement of those policies, are not intended to confer, and do not confer, any rights or remedies upon any person. If any part of this Agreement is held invalid or unenforceable, that portion shall be construed in a manner consistent with applicable law to reflect, as nearly as possible, the original intentions of the parties, and the remaining portions shall remain in full force and effect. The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Agreement and your membership. As noted above, member conduct may be subject to other local, state, national, and international laws. *You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunication providers and content providers.* (emphasis added) <u>FN1</u>

> <u>FN1.</u> The AOL Membership TOS agreement in effect from 1996 through July 1998 contained a similar provision which stated, "[t]he TOS shall be governed by the laws of the Commonwealth of Virginia, excluding its conflicts of law rules, and Member and AOL Inc. each submit to the exclusive jurisdiction of the courts of the Commonwealth of Virginia."

**\*2** AOLTW argues that this forum selection clause is fully enforceable and serves to bar plaintiffs' action in this forum. Plaintiffs counter that (1) the forum selection clause is unenforceable because AOLTW was not a signatory to the AOL Membership TOS Agreement and (2) the forum selection clause should not be enforced in this case because Virginia law does not allow for consumer class

action litigation and would therefore conflict with the public policy underlying General Business Law § 349. Plaintiffs have failed to meet their burden of demonstrating that the forum selection cause should not be enforced and therefore this action must be dismissed on those grounds.

[1]    "It is well-accepted policy that forum-selection clauses are *prima facie* valid. In order to set aside such a clause, a party must show that enforcement would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court." *British West Indies Guaranty Trust Co., Ltd., v. Banque Internationale A Luxembourg et al., 172 A.D.2d 234, 567 N.Y.S.2d 731 (1st Dept 1991)*. Applying this principle, this court has previously upheld the validity of the forum selection clause in AOL's Membership TOS Agreement. In *DiLorenzo v. America Online, Inc.,* (Sup Ct, New York County, January 22, 1999, Cozier, J., Index No. 605867/96) Justice Cozier held that the forum selection clause was enforceable as "plaintiffs have failed to allege that the inclusion of the forum selection clause was itself the product of fraud." With relevance to plaintiffs' arguments on this motion, the court in *DiLorenzo* went on to state that, "[a]s for plaintiff's claim that New York's strong interest in regulating conduct within its borders and enforcing its consumer protection statutes warrants hearing the action in New York, it ignores the fact that foreign courts may determine whether New York's consumer protection laws were violated." *Id. See also Spera v. America Online, Inc.,* Sup Ct, Westchester County, January 27, 1998, DiBlasi, J., Index No. 6716/97. Although *DiLorenzo* and *Spera* involved claims concerning charges for telecommunications services, both cases are instructive on this motion as those courts dismissed actions pursuant to AOL's forum selection clause although there were claims asserted under General Business Law § 349.

Plaintiffs in opposing the motion have not argued that they will not be able to pursue their rights under New York's consumer protection statutes in Virginia. Although plaintiffs assert that Virginia Law bars class actions, that is not equivalent to the assertion, not made by plaintiffs, that Virginia courts, federal or state, will not consider claims asserting violations of New York's consumer protection statutes. Plaintiffs' arguments therefore fail to provide a basis for this court to ignore its prior rulings upholding the enforceability of the forum selection clause.

**\*3** [2]    Plaintiffs' argument that the forum selection clause does not apply because AOLTW was not a party to the Member Agreement also fails to persuade. The acts upon which plaintiffs' Complaint rests were committed by or happened on the computer service operated by AOL. The only connection between AOL and AOLTW is that AOL is a subsidiary of AOLTW as demonstrated by the affidavits and SEC filings defendant submits on this motion. "As a general rule, a parent corporation is not liable for the acts of a subsidiary." *Dempsey v. Intercontinental Hotel Corp., 126 A.D.2d 477, 478, 511 N.Y.S.2d 10 (1st Dept 1987)*. Assuming that plaintiffs are correct that AOL and AOLTW are in fact not separate entities, then it follows that AOLTW is in fact subject to the AOL Membership TOS Agreement and the forum selection clause contained therein is enforceable by AOLTW.

If, on the other hand, AOLTW is merely the parent company of AOL and a separate legal entity, then plaintiffs' suit must be dismissed as it fails to state any cause of action against AOLTW. In either case, plaintiffs suit must be dismissed.

Therefore, defendant's motion to dismiss plaintiffs' Complaint is GRANTED.

This is the decision and judgment of the court.

N.Y.Sup.,2003.
Gates v. AOL Time Warner, Inc.
Not Reported in N.Y.S.2d, 2003 WL 21375367 (N.Y.Sup.), 2003 N.Y. Slip Op. 51002(U)

Motions, Pleadings and Filings (Back to top)

- <u>0604141/2002</u> (Docket) (Jan. 06, 2003)

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   IAS PART 3
———————————————————————————X
STEPHEN J. DILORENZO and DEAN LUBNICK, on
behalf of themselves and all others similarly situated,

                          Plaintiffs,

          -against-                                    Index No. 605867/96

AMERICA ONLINE, INC.,                                  Sequence No. 003

                                         Defendant.    JAN - 6 1999
                                                       COUNTY CLERK'S OFFICE
                                                       NEW YORK
———————————————————————————

BARRY A. COZIER, J.:

          In this class action, defendant America Online, Inc. ("AOL") moves to dismiss the

second amended complaint in its entirety, pursuant to CPLR 3211(a)(1) and CPLR 327.

                          FACTUAL ALLEGATIONS

          Plaintiffs Stephen DiLorenzo and Dean Lubnick were subscribers of on-line

services provided by AOL.  The service agreement between the parties provided the plaintiffs

with the first five hours of access to AOL for $9.95 and $2.95 per hour for each additional hour

thereafter.  In December 1996, AOL changed its billing practices so that all subscribers who had

previously been billed under the $9.95 plan would be switched to an unlimited use plan at a flat

rate of $19.95 per month.  Following an investigation by a number of State Attorneys General of

AOL's new billing practices, AOL agreed to, *inter alia*, inform all users of the changes, provide

an on-line mechanism to revert back to the $9.95 plan at no cost through March 31, 1997, and

establish a toll-free telephone number to explain the billing changes.

          Plaintiffs subsequently commenced this action, which was consolidated in May

1997 with thirteen other New York actions by Justice Lewis R. Friedman.  The consolidated

action was stayed pending resolution of an earlier filed national class action in Illinois, *Schrab v.*

_American Online, Inc._, No. 96 CH 13732. In February 1998, an opinion and order was entered

approving the settlement of _Schwab_, and all plaintiffs in the consolidated action, except

DiLorenzo and Lubnick, discontinued their claims against AOL.

In the second amended complaint dated June 30, 1998, plaintiffs allege that AOL,

in switching all of its subscribers from the $9.95 plan to the $19.95 plan, failed to (1) adequately

notify its users of the option to transfer back to the $9.95 plan; (2) disclose negative information

concerning its pricing, resulting in fraud; and (3) inform its users of its actual capacity to provide

internet services. Plaintiffs further maintain that "free minutes," granted to AOL customers to

induce them to subscribe to AOL or to credit accounts, were rendered worthless due to the new

billing practice. As a result of the unlimited flat rate, plaintiffs allege, AOL's quality of service

deteriorated, injuring its customers.

AOL opposes the present motion by urging dismissal by virtue of the forum

selection clause contained in the AOL customer contract. Specifically, AOL cites to ¶ 10 of the

"Terms of Service" ("TOS"), which all AOL customers must accept by clicking on the "I agree"

icon on the computer screen in order to subscribe:

> The TOS and your membership shall be governed by the laws of the
> Commonwealth of Virginia, excluding its conflicts of law rules. Member
> expressly agrees that exclusive jurisdiction for any claim or dispute resides
> in the courts of the Commonwealth of Virginia. Member further agrees
> and expressly consents to the exercise of personal jurisdiction in the
> Commonwealth of Virginia in connection with any dispute or claim
> involving AOL Inc.

_See_ Aff., Exh. B. AOL maintains the Virginia forum is appropriate because, _inter alia_, AOL is

headquartered in Virginia, the service is based out of Virginia, all relevant documents and

personnel responsible for the terms are located in Virginia, and the unlimited flat fee plan was

valid and enforceable unless shown by the resisting party to be unreasonable." _Brooke Group Ltd. v. JCH Syndicate 488_, 87 N.Y.2d 530, 534 (1996). _See, also, Shah v. Shah_, 215 A.D.2d 287, 288 (1st Dept. 1995) (forum selection clauses are "prima facie valid and are not to be set aside except in instances of fraud or overreaching or where the enforcement of the clause would be so unreasonable and unjust as to make a trial in the selected forum 'so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court.'") (quoting _British West Indies Guar. Trust Co., Ltd. v. Banque Internationale A Luxembourg_, 172 A.D.2d 234 (1st Dept. 1991), additional citations omitted). Forum selection clauses are favored because they provide predictability and certainty in the resolution of disputes. _Brooke Group Ltd., supra_, 87 N.Y.2d, at 534. Thus, a party challenging a forum selection clause carries the heavy burden of establishing that the chosen forum is an improper. _Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust Ltd._, 62 N.Y.2d 65, 74 (1984).

The Court concludes that plaintiffs have failed to meet this heavy burden. Allegations by the plaintiffs that fraud committed by AOL permeated the contract, voiding the forum selection clause, ignore the reality that plaintiffs have failed to allege that the inclusion of the forum selection clause was itself the product of fraud. Although plaintiffs allege AOL failed to disclose the true facts regarding the flat rate, such an allegation has no bearing on plaintiffs' earlier agreement to be bound by the forum selection clause. As the Supreme Court of the United States has held, a dispute arising out of a transaction based upon an allegation of fraud does not render the forum selection clause unenforceable. Rather, a "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." _Scherk v. Alberto-Culver Co._, 417 U.S. 506, 519 n.14 (1974). _See, also, Rokeby-_

*Johnson v. Kentucky Agric. Energy Corp.*, 108 A.D.2d 336, 341 (1st Dept. 1985) ("it is not alleged that the forum selection clause itself was induced by fraud; therefore, the enforcement of that clause is not affected"); *Composite Holdings, L.L.C. v. Westinghouse Electric Corp.*, 992 F.Supp. 367, 369 (SDNY 1998) ("forum selection clause will stand against a claim of fraud unless the party resisting enforcement alleges and proves that . . . the fraud was directed to the forum selection clause itself").

Plaintiffs' argument that AOL waived the forum selection clause, by virtue of its involvement in the Illinois litigation, is also without merit. Waiver is "an intentional relinquishment of a known right and should not be lightly presumed." *Gilbert Frank Corp. v. Federal Ins. Co.*, 70 N.Y.2d 966, 968 (1988). Accordingly, "[t]his intent must be clearly established and cannot be inferred from doubtful or equivocal acts or language and the burden of proof is on the person claiming the waiver of the right." *East 56th Plaza, Inc. v. Abrams*, 91 A.D.2d 1129, 1130 (3d Dept. 1983). The record establishes that prior to settling the *Schwab* action, AOL indicated its intent to invoke the forum selection clause by the filing of a motion to dismiss based upon the Virginia selection clause. *See* Jaber Aff., Exh. A, Memo in Support at 5 (court must dismiss the complaint due to the existence of a forum selection clause which provides exclusive jurisdiction in Virginia). Thus, rather than waiving the forum selection clause, AOL sought its enforcement prior to the settlement. The fact that the prior action ultimately resulted in a settlement does not amount to "an intentional relinquishment" of the forum selection clause, especially in light of the fact that settlements are "judicially favored." *Matter of Kanter*, 209 A.D.2d 365, 365 (1st Dept. 1994).

As for plaintiff's claim that New York's strong interest in regulating conduct

within its borders and enforcing its consumer protection statutes warrants hearing the action in New York, it ignores the fact that foreign courts may determine whether New York's consumer laws were violated. *See, Dralman v. American Express Travel Related Services Co.*, 892 F.Supp 1096, 1101 (N.D.Ill. 1995) (defendant did not violate § 349); *Rhodes v. Consumers' Buyline, Inc.*, 868 F.Supp 368, 377 (D.Mass. 1993) (plaintiff stated valid claim for violation under § 350).

Accordingly, it is

ORDERED that the motion to dismiss is granted and the complaint is dismissed with costs and disbursements to defendant as taxed by the Clerk of the Court; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

This constitutes the decision and order of the Court.

Dated: January 22, 1999

ENTER:

J.S.C.

**EXHIBIT 6**

time for appeals as right
(CPLR 5513[a]), you are
advised to serve a copy
of this order, with notice
of entry, upon all parties.

FILED
AND
ENTERED

ON _1·52·_ 1998

WESTCHESTER
COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
PRESENT: HON. JOHN P. DiBLASI, J.S.C.
-------------------------------------------x
CARLOS SPERA, on behalf of himself and all
others similarly situated,
                              Plaintiff,

                                            Index No. 06716/97
        -against-
                                            Motion Date: 12/23/97
AMERICA ONLINE, INC.,
                              Defendant.
-------------------------------------------x

The following papers numbered 1 to 5 were read on this motion to
dismiss the complaint.

