**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

PAUL M. BREAKMAN, in a representative
capacity acting for the interests of the general
public,

               *Plaintiff,*

      v.

AOL LLC,

             *Defendant.*

Civil Action No. 1:08cv00246 (JDB)

## DEFENDANT'S OPPOSITION
## TO PLAINTIFF'S AMENDED MOTION TO REMAND

Defendant AOL LLC ("AOL"), by counsel, pursuant to Local Civil Rule 7(a), opposes

the Amended Motion to Remand ("Amended Motion") filed by Plaintiff Paul M. Breakman

("Breakman") on February 27, 2008. This Court should deny the Amended Motion because it

has subject matter jurisdiction over this action, and, therefore, AOL's removal of this action from

D.C. Superior Court to this Court was proper.

### STATEMENT OF FACTS

I.    THE PARTIES.

Breakman, the sole plaintiff in this case, is a District of Columbia resident. (Compl. ¶

14.) He alleges that he represents the "general public" in this action based on AOL's alleged

violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-

3901, et seq. ("DCCPPA"). (Compl. ¶¶ 4, 5, 12.) Breakman maintains that the only individuals

injured in this case are current and past District of Columbia consumers who subscribed to, and

paid for, AOL's dial-up service at a price that exceeds what AOL now offers new subscribers.

1

(Compl. ¶¶ 1, 12, 24.) Breakman does not allege that he was ever a consumer that was ever actually injured by AOL. (See generally, Compl.)

AOL is a limited liability company organized under Delaware law, and its principal place of business is located in Virginia. (Affidavit of John Baumeister ("Baumeister Aff."), ¶ 3.) AOL is a wholly-owned subsidiary of AOL Holdings LLC, which is a Delaware limited liability company with its principal offices located also in Virginia. (Baumeister Aff ¶ 3.) AOL Holdings LLC, in turn, is owned by three corporations: (1) TW AOL Holdings, Inc., which is a Virginia corporation with its principal offices in New York; (2) Google, Inc., which is a Delaware corporation with its principal offices in California; and (3) Time Warner, Inc., which is a Delaware corporation with its principal offices in New York. (Baumeister Aff ¶ 3.) AOL provides consumers throughout the United States with a variety of interactive computer services, including high-speed and dial-up internet services. (Baumeister Aff ¶ 3.)

II.    THE COMPLAINT.

On January 23, 2008, Breakman filed a complaint ("Complaint") against AOL in the Superior Court of the District of Columbia. Breakman alleges that AOL violated the DCCPPA by purportedly failing to disclose to its customers that it charges two different rates for "essentially the same Dial-up ISP Service."[1] (Compl. ¶¶ 21-25.)

In an attempt to plead his way around federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), Breakman styles his Complaint merely as a "representative" action in which he "[acts] for the interests of the general public." (Compl. ¶¶ 4, 5, 25.) However, Breakman simultaneously seeks to recover millions of dollars in compensatory

---

[1]    As a threshold matter, Breakman's allegations are utterly specious. AOL offers four different service plans to accommodate a customer's usage needs and budget. AOL provides detailed information about each of them at the various AOL Keywords and URLs through which members can review and switch to different service plans. See, e.g., http://changeplan.aol.com. Millions of AOL members have used these self-service portals to switch to lower price or free service plans.

damages and statutory penalties and to obtain more than $250,000 worth of injunctive relief –
amounts all well beyond the federal diversity jurisdiction threshold – for injuries allegedly
suffered by almost 30,000 AOL customers residing in the District of Columbia:

> Wherefore, Plaintiff, in his representative capacity acting for the interests of the
> general public, demands of and from Defendant AOL *for each individual District*
> *of Columbia consumer*, and not by way of a common right in a common fund,
> judgment against Defendant as follows:
>
> 1. Actual damages *for each individual District of Columbia consumer* in an
>    amount to de determined at trial;
>
> 2. Treble damages or $1,500 per violation of the DCCPPA *for each District*
>    *of Columbia consumer*, whichever is greater, in an amount to be
>    determined at trial;
>
> 3. Reasonable attorneys' fees;
>
> 4. Punitive damages in an amount to be determined at trial;
>
> 5. An injunction enjoining Defendant AOL from continuing the unlawful
>    trade practices described herein;
>
> 6. Prejudgment interest in an amount to be determined at trial.

(Compl. ¶ 25 (emphasis added); see also Civil Cover Sheet (listing demand of $11,000,000).)

III.    THE NOTICE OF REMOVAL, MOTION TO REMAND, AND AMENDED NOTICE
        OF REMOVAL.

On February 13, 2008, AOL removed this action to this Court. (See Notice of Removal
("Notice"), dated February 13, 2008.)  AOL alleged that this Court has removal jurisdiction
pursuant to the jurisdictional provisions of the CAFA. (Notice ¶ 5.) On February 21, 2008,
AOL amended its Notice to identify an additional ground for this Court's jurisdiction: traditional
diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (See Amended Notice of Removal
("Amended Notice"), dated February 21, 2008.) Breakman filed his first Motion to Remand this

case and argued that this Court does not have original jurisdiction under CAFA. (See Mot. to Remand, dated February 21, 2008.)

The parties filed a joint motion to consolidate and modify the briefing schedule for the Motion to Remand. (See Jt. Mot. to Extend the Time for Filing Opposition to Motions, dated February 26, 2008.) This Court granted the joint motion on February 26, 2008, and ordered that Breakman file an amended motion to remand by February 29, 2008. (See Order, dated February 26, 2008.)

IV.    THE AMENDED MOTION TO REMAND.

Breakman filed his Amended Motion to Remand on February 27, 2008. (See Am. Mot. to Remand ("Amended Motion"), dated February 27, 2008.) In his Amended Motion, Breakman contends that this Court does not have subject matter jurisdiction over this case, and seeks to remand this case to the D.C. Superior Court accordingly. (Am. Mot. at 3-17.) Specifically, Breakman argues that this Court does not have diversity jurisdiction under CAFA (*i.e.*, 28 U.S.C. § 1332(d)) because this case is not a "class action" that is subject to CAFA. (Am. Mot. at 3-5.) Breakman also contends that this Court does not have traditional diversity jurisdiction (*i.e.*, 28 U.S.C. § 1332(a)) because (1) AOL has not established complete diversity of the parties; (2) AOL cannot aggregate Breakman's damages to satisfy the $75,000 amount in controversy requirement; and (3) AOL cannot rely on the cost of compliance with the injunctive relief sought by Breakman to satisfy the amount in controversy requirement. (Am. Mot. at 6-17.) Finally, Breakman demands that this Court award him costs and expenses incurred in these removal proceedings because, he claims, AOL's removal was "frivolous." (Am. Mot. at 17-18.)

4

<u>ARGUMENT</u>

Breakman demands that this Court remand this case to the D.C. Superior Court because it does not have subject matter jurisdiction over it. This Court has subject matter jurisdiction over this case because it has original jurisdiction pursuant to the traditional diversity jurisdiction statute, 28 U.S.C. § 1332(a). In order to reject AOL's theory, this Court *necessarily* has to conclude that this case is a "class action" lawsuit that is subject to CAFA. In that event, this Court has original jurisdiction under 28 U.S.C. § 1332(d). In either scenario, this Court has subject matter jurisdiction to hear this case, and, therefore, it should deny Breakman's Amended Motion because AOL's removal was proper.

I.    <u>STANDARD OF REVIEW.</u>

Section 1447(c) of Title 28 of the United States Code provides that "[i]f at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). This statute requires federal district courts to remand a case back to the state court if it determines that it lacks federal subject matter jurisdiction. <u>Republic of Venezuela v. Philip Morris Inc.</u>, 287 F.3d 192, 196 (D.C. Cir. 2002).

The removing party has the burden of affirmatively establishing that federal subject matter jurisdiction exists. <u>Wexler v. United Air Lines, Inc.</u>, 496 F. Supp. 2d 150, 152 (D.D.C. 2007) (citations omitted) (burden remains on the removing party to establish Class Action Fairness Act diversity jurisdiction); <u>Johnson-Brown v. 2200 M Street LLC</u>, 257 F. Supp. 2d 175, 177-78 (D.D.C. 2003) (citations omitted); <u>Williams v. Purdue Pharma Co.</u>, 2003 U.S. Dist. LEXIS 19268 *6-7 (D.D.C. 2003). A district court must strictly construe a defendant's removal status because federal courts are courts of limited jurisdiction. <u>Johnson-Brown</u>, 257 F. Supp. 2d at 177-78 (citations omitted). However, a district court should remand a case only if the

removing party cannot establish subject matter jurisdiction. See <u>Wexler</u>, 496 F. Supp. 2d at 152 (citations omitted); <u>Johnson-Brown</u>, 257 F. Supp. 2d at 177-78 (citations omitted); <u>Williams</u>, 2003 U.S. Dist. LEXIS 19268 *7.

