**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PAUL M. BREAKMAN,         :
                                    :

    Plaintiff,              :
                                      :

        v.                 :           **1:08- CV-246 (JDB)**

AOL, LLC,                :
                                      :

    Defendant.            :

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
PLAINTIFF'S AMENDED MOTION TO REMAND**

Plaintiff Paul M. Breakman ("Breakman"), by and through undersigned counsel, replies to the opposition of Defendant AOL, LLC ("AOL") to his Amended Motion to Remand.  As demonstrated below, AOL has not - and indeed cannot - refute the arguments made in support of the Amended Motion to Remand that this Court does not have subject matter jurisdiction over this action and that AOL's removal of this action from D. C. Superior Court was improper.

    **I.**     **Neither Aggregation of the Consumers' Damages nor the Total Cost to the Defendant in Complying with the Requested Injunctive Relief Is a Correct Basis to Compute the Amount in Controversy to Determine If the Court Has Subject Matter Jurisdiction Under 28 U.S.C. 1332(a)**

AOL argues that the instant action is a representative action and not a class action. AOL is correct.  AOL's argument goes on to conclude that, as a representative action, the class action decisions that prohibit aggregation of claims to reach the jurisdictional threshold have no application.  In this conclusion AOL is incorrect.

The non-aggregation rule was announced by the Supreme Court in *Zahn v.*

*International Paper Co.*, 414 U.S. 291 (1973), and *Snyder v. Harris*, 394 U.S. 332 (1960).

AOL contends that the Supreme Court limited the non-aggregation rule announced in *Zahn*

and *Synder* to "class action lawsuits . . . ." (AOL Opp. p. 14).  AOL goes one to argue that

*Reigner v. Ingersoll Rand Co.*, 461 F. Supp 2d 1 (D.D.C. 2004), a decision by Judge

Robertson of this Court holding that in a DCCPPA action aggregation is not permitted to

reach the jurisdictional amount, was wrongly decided because it relied on *Zahn* and *Snyder.*

AOL concludes that Plaintiff's "reliance on *Reigner* fails for the same reason as its reliance

on *Zahn* and *Snyder* fails . . . because neither *Zahn* nor *Synder* apply to this case **because**

**they were class action lawsuits**."[1]  (AOL Opp. p. 16, emphasis in original).

Having stated that proposition, and stated that there is no precedent on this issue in

the District of Columbia,[2] AOL invites the Court to look to decisions interpreting

California's similar representative action statute (Ca. L. Bus & Prof Code §§ 17200, *et seq.*

---

[1]  AOL also argues, later in its Opposition at page 21, that the Court should look to the cost to the defendant to comply with the injunctive relief sought in determining if the jurisdictional amount has been met, rather than dividing the purported injunctive relief cost by the number of persons whom the plaintiff represents.  AOL concludes that, since this case is not a class action, there is no requirement that the cost of the injunctive relief be so divided.  Since AOL's argument on this point is the same as its argument on aggregation, namely that prohibiting aggregation only applies to class actions, it is addressed in this section of the Reply.

[2]  While there is no reported decision of this Court, in the context of a motion to remand a removed case, Judge Huvelle of this Court, in the case of *Reigner v. Master Lock Co.*, was presented with precisely the argument that aggregation is permitted, citing *Mangini*, *Myers* and *Sanchez*.  As more fully described *infra.*, Judge Huvelle remanded the case to Superior Court from the bench after oral argument.

(the "California Statute")).[3]  AOL supports its argument by citation to three California cases, *Mangini v. R. J. Reynolds Tobacco Co.*, 793 F. Supp. 925 (N.D. Cal. 1992);  *Myers v. Merrill Lynch & Co., Inc.*, 1999 U.S. Dist LEXIS 22642 (N.D. Cal. 1999); and  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3rd 398 (9th Cir. 1996).[4]  AOL contends that these cases are "persuasive authority" for the proposition that the non-aggregation rules do not apply to a private attorney general action.

Inexplicably, AOL has failed to inform the Court that the judge who wrote the *Mangini* opinion, upon which *Myers* relied, ten years later reconsidered this very issue in *Boston Reed Co., v. Pitney Bowes, Inc.*, 2002 U.S. Dist LEXIS 11683 (N.D. Cal. 2002), and rejected his decision in *Mangini.*  In addition, AOL's counsel has failed to inform the Court that every one of the five cases decided since *Myers* has rejected *Myers'* holding:  *Phipps v. Praxair, Inc.*, 1999 U.S. Dist LEXIS 18745 (S.D. Cal. 1999)*;  Surber v. Reliance National Indemnity Co.,* 110 F. Supp 2d 1227 (N.D. Cal. 2000); *Boston Reed Co.*, *supra.*;  *Ecker v. Ford Motor Co.*, 2002 U.S. Dist. LEXIS 26229 (N.D. Cal. 2002); *and Hanan v. Ford Motor*

---

[3]  The California Statute was amended in 2004 and is now significantly different from the DCCPPA.  All of the California cases cited by Plaintiff and Defendant predate the 2004 amendment.

[4]  While *Mangini* and *Myers* stand for the proposition that AOL says they do, *Sanchez* does not.  *Sanchez* was a single plaintiff lawsuit against an insurance company.  The *Sanchez* court merely pointed out in a footnote that in a 1944 case the 9th Circuit rejected the "plaintiff's viewpoint rule" in measuring damages, but that in a 1977 the 9th Circuit refused to reject the "plaintiff's viewpoint rule" in a class action suit which sought both damages and an injunction.  *Sanchez* certainly did not hold that, as AOL states,  "aggregation of claims from defendant's perspective [is] appropriate in a private attorney general action . . . ." (AOL Opp. P. 17).