                                            PAPERS NUMBERED

Notice of Motion/Affirmation/Memorandum of Law_____    1-3
Memorandum of Law in Opposition_____      4
Reply Memorandum of Law_____      5

        Upon the foregoing papers it is ordered that this motion is
granted.

        Plaintiff is a subscriber to the Internet service owned and
operated by defendant. At the time he first became a subscriber, he
was required to agree to various contractual terms set forth in
defendant's Terms of Service (TOS) and Rules of the Road (ROR).
Contained in those agreements were directions concerning telephone
line access to the network, and disclosures concerning the
possibility that the telephone services which provide such access
may do so at non-local billing rates.

        After using defendant's service for a period of time,
plaintiff received billings from the telephone company whose lines
he used for accessing the network, which charged him long-distance
rates, as a result of which he incurred a debt of $170.00 in one
month's time. Contending that defendant engaged in misleading
business practices by failing to properly warn subscribers that
they may be charged long-distance rates for access over phone lines
which appear to be of local origin, plaintiff commenced this action
against defendant.

In his original complaint, plaintiff asserted causes of action for both breach of contract and violation of General Business Law §349(h) (hereinafter "§349"), which he brought as a purported class action. Defendant responded to the original complaint by moving to dismiss. Thereafter, plaintiff amended his complaint, which now sets forth a single class action claim under §349[1]. Now before this Court is defendant's motion to dismiss the amended complaint.

Defendant offers three grounds in support of its application for dismissal. First, it claims that the action may not be brought in this State because plaintiff is bound by a forum selection clause providing for all disputes to be litigated in the Commonwealth of Virginia. Second, defendant asserts that the amended complaint fails to state a cause of action. Finally, it argues that dismissal is required under the doctrine of forum non conveniens. Upon review of the papers submitted and the applicable case law, the Court agrees that plaintiff cannot maintain his action in New York, and on that ground, the complaint must be dismissed.

The forum selection clause at issue in this case is set forth in one of the "screens" which appears on the subscriber's computer when the service is first accessed. As an initial step in the process of becoming a subscriber, the individual is informed that in order to do so, he or she must agree to be bound by the terms of the TOS and the ROR. After he indicated his agreement to be so bound by pressing a certain computer button which interacted with the screens, the full provisions of the TOS and the ROR were then presented for plaintiff's review.

Several screens into the display of the terms of the TOS the tenth paragraph, entitled "LAW", was set forth. That provision states, insofar as relevant hereto, that:

> The TOS and your membership shall be governed by the laws of the Commonwealth of Virginia, excluding its conflicts of law rules. Member expressly agrees that exclusive jurisdiction for any claim or dispute resides in the courts of the Commonwealth of Virginia. Member further agrees and expressly

---

[1] The breach of contract cause of action was not reasserted in the amended complaint in view of the pendency of a proposed settlement of a class action brought against defendant in Illinois. Apparently, there was a question of whether plaintiff could maintain such a cause of action after the settlement of the Illinois action. Plaintiff contends that the settlement does not affect his right to assert a breach of contract claim, and although he does not seek the right to further amend his complaint at this time, he does indicate that he is reserving his right to later sue on the breach of contract theory.

2

agreement which contained the choice of forum provision, there was no legal bar to commencing an action in a state other than that provided for in the parties' agreements.

If, at bar, the language of the forum selection clause was limited to disputes arising out of the TOS and the ROR, plaintiff could proceed with his action in this State. Clearly, that is not the situation. Under the terms of the forum selection clause in this case, "exclusive jurisdiction for <u>any claim or dispute</u> resides in the courts of the Commonwealth of Virginia" (emphasis added). Since the very language agreed to by plaintiff requires that an action based upon any claim or dispute between the parties, and not just those arising under their agreements, be commenced in the Commonwealth of Virginia, the forum selection clause is both applicable and controlling in this case (<u>cf</u>., <u>Meachum v. Outdoor World Corporation</u>, 235 A.D. 2d 462,464 [2d Dept. 1997][Choice of law clause which "provide[d] that [the parties' agreement] is to be governed by and interpreted under Pennsylvania law [did] not preclude assertion of [a] [§349] claim, inasmuch as th[e] claim [did] not involve any issue relating to the terms of the contract or its interpretation."]).

As his next avenue of attack upon the clause, plaintiff contends that he cannot be bound by its terms because it was not the result of arms-length negotiations, "but rather is a contract of adhesion", as to which he was given a "take-it-or-leave-it" choice (Mem. in Opp., pp.5-6, n.4). This argument is unconvincing. As made clear by the court in <u>Matter of Fidelity & Deposit Company of Maryland v. Altman</u> (<u>supra</u>), "it does not avail [plaintiff] that the clause was contained in a form agreement ... or that [plaintiff] may not have been in bargaining parity with [defendant]" (<u>see</u>, <u>Carnival Cruise Lines v. Shute</u>, 499 U.S. 585 [1991] [Forum selection clause enforceable although not negotiated and set forth in form ticket contract]).

Finally, plaintiff asserts that the forum selection clause may not be enforced because it is against public policy. In this regard, plaintiff's position is that the enforcement of the provision would permit defendant to immunize itself against this State's declared policy of regulating businesses operating within its borders so as to ensure that they do not engage in misleading business practices which injure New York consumers.

Certainly, if defendant's purpose in requiring agreement with its forum selection clause was to avoid application of §349 to its business operations, a basis would exist for this Court to refuse to enforce that provision (<u>see</u>, <u>Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.</u>, 980 F. Supp. 53 [D.D.C. 1997][District of Columbia consumer protection law claim barred by enforcement of standard choice of law provision in contract]; <u>see, also</u>, <u>Haynsworth v. The Corporation</u>, 121 F. 3d 956 [5th Cir. 1997]). In this case, defendant makes the valid argument that its

4

headquarters is located in the Commonwealth of Virginia, and that since it does business throughout the country, it sought the protection of the forum selection clause merely to avoid being subject to suit in each of the fifty states. Notably, plaintiff has offered nothing to contradict that position, or to indicate that defendant's reliance upon the clause was for the nefarious purpose of avoiding the consumer protection laws of the State of New York.

Nor has plaintiff demonstrated that enforcement of the clause will deprive him of protection of his consumer rights pursuant to the laws of the Commonwealth of Virginia. In this regard, the Court finds it significant that plaintiff does not offer any statutory or case law authority from that jurisdiction which would support the conclusion that the conduct allegedly engaged in by defendant is not also subject to regulation in the agreed upon forum.

As is evident from the analysis set forth above, plaintiff has failed to  make the "strong showing" necessary to establish that the forum selection clause to which he agreed should not be deemed controlling in this case (see, DiRuocco v. Flamingo Beach Hotel & Casino, Inc., supra, 163 A.D. 2d, at 272). For that reason, the motion to dismiss the complaint is granted. Based upon that determination, the Court does not address defendant's alternate grounds for dismissal.

The foregoing shall constitute the decision and order of the Court.

Dated: White Plains, New York
       January 27, 1998

                                    _____
                                    HON. JOHN P. DiBLASI, J.S.C.

cc:
Kaufman Malchman Kirby & Squire
Attorneys for Plaintiff
919 Third Avenue
New York, New York 10022

Mayer, Brown & Platt
Attorneys for Defendant
1675 Broadway
New York, New York 10019

5

**EXHIBIT 7**

OCT-14-2004 15:34  FROM: 5135796457                    TO:912028795200              P:2/4



COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT L. SCHWARTZ | : | Case No. A0300529 |
| Plaintiff, | : | Judge Marsh |
| v. | : | |
| AMERICA ONLINE, et al. | : | MAGISTRATE'S DECISION |
| Defendants. | : | |

**RENDERED THIS** ⎵12⎴ **DAY OF OCTOBER, 2004.**

Before the court is the defendant America Online's motion to dismiss this action on the basis that the agreement that the parties entered into previously requires any litigation between the parties arising out of the agreement to be litigated in the Commonwealth of Virginia. The court has reviewed the documents to wit: the affidavit (Declaration) of Carrie F. Davis, the attached Exhibit "A" purporting to be the agreement between the parties, the memoranda along with attachments, and the arguments of counsel. The court also refers to the decision of the First Appellate District in *Information Leasing Corporation v. Larry K. Baxter*, 2002 Ohio 3930 (August 2, 2002) which held, in a case where the defendant has signed an agreement with plaintiff requiring any litigation to be commenced in the State of Ohio,[1]

> "Baxter thus assented to this straightforward contract language and must live up to his end of the commercial bargain to the extent that he consented to personal jurisdiction in the courts of Ohio."

In the absence of any evidence before this court that 1. plaintiff is a consumer, not a commercial user, or 2. that enforcement of the forum selection clause would be

---

[1]/Baxter resided in the State of North Carolina and entered into the contract in that state.

unfair and unjust, this court finds that the plaintiff, an attorney at law, agreed to the

jurisdiction of the Virginia courts by his initial use of the product and further finds that

the defendant's motion to dismiss is well taken.  This matter is dismissed.

_____
RICHARD A. BERNAT
MAGISTRATE
COURT OF COMMON PLEAS

Copies sent by Clerk of Courts to:

Jonathan H. Waller, Esq.
2100-A Southbridge Pkwy, Suite 450
Birmingham, Alabama 35209

Robert L. Schwartz, Esq.
906 Main St., Suite 405
Cincinnati, Ohio  45202

Retailers National Bank
P.O. Box 59317
Minneapolis, Minnesota  55459-0317

Target
3901 West 53rd St.
Sioux Falls, South Dakota  571064216

Eugene F. Assaf, Esq.
Daniel T. Donovan, Esq.
Laura A. Thoms, Esq.
Kirkland & Ellis LLP
655 15th St. NW
Washington, DC  20005

James E. Burke, Esq.
E. Todd Wilkowski, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth St.
Cincinnati, Ohio  45202

OCT-14-2004 15:34  FROM: 5135796457                    TO:912028795200          P:4/4

## NOTICE

Objections to the magistrate's decision must be filed within fourteen days of the filing date of the Magistrate's Decision. If this decision contains findings of fact and conclusions of law, a party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law in this decision unless the party timely and specifically objects to that finding or conclusion as required by Civ. R. 53(E)(3).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT COPIES OF THE FOREGOING DECISION HAVE BEEN SENT BY ORDINARY MAIL TO ALL PARTIES OR THEIR ATTORNEYS AS PROVIDED ABOVE.

Date: 10-12-04    Deputy Clerk: _____

3

**EXHIBIT 8**

10/15/2001   17:56   FRANTZ WARD LLP → #006912 328795200                    NO.585   701
10/15/2001   15:38   12169200016          LEVIN/WAHL LAW FIRMS              PAGE 02



CASE CV-428853  OCT. 09,2001

1ST ROCCO S PARISH FEDERAL
VS.
AOL TIME WARNER INC AKA.
JUDGE

MCCAFFERTY, BRIDGET M.

FILING DATE 10/04/01
THIS JUDGE HAS A CONFIRMS
PRESS MOTION FOR LEAVE
FOR IMPROPER FORUM FILED ON
AUGUST 6, 2001 IS GRANTED.
HOWEVER, CIVIL PRO.63 (B), THIS
ACTION IS TRANSFERRED TO OHIO.
RULE ON PLAINTIFF, SIXTY
DAYS OF THE FILED (30) DAYS.
THE ACTION HAS BEEN
RECOMMENDED IN THE
OUT-OF-STATE FORUM WITHIN
SIXTY (60) DAYS OF AN AFFIDAVIT
IS FILED, THE ACTION WILL BE
DISMISSED WITHOUT PREJUDICE.
HAVING FOUND

TO:

O'SHEA,MICHAEL J.
SUITE 650 LAKESIDE PLACE
323 LAKESIDE AVE.
CLEVELAND            OH 44113

GERALD E. FUERST
CLERK OF COURTS
COURT OF COMMON PLEAS
CUYAHOGA COUNTY
JUSTICE CENTER - COURT TOWER
CLEVELAND,OHIO  44113

OCT 10 01

**FILE COPY**

**EXHIBIT 9**

Westlaw.

Not Reported in A.2d                                                      Page 1
Not Reported in A.2d, 1998 WL 307001 (R.I.Super.)
(Cite as: Not Reported in A.2d)

C
Groff v. America Online, Inc.R.I.Super.,1998.Only
the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Rhode Island.
Lawrence GROFF, individually and on behalf of all
other similarly situated
v.
AMERICA ONLINE, INC.
No. PC 97-0331.

May 27, 1998.

DECISION
CLIFTON, J.
*1 The matter is before the Court on defendant
America Online, Inc.'s Motion to Dismiss plaintiff's
Complaint [FN1] on the grounds of improper venue
pursuant to Rules of Civil Procedure, (R.C.P) Rule
12(b)(3).