II.    THIS COURT SHOULD DENY BREAKMAN'S AMENDED MOTION TO REMAND <u>BECAUSE IT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.</u>

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). Thus, a defendant may remove a case to federal district court when original jurisdiction is based on diversity of citizenship. See <u>Kopff v. World Research Group</u>, LLC, 298 F. Supp. 2d 50, 53 (D.D.C. 2003). Here, AOL properly removed this case because this Court has original jurisdiction under 28 U.S.C. § 1332(a), or, in the alternative, 28 U.S.C. § 1332(d).

A.    <u>This Court Has Diversity Jurisdiction Pursuant To 28 U.S.C. § 1332(a).</u>

Section 1332(a) of Title 28 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of difference States." This Court has subject matter jurisdiction under this statute because the parties are diverse, and the amount in controversy far exceeds the $75,000 minimum threshold.

1.    <u>The Parties are Completely Diverse.</u>

In his Amended Motion, Breakman does not dispute that the parties *have* complete diversity of citizenship in this case. (See Am. Mot. at 6-10.) Rather, Breakman argues that AOL *has not sufficiently alleged* complete diversity. (<u>Id.</u>) To the contrary, AOL has properly alleged complete diversity, and, moreover, has convincingly proven that the parties are completely diverse.

a.    AOL Sufficiently Alleged Complete Diversity.

Breakman claims that AOL did not properly allege complete diversity in its Amended Notice. (Am. Mot. at 7.)  This argument is without merit on its face.  In its Amended Notice, AOL states that "Breakman . . . is a citizen of the District of Columbia," and "AOL is a citizen of Delaware and Virginia."  (Am. Notice ¶ 7.)  From these facts, AOL concludes that "[t]here is complete diversity of citizenship between Plaintiff and Defendant," and "[t]his court has jurisdiction over this action under 28 U.S.C. § 1332(a)."  (Am. Notice ¶ 6, 7.)  AOL clearly has alleged citizenship of the parties, and that the parties are completely diverse for purposes of Section 1332(a) in its Amended Notice.

Despite these clear allegations of complete diversity for purposes of Section 1332(a), Breakman contends that AOL, a limited liability company, is required to identify and specifically plead the citizenship of each of its constituent members. (Am. Mot. at 7.)  Breakman's argument rests in part on his assumption that AOL disputes the applicable legal standard for establishing a limited liability company's citizenship for diversity purposes.  (Am. Mot. at 7-8.)  To the contrary, the parties agree that, for diversity purposes under Section 1332(a), a limited liability company carries the citizenship of all its members.[2]  Liban v. Churchey Group II, L.L.C., 305 F. Supp. 2d 136, 141 n.2 (D.D.C. 2004); Schulman v. Voyou, LLC, 305 F. Supp. 2d 36, 40 (D.D.C. 2004); Johnson-Brown, 257 F. Supp. 2d at 178-80; see also C.T. Carden v. Arkoma Assoc., 494 U.S. 185, 190 (1990) (corporate citizenship is limited to corporations).

---

[2]    Breakman contends that "[t]he facts in the present case are identical to the facts in Johnson-Brown v. 2200 M Street LLC." (Am. Mot. at 8.)  Breakman's attempt to analogize Johnson-Brown to this case fails, however, because the defendants in Johnson-Brown rested their entire complete diversity argument on their unsuccessful attempt to extend the "corporate-citizenship rule" to limited liability companies. See Johnson-Brown, 257 F. Supp. 2d at 178-80.  This case is dispositively distinguishable because AOL agrees that the "corporate-citizenship rule" does not extend to limited liability companies.  Moreover, complete diversity exists in this case.  Johnson-Brown simply does apply to this complete diversity analysis.

Because the parties agree on the applicable legal standard for limited liability company citizenship, Breakman's argument is reduced to the following proposition: AOL's failure to identify the citizenship *of each member* constitutes an incurable, fatal pleading deficiency that warrants summary remand. (Am. Mot. at 7, 10.) This conclusion, however, is not supported by the law.

The only authority upon which Breakman bases this bold proposition is <u>Naartex Consulting Corp. v. Watt</u>, 722 F.2d 779, 792 (D.C. Cir. 1983). In <u>Naartex</u>, the principal plaintiff, Naartex, was a corporation that filed an application on behalf of a separate party to enter a lottery for the selection of a lessee on a parcel of land in Wyoming. <u>Naartex</u>, 722 F.2d at 782-83. After the lottery produced a lessee, valuable oil and gas was discovered on the land. <u>Naartex</u>, 722 F.2d at 782-83. Naartex protested the issuance of the lease with the Wyoming state government, but ultimately lost the protest. <u>Naartex</u>, 722 F.2d at 7783-84. Naartex then filed suit in federal court against, among others, the Wyoming state government and Resource Service Company, which was the company that filed the application for the lottery winner. <u>Naartex</u>, 722 F.2d at 782-83. In its complaint, Naartex alleged that the government's decision was "arbitrary and capricious and a deprivation of property without due process of law," and also sought damages from the private parties under a variety of state law theories. <u>Naartex</u>, 722 F.2d at 783-85. Naartex only alleged that the district court had federal question (Section 1331) and mandamus (Section 1361) subject matter jurisdiction. See <u>Naartex</u>, 722 F.2d at 792 n.20. The district court dismissed the case on a variety of grounds, none of which were lack of federal subject matter jurisdiction, and plaintiffs appealed. <u>Naartex</u>, 722 F.2d at 783-85. In affirming the district court's decision, the <u>Naartex</u> Court stated in *dicta*:

> [o]f course, there might have been an independent jurisdictional basis for hearing
> the state claims if diversity jurisdiction had been adequately established in the

Naartex amended complaint. In its amended complaint, however, Naartex neither alleged that 28 U.S.C. § 1332 extended jurisdiction to the district court over this case, nor did it plead the requisite facts to establish complete diversity. . . . We therefore find the district court would have been justified in dismissing the common law claim on this alternative ground.

Furthermore, the facts alleged in the amended complaint do not establish diversity jurisdiction. To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties. Naartex failed to do so.

Naartex, 722 F.2d at 792.

Breakman's assertion that Naartex stands for the proposition that a limited liability company must allege the citizenship of its members is mistaken. (See Am. Mot. at 7.) Indeed, Breakman misstates the Naartex Court's *dicta*. The court in Naartex stated that the plaintiff failed (1) to specifically allege Section 1332 diversity jurisdiction as a basis for subject matter jurisdiction, *or* (2) the citizenship of the *parties*. Naartex, 722 F.2d at 792. Nothing in Naartex suggests that the failure to specifically allege citizenship *alone* is a basis for dismissal. Furthermore, Naartex does not support the assertion that a litigant must specifically allege more than the citizenship of the party itself, for instance, the citizenship of any person (natural or corporate) holding an ownership interest in the party. Naartex simply stands for the conclusion that the plaintiff failed to even attempt to allege subject matter jurisdiction based on diversity of citizenship because it did not allege the legal conclusion or *any* factual support for such a legal conclusion. In this case, AOL clearly did allege the statutory basis for diversity jurisdiction. (Am. Not. ¶¶ 6-16.) Naartex does not stand for Breakman's assertion that this Court must remand this case because AOL did not specifically identify the citizenship of every single owner, and its owner's owners. Moreover, AOL's research reveals that no case in any federal district or appellate court that holds that a court must remand a case for lack of subject matter jurisdiction

when a limited liability company fails to include the citizenship of its members in its removal papers.