*Co.*, 2003 U.S. Dist LEXIS 14038 (N.D. Cal. 2003).[5]

The first case to reject *Myers* and *Mangini* was *Phipps v. Praxair, supra.. Phipps* was a representative action where "plaintiffs seek to recover for themselves and for the general public." In rejecting *Mangini* the *Phipps* court stated:

> The Court respectfully disagrees with *Mangini* because its reasoning assumes that the rule prohibiting plaintiffs from aggregating their claims applies only to class actions. As discussed in the preceding section of this order, the anti-aggregation rule applies to any civil case where two or more plaintiffs attempt to aggregate "separate and distinct" claims to reach the amount in controversy. The rule applies with equal force to all types of multiple plaintiff actions, from simple two-plaintiff cases to complex class actions involving tens of thousands of unnamed class members. *Mangini* provided no reason for distinguishing a class action from a representative suit. The decision, notably, did not cite the Supreme Court's *Snyder* decision [*Snyder v. Harris*, 394 U.S. 332 (1969)] which stated unequivocally that the anti-aggregation rule derives from a statutory interpretation of 28 U.S.C. §§ 1332 that applies outside the class action context. *Snyder*, 394 U.S. at 336, 89 S. Ct. at 1057; accord *Zahn* [*Zahn v. Intel Paper Co.*, 414 U.S. 291 (1973)], 414 U.S. at 302, 94 S. Ct. at 512 (characterizing the anti-aggregation rule as "the accepted approach to cases involving joinder of plaintiffs with separate and distinct claims...").

> Moreover, *Mangini* relied on *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395 (9th Cir. 1944), where the Ninth Circuit held that a district court may determine the amount in controversy from the plaintiff's or the defendant's viewpoint. *Id.* at 399. In other words, under *Ridder Bros.* the amount in controversy requirement is satisfied where a case could financially benefit the plaintiff or detriment the defendant in an amount exceeding the jurisdictional minimum. *Id. Mangini* did not recognize, however, that *Ridder Bros.* involved an action by a single plaintiff-a situation that cannot trigger the rule against aggregating the separate and distinct claims of multiple plaintiffs. Nothing in *Ridder Bros.* suggests the Ninth Circuit intended to abrogate long-standing principles of non-aggregation applicable to actions with more than one plaintiff. [Footnote omitted] Finally, the Court's analysis derives additional support from *Morion v. Rand McNealy & Co.*, 1997 U.S. Dist. LEXIS 13575, No. C-97-0963 FS, 1997 WL 564028 (N.D. Cal. Sep. 4, 1997), where the district court remanded a representative action brought under California's Unfair Competition Law. Like Defendants here, the defendants in *Morion* relied on *Mangini* and argued that the anti-

---

[5] These cases, discussed *infra.*, speak to both aggregation of damage claims and its corollary, whether the amount in controversy can be considered from the defendant's viewpoint, *i.e.*, the cost to the defendant. "[E]very circuit court to have addressed the issue has agreed that, in class actions, defendant viewpoint valuation is a de facto form of aggregation." 82 Or. Law Rev. 295, 321 (2003).

aggregation rule did not apply because plaintiffs brought their action as a "representative" rather than a class action. The district court rejected this argument, pointedly noting that "the aggregation rules for class actions are no different from the aggregation rules for other multiple plaintiff actions." *Id.*, 1997 U.S. Dist. LEXIS 13575, at *4-5, 1997 WL 654028, at *2. Finding that plaintiff's claims were separate and distinct and that defendants could not establish the requisite amount in controversy, the district court applied *Snyder* and remanded the case to state court. 1997 U.S. Dist. LEXIS 13575, at *6, 1997 WL 654028, at *2-3.

*Phipps*, 1999 U.S. Dist. LEXIS 18745 at *15-18 (S.D. Cal., 1999).

The next case to consider to reject *Myers* was *Surber v. Reliance National Indemnity Co., supra*, in which the plaintiff included a representative action on behalf of herself and other who are "similarly situated."   The defendant argued that the administrative costs of the requested injunction to the defendant should be considered, relying on *Myers*.   The *Surber* court rejected the defendant's argument, stating:

> The Court finds neither *Mangini* or *Myers* convincing on this point. Adopting reasoning of those cases would essentially create federal jurisdiction over any 17200 claim between diverse parties, no matter how small the injury to the representative plaintiff. Such a result is untenable. Section 17200 is not a federal cause of action.
>
> Instead, the Court adopts the reasoning of another district court case from this circuit. See *Phipps v. Praxair, Inc.*, 1999 U.S. Dist. LEXIS 18745, 1999 WL 1095331 (S.D. Cal.). The *Phipps* court rejected *Mangini*, noting that the attempted distinction between class actions and section 17200 representative actions was essentially a distinction without a difference.

*Surber*, 110 F. Supp.3d at 1233.

The next district court decision to reject *Myers* and *Mangini* was *Boston Reed Co., v. Pitney Bowes, supra*.   The judge in *Boston Reed Co.* was Judge Conti, the same judge who had decided *Mangini* ten year earlier.   In *Boston Reed Co.*, the plaintiff brought a

5

representative action under the California Statute. The defendants argued that the Court should look to the cost to the defendants because the case was not filed as class action. Judge Conti rejected the defendants' argument and acknowledged that he "saw things differently" when he decided *Mangini*. 2002 U.S. Dist. LEXIS 26229 at *13. Judge Conti reviewed the decision in *Surber* and *Phipps* and stated:

> The Court finds the reasoning in *Phipps* and *Surber* to be persuasive, especially since the California courts have recently recognized the representative nature of a § 17204 claim. [footnote omitted] Therefore, because the Court finds that a UCL [California Statute] private attorney general action is a collection of "separate and distinct" claims, the claims may not be aggregated to reach the jurisdictional amount in controversy and each plaintiff's claim must exceed the jurisdictional amount for this Court's subject matter jurisdiction to be invoked . . . Thus because the Court refuses to aggregate Plaintiff's equitable or injunctive claims, unless Defendants can prove by a preponderance of the evidence that any individual claim is greater than $75,000 the case must be remanded to state court.