FN1. Plaintiff has filed this purported class
action on behalf of himself and "on behalf of
all others similarly situated." This Court has
not ruled on whether or not this matter may
proceed as a class action, and if it may, who
may constitute the class.

FACTS:

According to plaintiff's Complaint, defendant is a
"[V]irginia Company" that operates an "on-line"
computer service which allows plaintiff "to access
and receive information via his personal computer,
including access to the Internet, so-called."

Initially, individuals receiving that service were
provided, for a set fee, a limited maximum number of
hours and were charged additionally for time "on
line" beyond the limited maximum. Thereafter,
defendant initiated a "flat fee" which allowed for
unlimited hours "on line."

The gravamen of plaintiff 's complaint is, at the time
he accepted defendant's offer for unlimited service,
defendant knew they were unable to provide the
service and said actions were in violation of the
Rhode Island Unfair Trade Practice and Consumer
Protection Act, R.I.G.L. (1956) 6-13.1-1, et seq.

Before this action was filed, January 21, 1997, a
similar action had been certified as a class consisting
of "all AOL subscribers who were subscribers to
AOL on December 1, 1996 or who became
subscribers on said date or thereafter" in the Circuit
Court, Cook County (Il.) entitled Schwab, et al. vs.
America Online, Inc., No. 96 CH 13732. Although
plaintiff could have been a member of the class, he
"opted out" of the Schwab class, July 25, 1997, prior
to the effective date for class inclusion, October 2,
1997.

Additionally, similar actions entitled Pollock vs.
America Online, C.A. No. 97-109A, Snyder vs.
America Online, C.A. No. 97-110A and New Century
Communications vs. America Online, C.A. No. 97-444A
were pending before the United States District Court,
Eastern District of Virginia (Alexandria Division), as
well as litigation in other jurisdictions.

Defendant, after initially filing its Motion to Dismiss
pursuant to Rules of Civil Procedure (R.C.P.)
12(b)(1), (b)(2), (b)(3) and (b)(6), narrowed its
argument to the motion pursuant to R.C.P. 12(b)(3),
improper venue, and argued that either the forum
selection clause in defendant's contract with its
members, including plaintiff, or the policy of forum
non conveniens requires that this action must be
litigated in Virginia.

In support of its Motion, defendant submitted the
affidavit dated October 9, 1997 of Randell J. Boe,
Assistant General Counsel for defendant, together
with an exhibit (Exhibit 1) entitled "Quick Reference
Guide-America OnLine 3.0 For Windows 95"
consisting of ninety-four (94) pages showing "(...each
screen in order that the member sees and interacts
with it immediately upon loading the software.)"
(paragraph no. 3).

The affidavit outlines the process each subscriber
must follow. The affidavit asserts in paragraph 7 after
reading the Terms of Service (TOS) "... the user is
unable to proceed onto the AOL system or become an
AOL member without affirmatively choosing to
accept the TOS. The user has the option of clicking 'I
Agree' or 'I Disagree' after reading the TOS."
(Exhibit 1 at page 79).

*2 The affidavit states in paragraph 8 "[T]he TOS
contains a forum selection clause which expressly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 2
Not Reported in A.2d, 1998 WL 307001 (R.I.Super.)
**(Cite as: Not Reported in A.2d)**

provides that Virginia law and Virginia courts are the appropriate law and forum for the litigation between members and AOL" (Exhibit 1 at page 59).

Plaintiff, in his affidavit dated October 6, 1997, stated in part that "he never saw, read, negotiated for or knowingly agreed to be bound by the choice of law or forum selection clause...." (Paragraph 7).

*DISCUSSION:*

As a threshold matter, the Court must decide if given the nature of defendant's motion, it may consider the affidavits without converting the motion to one of summary judgment. Our Supreme Court has held that a trial court, when deciding a preliminary jurisdictional motion which does not reach the merits of the issue at hand, may consider matters outside the pleadings, such as an affidavit, without treating the matters as a summary judgment motion under Rule 56 of the Rules of Civil Procedure. *Almeida vs. Radovsky, 506 A.2d 1373, 1376 (R.I.1986).*

As with the defendant in *Almeida,* defendant here is not seeking a decision on the merits of plaintiff's claim. Rather it is arguing that this Court should refrain from exercising its jurisdiction over this matter based upon the terms of the contract. Plaintiff, while disagreeing with most of the arguments raised by defendant, does not challenge the propriety of defendant submitting its affidavit or its use in resolving the issue. Instead, plaintiff submits his own for the court's consideration.

By statute, R.I.G.L. 6-13.1-5.2, the General Assembly has authorized a private right of action for alleged deceptive trade practices involving "...personal, family or household purposes...." Subsection (a) provides that the action may be brought "...in the Superior Court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business, or in the Superior Court of the county as is otherwise provided by law..."

Defendant does not deny that, at a minimum, it is "...doing business" within Providence County. As such, absent other policy interest, venue in this matter is proper and defendant's motion should be denied.

Defendant argues that either the "forum selection clause" contained in its terms of service membership agreement or the doctrine of *forum non-conveniens* requires this action be dismissed in Rhode Island.

Plaintiff argues alternatively: (1) that the actions he complains of occurred before the contract became operative and therefore, the Court is not bound to accept the contract, (2) that transfer of a matter based upon improper venue from District Courts of the United States is expressly authorized in Title 28, Section 1404(a) of the United States Code, and is not authorized by statute in Rhode Island, (3) lastly that the policy of *forum non conveniens* has not been addressed by the Rhode Island Supreme Court and this Court should not dismiss the matter on this ground.

I. "PRECONTRACT"

*3 Addressing first plaintiff's argument that his action relates to "precontract" activity, thus the terms of the contract should not apply. Plaintiff relies principally on the Supreme Judicial Court decision *Jacobson vs. Mailboxes, Etc. USA, Inc., 419 Mass. 572, 646 N.E.2d 741 (Mass.1995)* vacating and remanding for further consideration a trial court's denial of a summary judgment motion by a defendant, where the trial court concluded that Massachusetts would not enforce a forum selection clause. In *Jacobson,* the Appellate Court attempted to predict how the courts of the forum state (California) under the terms of the agreement would interpret the clause as it applied to a preliminary showing by plaintiff of misrepresentation or fraud before the contract became operative.

It is clear from an objective reading of *Jacobson* that the Court was attempting to predict the law of California and that its holding should be limited to the facts there present, which although persuasive, is not binding upon this Court.

Further, to accept plaintiff's arguments would require this Court to go beyond that which is necessary to decide a jurisdictional question and reach the merits of the respective claims which is inappropriate given the limited nature of the motion before the Court.

II. IMPROPER VENUE

Historically, courts have looked with disfavor upon forum selection clauses on the basis that such clauses were contrary to public policy or had the effect of ousting proper jurisdiction from a court. However, in *M/S Bremen vs. Zapata Off-Shore Company, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972),* the United States Supreme Court held in reversing and remanding the matter for further consideration, that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1998 WL 307001 (R.I.Super.)
(Cite as: Not Reported in A.2d)

Page 3

such forum selection clauses were "prima facie valid..." which should be upheld unless it is shown to be "unreasonable" by the resisting party under the circumstances. 407 U.S. at 10, S.Ct. at 1913. That court went further to explain that where a contract is "...unaffected by fraud, undue influence or overweening bargain power..." the contract should be given its full effect.

Under the test enunciated in *M/S Bremen*, the party resisting the motion bears a heavy burden of proof in his attempt to demonstrate unreasonableness. 407 U.S. at 17, 92 S.Ct. 15, 1917.

After *M/S Bremen* was decided, numerous Circuit Courts applied factors in determining if a forum selection clause was unreasonable. Locally, then District Judge (now Circuit Judge) Selya upheld a forum selection clause between defendant (a California corporation) and plaintiff (a Rhode Island resident) seeking recovery, in part, under the same legal theory and statutory basis as here, R.I.G.L. 6-13.1-5.2, transferring plaintiff's action to California in *D'Antuano vs. CCH Computax System, Inc.*, 570 F.Supp. 708 (D.R.I.1983).

Judge Selya analyzed nine factors which other Federal Courts have examined in applying the reasonableness of enforcing a forum selection clause, those being:

*4 1. identity of the law that governs the construction of the contract;

2. place of execution of contract;

3. place where transactions are to be performed;

4. availability of remedies in the designated forum;

5. public policy of the initial forum state;

6. location of the parties, the convenience of the prospective witnesses, and the accessibility of evidence;

7. relative bargaining power of the parties and the circumstances surrounding their dealings;

8. presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances; and

9. the conduct of the parties.

Judge Selya wrote further "[W]hile each of these factors has some degree of relevance and some claim to weight, there are no hard-and-fast rules, no precise formula. The totality of the circumstances, measured in the interests of justice will and should ultimately control." 570 F.Supp. at 712.

Applying the above factors to this matter, under the

terms of the agreement (Exhibit 1, page 59), "[T]he laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern the TOS and your membership." It is not clear, in this electronic age, where the last place the contract was executed. Was it when plaintiff clicked the "I agree" button (Exhibit 1, page 33) in Rhode Island or where that message was received, at defendant's mainframe in Virginia? The place where the transaction has been or are to be performed appears to take place where defendant's mainframe is located. Given the burden imposed upon plaintiff, this Court is not satisfied that the contract was executed in Rhode Island, or to be performed in Rhode Island.

As to the availability of a remedy, if this matter were brought in Virginia, the Virginia Legislature has enacted the "Virginia Consumer Protection Act of 1977, (1977, c. 635) which authorizes a private right of action and permits recovery of "...actual damages, or $500.00, whichever is greater," unless it is found that the violation was willful which would permit treble damages or "...$1,000.00, whichever is greater." § 59.1-204 Virginia Consumer Protection Act of 1977 (1977 c. 635). Unlike one concern raised in *Jacobson* as to whether plaintiff's action could be barred based upon the statute of limitations having run, it does not appear that plaintiff would be prevented from commencing and pursuing his action against defendant for that reason. § 59.1-204.2. Virginia Consumer Protection Act of 1977 (as amended 1988 c. 241, 1995 cc. 703, 726).

While no one can seriously argue that the public policy of Rhode Island to provide a remedy for its citizens is not an important one, it is at least of equal, if not greater importance, that parties to a contract who select Rhode Island as the forum that agreement should be enforced by other jurisdictions. Indeed as the Uniform Commercial Code, applicable in Rhode Island provides in part "...when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." R.I.G.L. 6A-1-105.

*5 With the exception of plaintiff, it would appear that all the remaining parties, and evidence is in Virginia. This makes access to evidence, compulsory process of witness, views if necessary, more convenient.

Additionally, plaintiff cannot claim that he is uninformed in the area of contract law. Plaintiff, as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                     Page 4
Not Reported in A.2d, 1998 WL 307001 (R.I.Super.)
(Cite as: Not Reported in A.2d)

pointed out by defendant (supplement memorandum page 10), has been at the bar in this state for approximately thirty (30) years. In *Moretti & Perlow Law Office vs. Aleet Associates,* 668 F.Supp. 103, 107 (D.R.I.1987), where plaintiff was resisting his complaint being transferred from Rhode Island to New York under a forum selection clause in the agreement the court observed, "[W]ith respect to overweening bargaining power (plaintiff ) is an experienced Rhode Island attorney well-versed in the rudiments of contract law. If he did not read and understand the motor vehicle lease in question, he surely should have done so."

While defendant prepared this contract, plaintiff was under no obligation to agree to the terms. Plaintiff had the option to refuse the service and the contract offered by plaintiff. Although plaintiff, in his affidavit, states "I never saw, read, negotiated for or knowingly agreed to be bound by the choice of law..." he does not point to any conduct of defendant or other reason why he could not. Indeed as pointed out in defendant's affidavit and argued in his memorandum, one could not enroll unless they clicked the "I agree" button which was immediately next to the "read now" button (Exhibit 1, page 33) or, finally, the "I agree" button next to the "I disagree" button at the conclusion of the agreement (Exhibit 1, page 79).

In *McKendall Lumber Co. vs. Kalian,* 425 A.2d 515 (R.I.1981), where the facts disclosed an agent for defendant purchased and signed a sales slips upon receipt which called for interest, defendant at trial argued that he was not bound to the terms. Our Court, at 518, stated the general rule that a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents. Here, plaintiff effectively "signed" the agreement by clicking "I agree" not once but twice. Under these circumstances, he should not be heard to complain that he did not see, read, etc. and is bound to the terms of his agreement.

Plaintiff correctly maintains that under *M/S Bremen* "(a) forum selection clause should not be enforced where it is invalid because of fraud." Plaintiff's argument is that his action is commenced under the Unfair Trade Practice and Consumer Protection Act that is to say making a material misrepresentation that defrauded him which would support a common-law action for deceit. Here, as was pointed out by Judge Selya in *D'Antuono,* the complaint is brought for money damages (and other statutory relief) not

for rescission; nor does the plaintiff claim that the forum selection clause was the result of fraud.