Even if the law required such a heightened citizenship pleading requirement, which it does not, this Court should grant AOL leave to amend its removal papers to correct this alleged technical defect. 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." This statute authorizes amendments to jurisdictional allegations in removal papers. Meyers-Arnold Co. v. Maryland Cas. Co., 248 F. Supp. 140, 146 (D.S.C. 1965); Royal Crest Development Corp. v. Republic Ins. Co., 225 F. Supp. 76, 77 (E.D.N.Y. 1963); Eubanks v. Krispy Kreme Donut Co., 208 F. Supp. 479, 482 (E.D. Tenn. 1961); McGuigan v. Roberts, 170 F. Supp. 372, 374 (S.D.N.Y. 1959); see also Moore's Federal Practice, 3d ed., § 102.17[2] ("Section 1653 allows amendment if the [party] has made an incorrect statement about jurisdiction that actually existed, but it does not apply if there are defects in the jurisdictional facts themselves."). A removing party may amend its removing papers even after the expiration of the thirty-day removal period if the amendment merely corrects technical defects, and does not seek to add new grounds of subject matter jurisdiction.[3] Barrientos v. UT-Battelle, LLC, 284 F. Supp. 2d 908, 912 (S.D. Ohio 2003); Kacludis v. GTE Sprint Communications Corp., 806 F. Supp. 866, 869 (N.D. Cal. 1992)

---

[3]      Breakman asserts that AOL cannot amend its Amended Notice simply because he has now objected to it in his Amended Motion. (Am. Mot. at 10 (citing Dennison v. Shell Oil Co., 2007 U.S. Dist. LEXIS 91887, 3-4 (S.D. Ill. 2007).) Dennison, a case in which the court concedes that its decision does not control in any other circuits, see 2007 U.S. Dist. LEXIS 91887 * 7, is inapposite here because its holding is limited to *procedurally* defective allegations of jurisdiction (which may be waived), and not *substantively* defective allegations of jurisdiction as in Barrientos, Kacludis, and Ellerbee (which cannot be waived). In Dennison, the fatal defect was that the removing defendants failed to join the other defendants in removal. The defendant failed to explain why it failed to timely join the other defendants as required by 28 U.S.C. § 1441(b). The Dennison court remanded the case because the right to remove is jointly held by all defendants, and the failure of one defendant to joint in the notice precludes removal. See 28 U.S.C. § 1446(b); see also Chicago, Rock Island & Pac. Ry. v. Martin, 178 U.S. 245, 248 (1900). Here, AOL's alleged defects – if any – are technical and substantive. If Breakman's application of Dennison to this case is correct, then no removing defendant could ever amend its removal papers for *any* defect – procedural or substantive – after the plaintiff filed a motion to remand. This clearly is not the case. See Barrientos, 284 F. Supp. 2d at 912; Kacludis, 806 F. Supp. at 869; Ellerbee, 881 F. Supp. at 164-165, 166 n.3. Accordingly, Dennison does not apply to the case at bar.

(allowance of amendment "particularly true when the requisite jurisdictional allegations are not omitted entirely, but rather are merely defective in form"); <u>Ellerbee v. Union Zinc, Inc.</u>, 881 F. Supp. 162, 164-165, 166 n.3 (E.D. Pa. 1995).    An amendment seeking only to allege more specifically a party's citizenship is merely a technical defect as long as it does not advance a jurisdictional ground that was not in the original removal papers. <u>Camacho v. Cove Trader, Inc.</u>, 612 F. Supp. 1190, 1192 (E.D. Pa. 1985).    Moreover, the United States Supreme Court has instructed that Section 1653 permits amendments to "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 830-832 (1989) (stating that § 1653 allows amendment of factual allegations supporting jurisdictional claims when jurisdiction exists).

As noted above, AOL alleged complete diversity on the grounds that Breakman is a D.C. citizen, and AOL is a citizen of Virginia and Delaware.    All of these allegations remain true. However, and as set forth below, <i>see infra</i> at 12-13, AOL is also a citizen of New York and California, <i>but not the District of Columbia</i>.    Even if this Court determines that the absence of allegations that AOL was <i>also</i> a citizen of New York and California (in addition to Virginia and Delaware) renders AOL's removal papers technically deficient, it should grant AOL leave to amend its Amended Notice to include New York and California.    AOL does not seek to add any additional grounds of jurisdiction, but rather merely would clarify the facts supporting complete diversity that it has already timely alleged in its Amended Notice.

In short, AOL has sufficiently pled complete diversity between the parties.    Even if it has not, the alleged deficiency is merely technical, and this Court should grant AOL leave to amend its Amended Notice pursuant to 28 U.S.C. § 1653.

b.    <u>AOL Has Proven Complete Diversity.</u>

In any event, the parties in the case are completely diverse under Section 1332(a) because Breakman, the sole plaintiff, is a District of Columbia citizen, and AOL, the sole defendant, is a citizen of only Virginia, Delaware, New York, and California.  Breakman does not challenge this substantive conclusion.

"Although the Supreme Court has never directly addressed the citizenship of limited liability companies, it has recognized that the 'Courts of Appeals have held the citizenship of each member of an LLC counts for diversity purposes.'"  <u>Ulliman Schutte Constr., LLC v. Emerson Process Management Power & Water Solutions</u>, 2006 WL 1102838 *5 (D.D.C. 2006) (citing <u>Grupo Dataflux v. Atlas Global Group</u>, 541 U.S. 567, 586 n.1 (2004) (citations omitted)).  Breakman agrees with this standard.  (See Am. Mot. at 7-8.)

In this case, the plaintiff, Breakman, is a citizen of the District of Columbia.  (Compl. ¶ 14.)  Moreover, all of the individuals that Breakman represents are citizens of the District of Columbia.  (Compl. ¶¶ 11-13.)

On the other hand, the defendant, AOL, is a citizen of Virginia, Delaware, New York, and California.  AOL is organized under Delaware law and has its principal offices in Virginia. (Am. Not. ¶ 7.)  AOL has only one member, AOL Holdings LLC.  (Baumeister Aff ¶ 3.)  AOL Holdings, LLC, is also organized under Delaware law and has its principal offices in Virginia. (Baumeister Aff ¶ 3.)  AOL Holdings, LLC, has three corporate members: TW AOL Holdings, Inc., Google, Inc., and Time Warner, Inc.  (Baumeister Aff ¶ 3.)  TW AOL Holdings, Inc., is incorporated under Virginia law and has its principal place of business in New York. (Baumeister Aff ¶ 3.)  Google, Inc., is incorporated under Delaware law and has its principal place of business in California.  (Baumeister Aff ¶ 3.)  Time Warner, Inc., is incorporated under

Delaware law and has its principal place of business in New York. (Baumeister Aff ¶ 3.) Under <u>Ulliman Schutte</u>, <u>Liban</u>, <u>Schulman</u>, and <u>Johnson-Brown</u>, Defendant AOL carries the collective citizenship of its sole member's (AOL Holdings LLC's) three corporate members: Virginia, Delaware, New York, and California. See 2006 WL 1102838 *5; 305 F. Supp. 2d at 141 n.2; 305 F. Supp. 2d at 40; 257 F. Supp. 2d at 178-80. Accordingly, the parties have complete diversity because the plaintiff (and all consumers whom he represents) is a District of Columbia citizen, and the defendant is a citizen of Virginia, Delaware, New York, and California.

> 2.    The Amount in Controversy Exceeds $75,000.

In its Amended Notice, AOL concluded that the amount in controversy in this litigation far exceeds the $75,000 jurisdictional minimum. (Am. Not. ¶¶ 6-16.) AOL's conclusion is based on (1) the alleged statutory damages, which totals over $42 million; (2) the alleged actual damages, which totals over $3 million; and (3) the cost of implementing the alleged injunctive relief, which totals over $250,000. (Am. Not. ¶¶ 8, 9, 10-15.) Breakman argues that AOL has not met the amount in controversy requirement of Section 1332(a) because AOL is not permitted to "aggregate" the alleged actual and statutory damages to satisfy the amount in controversy requirement, and because AOL cannot establish facts that the injunctive relief sought would cost AOL more than $75,000. (Am. Mot. at 10-17.) Breakman's argument is incorrect because the alleged statutory damages, actual damages, and the cost of performing the injunction *each* exceed $75,000. Furthermore, the punitive damages and attorneys' fees that Breakman seeks also are almost certain to exceed $75,000.

> a.    The Total Amount of Actual and Statutory Damages Sought by
> Breakman Satisfy The Jurisdictional Minimum.