*Boston Reed Co.*, 2002 U.S. Dist LEXIS 11683 at *15-16. Thus, in 2002 the same judge who wrote the 1992 *Mangini* decision, on which the *Myers* decision relied, rejected his own reasoning in *Mangini* and adopted the contrary position, holding that the cost of an injunction to the defendant could not be used to determine the jurisdictional amount in a representative action under the California Statute. Despite the obvious importance of the *Boston Reed Co.* case, AOL failed to bring this case to the Court's attention.

The next district court decision to reject *Myers* and *Mangini* was *Ecker v. Ford Motor Co.*, *supra*. In *Ecker*, the defendants argued that the case was a representative action and sought to rely on *Mangini* to argue that the court should look to the cost to the defendant to

determine jurisdictional amount. The *Ecker* court followed *Surber* and *Boston Reed Co.* and held that, even if it viewed the claims as a representative action rather than a class action, the court should not look to the cost of an injunction to the defendant:

> In this case, even assuming that Defendant is correct that the Section 17200 and 17500 claims are not brought on behalf of a class (which does not seem to be the case), the class members' claims should not be aggregated (nor should the court look to the cost to the Defendant to determine the amount in controversy). This applies equally to Plaintiff's claims for monetary and injunctive relief.

*Ecker v. Ford Motor Co.*, 2002 U.S. Dist. LEXIS 26229 at *11.

The fifth district court decision to reject the reasoning of *Mangini* and *Myers* was *Hanan v. Ford Motor Co., supra.* In *Hanan*, the plaintiff brought a private attorney general action against the defendant under the California Statute. The defendant argued that the court should consider the administrative costs to the defendant of an injunction, relying on *Mangini* and *Myers*. The plaintiff argued that this was incorrect, citing *Boston Reed Co.* and *Surber*. The district court reviewed prior decisions, including *Mangini*, *Myers*, *Boston Reed Co.*, and *Surber*, and concluded that the "[t]he weight of authority favors plaintiff's approach. So does this order." *Hanan v. Ford Motor Co.*, 2003 U.S. Dist LEXIS 14038 at * 6. The *Hanan* decision went on to state:

> As observed elsewhere, the plaintiff's approach is more consistent with the Supreme Court's analysis of the amount-in-controversy requirement of *Snyder v. Harris*, 394 U.S. 332, 22 L.Ed. 2d 319, 89 S.Ct. 1053 (1960). In *Snyder*, the Court disallowed aggregation of plaintiff's separate and distinct claims in a class action under FRCP 23 for purposes of satisfying the amount-in-controversy requirement. In so ruling, the Court emphasized that allowing aggregation would expand federal jurisdiction and undercut the amount-in-

controversy requirement, and would result in the federal courts more often resolving cases involving only state law issues. *Snyder*, 394 U.S. at 340-41. The representative nature of a private-attorney-general action under California's unfair competition law renders it analogous to a class action under FRCP 23. The same principles that the Supreme Court cited in *Snyder* counsel against finding that the amount-in-controversy requirement is satisfied her on account of administrative costs Ford expects to incur in the event of an injunction.

*Ibid*.

As noted above, while there is no reported decision of this Court on whether the *Zahn* and *Synder* non-aggregation rule applies to private attorney general actions under the DCCPPA, Judge Huvelle of this Court was presented with this very issue in *Reigner v. Master Lock Co.*, Case No. 1:04-cv-1815 (ESH). In *Reigner v. Master Lock Co.*, Master Lock opposed plaintiff's motion to remand the case to Superior Court after Master Lock had removed the case to this Court. In its opposition to plaintiff's motion to remand, Master Lock cited as persuasive authority *Mangini*, *Myers* and *Sanchez*, just as does AOL. Counsel for the plaintiff called Judge Huvelle's attention to the same cases cited above which criticized and rejected *Mangini* and *Myers*. After oral argument on this issue Judge Huvelle remanded the case to Superior Court from the bench.[6]

The foregoing establishes that there can be no aggregation in representative actions and that the rule enunciated in *National Org. for Women v. Mut. of Omaha*, 612 F. Supp. 100 (D.D.C. 1985), that the value of the injunctive relief is the value to an individual plaintiff and

---

[6] Attached hereto as Exhibit A is the relevant portion of Master Lock's brief making the *Mangini, Myers, Sanchez* argument in opposition to plaintiff's motion to remand. Attached hereto as Exhibit B is Judge Huvelle's order remanding the case to Superior Court.

not the cost of compliance for the defendant, is indeed applicable to a representative action brought under the DCCPPA.  AOL's citation of the *Myers* case for a contrary result relies on what is clearly the minority position which has been criticized and rejected by the last five decisions to consider the issue, including a decision written by Judge Conti, who wrote the *Mangini* decision on which the *Myers* decision relied.  *Johnson v. AOL*, 2002 WL 1268397 n. 3 (N.D. Cal. 2002)[7] (*Mangini* and *Myers* are inconsistent with Ninth Circuit law regarding the aggregation of claims and have been criticized).

AOL's argument that the Court should allow aggregation of the D.C. consumers' damages or, in the alternative, look to the administrative costs of an injunction to the defendant is simply not tenable and must be rejected.[8]  Therefore, the Court should remand this case to the Superior Court for the District of Columbia.

## II. AOL, as a Result of its Misidentification of its Citizenship Using the Statutory Criteria for Corporations, Has Failed to Prove That the Parties Are Diverse in this Case for Purposes of 28 U.S.C. 1332(a)

AOL asserts that it has properly alleged diversity of citizenship in its Amended Notice of Removal.  It's basis for doing so is the allegation in its amended Notice of Removal that it is a citizen of Delaware and Virginia.  (AOL Opp. p. 11).  A review of the Amended Notice of Removal demonstrates that this claim is untrue.