*6 Lastly, as to the conduct of the parties, clearly plaintiff had the option not to accept defendant's terms. He did not. He chose to go on line.

### III. FORUM NON CONVENIENS

Although neither party has referred to any decision from the Supreme Court of Rhode Island, that Court has held that when the Rhode Island Rules of Civil Procedure and Rhode Island case law are silent, it is allowable to refer to the body of law that has addressed the question, particularly the Federal Rules of Civil Procedure which formed the basis of our rules. *Ciunci, Inc. vs. Logan,* 652, A.2d 961, 962 (R.I.1995).

"[T]he principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corporation vs. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 639, 842 (1947). See Wright, Miller & Cooper, Federal Practice and Procedure: Vol. 15 Jurisdiction 2d § 3828, page 288-89 (1986).

The Court in *Gulf Oil,* recognizing that it would be difficult to state a generalized rule for lower courts to follow, identified two interest, the private interest [FN2] affecting the convenience of the litigants versus the public interest [FN3] convenience to be considered in deciding the issue.

> **FN2.** Of private interest factors to be considered for (a) relative ease of access to sources of proof; (b) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if viewed would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

> **FN3.** Factors of public interest to be considered (a) administrative difficulties for courts where litigation is piled up in congested centers instead of being handled at its origin; (b) burden of jury duty upon a community having no relationship to litigation; (c) local interest in having

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 5
Not Reported in A.2d, 1998 WL 307001 (R.I.Super.)
**(Cite as: Not Reported in A.2d)**

       localized controversies decided at home.

Generally, a plaintiff's choice of forum is entitled to great weight and should be disturbed only in exceptional circumstances. *Elbalah vs. Republic Ins. Co., 879 F.Supp. 3, 4 (D.R.I.1995); Blinzee vs. Marriott International, Inc., 857 F.Supp. 1, 3 (D.R.I.1994)* other citations omitted.

In analyzing the "private interest factors", all of them weigh in favor of this matter as it presently stands being tried in Virginia.

## CONCLUSION

Based upon the controlling principals, plaintiff has the burden of persuading the Court that the forum selection clause in his agreement with defendant was unreasonable. For the reasons stated, this Court is not satisfied that plaintiff has met his burden. Defendant's Motion to Dismiss based upon improper venue is granted.

Counsel for the prevailing party shall submit an Order consistent with this Decision.

R.I.Super.,1998.
Groff v. America Online, Inc.
Not Reported in A.2d, 1998 WL 307001 (R.I.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10

 West Reporter Image (PDF)

456 F.Supp.2d 488, 2006-2 Trade Cases P 75,448

<u>Motions, Pleadings and Filings</u>

United States District Court,
S.D. New York.
Carl E. **PERSON**, Plaintiff,
v.
**GOOGLE** INC., Defendant.
No. 06 Civ. 4683(RPP).
Oct. 11, 2006.

**Background:** Advertiser, who sought to purchase ads on Internet search engine, brought antitrust action against search engine provider for its allegedly discriminatory pricing scheme. Provider moved to dismiss for improper venue on grounds that forum selection clause in advertising contract required claim to be brought in California.

**Holdings:** The District Court, <u>Robert P. Patterson, Jr.,</u> J., held that:
<u>(1)</u> forum selection clause was enforceable, but
<u>(2)</u> transfer to Northern District of California was warranted.

Motion granted.

West Headnotes

[1] KeyCite Notes 

⇐ <u>170B</u> Federal Courts
    ⇐ <u>170BII</u> Venue
        ⇐ <u>170BII(A)</u> In General
            ⇐ <u>170Bk94</u> k. Pleading Venue. <u>Most Cited Cases</u>

Upon a motion to dismiss for improper venue, the plaintiff has the burden of pleading venue. <u>Fed.Rules Civ.Proc.Rule 12(b)(3), 28 U.S.C.A.</u>

[2] KeyCite Notes 

⇐ <u>170B</u> Federal Courts
    ⇐ <u>170BII</u> Venue
        ⇐ <u>170BII(A)</u> In General
            ⇐ <u>170Bk96</u> k. Affidavits and Other Evidence. <u>Most Cited Cases</u>

Upon a motion to dismiss for improper venue, the court accepts facts alleged in the complaint as true and draws all reasonable inferences in plaintiff's favor. <u>Fed.Rules Civ.Proc.Rule 12(b)(3), 28 U.S.C.A.</u>

[3] KeyCite Notes

⇐ <u>95</u> Contracts
    ⇐ <u>95II</u> Construction and Operation

☞95II(C) Subject-Matter
  ☞95k206 k. Legal Remedies and Proceedings. <u>Most Cited Cases</u>

Forum selection clause language must be mandatory to be enforced.


[4] <u>KeyCite Notes</u> 


☞95 Contracts
  ☞95I Requisites and Validity
    ☞95I(F) Legality of Object and of Consideration
      ☞95k127 Ousting Jurisdiction or Limiting Powers of Court
        ☞95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. <u>Most Cited Cases</u>

The presumption of validity regarding a mandatory forum selection clause can only be overcome: (1) if the clause's incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.


[5] <u>KeyCite Notes</u> 


☞95 Contracts
  ☞95I Requisites and Validity
    ☞95I(F) Legality of Object and of Consideration
      ☞95k127 Ousting Jurisdiction or Limiting Powers of Court
        ☞95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. <u>Most Cited Cases</u>

The fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally.


[6] <u>KeyCite Notes</u> 


☞95 Contracts
  ☞95I Requisites and Validity
    ☞95I(F) Legality of Object and of Consideration
      ☞95k127 Ousting Jurisdiction or Limiting Powers of Court
        ☞95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. <u>Most Cited Cases</u>

Advertiser did not establish that incorporation of forum selection clause into contract for placement of ads on Internet search engine was the result of fraud or overreaching, as would make clause unenforceable, since advertiser's sole claim of contractual fraud concerned the contract generally, and not the inclusion of the forum selection clause; advertiser claimed that he entered into contract with Internet search engine provider for ads that would appear on search engine when a user searched for keywords selected by advertiser because of provider's false claim that keywords were obtained through auction and awarded to highest bidder.


[7] <u>KeyCite Notes</u> 

⇐95 Contracts
   ⇐95I Requisites and Validity
      ⇐95I(F) Legality of Object and of Consideration
         ⇐95k127 Ousting Jurisdiction or Limiting Powers of Court
            ⇐95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. <u>Most Cited Cases</u>

Candidate for New York state office, who entered into contract to place ads on Internet search engine for purpose of compiling a voter list, was not deprived of his right to a meaningful hearing of his antitrust action against search engine provider by forum selection clause contained in advertising agreement, which required candidate to adjudicate his claims against provider in California, despite candidate's assertions that New York was a more convenient forum and that he needed to compile voter list prior to election day; candidate did not assert he was unable to initiate suit in California, and his claims for damages would survive election day.


[8] KeyCite Notes  


⇐95 Contracts
   ⇐95I Requisites and Validity
      ⇐95I(F) Legality of Object and of Consideration
         ⇐95k127 Ousting Jurisdiction or Limiting Powers of Court
            ⇐95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. <u>Most Cited Cases</u>

Forum selection clause in advertising agreement, which required advertiser, a New York resident, to bring his antitrust claims against California publisher in California, did not violate fundamental fairness, as would render clause unenforceable; advertiser presented no evidence that publisher was forum shopping, made no claim of fraud or overreaching in obtaining his assent to the clause, and had notice of the clause.


[9] KeyCite Notes  


⇐95 Contracts
   ⇐95I Requisites and Validity
      ⇐95I(F) Legality of Object and of Consideration
         ⇐95k127 Ousting Jurisdiction or Limiting Powers of Court
            ⇐95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. <u>Most Cited Cases</u>

Form advertising contract, which Internet search engine provider required advertiser to sign in order to place targeted ads on search engine, was a contract of adhesion, and thus forum selection clause contained in contract was subject to a more refined scrutiny for fairness; although advertiser was not unrepresented, uneducated and needy, provider was a large, economically powerful company that required all advertisers to sign contract that it drafted.


[10] KeyCite Notes  


⇐95 Contracts
   ⇐95I Requisites and Validity
      ⇐95I(F) Legality of Object and of Consideration
         ⇐95k127 Ousting Jurisdiction or Limiting Powers of Court

☞95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. Most Cited Cases

Enforcement of forum selection clause in advertisement agreement, which required adjudication of advertiser's claims against publisher in federal district court in California, would not violate strong public policy of federal district court for New York, forum where advertiser brought action against publisher, as would render clause unenforceable, since forum selection clauses were presumptively valid in New York.

[11] KeyCite Notes 

☞95 Contracts
    ☞95I Requisites and Validity
        ☞95I(F) Legality of Object and of Consideration
            ☞95k127 Ousting Jurisdiction or Limiting Powers of Court
                ☞95k127(4) k. Agreement as to Place of Bringing Suit; Forum Selection Clauses. Most Cited Cases

Enforcement of forum selection clause contained in advertisement agreement, which required New York advertiser to bring his antitrust claims against publisher in California, was not precluded by venue provisions of federal antitrust statutes; federal court in California was not less likely to give credence to advertiser's claims than a New York court. Sherman Act, § 1 et seq., 15 U.S.C.A. § 1 et seq.

[12] KeyCite Notes 

☞170B Federal Courts
    ☞170BII Venue
        ☞170BII(B) Change of Venue
            ☞170BII(B)2 Venue Laid in Wrong Forum
                ☞170Bk122 k. Particular Determinations. Most Cited Cases

Interests of justice warranted transfer of advertiser's action against publisher, which was improperly brought in New York in contravention of forum selection clause contained in advertising contract, to Northern District of California, the forum selected by the contract. 28 U.S.C.A. §§ 1404(a), 1406(a).

**\*490** Carl E. Person, New York City, Pro se.

Jonathan M. Jacobson, Meredith E. Kotler, Sara Ciarelli, Wilson Sonsini Goodrich & Rosati, New York City, for Defendant.

OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.
By motion dated July 27, 2006, Defendant, Google INC. ("Google"), moved to dismiss the Complaint pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") all counts of Plaintiff, Carl E. Person's ("Person"), Complaint for violation of Sections 1 and 2 of the Sherman Antitrust Act, the Donnelly Act, Sections 349(a) and 350 of New York's General Business Law, and Section 16720 of the California Cartwright Act.

For the reasons that follow, Defendant's motion to dismiss for improper venue is granted.

**BACKGROUND**

### A. *Procedural Posture*

Plaintiff filed a Complaint with the Court on June 19, 2006. He filed a Motion for Preliminary Injunction on June 27, 2006. Defendant filed a Notice of Motion to Dismiss on July 27, 2006. Plaintiff filed his Reply, along with a Cross-Motion for Leave to Amend Complaint and Alternative Cross-Motion to Transfer to California on August 3, 2006. Defendant filed a Reply to Plaintiff's Cross-Motion on August 31, 2006. Arguments on Defendant's Motion to Dismiss were heard on September 13, 2006. Plaintiff moved to amend his Complaint again on September 14, 2006. His Motion to File an Amended Complaint was denied on September 20, 2006.

**\*491** Count One of the Complaint charges Google with monopolization or attempted monopolization, along with a conspiracy to monopolize under Section 2 of the Sherman Act (15 U.S.C. § 2). Count Two charges a conspiracy to fix prices and restrain trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). Count Three alleges a conspiracy to restrain trade in violation of New York's Donnelly Act (New York General Business Law § 340). Counts Four and Five allege deceptive acts and false advertising in violation of Sections 349(a) and 350 of the General Business Law of the State of New York. Count Six alleges a conspiracy in violation of the California Cartwright Act Section 16720.

### B. *Parties*

Plaintiff, Person, is a 70-year-old attorney and businessperson who lives in New York. He is running for Attorney General in the November 2006 election. (Pl.Compl.¶ 7.) Defendant is a Delaware Corporation with its principal place of business in California, and with a place of business in New York. ( *Id.* ¶¶ 4, 9, 10.)