Breakman asserts that AOL cannot "aggregate" the actual and statutory damages of each D.C. consumer because <u>Zahn v. Int'l Paper Co.</u>, 414 U.S. 291 (1973), and its local progeny,

Reigner v. Ingersoll-Rand Co., 461 F. Supp. 2d 1 (D.D.C. 2004), prohibits such an aggregation. (Am. Mot. at 10-12.)  Neither of these cases, however, have any application to the case at bar.[4]

In Zahn, four plaintiffs, pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, brought a class action lawsuit on behalf of 200 other class members.  414 U.S. at 291-92. Although the four representative plaintiffs satisfied the amount-in-controversy requirement, none of the proposed class members did.  Id. at 292.  As a result, the district court refused to allow the lawsuit to proceed as a class action.  Id.  The court of appeals affirmed on the grounds that Snyder v. Harris, 394 U.S. 332 (1969), prohibited the "aggregation of separate and distinct claims" in a class action lawsuit.  Id. at 299, 300.  In affirming the district court's decision, the United States Supreme Court held that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case – one plaintiff may not ride in on another's coattails."  Id. at 301 (emphasis added).  Thus, the Supreme Court expressly limited Zahn's application to class action lawsuits alleging subject matter jurisdiction based on the traditional diversity jurisdiction statute (i.e., Section 1332(a)). 414 U.S. at 301; see also Nat'l Org. for Women v. Mut. of Omaha Ins. Co., 612 F. Supp. 100, 102 n.1 (D.D.C. 1985).

Breakman's application of Zahn to this case rests entirely on his unsupported conclusion that "[w]hile this case is a representative action and not a class action, class action standards as to aggregation are applicable here."  (Am. Mot. at 11 n.6.)  Breakman has not cited any case or statute that supports, or even addresses, his conclusory statement.  Clearly, Zahn has no application to the case at bar because – in Breakman's words:

> The Complaint in this action is not a class action at all . . . A reading of the Complaint makes clear that Plaintiff is bringing this action solely in his

---

[4]     Both Zahn and Reigner were decided before the enactment of the Class Action Fairness Act of 2005. Thus, neither case was decided in the context of alternative jurisdictional bases, like the case at bar.

representative capacity on behalf of the general public and not his individual capacity or as a class representative in a class [action].

. . . All of the claims are brought on behalf of the general public and not on behalf of specific individuals.

(Am. Mot. at 4.)  According to Breakman, this lawsuit is not a class action "at all."  Zahn's non-aggregation rule,[5] which only applies to class action lawsuits, therefore, does not apply to this case.

Breakman's reliance on Reigner v. Ingersoll-Rand Co. is also misplaced.  In Reigner, another case decided before CAFA's enactment, the plaintiff (represented by the same counsel as Breakman is in this case) filed a DCCPPA claim against the maker of a bicycle lock because the lock allegedly could be opened easily with the casing of a standard pen.  461 F. Supp. 2d at 1. Like Breakman in this case, the Reigner plaintiff sought actual damages, statutory damages, attorneys' fees, punitive damages, injunctive relief, and prejudgment interest.  Id.

Relying solely on Bott v. Holiday Univ., Inc., 1976 WL 1283 (D.D.C. 1976), the Reigner Court concluded that it did not have subject matter jurisdiction because the lawsuit did not "seek to establish a joint or common right in a common fund."  Id. at 2.  Bott, however, was a case in which the plaintiffs sought class certification for its members.  1976 WL 1283 * 1.  Not surprisingly, the Bott Court, in turn, relied exclusively on Zahn and Snyder in concluding that the class action plaintiff and the members of his purported class could aggregate their claims to meet the jurisdictional requirement.  Id. at *2 ("This 'nonaggregation' theory has been extended to class actions") (emphasis added).  Thus, the Reigner Court based its holding exclusively on the class action "non-aggregation" theory underpinning the holdings in Zahn, Snyder, and Bott.  Id.

---

[5]      In 2005, the United States Supreme Court held that 28 U.S.C. § 1367, which Congress enacted in 1990, partially overruled Zahn's non-aggregation rule.  See Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 567 (2005).  Now, a district court has diversity jurisdiction over a class action lawsuit in which only one plaintiff's claims exceed $75,000, and all other plaintiffs' claims fall within a court's supplemental jurisdiction under Section 1367.

Breakman's reliance on <u>Reigner</u> fails for the same reason as its reliance on <u>Zahn</u> and <u>Snyder</u> fails. As explained above, neither <u>Zahn</u> nor <u>Snyder</u> (and, by extension, <u>Bott</u>) apply to this case because *they were class action lawsuits*. <u>Zahn</u>, 414 U.S. at 301; <u>Snyder</u>, 394 U.S. at 333-334; <u>Bott</u>, 1976 WL 1283 *2. Breakman claims that is not the case here. In <u>Reigner</u>, neither the defendant nor the court recognized that the non-aggregation principles of <u>Zahn</u>, <u>Snyder</u>, and <u>Bott</u> applied solely to class action lawsuits. This Court should recognize this dispositive factor that removes this case from the reach of <u>Zahn</u>, <u>Snyder</u>, and <u>Bott</u>. Breakman identifies no legal basis for his theory that AOL may not "aggregate" damages in a single-plaintiff, private attorney general action that is *not* a class action.

Persuasive case law from California federal courts actually supports AOL's argument that this Court may satisfy Section 1332's amount in controversy requirement by aggregating the damages alleged in a "private attorney general" consumer protection lawsuits.[6] In <u>Mangini v. R.J. Reynolds Tobacco Co.</u>, 793 F. Supp. 925 (N.D. Cal. 1992), a single citizen representing the general public sued a tobacco company under, among other things, the California equivalent of the DCCPPA. The tobacco company removed the case to federal court based in part on diversity jurisdiction. 793 F. Supp. at 927. The plaintiff filed a motion to remand, and argued that the court did not have diversity jurisdiction "because each member of the 'class,' that is, each member of the California public, must independently satisfy the jurisdictional amount." <u>Id.</u> at 928. In rejecting the plaintiff's arguments, the district court explained:

---

[6]    There appears to be no case law from the United States Supreme Court or the Court of Appeals for the District of Columbia Circuit that controls this issue. Furthermore, there appears to be no persuasive case law from this Court that directly addresses the issue of whether AOL may aggregate the alleged damages in a single-plaintiff, private attorney general action that is not a class action.

California's case law is persuasive because California has private attorney general consumer protection statutes that are substantively identical to the District of Columbia's. Compare Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>, §§ 17500 <u>et seq.</u>, with D.C. Code §§ 28-3901 <u>et seq.</u>

> this case is not a class action, nor does it possess many of the defining characteristics of a class action. [The plaintiff] has cited no authority which indicates that the court should treat a private attorney general action as a class action for the purposes of determining whether the jurisdictional amount has been satisfied, and the court declines to do so. As a result, [the plaintiff's] proposition that the jurisdictional amount may not be defined by the detrimental value of the suit to defendant fall[s] by the wayside.
>
> Rather, in non-class action cases, the amount in controversy may be measured either by the value of the relief sought by the plaintiff or the cost to the defendant if the relief is granted. [Citations omitted.]

Id. at 928.  Based on this reasoning, the court concluded that the tobacco company satisfied the amount in controversy requirement of diversity jurisdiction, and denied the plaintiff's motion to remand. Id.  The same results were reached in Sanchez v. Monumental Life Ins. Co., 102 F.3d 398 (9th Cir. 1996) (holding that aggregation of claims from defendant's perspective appropriate in private attorney general action under California consumer protection statutes), and Myers v. Merrill Lynch & Co., Inc., 1999 WL 696082 * 4-5 (N.D. Cal. 1999) (adopting reasoning in Mangini and Sanchez in holding that aggregation of claims appropriate in actions brought under California consumer protection statutes); cf. Ecker v. Ford Motor Co., 2002 WL 31654558 at * 3 (C.D. Cal. 2002) (holding that Mangini does not apply because plaintiff brought a class action lawsuit and not a private attorney general lawsuit).

Mangini, Myers, and Sanchez are conclusively persuasive in this case.  As in those cases, the sole plaintiff in this case is asserting a "private attorney general" action based on a sweeping consumer protection statute.  As noted above, Breakman vigorously contests the conclusion that the case at bar is a class action lawsuit, thus removing it from the class-action jurisdictional limitations of Zahn and Snyder.  Instead, Breakman's characterization of this case as a "private attorney general action" only (see Am. Mot. at 4) places it squarely within the reach of Mangini, Myers, and Sanchez.  This case, according to Breakman, "is not a class action, nor does it

possess many of the defining characteristics of a class action." See <u>Mangini</u>, 793 F. Supp. at 928. Accordingly, "in non-class action cases [like this case], the amount in controversy may be measured . . . by the value of . . . the cost to the defendant if the relief is granted." See <u>id.</u> (citations omitted).