---

[7] Although not cited by AOL, AOL must be familiar with this case in which it was a party.

[8] AOL is not arguing, nor could it, that absent aggregation it meets the amount in controversy threshold under 28 U.S.C. 1332(a).

In its Amended Notice of Removal, AOL does indeed state that it is a citizen of Delaware and Virginia. (Amended Notice of Removal pp. 2-3). However, in doing so, AOL relied on the Declaration of John Baumeister (Exhibit A to the Amended Notice of Removal) at ¶ 3). The Baumeister Declaration at ¶ 3 states, in pertinent part, the following: "AOL is a Delaware limited liability company headquartered in Dulles, Virginia."

Hence, AOL clearly was basing its claims of its citizenship on its state of organization and on the state in which it has its principal place of business; i.e, according to the statutory criteria for corporations. *Johnson-Brown v. 2200 M Street LLC*, 257 F. Supp. 2d 175, 177-178 (D. D.C. 2003). As Judge Urbina held in *Johnson-Brown*, AOL has misidentified the citizenship of an LLC defendant. Judge Urbina further held that, as a result of this misidentification, the defendants had failed to prove that the parties are diverse and that the court has subject matter jurisdiction under 28 U.S.C. 1332(a)-(b). *Ibid*. 257 F. Supp. 2d at 180. This Court should adopt Judge Urbina's reasoning and remand this case because AOL, as a result of its misidentification of its citizenship using the statutory criteria for corporations, has failed to prove that the parties are diverse in this case.

AOL, without bothering for file a motion for leave to amend, asks this Court to give it leave to amend its Notice of Removal yet again to properly allege its citizenship. This "stealth" motion should be denied for three reasons. First, AOL has failed to file a proper motion and to comply with LCvR 7 and this failure should not be rewarded. Second, yet another amendment after expiration of the 30 days period for removal of cases and after

Plaintiff has made a timely objection would be contrary to the strict construction of the removal statutes against removal and is not permitted. *See* Plaintiff's memorandum in support of amended motion to remand at 9-10.

Finally, as demonstrated below, AOL's reliance on aggregation of damages and on the costs to it of an injunction in order to conjure up an amount in controversy in excess of $75,000 is legally unsupportable and, hence, AOL cannot prove that the jurisdictional amount is present. Thus, any amendment attempting to "fix" AOL's failure to prove the parties are diverse would be futile, since AOL would still have failed to show diversity jurisdiction under 28 U.S.C. 1332(a). *Cf. James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (denial of motion for leave to amend complaint based on futility is warranted where the proposed claim would not survive a motion to dismiss).

### III.    The Instant Representative Action Is Not a Class Action Subject to the Removal Provisions of the Class Action Fairness Act

AOL's entire argument that the instant case is a class action can be summarized thusly: If Plaintiff is correct that aggregation is not permitted pursuant to the traditional diversity jurisdiction statute, then this Court *must* have subject matter jurisdiction under CAFA because this case *must* be a class action for purposes of traditional diversity jurisdiction analysis. This argument is fatally flawed.

First, Plaintiff's "traditional diversity" argument should prevail, not because the instant case is a class action, but because, as articulated in the five California cases, the non-

aggregation principle is not limited to class actions and has equal force with representative

actions. Hence, Plaintiff can and should prevail on its argument that the Court does not have

jurisdiction under 28 U.S.C. 1332(a) at the same time it he should prevail on his argument

that this case is not a class action subject to the provisions of the Class Action Fairness Act.

Hence, contrary to AOL's suggestion, Plaintiff's arguments are not mutually exclusive.

AOL's argument that "[i]f this Court adopts the reasoning of *Zahn* and *Reigner*,

Breakman cannot then contradict his argument that this is not a class action" is based on a

faulty premise. As the five California cases considering the aggregation issue in the context

of California Statute representative actions described above clearly show, the non-

aggregation principle was not applied to representative actions on the basis that

representative actions are class actions. To the contrary, these five cases make it clear that

the courts concluded that the non-aggregation rule should be applied even though the

representative actions were *not* class actions. For example in *Phipps, supra*, the Court held

that:

> The Court respectfully disagrees with *Mangini* because its reasoning assumes
> that the rule prohibiting plaintiffs from aggregating their claims applies only
> to class actions. As discussed in the preceding section of this order, the anti-
> aggregation rule applies to any civil action where two or more plaintiffs
> attempt to aggregate 'separate and distinct' claims to reach the amount in
> controversy. The rule applies equal force to all types of multiple plaintiff
> actions, from simple two-plaintiff cases to complex class actions involving
> tens of thousand of unnamed class members. *Mangini* provided no reason for
> distinguishing a class action from a representative action.

*Phipps*, 1997 U.S. Dist. LEXIS 18745 at *15 (emphasis added). In the 2002 *Boston Reed*

*Co.* case, Judge Conti, who authored the *Mangini* case adopted the reasoning of *Phipps*, describing it as "persuasive." *Boston Reed Co.,* 2002 U.S. Dist LEXIS 11683 at *15.

AOL next argues that, notwithstanding the fact that CAFA defines mass actions as class actions for determining removability to federal court and notwithstanding the fact that private attorney general actions, like the instant case, are specifically not mass actions under CAFA, nonetheless private attorney general actions are removable under CAFA because they are class actions under CAFA definition of a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure **or similar State statute** or rule of judicial procedure **authorizing an action to be brought by 1 or more representative persons** as a class action.  (AOL Opp. p. 28) (emphasis in the original).

AOL's argument in this regard makes no sense because it ignores some of the words in the definition of "class action" in Section 1332(d)(1), namely "brought by 1 or more representative persons as a class action."  It is clear that the instant case is not brought "as a class action" under the DCCPPA.  It is brought as a private attorney general action on behalf of the general public, not as a class action, and is not subject to class certification and other procedures attendant to a class action.