### C. *Statement of Facts*

Google's internet search technology offers the world's largest online index of websites and to anyone with an internet connection, free of charge. Google derives its primary revenue from businesses that advertise their products and services on its website. ( *Id.* ¶ 11.) Thousands of advertisers pay Google to advertise their websites on its search page. ( *Id.*) Google's AdWords program is used by businesses to promote their products and services with targeted advertising. ( *Id.*) Ads appear either to the right of or above a searcher's displayed results on Google's main website; these ads are designated "sponsored." ( *Id.* ¶ 23.) The ads are linked to certain keywords chosen by the advertisers. When a Google user searches for a particular term, only the ads linked to that term will appear in the sponsored section. (Pl.'s Mem. in Opp'n. to Def.'s Mot. to Dismiss at 20.) Advertisers are charged each time a user clicks the link that is displayed along with their advertisement. ( *Id.*)

In August 2005, Google created its quality score analysis, which automatically evaluates whether or not to publish, and at what price to publish ads for businesses wishing to make use of a particular keyword. (Pl.Compl.¶ 31.) The quality score is based on a number of factors, including "ad text and click through rate (CTR) on Google, relevance of … ad text, historical keyword performance on Google, the quality of [the business' ads] landing page and other relevancy factors," in particular the "content and layout of the page linked from [the proposed ad]." ( *Id.*)

Plaintiff claims that Google uses these factors engages in order to maintain its monopoly over "keyword targeted internet advertising." ( *Id.* ¶ 12.) Plaintiff is running for New York Attorney General in the November 2006 election and believes that, through advertising on Google, he can build a voter list of more than 100,000 New York residents. (Decl. of Carl E. Person ¶ 3, August 2, 2006.) He alleges that he has been thwarted in this quest by Defendant's discriminatory pricing scheme. ( *Id.* ¶ 16.) He charges that there is a hidden set of rules and software instructions that deny Plaintiff and other small business users the ability to find and use any keywords at the advertised minimum prices. He alleges that these prices are reserved for high volume advertisers such as eBay! and other alleged co-conspirators. ( *Id.* ¶ 25). Plaintiff recently sought to take advantage of Google's offered minimum price-per-click by using **\*492** keywords that no other advertiser was bidding on. He found 25 English

words that when used in a search returned no advertisements. ( *Id.* ¶ 54.) Plaintiff then immediately tried to bid on these words as keywords, but was advised by AdWords that these words were not available for keyword use. ( *Id.* ¶ 55-6.) He alleges that this is due to a specific effort by Google to keep him from advertising on its website. ( *Id.* ¶ 58.)

Plaintiff alleges that even though Defendant uses software to regulate the content and relevancy of the ads that are linked to particular keywords, the software is designed to overcharge its smaller customers (Plaintiff included), and reduce costs for high-volume advertisers. (Pl.Compl.¶ 18.) Plaintiff contends that Defendant uses its "quality score" to weed out advertisers that it believes will not be profitable to them. (Pl.Opp'n.Mem.7.) He claims that this subjective judgment directly contradicts Defendant's claim that the bidding process for keywords by advertisers is an "auction," in which bidders receive placement on Google's search page in relation to the price they bid, not the quality or relevance of their landing page. ( *Id.* at 6.)

The Complaint further alleges that Defendant has conspired with its large-volume advertisers: eBay, Schwab & Co., John Hancock Life Insurance Co., Lexus, Honda, Travelocity, Orbitz, Priceline, Expedia, Circuit City, Amazon PriceGrabber, AOLShopping, Toshiba Direct, and Best Buy, among others, to "reduce not eliminate the profitable use of AdWords by the Plaintiff and other small businesses" (Pl.Compl.¶¶ 35-40), and that Defendant is able to do this without repercussion because its major competitors, Yahoo! and MSN, are "poor, undesirable substitutes." ( *Id.* ¶ 30A.)

Defendant asserts that as a condition of using the AdWords program, all users, including Plaintiff, enter into a contract with a forum selection clause, and should be held to that contract. (Def.Mem.4.) Plaintiff does not dispute that he entered into such a contract. (Pl.Opp'n.Mem.4.) Because Defendant's motion to dismiss for improper venue is granted, the other grounds of its Motion to Dismiss will not be addressed.

### DISCUSSION

#### A. *Jurisdiction*
The Court has original jurisdiction over the claims arising out of the Sherman Act. *See* 13 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."). The Court has jurisdiction over the state claims because there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

#### B. *Standard of Review*
A threshold issue for a motion to dismiss based on a forum selection clause is whether the motion should be considered under Rule 12(b)(3) or Rule 12(b)(6). The Second Circuit has produced no definitive ruling on the issue. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 28 (2d Cir.1997) ("[N]o consensus [has] developed as to the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause."). Here, the issue will be considered under Fed. Civ. P. Rule 12(b)(3) because that is how it was framed by the parties. *See J.B. Harris, Inc. v. Razei Bar Industries, Inc.,* 37 F.Supp.2d 186, 189 (E.D.N.Y.1998) ("The Court does not decide whether this issue might more properly have been raised by way of ***493** Rule 12(b)(6), as the issue is squarely framed by Defendant under Rule 12(b)(3) and Plaintiff does not argue that this is an improper procedural mechanism.").

[1]    [2]    Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has the burden of pleading venue. However, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [plaintiff's] favor." *Caremark Therapeutic Servs. v. Leavitt,* 405 F.Supp.2d 454, 457 (S.D.N.Y.2005).

## C. *Forum Selection Clause*

Defendant moves to dismiss based on a forum selection clause contained in a contract signed by all users of AdWords. (Def.Repl.Mem.1.) Initially, Defendant produced a copy of the current agreement. ( *See* Decl. of Sarah Ciarelli Ex. A, July 27, 2006.) Plaintiff, however, objected that the 2006 agreement is not the same as the one he signed when he became an AdWords customer in 2003. (Pl.Opp'n.Mem.4.) In response, Defendant produced a copy of the contract users were asked to sign in 2003. Both contracts contain a forum selection clause stating that disputes or claims arising out of the contract are to be adjudicated in Santa Clara County, California.

Although Plaintiff now contends that the 2003 contract exhibited by Defendant may not be an exact replica of the one he signed, (he did not produce a copy of the contract he allegedly signed and did not allege that he would be able to do so if given the opportunity.) ( *See* Transcript of Sept. 13, 2006 Hearing ("09/13 Tr.") 17-8 (THE COURT: "If you want more time to respond to the reply papers ... I would ... consider allowing you ... more time to file a surreply." MR. PERSON: "Your Honor, I don't have any additional information than what I'm saying.").)

Furthermore, the only difference he claims between the contract Defendant's exhibit and the one he allegedly signed is that there were boxes on the latter for him to acknowledge his consent. ( *Id.*) Plaintiff does not dispute that he signed an agreement in November, 2003. ( *See id.* ("I went ahead and assented to whatever it was they gave me. I don't know what it was, but I did assent to it.").) Nor does he allege that the agreement he signed was different, in substance, from the 2003 contract exhibited by Defendant; he argues only that Defendant's proffered contract is not a copy of the specific agreement he signed. ( *Id.* at 18.) However, prior to using AdWords, every customer must click on a box acknowledging that they agree to the terms and conditions of Defendant's contract. (Decl. of David DiNucci ¶ 5, August 31, 2006.) Thus, Plaintiff's very existence as an AdWords customer is evidence that he agreed to the 2003 form contract proffered by Defendant. Even given the generous factual standard applied on a Rule 12(b)(3) motion, without more from Plaintiff, it appears that the contract Plaintiff signed did indeed contain the forum selection clause appearing in the 2003 contract proffered by Defendant.

The mere existence of a contract with a forum selection clause is not the end of an inquiry into proper venue; these clauses must be examined for accuracy and fairness. Forum selection clauses were once uniformly rejected by the federal courts. They are now, however, uniformly upheld. As the Second Circuit has stated, aversion to such clauses is "simply a vestigial remainder of an outmoded doctrine." *Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 721 (2d Cir.1982).

[3]  Forum selection clause language must, however, be mandatory to be enforced. ***494*** *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distrib., Inc.,* 22 F.3d 51 (2d Cir.1994). In *Boutari,* the Second Circuit overturned a dismissal based on a forum selection clause giving the courts of Greece jurisdiction because that contract could be read to permit, rather than insist on, Greece as a venue. *Id.* at 53. However, the court made clear that where, as here, "mandatory venue language is employed, the clause will be enforced." *Id.* The contract from 2003, at issue here, states that "[any] dispute or claim arising out of or in connection with this Agreement *shall* be adjudicated in Santa Clara County, California." (DiNucci Decl. Ex. B Sec. 15 (emphasis added).) Thus, it is clear that the venue clause at issue in this case was meant to be mandatory rather than permissive.

[4]  According to the Supreme Court, mandatory forum selection clauses "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Second Circuit has made clear that reasonableness will be presumed unless the plaintiff can make a strong showing otherwise. This "presumption of validity" regarding a forum selection clause can only be overcome:

(1) if [the clause's] incorporation into the agreement was the result of fraud or overreaching ...; (2) if

the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum ...; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy ...; or (4) if the clauses contravene a strong public policy of the forum state.

*Roby v. Corporation of Lloyds,* 996 F.2d 1353, 1363 (2d Cir.1993) (quoting *M/S Bremen,* 407 U.S. at 18, 92 S.Ct. 1907).

## 1. *Fraud or Overreaching*

[5]   [6]   Plaintiff's sole claim of contractual fraud is his allegation of false advertising by Defendant. (Pl.Compl.¶¶ 152-58.) He claims that calling the process by which AdWords' customers obtain keywords an "auction" is misleading because it fails to acknowledge the subjective component of Defendant's selection of ads. (Pl.Opp'n.Mem.20.) In other words, Plaintiff claims he was seduced into doing business with defendant based on a false claim of an auction process, characterized by objective awards based solely on bidding price. *Id.* Even if Plaintiff could make out a colorable claim of false advertising, which he cannot,[FN1] the fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally. *See A.I. Credit Corp. v. Liebman,* 791 F.Supp. 427, 430 (S.D.N.Y.1992)("A party may not, however, avoid the effect of a forum selection clause by merely alleging fraud or coercion in the inducement of the contract at issue. Rather, the party must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.' ") (quoting *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)(emphasis in the original)). Plaintiff does not claim that the inclusion of the forum selection clause in the AdWords agreement was the product of fraud. He ***495** has not met that ground for rejecting the forum selection clause.

> FN1. Defendant produced a printout from its AdWords website, which made quite clear that the bidding process for keywords was not a typical auction, and that the awarding of keywords was based on an examination of the relevance of the chosen word to the advertiser's website, the advertiser's click through rate, and several other factors. ( *See* Ciarelli Decl. at Ex. B.) Thus, it does not appear that Plaintiff was misled, by the suggestion that he was entering a typical auction, into doing business with Defendant.

## 2. *Deprivation of Plaintiff's Day in Court*

[7]   Plaintiff claims that dismissing this case for improper venue will deprive him of his right to a meaningful hearing because he is running for Attorney General of New York in November 2006 and needs to compile a voter list in advance of his election bid. (Person Decl. ¶¶ 3-6.) He alleges that he brought this case in New York because it is where he lives, and is a more convenient forum. While Plaintiff's urgency is understandable, it does not rise to the level of deprivation meriting a refusal to honor a forum selection clause. *See Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 11 (2d Cir.1995) (Plaintiff's allegations of inconvenience of Greece as forum did not "deprive [plaintiff] her day in court within the traditional meaning of the ... phrase."); *Olsen v. Muskegon Piston Ring Co.,* 117 F.2d 163, 165 (6th Cir.1941) ("[T]he right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard.").

Plaintiff does not assert that he was unable to initiate this suit in California. He claims only that New York is a more convenient forum and that there is urgency to his Complaint. However, as stated in his Complaint, Plaintiff has been a customer of AdWords since 2003, and Defendant has been using its allegedly discriminatory pricing scheme since at least December 2005. (Pl.Compl.¶ 8, 32.) Plaintiff did not bring this suit until June 2006. In view of his failure to act promptly, he cannot now allege that it would be this court's dismissal for improper venue that denied him his urgent remedy.[FN2] Furthermore, he is seeking damages as well as injunctive relief. ( *Id.* ¶ 97-8.) His damages claim will remain viable even after the election has taken place.

FN2. A definitive ruling on Defendant's 12(b)(6) motion would similarly fail to meet Plaintiff's time table given the multiple claims he has asserted and his desire to amend his complaint for a second time. ( *See* Letter of September 18, 2006 (requesting leave to file a second amendment).)

### 3. *Fundamental Fairness*

[8]  [9]  Plaintiff alleges that he assented to the agreement, only because it was a prerequisite to becoming an AdWords user. Unlike the contracts at issue in *Bremen,* and *Roby,* the AdWords contract is not the product of an arms-length negotiation. Instead it is an agreement that was drawn up entirely by Defendant, and signed by every AdWords customer. Plaintiff alleges that the agreement is a "contract of adhesion." ( *See* 09/13 Tr. 25 ("THE COURT: You're arguing it's a contract of adhesion." MR. PERSON: "I'm sorry, yes, adhesion, a contract of adhesion.").) Such contracts require a more "refined" scrutiny for fairness. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ("In evaluating the reasonableness of the forum clause at issue in this case, we must refine the analysis of The Bremen to account for the realities of form passage contracts.").

According to the Second Circuit, "[t]ypical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." *Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997). It should be noted at the outset that Plaintiff does not match *\*496* the picture of a victim of a contract of adhesion painted by the Second Circuit. He cannot claim to be "unrepresented, uneducated and needy" since he is an experienced lawyer, who, as is clear from his complaint and supporting memorandum, is highly intelligent and should be well able to understand the terms of a form contract. Google, on the other hand, is certainly a large, economically powerful company. Moreover, as mentioned earlier, in order to do business of any kind with AdWords, a user must sign an agreement drafted entirely by Defendant. Thus, it is appropriate in this dispute to treat this contract as one of adhesion, and scrutinize it more carefully to ensure the fairness of the forum choice.