Based on <u>Mangini</u>, <u>Myers</u>, and <u>Sanchez</u>, AOL can conclusively establish that the statutory and actual damages sought independently exceed Section 1332(a)'s jurisdictional minimum.[7] First, the cost to AOL if Breakman prevails in this case for statutory damages far exceeds $75,000 threshold. Breakman demands $1,500 in statutory damages "for each District of Columbia consumer." (Compl. ¶ 25.) As AOL states in its Amended Notice, there are 28,451 AOL consumers in the District of Columbia for whom Breakman seeks to apply statutory damages. (Am. Not. ¶ 8.) Accordingly, the cost of these damages alone to AOL, should Breakman succeed at trial, is $42,676,500.00.

Second, the cost to AOL for actual damages, by itself, also exceeds Section 1332(a)'s jurisdictional minimum.[8] If Breakman prevails at trial, the actual damages sustained by AOL could be up to $3,659,785.93. (Baumeister Aff ¶ 4.) AOL calculated this figure by (1) assuming

---

[7]    Breakman's challenge to amount in controversy contradicts his own demand of $11,000,000, which is noted on Civil Information Sheet attached to his Complaint. (See Civil Information Sheet.)

[8]    Notably, Breakman fails to explain in any detail why or how AOL should not be permitted to aggregate his alleged actual damages for jurisdictional purposes. Breakman's only reference to actual damages is in a footnote that conclusively states that the actual damages calculation "is subject to the same aggregation analysis as the [$]42 million." (Am. Mot. at 10 n.5.) AOL agrees that Breakman's actual damages should be subject to the same aggregation analysis as its statutory damages, but, for the reasons stated <i>supra</i> at 13-16, disagrees that <u>Zahn</u>, <u>Snyder</u>, and <u>Reigner</u> apply. Instead, this Court should adopt the reasoning in <u>Mangini</u>, <u>Myers</u>, and <u>Sanchez</u> and hold that AOL may aggregate its actual damages because this case is not a class action, but rather a private attorney general action seeking damages on behalf of the general public.

Breakman's only substantive defense to actual damages aggregation is that AOL's "damage calculation is not one that is requested or one to which D.C. consumers would be entitled." (Am. Mot. at 10 n.5.) Breakman neither explains what actual damages he seeks, nor why AOL's actual damages calculation exceeds its potential exposure. To the contrary, the DCCPPA specifically provides that "in representative actions, additional relief as may be necessary to restore the consume money or property, real or personal, which may have been acquired by means of the unlawful trade practice." D.C. Code § 28-3905(k)(1)(E). Thus, the DCCPPA authorizes Breakman to the exact type of "actual damages" relief calculated by AOL, assuming Breakman is entitled to such damages.

that every single consumer would have changed its service from the higher rate ($23.90-25.90) service to the lower rate ($9.99) service, and (2) determining the amount each D.C. AOL consumer would have saved had he or she changed to the lower rate service option as soon as it was available. (Baumeister Aff ¶ 4.) Thus, the total savings to D.C. AOL customers – and the total disgorgement of AOL's revenues from those customers – could total $3,659,785.93, which is an average of $128.63 per D.C. AOL customer. (Baumeister Aff ¶ 4.)

In sum, the actual and statutory damages far exceed the jurisdictional threshold under Section 1332(a). Breakman demands $11,000,000 in total damages in his Complaint, see Civil Information Sheet, but he does not specify the amount of each constituent element of his $11 million demand. Specifically, he does not specify the amount of claimed statutory and actual damages in his Complaint. (Compl. ¶ 25(1), (2).) When the claimed damages are unspecified in amount, the "preponderance of evidence" standard governs to determine the true amount in controversy. Williams, 2003 U.S. Dist. LEXIS 19268 *17. AOL has proven by a preponderance of evidence – indeed, undisputed evidence – that the actual damages in this case would exceed $3 million. Moreover, AOL has proven by a preponderance of evidence that statutory damages have to potential to exceed $42 million if Breakman is entitled to them. Therefore, AOL has proven that the actual and statutory damages individually satisfy the $75,000 jurisdictional minimum of Section 1332(a).

b.    The Injunctive Relief Sought by Breakman Exceeds The Jurisdictional Threshold.

Breakman claims that (1) AOL cannot establish, as a matter of fact, that the cost would exceed $75,000; and (2) AOL cannot satisfy the jurisdictional requirement by calculating its full cost to comply with the injunctive relief sought, but instead must divide the cost of the injunction

among the total number of consumers whom Breakman represents. (Am. Mot. 13-17.) Both of these contentions are wrong.

First, AOL clearly has established that the cost of complying with the sought injunctive relief exceeds $75,000. In his Amended Motion, Breakman attempts to limit his Complaint's request for injunctive relief only to "enjoin AOL from failing to disclose material facts to its customers . . . by disclosing the material facts to its customers." (Am. Mot. at 13.) Contrary to Breakman's *post hoc* characterization, that is not what Breakman's Complaint seeks. The Complaint seeks "[a]n injunction enjoining Defendant AOL from continuing the unlawful trade practices herein." (Compl. ¶ 25(5).) Count I defined the "unlawful trade practices," in part, as the "knowing concealment, and/or suppression and omission of material facts *by continuing to automatically debit $23.90-$25.90 from its loyal existing members' accounts* for Dial-up ISP Service, while offering essentially the same Dial-up Service to new members for $9.95." (Compl. ¶¶ 22-23 (emphasis added).) Read together, Breakman's injunctive relief necessarily includes a court order requiring AOL to discontinue the automatic debiting of monthly fees for the higher rate services.

The cost of this injunctive relief is exactly what AOL calculates in detail in its Amended Notice:

> If AOL were enjoined from continuing its current practice of offering a $23.90 or $25.90 AOL Dial-Up Advantage service plan and require to only offer D.C. Consumers its $9.95 AOL Basic Dial-Up and High Speed Essentials service plans, AOL would need to expend time and resources to create and integrate the new price plans into AOL's existing billing systems.

(Am. Not. ¶ 12.) AOL calculates this time and resource cost to total $255,800. (Am. Not. ¶¶ 14, 15.) AOL supports these figures based on the undisputed testimony of John Baumeister, who is

an AOL Program Manager on the Regulatory Order Compliance Team and in a position to estimate such costs. (Am. Not. Ex. A ¶ 4.)

On the other hand, Breakman has not offered *any* evidence to contradict AOL's testimonial evidence. Indeed, Breakman's sole response to AOL's evidence is that "[i]t seems to Plaintiff that it is beyond argument that the cost of such an email blast to its District of Columbia customers properly disclosing the material facts would not exceed $75,000." (Am. Mot. at 13.) Such unfounded speculation does not begin to discredit AOL's detailed calculations.

As noted above, when the claimed damages are unspecified in amount, the "preponderance of evidence" standard governs to determine the true amount in controversy. Williams, 2003 U.S. Dist. LEXIS 19268 *17. Here, AOL has offered undisputed, detailed testimony describing the total cost of complying with the injunctive relief Breakman seeks in his Complaint. Breakman, on the other hand, offers no evidence, and instead summarily and speculatively rejects AOL's testimony. AOL has demonstrated by a "preponderance of evidence" that the cost of complying with the injunctive relief sought exceeds $75,000.

Second, Breakman argues that AOL cannot satisfy the jurisdictional requirement by calculating its full cost to comply with the injunctive relief sought. (Am. Mot. at 13-16.) As a corollary to this theory, Breakman insists that AOL must divide the cost of the injunction among the total number of persons whom Breakman represents. (Am. Mot. at 16-17.) Breakman's theories rest exclusively on the *class action* principles announced in Zahn, National Organization for Women, and In re Gen. Motors Corp. Dex-Cool Products Liability Litigation, 2006 U.S. Dist. LEXIS 74503 (S.D. Ill. 2006). None of these authorities apply to this case.

As explained in detail above, Zahn has no application to this case because Zahn's commands apply only in class action lawsuits. See *supra* at 13-15. According to Breakman, the case at bar is not a class action lawsuit, so Zahn does not apply here. (See Am. Mot. at 4.)

Breakman's reliance on National Organization for Women suffers the same infirmity. In National Organization for Women, the three plaintiffs filed *a class action* lawsuit against an insurance company alleging violations of the D.C. Human Rights Act. 612 F. Supp. at 101. The defendant removed to federal court based on diversity jurisdiction, and the plaintiffs moved to remand. Id. The issue in that case was whether the defendants satisfied the jurisdictional amount. Id. The court applied the principles in Zahn and Snyder because "Zahn expressly dealt with class actions under Rule 23(b)(3)." Id. at 102 n.1. Based on those class action principles, the court in National Organization for Women forbade a defendant from using its cost of compliance to satisfy the jurisdictional amount. Id. at 107-08. The court reasoned that the allowance of such a "defendant's view test . . . whenever injunctive relief is sought along with damages *in a class action* would undermine the holdings of Zahn and Snyder." Id. at 108 (emphasis added). National Organization for Women does not apply to this case for the same reason as its underpinning authorities do not: this case is, according to Breakman, not a class action lawsuit.