AOL also argues that a representative action, such as the instant case, is not a mass action and, therefore the exclusion of representative actions, such as the instant case, is irrelevant.[9]  The problem with AOL's argument is that it could be used with respect to almost

---

[9] CAFA states that  "any civil action in which  - - - all of the claims in the action are
(continued...)

any representative action brought under the DCCPPA on behalf of the general public and would have the effect of making the exclusion of representative actions contained in 28 U.S.C. 1392(d)(11(B)(ii)(III) a meaningless provision.

AOL's argument is also contrary to the cardinal principle of statutory construction. "'The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute.'" *Guardsmark, LLC v. NLRB*, 475 F.3d 369, 378 (D.C. Cir. 2007) (*quoting Davis v. Chevy Chase Financial, Ltd.*, 667 U.S. 160, 170 (D.C. Cir. 1981)). The Court of Appeals has also held that "[a]n endlessly reiterated principle of statutory construction is that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage." *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir 1995).

The only reasonable interpretation of the provisions of the Class Action Fairness Act, giving effect to every clause and word of the statute and construing nothing therein as surplusage, is that a representative action like the one before this Court is not a "class action" and indeed has been specifically excluded by Congress from the ambit of the Class Action Fairness Act.

---

[9](...continued)

asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statue specifically authorizing such action" is not a mass action.

**IV. AOL Cannot Amend The Notice of Removal to Add a New Basis for Removal,** *i.e.***, That the Prayer for Punitive Damages and Attorneys' Fees Are Sufficient to Meet the Amount in Controversy Requirement. Even If Yet Another Amendment to the Notice of Removal Were Permitted AOL Fails as Punitive Damages and Attorneys' Fees May Not Be Aggregated to Meet the Amount in Controversy Amount.**

It is black letter law that a notice of removal may not be amended beyond the thirty day period in which a notice of removal must be filed to add a new basis for removal. 16-107 Moore's Federal Practice - Civil § 107.30. AOL, having amended its notice of removal once, now requests (although no motion has been filed) it be permitted to amend it yet again to add a new basis for removal, namely that the amount in controversy requirement is met by Plaintiff's demand for punitive damages and attorneys' fees. AOL's opposition to Plaintiff's motion to remand contains not one, but two suggestions that it would like to further amend the notice of removal (to re-plead diversity and to add punitive damages and attorneys' fees to the amount in controversy pleading). AOL, which is represented by highly professional and experienced counsel should not be permitted to make the notice of removal a moving target. Every time Plaintiff points out deficiencies in the notice of removal, AOL suggests it be allowed to amend yet again, although the 30 day period to file such a notice has long expired and Plaintiff has interposed valid objections. *Dennison v. Shell Oil Co.*, 2007 U.S. Dist. LEXIS 91887, 3-4 (S.D. Ill. 2007) (timely objection forecloses any further amendment).

AOL contends that its failure to allege the prayer for punitive damages and attorneys' fees as bases for the jurisdictional amount are merely a "technical defect." (AOL Opp. p. 25, n. 9). Such is not the case. See *Mortgage Elec. Registration Sys. v. Rothman*, 2005 U.S.

15

Dist. LEXIS 12270, 22-23 (N.D. Ill. 2005) ("Because the original notice of removal was limited to being based on the Cross Complaint, the government must limit its amended grounds for removal to the Cross Complaint.").  AOL contends that the prayer for punitive damages and attorneys' fees independently support the amount in controversy requirement. It is plain that such a claim is substantive and failure to ever mention it in the notice of removal or amended notice of removal is not fairly labeled a "technical defect."

Even if AOL had properly included the prayer for punitive damages and attorneys' fees as a basis for satisfying the amount in controversy requirement, AOL has misstated the standard it must meet in order to establish the amount in controversy requirement has been meet met.  AOL asserts that it must establish that punitive damages and attorneys' fees could exceed $75,000 by a preponderance of the evidence.  (AOL Opp. p. 25).  However this is incorrect.  Where the plaintiff, in his complaint has alleged damages of less than $75,000, the defendant must prove to a legal certainty that the plaintiff's claim must exceed the jurisdictional amount.  *RWN Development Group, LLC v. Travelers Indemnity Co.*, 2008 U.S. Dist. LEXIS 15177 (D.D.C. Feb. 29, 2008);  *Raspa v. Home Depot*, 2007 U.S. Dist. LEXIS 93725 (D.N.J. 2007).  The complaint in this action alleges damages of less than $75,000,[10] hence AOL must establish that the amount in controversy exceeds $75,000 to a legal certainty.

---

[10] "The amount of damages owed by Defendant AOL to any individual District of Columbia consumer who has paid and/or continues to pay AOL  $23.90 to $25.90 a month for essentially the same Dial-up ISP Service new members get for $9.95 a month, does not exceed $75,000, exclusive of costs and interest."  (Comp. ¶ 13).

While AOL argues correctly that generally punitive damages and attorneys' fees may be considered in determining whether the jurisdictional amount has been met, its argument is to no avail here because punitive damages and attorneys' fees cannot be aggregated to meet the jurisdictional amount. Rather, the amount of punitive damages must be divided *pro rata* by the number of, in this case, affected D.C. consumers. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 947 (9th Cir. 2001) ("At present, all of the circuits that have considered the issue appear to agree: punitive damages cannot be aggregated and attributed in total to each member of a class action for purposes of the amount-in-controversy requirement."); *Ford v. Smart Document Solutions, LLC*, 2006 U.S. Dist. LEXIS 21608 (E.D. Tenn. 2006) ("defendants assertion that each class member's punitive damage claim may be aggregate is flawed."). So too must statutory attorneys' fees be allocated *pro rata* pursuant to a consumer protection statute. *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1082-1083 (11th Cir. 2000); *Perotti v. Black & Decker (U.S.), Inc.*, 205 F. Supp. 2d 813, 819 (N.D. Ohio 2002) ("attorney's fees are not aggregated when determining whether the amount in controversy requirement is met."). Hence, just as described above, since the class action non-aggregation rules apply to private attorney general actions in evaluating the amount in controversy for damages and injunctive relief, so too do the class action non-aggregation rules apply to punitive damage claims and attorneys' fees claim in private attorney general actions. Since aggregation is not permitted, AOL cannot meet the amount in controversy requirement by looking to punitive damage or

17

attorneys' fees.