As Judge Baer noted in *Caremark,* "[a]ny review of a forum selection clause for 'fundamental fairness' must begin with the seminal case of *Carnival Cruise Lines, Inc.*" 385 F.Supp. at 198. In *Carnival,* the Supreme Court dealt with a forum selection clause included on a passenger ticket for a commercial cruise. The Court disapproved of the language in the lower court opinion, which stated that a "nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining," *id.* at 593, 111 S.Ct. 1522. The Court ruled that the terms of the forum selection clause were "subject to judicial scrutiny for fundamental fairness." *Id.* at 595, 111 S.Ct. 1522. Among the factors the Court considered were (i) whether or not Carnival Cruise was forum shopping when it selected Florida as a venue; (ii) whether or not the passenger's assent to the contract was the product of "fraud or overreaching" and: (iii) whether the passengers had notice of the forum selection clause. *See id.*

### a. *Forum Shopping*

Plaintiff contends that Defendant selected the forum because they believe it will give them an edge in antitrust litigation-that they are, in essence, forum shopping. ( *See* Pl. Opp'n. Mem. at 4 ("Google ... effectively select[s] its judge in antitrust cases.").) Plaintiff, however, presents no reason to believe that federal judges in California have any reason to be prejudiced in favor of Defendants. He only asserts that Google's headquarters are located in the area. The fact that Defendant is located in California suggests another, highly plausible, reason why it would include a forum selection clause-in order to locate the myriad suits inevitably brought against a such a sizeable company in a single, convenient forum. *See Carnival Cruise,* 499 U.S. at 595, 111 S.Ct. 1522 (forum shopping claim belied by the fact that "Petitioner has its principal place of business in Florida.").

Furthermore, Plaintiff has requested a transfer to the Northern District of California should the motion to dismiss for improper venue be granted. (Pl. Opp'n. Mem. at 25.). Apparently, he has not reached the conclusion that the courts in California will decide in favor of Defendant if he wishes to pursue his complaint there.

### b. *Fraud or Overreaching*

As indicated above, Plaintiff has made no claim of fraud or overreaching in obtaining his assent to the forum selection clause.

### c. *Notice*

Finally, there is no indication that Plaintiff did not have notice that the forum for suits against Defendant were to be brought in Santa Clara County. In order to do business with AdWords, Plaintiff had to assent to the terms of its contract. ( *See* DiNucci Decl. ¶ 5 ("Before an advertiser's account will be activated, the advertiser *497* [must agree to] the AdWords agreement.").) By clicking on a link, a user is taken to the agreement before assenting to its terms. *Id.* In *Carnival,* passengers were not notified of the terms of the agreement until they had their ticket in hand since the agreement was the ticket. *See* 499 U.S. at 587, 111 S.Ct. 1522 ("The face of each ticket, at its left-hand lower corner, contained [the forum selection clause]."). Here, Plaintiff had more notice than the *Carnival* plaintiffs did since he had an opportunity to view and reject Defendant's terms before spending any money with AdWords.

Scrutiny of the contract between Plaintiff and Defendant does not uphold Plaintiff's allegations of unfairness.

### 4. *Against Public Policy of Forum*

[10]    The Supreme Court has said that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen,* 407 U.S. at 18, 92 S.Ct. 1907. It is clear, from Second Circuit precedent, however, that far from being against public policy in this Court's jurisdiction, forum selection clauses are considered "presumptively valid." *Roby,* 996 F.2d at 1363. Thus, the fourth factor of the test for reasonableness is also resolved in Defendant's favor.

### 5. *Conflict with Anti-Trust Laws*

[11]    Finally, Plaintiff claims that allowing Defendant to contractually designate a forum for antitrust claims, such as this one, will "emasculate the federal statutes providing antitrust plaintiffs with a greater choice of venue than provided to plaintiffs in other types of cases." (Pl.Opp'n.Mem.4-5.) However, the Second Circuit has addressed this point directly and decided to the contrary in *Bense,* 683 F.2d 718. There, the plaintiff argued that the "congressional purpose underlying the broad venue provision of [federal antitrust laws] was to promote vigorous private enforcement of the antitrust laws, and he contend[ed] that this precludes enforcement of contractual forum-selection clauses." *Id.* at 720. The Second Circuit was not persuaded by this argument, noting in particular that "[the plaintiff] ... [has] made no showing that his antitrust action could not be prosecuted as vigorously in Texas as in Vermont, nor has he demonstrated that the Congressional purpose would be subverted by enforcement of forum-selection clauses." *Id.*

Similarly, here, Plaintiff has made no showing that a federal court in California would be less likely to give credence to his claims than a court in New York, nor has he shown that the forum selection clause at issue in this case tends to subvert the purpose of federal antitrust enforcement.

### D. *Plaintiffs' Cross Motion to Transfer*

[12]  In his reply to Defendant's Motion to Dismiss, Plaintiff cross motions the Court to transfer his Complaint to the Northern District of California, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). (Pl.Opp'n.Mem.25.) Defendant contends that Plaintiff's method of raising this issue was not proper. ( *See* Def. Repl. Mem. 3 n. 1. (Claim presented without "any formal motion papers ... evidence nor argument in support of ... motion."))

Even if Defendant's allegation is true, it is immaterial. Courts dismissing for improper venue can transfer a complaint without motion from either party "in the interest of justice." 28 U.S.C. § 1406(a). The Second Circuit has stated that "[c]ourts enjoy considerable discretion when deciding whether to transfer a case in the interests of justice." *498 *Daniel v. American Bd. of Emergency Medicine,* 428 F.3d 408, 435 (2d Cir.2005). However, a court should not "waste judicial resources by transferring a case that is clearly doomed." *Id.* at 436 (quoting *Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir.1999)). Though it does appear that Plaintiff's claims will be difficult to sustain, it does not appear that they are "clearly doomed." Thus, the dispute is hereby transferred to the Northern District of California at San Jose, which is in Santa Clara County, the forum selected by the contract.

IT IS SO ORDERED.

S.D.N.Y.,2006.
Person v. Google Inc.
456 F.Supp.2d 488, 2006-2 Trade Cases P 75,448

Motions, Pleadings and Filings (Back to top)

- 2006 WL 2308117 (Trial Pleading) Complaint (Jun. 19, 2006) Original Image of this Document (PDF)
- 1:06cv04683 (Docket) (Jun. 19, 2006)
END OF DOCUMENT

West Reporter Image (PDF)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 11

FILED

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

AT 8:30 _____
WILLIAM T. WALSH
CLERK

| | | |
|---|---|---|
| LOUIS MUNI, | : | Civil No. 99-300 (AET) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| AMERICA ON-LINE, INC., | : | |
| Defendant. | : | |

THOMPSON, U.S.D.J.

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). On the basis of the papers submitted and oral argument before the Court on July 19, 1999, defendant's motion is GRANTED.

**Background**

Defendant America On-Line, Inc. ("AOL") is a Delaware Corporation headquartered in Virginia which operates a large interactive computer service. AOL gives its members access to a computer network called "the Internet".

As an AOL subscriber, plaintiff entered into a Terms of Service ("TOS") agreement with the defendant. In order to gain access to the Internet service, plaintiff was required to provide AOL with certain personal information about himself. The TOS agreement promised to protect plaintiff's privacy by not disclosing any personal information to third parties except in limited circumstances. See Terms of Service ¶ 5.

According to the complaint, sometime in October or November 1997, AOL breached the

08/16/99  '12:37 FAX 1 609 452 1447    JAMIESON MOORE/PRINCETON    ☒003/012

TOS agreement when an unidentified AOL employee disclosed confidential information about the plaintiff to a third party. See Complaint at ¶ 8,12. The complaint does not specify what information was disclosed or the identity of the party receiving the information.

Plaintiff brings this action claiming that the dissemination of his personal information breached the contract, violated his federal and state constitutional rights to privacy, and violated various federal and state statutes.

The contract also contained a forum selection clause which stated that:

The laws of the Commonwealth of Virginia, excluding its conflict-of-laws rules, govern the TOS and your membership ... Member expressly agrees that exclusive jurisdiction for any claim or dispute resides in the courts of the Commonwealth of Virginia. Member further agrees and expressly consents to the exercise of personal jurisdiction in the Commonwealth of Virginia in connection with any dispute or claim involving AOL, Inc.

See Terms of Service ¶ 11.A

Defendant now asks for dismissal of plaintiff's constitutional and statutory claims for failure to state a claim upon which relief can be granted under FED.R.CIV.P. 12(b)(6). Defendant further argues that any remaining claims should be dismissed pursuant to FED.R.CIV. P. 12(b)(3) because the forum selection clause requires that the action be litigated in Virginia.

## Discussion

The purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the case. A defendant must meet a high standard to have a complaint dismissed because, in ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff. See Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir.1989). All well-pleaded facts and allegations in the complaint must be taken as true. See Kost v. Kozakiewicz, 1 F.3d

06/16/99  12:37 FAX 1 609 452 1447    JAMIESON MOORE/PRINCETON              @004/012

176, 183 (3d Cir.1993). Dismissal is improper "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### Constitutional claims

Plaintiff asserts that AOL violated his federal and state constitutional right to privacy by releasing his personal information to a third party. AOL argues that this claim must be dismissed because it is not a state actor and "as a general principle, the federal constitutional guarantees of personal rights are enforceable as against federal or state governments only, and not as against private individuals." Hoagburg v. Harrah's Marina Hotel Casino, 585 F.Supp. 1167, 1171 (D.N.J.1984); See also Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 618 (3d Cir.1993)(stating that "the Supreme Court has made clear that the Constitution proscribes only the government from violating the individual's right to privacy..."). Likewise, state action is necessary to sustain a claim under the New Jersey State Constitution. See Hoagburg, 585 F.Supp. at 1174-5. If the defendant is not the government or a government agency, the state action requirement can only be satisfied if "there is a sufficiently close nexus between the state and the challenged action so that the latter may be fairly treated as that of the State itself." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

Plaintiff asserts that because defendant is an Internet service provider subject to F.C.C. regulation and also provides services to government properties, he should have the opportunity to explore a possible nexus between AOL and the state. Although on a 12(b)(6) motion the facts alleged in the complaint are presumed to be true, plaintiff cannot make a broad assertion that there may exist information which would be contrary to known facts in order to resist a motion to dismiss and plunge the parties into a costly discovery process. Since plaintiff has failed to offer any

evidence which would suggest that defendant or its conduct satisfies the "state action" requirement, plaintiff's claims of constitutional violations are dismissed.

### 18 U.S.C. § 1030

Plaintiff further complains that defendant's disclosure of his personal information violated several subsections § 18 U.S.C. 1030 of the Computer Fraud and Abuse Act.

Plaintiff states that defendant's actions violated Section 1030(a)(2)(c) which prohibits an individual from "intentionally access[ing] a computer without authorization or exceed[ing] authorized access[1], and thereby obtain[ing] information from any protected computer if the conduct involved an interstate or foreign communication." Plaintiff also complains that defendant violated Section 1030(a)(5)(C) which prohibits anyone from "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, causes damage" and Section 1030(a)(5)(B) which applies to anyone who intentionally gains unauthorized access to a protected computer and as a result of such access recklessly causes damage. These subsections do not form a basis for plaintiff's claims. Plaintiff has not shown that AOL "accessed" his computer as that term is meant. In fact, plaintiff affirmatively asserts that he provided the information to the defendant and that defendant made an unauthorized "disclosure" of that information. This statute relates to "accessing" or "altering" information. The statute does not make actionable the mere "disclosure" of information. It is clear to this Court that the subsections above cited were not enacted to address claims such as the one made by the plaintiff in this case.

---

[1] "[T]he term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtained or alter." 18 U.S.C. § 1030(e)(6).

08/16/99 12:37 FAX 1 808 452 1447   Case 4:06-cv-05866-SBA   Document 16   Filed 11/20/2006   Page 11 of 40   JAMI SON BOOKE PROVO MD

Case 1:08-cv-00246-JDB   Document 11-3   Filed 02/21/2008   Page 63 of 77

In addition, plaintiff asserts that defendant violated Section 1030(a)(4) which applies to:

> whoever ... knowingly and with intent to defraud, accesses a Federal interest computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer.

Plaintiff cannot make out a claim on this subsection either. Even assuming that all of plaintiff's allegations are true, defendant in this case did not obtain "anything of value." The value of information is relative to one's needs and objectives; here, plaintiff has to show that the information was valuable to AOL in light of a fraudulent scheme. Plaintiff has failed, however, to show how that information allegedly forwarded was in any way "valuable" to the defendants and therefore allegations that AOL violated 18 U.S.C. § 1030 must be dismissed.