Breakman's reliance on General Motors, not surprisingly, is misplaced for the same reason that all of Breakman's legal support fails. In General Motors, two plaintiffs filed *a class action lawsuit* in California state court. 2006 U.S. Dist. LEXIS 74503 *3-4. The plaintiffs, who claimed to represent a class of California residents who owned General Motors vehicles, alleged violations of the California equivalent of the DCCPPA. Id. The defendant removed the case to federal court based on traditional (Section 1332(a)) and CAFA (Section 1332(d)) diversity

jurisdiction, and the plaintiffs moved to remand. Id. at *4-5. In granting the motion to remand, the court held in part that even when a defendant is allowed to use the cost to comply to "value the amount in controversy *in a class action*, the cost of equitable relief to a defendant . . . must be apportioned pro rata among the members of the proposed class." Id. at *31 (emphasis added). Thus, General Motors does not apply here because it applies only to class action lawsuits, and Breakman steadfastly maintains that the case at bar is not one. (Am. Mot. at 4.)

In sum, neither Zahn nor National Organization for Women nor General Motors applies to this case because Breakman insists that this case is not a class action. Thus, Breakman again is left with no authority to support his non-aggregation theory.

On the other hand, recent authority *from this Court* directly addresses whether AOL may satisfy the jurisdictional requirement by demonstrating its full cost to comply with the alleged injunctive relief. In Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150 (D.D.C. 2007), the plaintiffs filed a lawsuit in D.C. Superior Court against a commercial airline company, alleging that the company had violated the DCCPPA. Id. at 151. The defendant removed the case to federal district court, alleging that it had subject matter jurisdiction under, *inter alia*, Section 1332(a), and Section 1332(d). Id. The plaintiffs filed a motion to remand. Id. at 152. The district court, through Judge Kessler, granted the motion to remand because defendants *failed to prove* that it had subject matter jurisdiction. Id. at 155. In so doing, however, Judge Kessler announced several basic principles that guided the court's Section 1332(a) amount-in-controversy analysis. Id. at 153-155.

Among those rules was a clear standard on the use of a defendant's cost of complying with injunctive relief: "[t]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant." Wexler, 496 F. Supp. 2d at 153-154 (citing

Comm. for GI Rights v. Callaway, 518 F.2d 466, 472-73 (D.C. Cir. 1975); Tropp v. Western-Southern Life Ins. Co., 381 F.3d 591 (7th Cir. 2004)).  Breakman considers this standard *dicta* simply because of the court's choice of citation signal, but clearly Judge Kessler employed the rule to analyze whether the defendant could satisfy the jurisdictional requirement of Section 1332(a).  Indeed, Judge Kessler concluded that the defendant *failed to prove* the cost to comply:

> [the defendant] does not submit supporting declarations or affidavits from its employees, who would undoubtedly be in a position to estimate such costs, nor does it provide any evidence to support its claims.  This nonexistent evidentiary showing is insufficient to meet [the defendant's] burden to establish the existence of federal subject matter jurisdiction.

Wexler, 496 F. Supp. 2d at 154.

Despite the Wexler defendant's failure to prove federal subject matter jurisdiction, Wexler's principles apply here in this case.  Unlike the Wexler defendant, AOL has provided detailed testimonial evidence on the full cost for it to comply with Breakman's requested injunction.  See *supra* at 20-21.  Applying the principles adopted in Wexler, this full cost to AOL may be used to determine whether this Court has satisfied the amount in controversy requirement of Section 1332(a).  See Wexler, 496 F. Supp. 2d at 153-54.  AOL has proffered thorough, undisputed testimony that the cost to comply with Breakman's injunctive relief exceeds $255,000.  See *supra* at 20-21.  Accordingly, AOL has proven by a preponderance of evidence that the cost to comply with Breakman's injunctive relief exceeds the $75,000 jurisdictional minimum of Section 1332(a).

        c.    <u>The Punitive Damages and Attorneys Fees Sought by Breakman Exceeds The Jurisdictional Threshold.</u>

In his Amended Motion, Breakman does not address why his claim for attorneys' fees and punitive damages should not be considered for this Court's amount in controversy

determination.[9]  (See generally, Am. Mot.)  Each of these categories of relief sought, however, satisfies Section 1332(a)'s jurisdictional threshold because both punitive damages and attorneys' fees can be included in determining the amount in controversy for a DCCPPA action.  See Wexler, 496 F. Supp. 2d at 154-55.

First, Judge Kessler is clear in Wexler that punitive damages can be included in determining the amount in controversy for a DCCPPA action.  See Wexler, 496 F. Supp. 2d at 154-55; see also Bell v. Preferred Life Assur. Soc., 320 U.S. 238, 240 (1943).  Specifically, "[p]unitive damages may generally be included when calculating the amount in controversy under 28 U.S.C. § 1332(a)."  Id. at 154 (citing Nwachukwu v. Karl, 223 F. Supp. 2d 60, 66 (D.D.C. 2002)).  In this case, Breakman has not definitively limited the amount of punitive damages sought to an amount that is less than the jurisdictional amount.  Accordingly, AOL has the burden to prove, by the "preponderance of evidence," that the punitive damages sought could exceed $75,000.  See Williams, 2003 U.S. Dist. LEXIS 19268 *17.

Punitive damages are intended to punish and deter.  Calvetti v. Antcliff, 346 F. Supp. 2d 92, 108 (D.D.C. 2004) (citations omitted).  The amount of punitive damages is a question for the jury.  Id. (citations omitted).  Here, Breakman represents a "general public" of 28,451 D.C. AOL customers.  All that is needed to satisfy the jurisdictional minimum is a punitive damages award of $2.64 for each customer.  Thus, this Court would need to award Breakman punitive damages of only 2.05% of the estimated actual damages (or less than two-tenths of 1% of the statutory damages) at issue in this case to satisfy the jurisdictional minimum.  If the purpose of punitive damages has any meaning, it must be that the amount of punitive damages must be beyond a *de*

---

[9]    AOL did not specifically include in its Amended Notice Breakman's claims for punitive damages or attorneys' fees as additional support for its conclusion that this action satisfies the amount in controversy requirement.  If this Court finds that it is necessary that such technical allegations must be present in the Amended Notice, AOL, pursuant to 28 U.S.C. § 1653, respectfully moves this Court to amend its Amended Notice to correct such technical defects.  See also *supra* at 10-11.

*minimis* 2.05% of actual damages, and less than 0.2% of statutory damages. By seeking punitive damages for such a large group, Breakman necessarily pleads with near certainty that any punitive damages awarded would exceed $75,000.

Second, in <u>Wexler</u>, Judge Kessler clearly states that "[a]ttorney's fees are generally not included in the amount in controversy, *unless provided for by statute or contract*." See <u>Wexler</u>, 496 F. Supp. 2d at 154 (citing <u>Walker v. Walker</u>, 267 F. Supp. 2d 31, 33 (D.D.C. 2003); <u>Srour v. Barnes</u>, 670 F. Supp. 18, 22 (D.D.C. 1987)) (emphasis added); see also <u>Missouri State Life Ins. Co. v. Jones</u>, 290 U.S. 199, 202 (1933). As noted by the <u>Wexler</u> Court, the DCCPPA expressly allows Breakman to recover "reasonable attorney's fees." See D.C. Code § 28-3905(k)(1)(B). Accordingly, the attorneys' fees sought by Breakman are properly included in the amount in controversy analysis.

Breakman, however, does not specify the amount of attorney's fees sought in this action. The burden is on AOL to prove, by the "preponderance of evidence," that the attorneys' fees sought could exceed $75,000. <u>Williams</u>, 2003 U.S. Dist. LEXIS 19268 *17. Though AOL speculates that a private attorney general action of this magnitude could easily generate attorneys' fees in excess of $75,000 for Breakman, AOL does not – and cannot – have any evidence at this time of the projected amount without conducting jurisdictional discovery. If this Court finds that such discovery is necessary to determine whether the amount in controversy requirement is satisfied, AOL respectfully requests that this Court grant it leave to conduct jurisdictional discovery on Breakman.