**V.    The Court Should Award Plaintiff Cost and Attorneys Fees**

AOL's principal argument against awarding Plaintiff costs and attorneys fees is that AOL is relying on "persuasive authority from D.C. and California courts." (AOL Opp. p. 32). Plaintiff has demonstrated above that the AOL has cited no "persuasive authority" from D.C. courts. In addition, AOL's failed to inform the Court that the California cases it cited in its Opposition as "persuasive authority" (including *Mangini*) have been rejected five later U.S. District Court cases, including one written by Judge Conti, the author of *Mangini*. It is difficult to fathom how the AOL could have in good faith have misconstrued the law in this area. *Burton v. Coburn*, 2005 U.S. Dist. LEXIS 4243, *6-7 (D.D.C. 2005). AOL's failure to bring these five cases to the Court's attention required additional hours of legal work to bring these five cases to the Court's attention in this Reply.

The Amended Notice of Removal is clearly fatally flawed and, indeed, is frivolous. The Court, therefore, should require AOL to pay Plaintiff's costs and actual expenses, including attorneys' fees.

**VI.    Conclusion**

This Court should remand this case to Superior Court of the District of Columbia and order AOL to pay Plaintiff's costs and actual expenses, including attorneys' fees, incurred as a result of Defendant's attempt to remove this case to this Court.

Respectfully submitted,

/s/ Walter E. Diercks
Walter E. Diercks (Bar #161620)
Jeffrey Harris (Bar #925545)

Rubin, Winston, Diercks, Harris & Cooke, LLP
Sixth Floor, 1155 Connecticut Avenue, NW
Washington, D.C.  20036
Phone (202) 861-0870
Fax: (202) 429-0657

Kevin F. Rooney (D.C. Bar #486357)
Andrew A. August (California Bar #112851)
Pinnacle Law Group
425 California Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 394-5700

Giancarlo Terilli (New York Bar  #3030186)
Law Offices of Giancarlo Terilli, LLC
225 Broadway, Suite 2812
New York, NY 10007
Telephone:  (212) 962-6454

Counsel for the Plaintiff
Paul M. Breakman

Dated: March 21, 2008

19

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATHAN PETER REIGNER )
1719 Euclid St., N.W. )
Washington, D.C. 20009 )
)
In His Representative Capacity Acting for the )     Civil Action No. 1:04CV01815 (ESH)
Interests of the General Public, )
)
Plaintiff, )
)
vs. )
)
MASTER LOCK COMPANY )
137 W. Forest Hill Avenue )
Oak Creek, Wisconsin 53154, )
)
Defendant. )
)

## DEFENDANT MASTER LOCK'S OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

Defendant Master Lock Company ("Master Lock") submits this opposition to Plaintiff's

motion to remand, and requests that this Court deny the motion.

I.    INTRODUCTION.

A.    Background.

Plaintiff Nathan Peter Reigner's motion to remand makes two erroneous arguments:

(1) lack of diversity of citizenship and (2) failure to meet the $75,000 jurisdictional threshold

amount.  Reigner argues that Master Lock's notice only refers to Reigner's residency, instead

of his citizenship.  Reigner's motion fails to mention his D.C. voter registration, his D.C.

registered car, his three-year D.C. residence, and his D.C. located employment.  Reigner lives

here, works here, is a registered voter here, and parks his car here. Reigner does not and cannot

dispute that he is a D.C. citizen.

Plaintiff is likewise wrong about the proper test to determine the jurisdictional amount

in controversy.  In an action, like this one, under the D.C. Consumer Protection Procedures Act

C.   The Court should apply the Either Viewpoint approach to determine the amount in controversy.

1.   The valuation test used in *Nat'l Org. for Women v. Mut. of Omaha* is not applicable as it involved a class action.

Reigner purports to seek both injunctive and monetary relief for District of Columbia consumers. He mistakenly analogizes his case to a class action. Remand Mot. at 6 n.2. In claiming Master Lock fails to satisfy the $75,000 jurisdictional amount, Reigner relies principally on Nat'l Org. for Women v. Mut. of Omaha, 612 F. Supp. 100 (D.D.C. 1985), a class action in which Judge Flannery held that the plaintiff's viewpoint test is the appropriate measure for determining the jurisdictional amount in that particular diversity action in which both damages and injunctive relief were sought.[7] Plaintiff wrongly urges application of the plaintiff's viewpoint approach to his representative action.

In Nat'l Org. for Women v. Mut. of Omaha, the plaintiffs alleged that Mutual of Omaha violated the District of Columbia Human Rights Act by offering health insurance to women at higher or different prices than those offered to similarly situated men. 612 F. Supp. at 101. Plaintiffs sought both damages and injunctive relief, and the defendant removed on the basis of diversity jurisdiction. Id. at 101, 108. The main issue presented in Nat'l Org. for Women v. Mut. of Omaha is whether the then-$10,000 jurisdictional amount was satisfied. Id. The court in Nat'l Org. for Women v. Mut. of Omaha relied principally on a Ninth Circuit opinion involving yet another class action – Snow v. Ford Motor Co., 561 F.2d 787, 790 (9th Cir. 1977) (holding that "[w]here the equitable relief is but a means through which the individual claims

---

[7]   Reigner selectively quotes from Moore's Federal Practice for the proposition that the majority of federal courts have chosen to use the plaintiff's viewpoint rule. Remand Mot. at 7. In doing so, Reigner conveys the misleading impression that the D.C. Circuit endorses this majority view. This is simply not the case. Noticeably missing from these selective quotes, and relevant to federal cases in this circuit, are the Moore's Federal Practice quotes from D.C. Circuit cases – such as Smith v. Washington, 593 F.2d 1097, 1099 (D.C. Cir. 1978) – endorsing the Either Viewpoint rule. See 15 Moore's Federal Practice, 3d Ed.— Civil § 102.109[4] (entitled, "Either Viewpoint Rule").