### 18 U.S.C § 1028

In Count five plaintiff states that defendant's actions violated Section 1028(a)(2). That Section provides punishment for an individual who "knowingly transfers an identification document or a false identification document knowing that such document was stolen or produced without lawful authority." The statute further defines an "identification document" as "a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for purpose of identifying individuals." Plaintiff fails to make out a claim under this statute because the information allegedly supplied to third parties does not qualify as an "identification document."

5

Case 4:06-cv-05866-SBA     Document 16     Filed 11/20/2006     Page 12 of 40
08/16/99  12:37 FAX 1 609 452 1447    Case 1:08-cv-00246-JDB    Document 11-3    Filed 02/21/2008    Page 64 of 77    ☒007/012
JAMIESON MOORE/PRINCETON

## 18 U.S.C. § 2314

Plaintiff contends that defendant acted in violation of § 18 U.S.C 2314 of the National Stolen Property Act. Section 2314 punishes the interstate transport or transfer of "goods, wares, merchandise, securities, or money" that have been "stolen, converted or taken by fraud." Congress' purpose in enacting this statute was to penalize violators of state laws who utilize the channels of interstate commerce. See U.S. v. Sheridan, 329 U.S. 379, 384-5 (1946). Plaintiff's claim under this statute fails as a matter of law. Section 2314 is a criminal statute which does not create a private right of action. See Cooper v. North Jersey Trust Co. of Ridgewood, N.J., Inc., 226 F.Supp. 972, 979-80 (S.D.N.Y.1964). Neither the plaintiff nor the Court's own research has uncovered a single case where a private right of action was found to exist under this statute.

Also, the statute only pertains to stolen and transferred "goods, wares, merchandise, securities, or money." Plaintiff's claim that defendant improperly transferred "information" is outside of the purview of the statute. See United States v. Stafford, 136 F.3d 1109, 1114-5, as modified, 136 F.3d 1115 (7th Cir.), cert. denied, — U.S.—, 119 S.Ct. 123 (1998) (holding that statute does not pertain to information or data). Therefore, this claim must also be dismissed.

### New Jersey Consumer Fraud Act

In Count seven of his complaint, plaintiff contends that defendant's actions violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1. et. seq. The purpose of the NJCFA is to protect consumers against losses caused by the fraudulent practices engaged in by persons selling goods and services. See Fenwick v. Kay Am. Jeep, Inc., 136 N.J. Super. 114 (App.Div.1975), reversed on other grounds, 72 N.J. 372 (1977).

Courts interpreting the Act have concluded that more than a breach of contract is necessary

to make out a claim. See e.g. Suber v. Chrysler Corp., 104 F.3d 578,586 (3d Cir.1997); Kugler v. Romain, 58 N.J. 522 (1971). In addition to showing that defendant did not perform adequately under the contract, plaintiff must also demonstrate that defendant never intended to live up to its obligations. See Barry v. New Jersey State Highway Auth., 245 N.J.Super. 302,309-10 (Ch.Div.1990).

Plaintiff in this case alleges that defendant breached the agreement's privacy clause by disclosing some of his confidential information. Plaintiff does not assert that defendant defrauded plaintiff in any way or that the defendant never intended to adhere to the contract's privacy clause. Therefore, plaintiff's claim that defendant violated the New Jersey Consumer Fraud Act must be dismissed.

## Rule 12(b)(3) Dismissal of Remaining Claims

The contract entered into between plaintiff and AOL designates Virginia as the location for all disputes arising from the agreement. Defendant argues that because plaintiff agreed to have any disputes adjudicated in Virginia, the remaining claims should be dismissed without prejudice. Plaintiff, on the other hand, asserts that the case should remain in this court because Rule 12(b)(3) is an improper vehicle to dispose of a case because of a forum selection clause. Plaintiff cites National Micrographics Systems, Inc. v. Canon U.S.A., Inc., 825 F.Supp. 671, 678 (D.N.J.1993) in support of his position. In that case, the court held that FED.R.CIV.P. 12(b)(3) is an improper basis for transfer when venue is proper under 28 U.S.C. § 1391. Instead, the court concluded, if such a clause is enforceable, the case should be transferred pursuant to 28 U.S.C. § 1404(a) or dismissed under FED.R.CIV.P. 12(b)(6).

However, there is considerable disagreement with that view. Courts around the country,

indeed courts within this very district, have granted motions to dismiss under 12(b)(3) on the basis

of a forum selection clause. See Druckers', Inc. v. Pioneer Electronics, 1993 WL 431162 at * 8

(D.N.J. Oct. 20, 1993); Spradlin v. Lear Siegler Management Services Co., Inc., 926 F.2d 865 (9th

Cir.1991); Commerce Consultants Int's, Inc. v. Veterie Riunite, S.p.A., 867 F.2d 697

(D.C.Cir.1989). Further, all courts considering the issue agree that such a case can be dismissed

pursuant to FED.R.CIV.P. 12(b)(6). This Court concludes that this motion should not be denied

simply because the defendant *may have* used the wrong rule to base its request for enforcement of

the forum selection clause.

Next, plaintiff argues that a forum selection clause is not enforceable when there is a

fiduciary relationship between the parties. For this proposition, plaintiff again cites National

Micrographics Systems, 825 F.Supp. at 676. In that case, the Court stated that enforcement of a

forum selection clause may be barred due to fraud only if "'the inclusion of that clause in the

contract was the product of fraud or coercion.'" Id. at 675 (citing Scherk v. Alberto-Culver Co., 417

U.S. 506, 519 n.14 (1974)). "General allegations of fraud, deceit and misrepresentation are not

adequate to void a forum selection clause." Id. However, the Court further explained that if there

is a fiduciary relationship between the plaintiff and the defendant, fraud in the overall contract may

be sufficient to render the forum selection clause unenforceable. See id. at 676. In this case, there

have been no allegations of fraud in the inducement of the contract generally or the forum selection

clause specifically. Therefore, National Micrographics Systems is inapposite and the existence or

absence of a fiduciary relationship is irrelevant.

Lastly, plaintiff argues that the forum selection clause should not be enforced because

enforcement would offend New Jersey public policy. However, it has been established that New

8

Case 4:06-cv-05866-SBA    Document 16    Filed 11/20/2006    Page 15 of 40
Case 1:08-cv-00246-JDB    Document 11-3    Filed 02/21/2008    Page 67 of 77
08/16/99  12:58 FAX 1 609 452 1447    JAMIESON MOORE/PRINCETON    ☒010/012

Jersey public policy is not hostile to forum selection clauses and follows The Bremen et. al. v. Zapata Off-Shore Co., 407 U.S. 1 (1972). See MacDonald Inc., v. Cushman Inc., 256 N.J. Super. 58, 63-64 (App.Div.1992)(citations omitted). In Bremen, the Supreme Court, while noting that forum selection clauses were historically disfavored, found that "in the light of present-day commercial realities and expanding international trade ... forum clause[s] should control absent a strong showing that [they] should be set aside." 407 U.S. at 15. The enforcement of a forum selection clause would only be set aside if it was proven that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id.

In Carnival Cruise Lines, Inc. v. Shute the Court set a broad standard for reasonableness. See 499 U.S. 585 (1991). There, the plaintiffs purchased a ticket through a travel agent for a 7-day cruise on the defendant's ship. The defendant, Carnival Cruise Lines, Inc. mailed the tickets to plaintiffs in Washington from its Florida headquarters. See id. at 587. Printed on the face of the ticket was a clause which stated that by accepting the ticket, the purchaser agreed to litigate any and all claims in Florida. See id. at 587-88. Plaintiff boarded the ship in California. Ms. Shute was later injured when she slipped and fell on the deck while traveling over international waters off the Mexican Coast. See id. at 588. The Court upheld the forum selection clause even though defendant conducted business in Washington, the clause was part of a form and not negotiated for between the parties, and Florida would be a completely inconvenient forum for the Washington resident plaintiffs.

The Court offered three reasons for its conclusion. First, the Court stated that "a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit" because during a trip where an accident may occur it is not unlikely that the accident may involve passengers

from many different locales and thereby subject the cruise line to litigation in several different fora. See id. at 593. Also, setting forth the forum will obviate the need for pretrial motions to determine the correct forum and thereby conserve judicial resources. See id. at 593-4. Finally, the Court reasoned that customers, like the plaintiff, benefit in the form of reduced fares caused by the cruise lines' cost savings related to the limitation of fora in which it can be sued. See id. at 594.

Each of the reasons offered to justify the Supreme Court's decision in Carnival Cruise Lines apply to this case. This Court will thus hold that the clause designating Virginia as the proper forum for this suit should be enforced and this case dismissed.

## Conclusion

For the foregoing reasons, defendant's motion is GRANTED and plaintiff's case is DISMISSED. An appropriate order will be filed herewith.

Dated: 8/6/99

**EXHIBIT 12**

## CIRCUIT AND SUPERIOR COURTS
## 38TH JUDICIAL CIRCUIT
## ALLEN COUNTY, INDIANA

| | | |
|---|---|---|
| ROBERT H. HESS | ) | CAUSE NUMBER: 02D01-0405-SC-10583 |
| Plaintiff(s), | ) | |
| | ) | JUDGMENT OR ORDER OF THE COURT |
| vs. | ) | |
| | ) | |
| AMERICA ON LINE | ) | |
| Defendant(s), | ) | |
| | ) | |
| | ) | |

The Plaintiff appears in person. The Defendant does not appear but has filed documents in support of its motion. The Court, having previously taken this matter under advisement now finds as follows:

1. The Defendant argues, by motion, that this Judgment should be set aside and vacated and the case dismissed because Indiana does not have jurisdiction to hear disputes between the Plaintiff and the Defendant.

2. The Defendant provides the Court with a copy of the America Online Member Agreement. The Defendant states that before anyone can use AOL services they must click on the "I agree" icon in order to subscribe to the service. The "I agree" icon appears at the end of the terms of membership.

3. Section 16a of the Membership Agreement clearly states that the user expressly agrees that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or use of the AOL services resides in the Court of Virginia. Clauses of this type are enforceable in the State of Indiana.

4. For the reasons set forth above the Default Judgment taken in this action is now set aside and vacated. Pursuant to Defendant's motion this claim is now dismissed. Costs to Plaintiff. Costs paid.

DATED: April 13, 2005

_____
Jerry L. Ummel, Magistrate
Allen Superior Court

MANNER OF NOTICE:

( ) IN OPEN COURT BY ( )
(X) WITH COPY PURSUANT TO T.R. 72(D) TO BE SERVED BY:
_X_ COURT   __CLERK   __OTHER: _____

PROOF OF NOTICE UNDER TRIAL RULE 72(D):

A copy of this entry was served, either by mail to the address of record, deposited in the Court's attorney's distribution box, personally distributed, and/or filed as listed below:

Robert Hess
5726 Montavilla Dr.
Fort Wayne, IN  46815

America On Line, Inc.
Attn:  Hassan L. Sudler
22000 AOL Way
Dulles, VA  20166-9323

Court Packet – 2
DATE OF NOTICE: April 13, 2005
PERSON WHO NOTIFIED PARTIES: tsk COURT ___ CLERK ___ OTHER

**EXHIBIT 13**

Westlaw.

Slip Copy                                                                                    Page 1

Slip Copy, 2006 WL 2666429 (D.Utah)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Nazaruk v. eBay, Inc.D.Utah,2006.Only the
Westlaw citation is currently available.
United States District Court,D. Utah, Central
Division.
Tetyana NAZARUK, Plaintiff,
v.
EBAY, INC., Ace Coins, and Robert Baganz,
Defendant.
**No. 2:06CV242DAK.**

Sept. 14, 2006.

Tetyana Nazaruk, Salt Lake City, UT, pro se.
Michael G. Rhodes, Benjamin Chapman, Cooley
Godward, San Diego, CA, Cameron L. Sabin,
Steven Kuhnhausen, Stoel Rives, Salt Lake City,
UT, Donovan S. Robertson, Coyle Gilman Stengel
Bailey & Robertson, Rock Island, IL, for
Defendants.

ORDER ADOPTING REPORT AND
RECOMMENDATION
KIMBALL, J.
**\*1** This matter is before the court on Plaintiff's
Objection to the Magistrate's Report and
Recommendation. On July 20, 2006, this case was
referred to the Magistrate Judge under 28 U.S.C. §
636(b)(1)(B). On August 15, 2006, the Magistrate
Judge held a hearing on Defendant eBay's Motion
to Dismiss for Improper Venue or, in the
Alternative, for Failure to State a Claim. On August
24, 2006, the Magistrate issued a Report and
Recommendation, recommending that Defendant
eBay's Motion to Dismiss based on improper venue
be granted and that Defendant Ace Coin's Motion to
Dismiss be granted.

On August 31, 2006, Plaintiff filed an Objection to
the Report and Recommendation, which the court
has considered, along with the entire case file.
Plaintiff has not cited any authority to suggest that

the Magistrate's legal analysis was incorrect, and
Plaintiff has not otherwise raised a valid objection
to the Report and Recommendation.