      3.    <u>Conclusion: This Court Has Traditional (Section 1332(a)) Diversity Jurisdiction Over This DCCPPA Action.</u>

In sum, AOL has adequately alleged and proven that there is complete diversity between Breakman and AOL because Breakman is a D.C. citizen and AOL is a citizen of Virginia,

Delaware, New York, and California. Furthermore, the amount in controversy in this action is satisfied because AOL has alleged, and proven by a preponderance of evidence, that (1) the actual damages sought exceed $3 million, (2) the statutory damages sought exceed $42 million, (3) the injunctive relief sought exceeds $255,000, and (4) the punitive damages sought almost certainly exceed $75,000. In addition, AOL believes that it could conclusively prove that the attorneys' fees sought exceed $75,000 if this Court grants it leave to conduct jurisdictional discovery. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Removal was therefore proper pursuant to 28 U.S.C. § 1441(a), and this Court should deny Breakman's Amended Motion to Remand.

B.    This Court Has Diversity Jurisdiction Pursuant To 28 U.S.C. § 1332(d).

The Class Action Fairness Act, codified in part at 28 U.S.C. § 1332(d), provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." If this Court does not have original jurisdiction pursuant to the traditional diversity jurisdiction statute, 28 U.S.C. § 1332(a), then this Court *must* have subject matter jurisdiction under CAFA because (1) this case *must* be a class action if Breakman's traditional diversity argument prevails; (2) the parties are minimally diverse; and (3) the total amount in controversy exceeds $5,000,000.

1.    If This Court Adopts Breakman's Section 1332(a) Analysis, Then This Action Must Be A Class Action That Is Subject to CAFA Diversity Jurisdiction.

Breakman steadfastly maintains that this lawsuit "is not a class action at all." (Am. Mot. at 4.) He provides no legal authority his theory that a representative action under the DCCPPA is

*not* a class action. Instead, his *sole* argument against CAFA jurisdiction is that this action is not

a "*mass action*" under CAFA. (Am. Mot. at 4-5.)

Breakman is partially correct: this case is not a mass action under CAFA. 28 U.S.C. §

1332(d)(11)(A) provides that "[f]or purposes of [the CAFA diversity] subsection . . . , a mass

action shall be deemed to be a class action. . ." The same paragraph defines the term "mass

action" as

> any civil action . . . in which monetary relief claims of 100 or more persons are
> proposed to be tried jointly on the ground that the plaintiffs' claims involve
> common questions of law or fact, except that jurisdiction shall exist only over
> those plaintiffs whose claims in a mass action satisfy the jurisdictional amount
> requirements under [the traditional diversity jurisdiction statute].

28 U.S.C. § 1332(d)(11)(B)(i). The statute expressly excludes the following types of cases from

the definition of "mass action:" "all of the claims in the action are asserted on behalf of the

general public (and not on behalf of individual claimants or members of a purported class)

pursuant to a State statute specifically authorizing such action."   28 U.S.C. §

1332(d)(11)(B)(ii)(III).   As Breakman notes, this DCCPPA case falls squarely within the

definitional exclusion of "mass action." (Am. Mot. at 4-5.) AOL, however, has never claimed

that this case is a "mass action." Instead, AOL simply asserts that this case must be a "class

action" (that is not a mass action) for Breakman's traditional diversity argument to prevail.

If Breakman's traditional diversity jurisdiction argument prevails, this case *must* be a

class action (yet not a mass action) for two reasons. First, Section 1332(d)(1) defines the term

"class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or*

*similar State statute* or rule of judicial procedure *authorizing an action to be brought by 1 or*

*more representative persons* as a class action." (Emphasis added.) In this case, the DCCPPA is

a D.C. statute that authorizes "[a] person, whether acting for the interests of itself, its members,

or the general public, [to] bring an action . . . seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia." D.C. Code § 28-3905(k)(1). On its face, the DCCPPA falls within Section 1332(d)(1)'s definition of "class action" because it authorizes Breakman to file this representative action on behalf of AOL customers in the District of Columbia.

Second, this Court *must* apply the principles in <u>Zahn</u> and its progeny for Breakman's traditional diversity jurisdiction argument to prevail. As explained thoroughly above, see *supra* at 13-15, Breakman's entire traditional diversity jurisdiction argument dispositively hinges on the application of the class action rules announced in <u>Zahn</u> (and *each and every one* of his other cited cases − all of which rely entirely on <u>Zahn</u>'s principles) to the facts of this case. For example, Breakman specifically urges this Court to analogize this case to <u>Reigner</u>. In <u>Reigner</u>, a DCCPPA case decided before the enactment of CAFA diversity jurisdiction, the jurisdictional question presented was

> whether plaintiff's claims are more like those of individual plaintiffs *in a class action*, which will not be aggregated for purposes of achieving the jurisdictional amount needed for removal, or more like a claim for disgorgement, which , as Judge Collyer found in <u>Williams v. Purdue Pharma Co.</u>, 2003 U.S. Dist. LEXIS 19268 (D.C.D.C.), will be aggregated.

461 F. Supp. 2d at 1-2 (emphasis added). The <u>Reigner</u> Court settled on the former option, and reasoned that the "suit seeks damages for individual customers," like a class action lawsuit, and therefore could not be aggregated. <u>Id.</u> at 2-3. Notably, Breakman seeks damages "for each individual District of Columbia consumer" in this case. (Compl. ¶ 25.) If this Court adopts the reasoning of <u>Zahn</u> and <u>Reigner</u>, Breakman cannot then contradict his argument and claim that this case is *not* a class action. Therefore, if this Court concludes that it does not have subject

matter jurisdiction under Section 1332(a), then it *must* conclude that this case is a class action, and subject to the CAFA diversity jurisdiction statute, 28 U.S.C. § 1332(d).

2.    The Parties are Minimally Diverse, And The Total Amount in Controversy Exceeds $5,000,000.

In his Amended Motion, Breakman does not even attempt to challenge whether AOL can satisfy the remaining CAFA diversity jurisdictional requirements.    (See Am. Mot. at 3-5.) Nevertheless, the burden is on AOL to affirmatively establish that federal subject matter jurisdiction exists under CAFA. Wexler, 496 F. Supp. 2d at 152 (citations omitted).

If this case is a "class action," then this case easily satisfies the two remaining CAFA jurisdictional requirements. First, CAFA's citizenship requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). This "minimum diversity" requires only one plaintiff and one defendant to be diverse. Toller v. Sagamore Ins. Co., 514 F. Supp. 2d 1111, 1115 (E.D. Ark. 2007). In this case, there is only one plaintiff, Breakman, and one defendant, AOL. See *supra* at 12-13. Breakman is a citizen of the District of Columbia, and AOL is a citizen of Virginia, Delaware, New York, and California. Id. Accordingly, the parties satisfy the relaxed diversity of citizenship requirement of Section 1332(d).

Second, CAFA requires that the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2). The United States Supreme Court has explained that

> CAFA confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million. It abrogates the rule against aggregating claims, a rule this Court recognized in [Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356 (1921)] and reaffirmed in Zahn.

Exxon Mobil Corp., 545 U.S. at 571.    Here, the matter in controversy clearly exceeds $5,000,000. As demonstrated above, Breakman demands $11 million on the Civil Information

30

Sheet attached to his Complaint.  (See Civil Information Sheet.)  Furthermore, AOL has proven that (1) the actual damages sought by Breakman exceed $3 million, (2) the statutory damages sought exceed $42 million, (3) the cost to comply with the injunctive relief sought exceeds $255,000, and (4) the punitive damages sought must exceed $75,000.  In short, the case at bar is potentially a $50 million lawsuit, which clearly satisfies CAFA's amount in controversy requirement.

> 3.    Conclusion: This Court has CAFA (Section 1332(d)) Diversity Jurisdiction Over This DCCPPA Action If It Does Not Have Traditional (Section 1332(a)) Diversity Jurisdiction.

In conclusion, this Court must necessarily conclude that this case is a class action for this Court to adopt Breakman's Zahn/Reigner analysis.  If this case is a class action, AOL has easily satisfied the jurisdictional requirements under the CAFA diversity statute.  AOL has adequately alleged and proven that there is minimal diversity because Breakman is a D.C. citizen and AOL is a citizen of Virginia, Delaware, New York, and California.  Furthermore, the amount in controversy under CAFA is satisfied because AOL has alleged, and proven by a preponderance of evidence, that (1) the actual damages sought exceed $3 million, (2) the statutory damages sought exceed $42 million, (3) the cost to comply with the injunctive relief sought exceeds $255,000, and (4) the punitive damages sought must exceed $75,000.  Accordingly, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d).  Removal was therefore proper pursuant to 28 U.S.C. § 1441(a), and this Court should deny Breakman's Amended Motion to Remand.