- 10 -        Case No. I:04CV01815 (ESH)
OPPOSITION TO MOTION TO REMAND

may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief …").

The question of whether – in a DCCPPA case where the plaintiff brings a representative action in superior court and the defendant later removes on the ground of diversity jurisdiction – the value of injunctive relief can be measured according to the Either Viewpoint approach appears to be one of first impression in the DC Circuit. However, the Ninth Circuit Court of Appeals, to which the court in Nat'l Org. for Women v. Mut. of Omaha looked for guidance in the class action context, has addressed this precise issue in the context of a UCL representative action. In Sanchez v. Monumental Life Ins. Co., the Ninth Circuit determined that the Either Viewpoint approach applies to a UCL representative action in which injunctive and monetary relief are sought. 102 F.3d 398, 405 (9th Cir. 1996). And it is Sanchez, rather than Nat'l Org. for Women v. Mut. of Omaha, which should control here.

In Sanchez, the plaintiff filed an action in California state court against his group policy insurance carrier ("Monumental") after Monumental denied his claim for "permanent total disability" benefits. Id. at 399-400. The plaintiff's claims included a representative action claim under the UCL for which he "sought an injunction forcing Monumental to disgorge all premiums which have been paid to Monumental by any California resident for insurance policies issued by Monumental which apply the definition of 'total permanent disability' which Sanchez believes is illegal." Id. at 405. Monumental removed on the basis of diversity jurisdiction, and the plaintiff moved to remand. Id. at 400.

The court observed that the Ninth Circuit previously held, in Ridder Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944), that the amount in controversy requirement in a diversity action is satisfied if either party can gain or lose the jurisdictional amount. Id. at 405. "The value of the thing sought to be accomplished by the action may relate to either or any party to the action." Id. (citation and internal quotation marks omitted). The court distinguished UCL representative actions such as the plaintiff's, in which the Either Viewpoint rule is to be applied to a diversity action, from class actions – in particular, Snow v. Ford Motor

Co., supra, which in turn relies heavily on Zahn v. Int'l Paper Co., 414 U.S. 291 (1973),

Snyder v. Harris, 394 U.S. 332 (1969), and their progeny – in which the "plaintiff's viewpoint"

approach was applied. The court explained:

> Ridder thus rejected the "plaintiff-viewpoint" rule, which states that courts
> attempting to determine the value of a claim for purposes of the amount in
> controversy requirement should look only to the benefit to the plaintiff, rather
> than to the potential loss to the defendant. See Wright, Miller & Cooper, supra,
> § 3703 (discussing "plaintiff-viewpoint" rule); but see Snow v. Ford Motor Co.,
> 561 F.2d 787 (9th Cir. 1977) (declining to apply Ridder in class action suit
> seeking damages and injunctive relief).

Id. at 405 n.6. Notwithstanding its willingness to apply the Either Viewpoint approach to the

plaintiff's representative action, the court ultimately determined that Monumental did not

satisfy its burden of establishing the amount in controversy, noting it offered "absolutely no

evidence which would allow us to determine the extent of the loss which it might incur if an

injunction is granted forcing it to disgorge the premiums." Id. at *5. Accordingly, the court

determined that the Either Viewpoint test did apply to plaintiff's UCL representative action but

that Monumental had failed to provide any evidence of its cost to comply with the sought-after

injunctive relief.

    In the wake of Sanchez, the district court in Myers v. Merrill Lynch & Co., Inc.,

No. C-98-3532 WHO, 1999 WL 696082 (N.D. Cal. Aug. 23, 1999)[8], applied the Either

Viewpoint test in denying a remand motion by a plaintiff in a UCL representative action. (See

Myers, attached hereto as Exh. B). In reaching its decision, the Myers court relied expressly on

Sanchez and Ridder.

    The plaintiff in Myers filed a representative action in San Francisco Superior Court on

behalf of himself and the California general public under California's Unfair Competition Law

and False Advertising Law (together, "UCL"). Id. at *1, *5. The complaint alleged that the

---

[8]  Myers v. Merrill Lynch & Co., Inc., supra, is an unpublished opinion from the United
States District Court for the Northern District of California. This Court's local rules do not
prohibit counsel from citing to unpublished federal district court rulings. See Hon.
William A. Schwarzer, Hon. A. Wallace Tashima and James M. Wagstaffe, Federal Civil
Procedure Before Trial (2004) at 1:15 ("Unless prohibited by local rule, all federal district
court rulings and opinions--published or not--may be cited as precedent.").

defendant underwriters of Initial Public Offerings and Public Offering (jointly, "Offerings") engaged in unlawful, unfair and fraudulent business practices in violation of the UCL by, <u>inter alia</u>, penalizing both individual investors and their brokers in situations where the individual investors were deemed likely to "flip" newly acquired shares immediately following an Offering. <u>Id.</u> at *1. The plaintiff's prayer for relief requested an order enjoining defendants from engaging in the allegedly deceptive practices, and disgorgement of any money improperly obtained by the defendants. <u>Id.</u> at *2.