Having independently reviewed the file in its
entirety and the case law that this court is bound to
apply, the court finds that the Magistrate's analysis
was entirely correct. Therefore, the court hereby
APPROVES and ADOPTS the Magistrate Judge's
Report and Recommendation. Defendant eBay's
Motion to Dismiss for Improper Venue is
GRANTED. Plaintiff's claims against eBay are
DISMISSED without prejudice. Defendant Ace
Coin's Motion to Dismiss is GRANTED, and
Plaintiff's claims against it are DISMISSED with
prejudice. There is no evidence in the record that
Defendant Robert Baganz was ever served with a
Summons and Complaint, and therefore he is
DISMISSED without prejudice. The Clerk of the
Court is directed to close this case.

REPORT AND RECOMMENDATION
ALBA, Chief Magistrate J.
Before the court are two Motions to Dismiss.
(Documents # 4 and 19 .) One Motion to Dismiss
was filed by Defendant eBay, Inc. ("eBay"), who
argues that Plaintiff's complaint should be dismissed
for improper venue or, in the alternative, for failure
to state a claim upon which relief can be granted.
(Document # 4.) The second Motion to Dismiss was
filed by Defendant Ace Coins, who argues that
Plaintiff's complaint should be dismissed because
the facts alleged support neither a Section 1983 nor
a Section 1985 claim, the two claims Plaintiff has
asserted against Ace Coins. The court has not
received any information that Defendant Robert
Baganz has been served in this case and he has not
entered an appearance.

Having carefully reviewed the pleadings and having
heard oral arguments, the court recommends that
Defendants' Motions to Dismiss be granted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

Slip Copy, 2006 WL 2666429 (D.Utah)
**(Cite as: Slip Copy)**

## BACKGROUND

Tetyana Nazaruk is a *pro se* plaintiff who filed a complaint against Defendants on March 22, 2006, when she was also allowed to proceed *in forma pauperis.* (Documents # 1-3.) The case was assigned to United States District Judge Dale A. Kimball. (Document # 3.) On July 20, 2006, Judge Kimball referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B). (Document # 17.)

**\*2** On June 6, 2006, Defendant eBay filed its Motion to Dismiss. (Document # 4.) Plaintiff filed her response to the Motion to Dismiss on June 9, 2006. (Documents # 10, 12.) Defendant eBay filed a reply to Plaintiff's response on June 29, 2006. (Document # 14.) On August 15, 2006, the court held oral arguments on Defendant eBay's Motion to Dismiss. Plaintiff appeared on her behalf and counsel for eBay appeared on its behalf.

On July 28, 2006, Defendant Ace Coins filed its own Motion to Dismiss. (Document # 19.) The court has examined Defendant Ace Coins' Motion to Dismiss, to which Plaintiff has not submitted a written response, and concludes that oral argument would not materially assist the determination of Ace Coins' motion.

## ANALYSIS

Because Plaintiff is proceeding *pro se,* the court construes her pleadings liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The court examines eBay's Motion to Dismiss first, and then examines Ace Coins' Motion to Dismiss.

### A. Defendant eBay's Motion to Dismiss

One of the services offered by eBay on its website is the Feedback Forum. (Document # 6, Declaration of Allyson Willoughby, ¶ 5.) This section of the website allows users to post comments about other users with whom they have conducted transactions. (Document # 6, ¶ 5.)

Plaintiff alleges her constitutional rights have been violated because "Ebay [sic] inc. allows to put national discrimination on web site," (Document # 3-1, Complaint, at 4), and "[o]n ebay [sic] acecoins put feedback with abusive words, which are connected with my national background." (Document # 3-2.) Thus, Plaintiff alleges that Ace Coins posted statements about her on Plaintiff's eBay feedback page. (Document # 3-2, at 1.) Plaintiff does not allege that eBay itself created the offending statements. Instead, Plaintiff claims that eBay, as the publisher through eBay's Feedback Forum of Ace Coins' statements, violated Plaintiff's civil rights under 42 U.S.C. §§ 1983 and 1985. Plaintiff claims eBay's failure to stop Ace Coins from posting its statements, in addition to eBay's act of cancelling Plaintiff's eBay registration, shows that eBay shares Ace Coins' allegedly racist point of view.

Defendant eBay argues that Plaintiff's complaint should be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the court concludes that Plaintiff's Complaint should be dismissed for improper venue, it does not reach eBay's second argument.

It is undisputed that in order to buy or sell on eBay, individuals must first register with eBay. (Document # 6, ¶ 3.) As part of the registration process, a potential eBay user must complete a registration form and electronically submit the form to eBay. (Document # 6, ¶ 3.) In order to activate the registration process, the potential user is required to read and agree to eBay's User Agreement, which contains the terms and conditions that govern the relationship between eBay and its users. (Document # 6, ¶ 3 & Exhibit A.) The potential eBay user must accept the User Agreement by affirmatively clicking on a button that states "I Accept." (Document # 6, ¶ 3.) Users who do not click the "I Accept" button are not permitted to complete the registration process. (Document # 6, ¶ 3.) eBay's User Agreement contains a dispute resolution provision requiring suits arising out of the User Agreement be filed in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2006 WL 2666429 (D.Utah)
**(Cite as: Slip Copy)**

an appropriate court in Santa Clara County, California. (Document # 6, ¶ 4 & Exhibit A.) Defendant eBay now seeks to enforce that forum selection clause in its User Agreement.

**\*3** Forum selection clauses are *"prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Milk 'N' More, Inc. V. Beavert,* 963 F.2d 1342, 1346 (10th Cir.1992) (enforcing a forum selection clause stating that " venue shall be proper under this agreement in Johnson County, Kansas") (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); *see also Hugger-Mugger, L.L.C. v. Netsuite, Inc.,* 2005 WL 2206128, at \*7 (D.Utah Sept.12, 2005) (enforcing a forum selection clause contained in a clickwrap agreement mandating that any dispute between the parties be adjudicated in Santa Clara County, California, and dismissing action). "The burden lies with ... the party challenging the enforceability of a forum selection clause." *Id.* at \*3. To enforce a forum selection clause, a court must only find that the forum selection clause (1) was part of the agreement between the parties and (2) is enforceable. *See id.* at \*4, 7. Both requirements are satisfied in this case.

First, it is undisputed that the forum selection clause was part of the agreement between the parties. Plaintiff has attached to her Complaint documents that show she is a member of eBay and has regularly participated on eBay. (Document # 3-2.) As such, Plaintiff was required to expressly agree to the terms of eBay's User Agreement when she established her account. In fact, at oral arguments, Plaintiff essentially admitted that she clicked on the "I Accept" button when registering with eBay.

Second, Plaintiff has not met the "heavy burden" necessary to show that enforcement of the forum selection clause would be unreasonable or unjust. *See Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 957 (10th Cir.1992). The Tenth Circuit has explained that "[o]nly a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice would be sufficient

to defeat a contractual forum selection clause." *Id.* In addition, this court has previously found that unsupported assertions by a party that it would be more expensive to litigate in another forum do not meet the heavy burden of showing enforcement would be unreasonable or unjust. *See Daley v. Gulf Stream Coach, Inc.,* 2000 WL 33710836, at \*3 (D.Utah March 3, 2000) (rejecting a party's argument that it could not afford to litigate in a specified forum, finding that their "conclusory statements [we]re insufficient"); *see also Zions First Nat'l Bank v. Allen,* 688 F.Supp. 1495, 1499 (D.Utah 1988) (rejecting argument that trying this case in the specified forum would be difficult, and rejecting argument that unsophisticated individuals should not be forced to litigate in a big corporation's home forum). Plaintiff has not provided the court with any information, other than her general assertions, that enforcement of the forum selection clause would be unreasonable or unjust. Furthermore, Plaintiff has not shown bad faith, overreaching, or lack of notice was involved in Plaintiff's agreeing to the User Agreement containing the forum selection clause. As a result, the court concludes that the two requirements necessary for enforcing a forum selection clause are met in this case.

**\*4** Moreover, the forum selection clause contained in the User Agreement is mandatory and therefore should be enforced. *See Hugger-Mugger,* 2005 WL 2206128, at \*7 ("Only a mandatory forum selection clause supersedes the presumption in favor of the plaintiff's choice of forum."); *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 321 (10th Cir.1997) ( "Mandatory forum selection clauses ' contain[ ] clear language showing that jurisdiction is appropriate only in the designated forum." ' (Citation omitted.)). The forum selection clause at issue here provides: "You agree that any claim or dispute you may have against eBay must be resolved by a court located in Santa Clara County, California, except as otherwise agreed by the parties or as described in the Arbitration Option paragraph below." (Document # 6, Exhibit A.) Like the word " shall," which the Tenth Circuit has already found " generally indicates mandatory intent," the word " must" connotes a mandatory nature. *Milk 'N' More,* 963 F.2d at 1346.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 4

Slip Copy, 2006 WL 2666429 (D.Utah)
**(Cite as: Slip Copy)**

Plaintiff obviously does not think it is fair for eBay to be able to have this case dismissed for improper venue; however, as the court explained to Plaintiff at the August 15, 2006 hearing, if this case is dismissed for improper venue, Plaintiff will still have the opportunity to file a complaint with a court in Santa Clara County, California. Dismissing the case here for improper venue does not prevent Plaintiff from bringing her claims against eBay.

In conclusion, because the two requirements for enforcing a forum selection clause are met in this case, and because that forum selection clause is mandatory, the court recommends that Defendant eBay's Motion to Dismiss for Improper Venue be granted.

### B. Defendant Ace Coins' Motion to Dismiss

Plaintiff has brought claims against Ace Coins pursuant to 42 U.S .C. §§ 1983 and 1985. Ace Coins argues that Plaintiff has failed to allege facts sufficient to support the elements of either of these claims.

### 1. Section 1983 Claim

First, Plaintiff has brought a claim under 42 U.S.C. § 1983 against Ace Coins. Section 1983 provides a remedy against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes ... any citizen ... to be subjected ... to the deprivation of any rights, privileges or immunities secured by the Constitution and Laws...." 42 U.S.C. § 1983. Thus, to state a claim for relief in an action brought under Section 1983, Plaintiff must establish that she was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *see also Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989) (per curiam).

Plaintiff's Section 1983 claim against Ace Coins fails because Plaintiff has not established that the alleged deprivation was committed by a person acting under color of state law. No allegation has been made that Ace Coins was acting under color of state law, and even construing the facts of the case liberally, the facts do not support such a claim. As a result, that required element of a Section 1983 claim is not met in this case, and Plaintiff's Section 1983 claim against Ace Coins should be dismissed.

### 2. Section 1985 Claim

*5 Second, Plaintiff has brought a claim under 42 U.S.C. § 1985(3) against Ace Coins. "The essential elements of a Section 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993), *cert. denied,* 510 U.S. 1093, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994). Section 1985(3) does not itself create any substantive rights; instead, it is a vehicle for vindicating federal rights and privileges which have been defined elsewhere. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 376, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (Powell, J., concurring).

Relying on *United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIP v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Tenth Circuit has clarified that Section 1985(3) " covers only conspiracies 'aimed at interfering with rights that are protected against private, as well as official, encroachment." ' *Tilton,* 6 F.3d at 686 (quoting *Carpenters,* 463 U.S. at 833); *see also Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 278, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (affirming this requirement regarding the type of conspiracies covered by Section 1985(3)). In other words, Section 1985(3) " 'does not apply ... to private conspiracies that are aimed at a right that is by definition a right only against state interference." ' *Bray,* 506 U.S. at 278 (quoting *Carpenters,* 463 U.S. at 833.) The Supreme Court has recognized only two rights that meet this requirement: (1) the right to be free from involuntary servitude and (2) the right of interstate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5

Slip Copy, 2006 WL 2666429 (D.Utah)
**(Cite as: Slip Copy)**

travel. *See Tilton*, 6 F.3d at 686; *see also Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir.2001)

.

Plaintiff has not alleged a violation of either her right to be free from involuntary servitude or of her right to interstate travel. As such, Plaintiff has not alleged one of the two recognized rights covered by Section 1985(3). Consequently, Plaintiff's Section 1985(3) claim against Ace Coins fails and should be dismissed.

### RECOMMENDATION

Based on the above analysis, the Court concludes the forum selection clause in eBay's User Agreement should be enforced and that Plaintiff has failed to bring a viable Section 1983 or Section 1985 claim against Ace Coins. Therefore, IT IS RECOMMENDED that eBay's Motion to Dismiss for Improper Venue (Document # 4) be GRANTED and Ace Coins' Motion to Dismiss (Document # 19) be GRANTED.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.
*6 DATED this 24th day of August, 2006.

D.Utah,2006.
Nazaruk v. eBay, Inc.
Slip Copy, 2006 WL 2666429 (D.Utah)

Briefs and Other Related Documents (Back to top)

• 2:06cv00242 (Docket) (Mar. 22, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.