III.    THIS COURT SHOULD NOT AWARD BREAKMAN COSTS OR EXPENSES EVEN IF IT REMANDS THIS CASE TO D.C. SUPERIOR COURT.

In his Amended Motion, Breakman demands that this Court award him "costs and actual expenses, including attorney fees," incurred as a result of the removal.  (Am. Mot. at 17-18.)

This Court should not award Breakman any costs or expenses even if it remands the case because, if anything, the law is unsettled.

Section 1447(c) of Title 28 provides that a district court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The imposition of costs and expenses, however, is in a court's discretion. Johnson-Brown, 257 F. Supp. 2d at 181 (citing Weigert v. Georgetown Univ., 43 F. Supp. 2d 5, 7 (D.D.C. 1999)). Courts do not tend to impose costs and expenses on the removing party if the relevant law is unsettled or if removability is unclear. Id. (citations omitted).

In this case, there is no clear, controlling case law on whether this Court has jurisdiction over a DCCPPA action pursuant to either Section 1332(a) or Section 1332(d). As a result, Breakman rests his argument exclusively on case law that is only applicable to class action lawsuits (or just bare conclusory remarks), and AOL relies on persuasive authority from D.C. and California federal courts. Even if there were cogent, controlling law, Breakman seems to "dispute" AOL's alleged facts. AOL has presented an abundance of evidence to prove that this Court has subject matter jurisdiction over this action. Breakman has not proffered any evidence to rebut AOL's showing, and simply speculates as to the evidence's validity. Therefore, this Court should deny Breakman's request for costs and actual expenses, including attorneys' fees, if it decides to remand this case to the D.C. Superior Court.

CONCLUSION

Breakman argues that this case *is* a "class action" for purposes of the traditional diversity jurisdiction analysis, but it *is not* a "class action" for purposes of CAFA diversity jurisdiction analysis. Breakman cannot win both of these arguments; to win one is to lose the other. If this Court adopts AOL's Section 1332(a) analysis, it has subject matter jurisdiction. If, on the other

32

hand, this Court adopts Breakman's Section 1332(a) analysis and employs <u>Zahn</u> and its progeny, this case *must* be a class action.   In that event, Section 1332(d) clearly grants this Court subject matter jurisdiction over this action.  Either way, this Court has federal subject matter jurisdiction over this case under 28 U.S.C. § 1332(a), or, alternatively, 28 U.S.C. § 1332(d).  Regardless of which approach this Court adopts, AOL's removal to this Court was proper under 28 U.S.C. § 1441(a).  Accordingly, this Court should deny Breakman's Amended Motion to Remand.

REQUEST FOR ORAL ARGUMENT

AOL, by counsel and pursuant to Local Civil Rule 7(f), respectfully requests that this Court hear oral argument on Breakman's Amended Motion to Remand.


Dated: March 12, 2008

Respectfully submitted,

**AOL LLC**

*By Counsel*

**MCGUIREWOODS LLP**
1750 Tysons Boulevard
Suite 1800, Tysons Corner
McLean, Virginia 22102
Tel:  (703) 712-5000
Fax:  (703) 712-5220
E-mail:  mglassman@mcguirewoods.com
        kdeturris@mcguirewoods.com
        aramana@mcguirewoods.com
*Counsel for Defendant AOL LLC*

/s/ _____
M. Melissa Glassman (D.C. Bar No. 417074)
Kevin F. X. De Turris (D.C. Bar No. 491708)
Anand V. Ramana (D.C. Bar No. 489478)

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2008, a copy of the foregoing pleading was sent by U.S. Mail, postage prepaid, to the following recipients:

> Jeffrey Harris
> Walter E. Diercks
> Rubin, Winston, Diercks, Harris & Cooke, LLP
> 1155 Connecticut Avenue, N.W.
> 6th Floor
> Washington, D.C.  20036
>
> Andrew A. August
> Kevin F. Rooney
> Pinnacle Law Group
> 425 California Street, Suite 1800
> San Francisco, California  94104
>
> Giancarlo Terilli
> Law office of Giancarlo Terilli, LLC
> 225 Broadway, Suite 2812
> New York, NY 10007

> /s/_____
> Anand V. Ramana (D.C. Bar No. 489478)
> **MCGUIREWOODS LLP**
> 1750 Tysons Boulevard, Suite 1800
> McLean, Virginia  22102
> Tel:  (703) 712-5000
> Fax:  (703) 712-5220
> Email:  aramana@mcguirewoods.com
> *Attorney for Defendant AOL LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PAUL M. BREAKMAN, in a representative capacity acting for the interests of the general public,<br><br>     *Plaintiff,*<br><br>  v.<br><br>AOL LLC,<br><br>     *Defendant.* | Civil Action No. 1:08cv00246 (JDB) |

## AFFIDAVIT OF JOHN BAUMEISTER

I, John Baumeister, state and declare as follows:

1. I am over the age of 18 years and am competent to testify in this matter. Furthermore, I have personal knowledge of the matters about which I testify herein. I am a resident of the Commonwealth of Virginia.

2. I am a Program Manager on the Regulatory Order Compliance Team for AOL LLC ("AOL"), the defendant in the above-captioned lawsuit. I am responsible for running data queries within AOL consumer account history and billing systems to size putative class action claims, to respond to consumer complaints and discovery requests, and to administer consumer settlements. I have personal knowledge regarding the number of customers who subscribe to particular AOL services and price plans in every state of the United States, as well as the District of Columbia.

3. AOL is a limited liability company organized under Delaware law, and its principal place of business is located in Virginia. AOL is a wholly-owned subsidiary of AOL Holdings LLC, which is a Delaware limited liability company with its principal offices located

also in Virginia.  AOL Holdings LLC, in turn, is owned by three corporations: (1) TW AOL Holdings, Inc., which is a Virginia corporation with its principal offices in New York; (2) Google, Inc., which is a Delaware corporation with its principal offices in California; and (3) Time Warner, Inc., which is a Delaware corporation with its principal offices in New York. AOL provides consumers throughout the United States with a variety of interactive computer services, including high-speed and dial-up internet services.

4.      If Breakman prevails at trial, the actual damages sustained by AOL could be up to $3,659,785.93.  AOL calculated this figure by (1) assuming that every single consumer would have changed its service from the higher rate ($23.90-25.90) service to the lower rate ($9.99) service, and (2) determining the amount each D.C. AOL consumer would have saved had he or she changed to the lower rate service option as soon as it was available.  Thus, the total savings to D.C. AOL customers – and the total disgorgement of AOL's revenues from those customers – could total $3,659,785.93, which is an average of only $128.63 per D.C. AOL customer.

5.      I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.


Further The Affiant Sayeth Not.

Executed this 12th day of March, 2008.

                                   __/s/_ John Baumeister[1]_____
                                   John Baumeister
                                   Program Manager
                                   Regulatory Order Compliance Team
                                   AOL LLC

---

[1]     The original signed document is in the possession of McGuireWoods LLP, counsel for AOL, pursuant to Local Civil Rule 5.4(b)(5).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PAUL M. BREAKMAN, in a representative capacity acting for the interests of the general public, <br><br> *Plaintiff,* <br><br> v. <br><br> AOL LLC, <br><br> *Defendant.* | Civil Action No. 1:08cv00246 (JDB) |

## **PROPOSED ORDER**

THIS MATTER COMES BEFORE this Court upon the Amended Motion to Remand filed by Plaintiff Paul M. Breakman, in a representative capacity acting for the interests of the general public ("Breakman"), by counsel.

IT APPEARING TO THE COURT, upon the arguments by counsel in its briefs and at oral argument, that this Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332; it is hereby

*ORDERED, ADJUDGED* and *DECREED,* that the Amended Motion to Remand is DENIED; and it is

*FURTHER ORDERED, ADJUDGED* and *DECREED,* that Breakman shall file his oppositions to the Rule 12(b)(6) Motion to Dismiss and Motion to Transfer and Dismiss filed by Plaintiff AOL LLC within eleven (11) days of entry of this Order.

Date: _____    Entered: _____
                                            Hon. John D. Bates
                                            United States Magistrate Judge
                                            District of the District of Columbia

1