Defendants removed the action, <u>inter alia</u>, on the basis of diversity jurisdiction. <u>Id.</u> at *1. The plaintiff, in turn, moved to remand on the ground that the court lacked diversity jurisdiction, contending that the defendants failed to show that each individual investor's injunctive relief claim under the UCL exceeded the $75,000 jurisdictional amount. The threshold issue facing the court was whether defendants had satisfied the $75,000 amount in controversy requirement. <u>Id.</u> at *2. In particular, the court considered "whether the value of the litigation should be measured from [the plaintiff's] standpoint or from defendants' standpoint." <u>Id.</u> The court held that it was proper to measure the value of the sought-after injunctive relief from the defendants' perspective. <u>Id.</u> at *5. Of critical significance is the court's observation that, as in <u>Sanchez</u>, the plaintiff's action was not a class action; rather, it was a representative action brought on behalf of the general public. <u>Myers</u>, <u>supra</u>, at *5. The court specifically distinguished the plaintiff's representative action from cases applying the exclusive use of the plaintiff's viewpoint – <u>i.e.</u>, <u>Zahn v. Int'l Paper Co.</u>, <u>supra</u>, <u>Snyder v. Harris</u>, <u>supra</u>, and its progeny including, in particular, <u>Snow v. Ford Motor Co.</u>, <u>supra</u> – on the basis that all of these plaintiff viewpoint cases were class actions. Because the plaintiff's complaint was not a class action, the court held that "the rule in <u>Ridder</u>, rather than <u>Snow</u> applies. Thus, the value of injunctive relief that [plaintiff] seeks may be measured from defendants' perspective." <u>Myers</u>, <u>supra</u>, at *5. The court determined that the Either Viewpoint approach should be applied and found defendants had satisfied their burden of establishing that their costs to comply with the injunction sought by the plaintiff would exceed the $75,000 jurisdictional amount. <u>Id.</u> at *5 n.6.

The Court should apply Sanchez and Myers to the instant case. As in Sanchez and Myers, Reigner brought a representative action on behalf of the general public, rather than a class action. As discussed in detail previously, the differences between representative actions such as those in Sanchez, Myers, and Reigner's case, on one hand, and class actions such as those in Zahn, Snyder, and Snow, on the other hand, compel application of different valuation tests. The Either Viewpoint test should be adopted because, unlike Snow, this is not a case where equitable relief is a means to satisfy individual claims. Moreover, the most likely scenario in Reigner's case – if he were to prevail – would be injunctive relief coupled with an insignificant amount of monetary relief for a few identifiable "victims."[9]

This Circuit has previously determined that in an action for declaratory or injunctive relief – albeit where the plaintiffs invoked federal question jurisdiction – it is appropriate even in a class action to apply the Either Viewpoint test in measuring the value of the injunctive relief sought by the plaintiff. Smith v. Washington, 593 F.2d 1097, 1099 (D.C. Cir. 1978). This same reasoning should hold true with even greater force as regards a non-class action such as Reigner's in which injunctive relief is necessarily the primary object of the litigation.

Accordingly, under the Either Viewpoint test, Master Lock should likewise be deemed to have satisfied the $75,000 jurisdictional amount.

---

[9]   Even if the Court somehow determined that Reigner's action should be treated as being akin to a class action, which it is not, Reigner's action would more closely resemble a Rule 23(b)(2) class action in which injunctive relief is the primary relief sought, rather than a so-called "damages class action" under Rule 23(b)(3). See, e.g., Kanter v. Warner-Lambert Co., 265 F.3d 853, 860-61 (suggesting that a defendant's viewpoint approach to calculating the cost of an injunction would be appropriate for Rule 23(b)(2) class actions because in such actions the plaintiffs are primarily concerned with prospective injunctive relief for the class as a whole).

Only where the removing party "contradicts well-settled law in attempting to remove" do courts generally impose costs and expenses. <u>Johnson-Brown v. 2200 M Street LLC</u>, 257 F. Supp. 2d 175, 181 (D.D.C. 2003). "The converse is equally true: costs and expenses are not imposed on the removing party if the relevant law is unsettled or removability is unclear." <u>Id.</u> at 181 (citations omitted). Unlike <u>Johnson-Brown</u>, Master Lock's original removal notice is not fatally flawed. This opposition coupled with Master Lock's concurrently filed request for leave to file an amended notice of removal only supplements what the original removal notice outlined. For the reasons stated above, Reigner should be awarded no such fees and costs.

V.    <u>CONCLUSION</u>.

Based on the foregoing, this Court should deny plaintiff's motion for remand and for award of costs.

DATED this _12th_ day of November, 2004.

PILLSBURY WINTHROP LLP
WILLIAM P. ATKINS
1600 Tysons Boulevard
McLean, VA 22102
(703) 905-2000

PILLSBURY WINTHROP LLP
DAVEED A. SCHWARTZ
50 Fremont Street
San Francisco, CA 94105-2228
(415) 983-1000

By _____
William P. Atkins (#439123)
Daveed A. Schwartz (pro hac vice admission pending)

Attorneys for Defendant
MASTER LOCK COMPANY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATHAN PETER REIGNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 04-1815 (ESH) |
| | ) |
| MASTER LOCK COMPANY | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court are defendant's motion for leave to amend its notice of removal [#9] and plaintiff's motion to remand and for award of costs [#7]. A motions hearing was held on November 23, 2004. Upon consideration of the arguments at the hearing, and for the reasons stated in open court, it is this 23rd day of November, 2004, hereby

**ORDERED** that defendant's motion to amend its notice of removal [#9] is **GRANTED**; and it is further

**ORDERED** that plaintiff's motion to remand and for award of costs [#7] is **GRANTED** with respect to remand and **DENIED** with respect to costs; and it is further

**ORDERED** that plaintiff's case is **REMANDED** to the Superior Court for the District of Columbia pursuant to 28 U.S.C. § 1447(c).

**SO ORDERED.**

                                                              s/
                                              ELLEN SEGAL HUVELLE
                                              United States District Judge