# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PAUL M. BREAKMAN,

     Plaintiff,

        v.                                  Civil Action No.  08-246 (JDB)

AOL LLC,

     Defendant.

## MEMORANDUM OPINION

Plaintiff Paul M. Breakman, acting in a representative capacity on behalf of the interests of the general public, originally filed this action in the Superior Court of the District of Columbia ("D.C. Superior Court") on January 23, 2008.  Breakman alleges that AOL LLC ("AOL") engaged in unlawful trade practices in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901 et seq., by failing to disclose material facts regarding pricing plans to its current and past members.  On February 13, 2008, AOL filed a notice of removal arguing that this Court had jurisdiction over the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  After Breakman filed a motion to remand, AOL filed an amended notice of removal on February 21, 2008, arguing that this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and that if Breakman's complaint is deemed to be a class action lawsuit, the Court has jurisdiction pursuant to the Class Action Fairness Act.  Now before the Court is Breakman's amended motion to remand the case to the D.C. Superior Court and for an award of costs and expenses incurred as a result of the removal of this action.  For the reasons stated below, the Court will grant Breakman's motion to remand but

will deny the motion for an award of costs and expenses.

BACKGROUND

The District of Columbia Consumer Protection Procedures Act ("DCCPPA") contains a private attorney general provision, which authorizes "[a] person, whether acting for the interests of itself, its members, or the general public" to bring an action "seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia."  D.C. Code § 28-3905 (k)(1).  Suing under this provision, Breakman's one count complaint alleges that AOL engaged in an unlawful trade practice by misleading past and current customers about the monthly price of receiving dial-up internet service provider and content services ("dial-up ISP service").  Compl. ¶ 22.  Beginning in or about August 2006, AOL allegedly charged its loyal members $23.90-$25.90 a month for essentially the same dial-up ISP service that new members could receive for $9.95 a month.  Id. ¶ 19.  According to AOL, Breakman's complaint will reach 28,451 consumers in the District of Columbia.  Def.'s Am. Not. of Removal Ex. A (Decl. of John Baumeister) ¶ 6.  The complaint alleges that AOL actively misled these loyal customers about the availability of the lower priced plan.  Breakman therefore seeks relief "for each individual District of Columbia consumer" in the form of actual damages, treble damages, reasonable attorneys' fees, punitive damages, and an injunction enjoining AOL from continuing its alleged unlawful trade practice.  Compl. at 6.

In his amended motion to remand, Breakman contends that "the instant case is a representative action brought under the DCCPPA and is not a class action to which the Class Action Fairness Act applies."  Pl.'s Mem. Supp. Am. Mot. to Remand ("Pl.'s Mem.") at 2. Breakman further argues that AOL's amended notice of removal did not carry its burden of

-2-

establishing complete diversity between the parties and did not carry its burden of establishing

that the required amount in controversy is satisfied.  According to the complaint, "[t]he amount

of damages owed by Defendant AOL to any individual District of Columbia consumer who has

paid and/or continues to pay AOL $23.90 to $25.90 a month for essentially the same Dial-up ISP

Service new members get for $9.95 a month, does not exceed $75,000, exclusive of costs and

interest."  Compl. ¶ 13.  According to AOL's own calculations, the most that any consumer could

receive in actual damages is an average of $128.63.  Def.'s Opp. Ex 1 (Aff. of John Baumeister) ¶

4.  AOL reached this figure by calculating the amount of money a consumer could have saved if

he switched from a $23.90 or $25.90 plan to the $9.95 plan as soon as it became available.  Id.

In statutory damages, the most that an individual consumer could receive is $1,500.  D.C. Code.

§ 28-3905(k)(1)(A).

## LEGAL STANDARD

An action originally filed in state court "may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the

place where such action is pending" when the federal court has original jurisdiction.  28 U.S.C. §

1441(a).  The party seeking removal of an action bears the burden of proving that jurisdiction

exists in federal court.  See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th

Cir. 1994); Bhagwanani v. Howard Univ., 355 F. Supp. 2d 294, 297 (D.D.C. 2005); In re

Tobacco/Gov'tal Health Care Costs Litig., 100 F. Supp. 2d 31, 35 (D.D.C. 2000).  Because of the

significant federalism concerns involved, this Court strictly construes the scope of its removal

jurisdiction.  See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 107-09 (1941);

Bhagwanani, 355 F. Supp. 2d at 297; Johnson-Brown v. 2200 M Street LLC, 257 F. Supp. 2d

175, 177 (D.D.C. 2003).  Accordingly, "if federal jurisdiction is doubtful, a remand to state court

is necessary." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 815-16 (4th Cir. 2003) (en banc); see

also Bhagwanani, 355 F. Supp. 2d at 297; Johnson-Brown, 257 F. Supp. 2d at 177 (explaining

that "the court must resolve any ambiguities concerning the propriety of removal in favor of

remand").

## DISCUSSION

### I.    Class Action Fairness Act

AOL claims that the complaint is ambiguous as to whether Breakman is bringing the

action as a representative private attorney general suit pursuant to D.C. Code § 28-3905(k)(1) or

as a class action under Rule 23 of the D.C. Superior Court Rules of Civil Procedure, because he

fails to cite either provision in the complaint.  AOL admits, however, that it "presumes that the

Plaintiff has filed this action pursuant to D.C. Code § 28-3905(k)(1)" based on the language of

the complaint asserting that it was filed in a representative capacity on behalf of the interests of

the general public.  Def.'s Am. Not. of Removal ¶ 18.  Just in case AOL's presumption is

incorrect, however, it argues that "[i]f Plaintiff's complaint is a class action lawsuit, this Court

has jurisdiction over the matter under 28 U.S.C. § 1332(d)(2)." Id. ¶ 17.

In the amended motion to remand, Breakman confirms that the action is a representative

action brought pursuant to the DCCPPA and "is not a class action." Pl.'s Mem. at 2 (emphasis

added).  The DCCPPA specifically authorizes a private attorney general suit without any

reference to class action requirements.  See D.C. Code § 28-3905(k).  Breakman has not

attempted to comply with Rule 23 of the D.C. Superior Court Rules of Civil Procedure, and he

has not sought class certification.  He also states that he is not bringing this action "in his

individual capacity or as a class representative in a class action." Pl.'s Mem. at 4. Hence, this representative action is authorized by District of Columbia statute and is a separate and distinct procedural vehicle from a class action.

Furthermore, Breakman points out that this action falls within an exception to the removal provisions of the Class Action Fairness Act. According to the statute, a "mass action" involves the claims of 100 or more persons to be tried together, where the federal court may only assert jurisdiction over each plaintiff whose individual claims satisfy the $75,000 amount in controversy requirement. 28 U.S.C. § 1332(d)(11)(B)(i). A mass action shall be deemed a removable class action if certain requirements are met, but there are four exceptions, one of which specifically affects the instant suit. The Class Action Fairness Act expressly states that when "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action," the suit will not be deemed a mass action and will not be removable pursuant to 28 U.S.C. § 1332(d). 28 U.S.C. § 1332(d)(11)(B)(ii)(III). Here, the DCCPPA authorizes a suit to be brought on behalf of the general public for unlawful trade practices. Hence, even AOL concedes that "this DCCPPA case falls squarely within the definitional exclusion of 'mass action.'" Def.'s Opp. at 28.[1]

--------

[1]AOL's only remaining argument pursuant to the Class Action Fairness Act is that even though this action lacks the defining characteristics of a class action, it must necessarily be labeled a class action by default if the Court applies the non-aggregation principle to the diversity jurisdiction analysis. This conclusory and unsupported assertion is unavailing. Although the non-aggregation principle was applied to class actions prior to the Class Action Fairness Act, as discussed below, the case law developed with respect to multiple plaintiff actions in general. The non-aggregation principle, then, can be applied to such suits without transforming them into class actions that would be subject to the Class Action Fairness Act.

AOL's arguments under the Class Action Fairness Act are, ultimately, unpersuasive. Because Breakman does not bring this action as a class action pursuant to any statute or rule, and because it does not fall within the definition of a mass action, AOL cannot remove this private attorney general suit to federal court pursuant to the Class Action Fairness Act.

## II.    Diversity Jurisdiction

A federal court has diversity jurisdiction over an action when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between "citizens of different states." 28 U.S.C. § 1332(a).  Here, Breakman contends that neither requirement has been satisfied for this Court to exercise original jurisdiction over his action.

### A.    Diversity of Citizenship

Breakman points out that AOL improperly relied on the statutory criteria for corporations to establish citizenship.  See 28 U.S.C. § 1332(c) (stating that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").  In its amended notice of removal, AOL states that because it is a Delaware limited liability company headquartered in Virginia, it is a citizen of Delaware and Virginia.  Def.'s Am. Not. of Removal ¶ 2.  AOL further states that because Breakman is a citizen of the District of Columbia, there is complete diversity of citizenship between the parties.  Id. ¶ 3. However, as Breakman correctly points out, the statutory criteria for the citizenship of corporations is inapplicable to limited liability companies such as AOL.  "Unlike corporations, which are citizens of any state in which they are incorporated and of the state where they have their principal place of business, unincorporated entities carry the citizenship of their members." Adolph Coors Co. v. Truck Ins. Exchange, 2005 WL 486580, at *2 (D.D.C. Feb. 28, 2005)

(citing <u>Johnson-Brown</u>, 257 F. Supp. 2d at 178, and <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 195-96 (1990)).

In AOL's opposition, it concedes that Breakman has stated the appropriate test for the citizenship of limited liability companies, and it concedes that it failed to include the citizenship of its members in its removal papers.  Nevertheless, AOL argues that it should be allowed to amend its argument to correct this technical defect.  Finding other issues dispositive, the Court will entertain AOL's corrected statement of its citizenship.  <u>See</u> 28 U.S.C. § 1653 (stating that "[d]efective allegations of jurisdiction may be amended"); <u>see also</u> <u>Naartex Consulting Corp. v. Watt</u>, 722 F.2d 779, 792 (D.C. Cir. 1983).

AOL has only one member, AOL Holdings LLC, a Delaware entity with its principal offices in Virginia.  AOL Holdings LLC, in turn, has three corporate members: TW AOL Holdings, Inc. (incorporated in Virginia with its principal place of business in New York); Google, Inc. (incorporated in Delaware with its principal place of business in California); and Time Warner, Inc. (incorporated in Delaware with its principal place of business in New York). Def.'s Opp. at 12-13.  Hence, AOL is a citizen of Virginia, New York, Delaware, and California. Because Breakman is a citizen of the District of Columbia, the parties are diverse.

**B.      Amount in Controversy**

Breakman next argues that the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332(a).  "As a result of the plaintiff[] having initiated this case in state court, '[t]here is a strong presumption that the plaintiff[s] [have] not claimed a large amount in order to confer jurisdiction on a federal court.'"  <u>RWN Dev. Group, LLC v. Travelers Indem. Co. of Conn.</u>, 2008 WL 542383, at *5 (D.D.C. Feb. 29, 2008) (citing <u>Singer v. State Farm Mut. Auto.</u>

Ins. Co., 116 F.3d 373, 375 (9th Cir.1997) (citation omitted)).  Although the complaint does not

seek a specified amount in damages, it does assert that the amount of damages owed to each

consumer does not exceed $75,000.  Compl. ¶ 13.

### 1.    Actual and Statutory Damages

According to AOL, each consumer may be entitled to a total amount of $1,628.63 in

actual and statutory damages.  Def.'s Opp. Ex 1 (Aff. of John Baumeister) ¶ 4 ($128.63 in actual

damages); Def.'s Am. Not. of Removal at 3 ("$1,500 in statutory damages for each individual").

To get around the small amount sought for each consumer, AOL attempts to aggregate all of the

consumers' actual and statutory damages to determine the amount in controversy.  Breakman

responds that aggregation in this matter is improper, and the Court agrees.  Although AOL

contends that the non-aggregation principle was solely applicable to class actions prior to the

Class Action Fairness Act, the well-established case law proves otherwise.

In Snyder v. Harris, 394 U.S. 332, 335 (1969), the Supreme Court discussed the long-

standing doctrine that "the separate and distinct claims of two or more plaintiffs cannot be

aggregated in order to satisfy the jurisdictional amount requirement."  Foreclosing AOL's

argument, the Supreme Court clearly stated that the non-aggregation principle "was never, and is

not now, based upon the categories of old Rule 23 or of any rule of procedure."  Id. at 336; see

also Zahn v. Int'l Paper Co., 414 U.S. 291, 299 (1973); Georgiades v. Martin-Trigona, 729 F.2d

831, 833 (D.C. Cir. 1984) (stating in a non-class action suit that "[s]eparate and distinct claims,

regardless of whether they share a community of interest or originate in a single transaction or

event, may not be aggregated to satisfy the jurisdictional amount-in-controversy requirement").

Instead, the non-aggregation principle derived from "the statutory phrase 'matter in controversy.'"

Snyder, 392 U.S. at 336.  Hence, the doctrine still applies when separate and distinct claims are asserted on behalf of a number of individuals, regardless of "whether an action involves a simple joinder of multiple plaintiffs, [or] a representative action" similar to the one currently before this Court.  Phipps v. Praxair, Inc., 1999 WL 1095331, at *3 (S.D. Cal. Nov. 12, 1999).

The only exception to this rule occurs "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."  Snyder, 394 U.S. at 335.  AOL does not argue that this is such a case, nor could it convincingly do so since Reigner v. Ingersoll-Rand Co., 461 F. Supp. 2d 1, 1 (D.D.C. 2004), rejected that proposition. See also Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1262 (11th Cir. 2000) ("the presence of a 'common and undivided interest' is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally").  In Reigner, a single plaintiff, "in his representative capacity acting for the interests of the general public," asserted a cause of action under the DCCPPA against the manufacturer of a tubular cylinder lock.  461 F. Supp. 2d at 1.  The plaintiff demanded "actual damages equal to the amount District of Columbia consumers paid for Affected Locks and related warranty upgrades, treble damages or $1,500 per violation of the DCCPPA whichever is greater, reasonable attorneys' fees, punitive damages, injunctive relief, and prejudgment interest."  Id.  Because the suit sought damages for individual consumers, as does the complaint here, the court determined that it did "not seek to establish a joint or common right in a common fund," and the claims therefore could not be aggregated.  Id. at 2.

Although Reigner is directly on point, and concludes that claims in a representative DCCPPA action cannot be aggregated, AOL argues that persuasive case law from California

federal courts reaches the opposite conclusion based on analysis of similar private attorney general lawsuits.  AOL contends that California has a nearly equivalent statute which allows private attorney general suits brought in a representative capacity for the interests of the general public when unfair competition has occurred.  See Cal. Bus. & Prof. Code §§ 17200 et seq.  To support its argument, AOL cites to Mangini v. R.J. Reynolds Tobacco Co., 793 F. Supp. 925 (N.D. Cal. 1992), and Myers v. Merrill Lynch & Co., Inc., 1999 WL 696082 (N.D. Cal. Aug. 23, 1999), which adopted the reasoning in Mangini.  AOL fails to reveal, however, that subsequent cases abandon the reasoning in these opinions and do not allow the aggregation of claims in representative actions.  See Surber v. Reliance Nat. Indem. Co., 110 F. Supp. 2d 1227, 1233 (N.D.Cal. 2000) (noting that "[t]he Court finds neither Mangini or Myers convincing" and instead explaining that "the prohibition on aggregation applies in non-class multiple-plaintiff cases as well"); Phipps, 1999 WL 1095331, at *5 ("The Court respectfully disagrees with Mangini because its reasoning assumes that the rule prohibiting plaintiffs from aggregating their claims applies only to class actions.  As discussed in the preceding section of this order, the anti-aggregation rule applies to any civil case where two or more plaintiffs attempt to aggregate 'separate and distinct' claims to reach the amount in controversy."); see also Wastier v. Schwan's Consumer Brands, 2007 WL 4277552, at *2 (S.D. Cal. Dec. 5, 2007) (noting that "[s]ince 1832, the Supreme Court has reaffirmed this [non-aggregation] principle on several occasions").

In fact, the very judge who wrote Mangini subsequently reversed his position in Boston Reed Co. v. Pitney Bowes, Inc., 2002 WL 1379993, at *5 (N.D. Cal. June 20, 2002).  The judge acknowledged that he saw the issue differently ten years earlier but held in Boston Reed that because a "private attorney general action is a collection of 'separate and distinct' claims, the

-10-

claims may not be aggregated to reach the amount in controversy and each plaintiff's claim must exceed the jurisdictional amount for this Court's subject matter jurisdiction to be invoked." <u>Id.</u>; <u>see also</u> <u>Snow v. Ford Motor Co.</u>, 561 F.2d 787, 790 (9th Cir. 1977) (rejecting federal jurisdiction by following <u>Snyder</u>'s proscription against aggregation for both equitable and injunctive relief in a suit filed under California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.).  Hence, the cases cited by AOL do not "conclusively establish that the statutory and actual damages" may be aggregated in a private attorney general action.  Def.'s Opp. at 18. Indeed, and to the contrary, case law from the Supreme Court, from this district, and from California federal courts establishes clearly that actual and statutory damages should <u>not</u> be aggregated in representative actions like this one.

## 2.    Injunctive Relief

Along with damages, the complaint seeks "[a]n injunction enjoining Defendant AOL from continuing the unlawful trade practices described herein."  Compl. at 6.  Because the complaint seeks an injunctive, AOL argues that the amount in controversy will exceed $75,000 based on its costs of complying with the requested injunctive relief.  In response, Breakman disputes that a defendant's cost of compliance with an injunction is an appropriate consideration in determining the amount in controversy in a diversity action.  Breakman also argues that AOL misconstrues the injunctive relief that is requested, and that AOL's actual costs of compliance will not meet the jurisdictional requirement.

In a 1975 D.C. Circuit case brought pursuant to federal question jurisdiction, the court suggested that a defendant's cost of compliance may satisfy the jurisdictional amount that was required at that time.  See <u>Committee for GI Rights v. Callaway</u>, 518 F.2d 466 (D.C. Cir. 1975).

The plaintiffs claimed that certain provisions of the Army's drug abuse prevention program were unconstitutional, and they sought injunctive relief. Id. at 467. In determining the amount in controversy, the D.C. Circuit determined that the jurisdictional amount was satisfied and "that the cost to the defendants might well exceed $10,000." Id. at 473. In 1980, however, the D.C. Circuit noted that other jurisdictions had determined that "the cost-to-defendant rule for computing jurisdictional amount" was "an impermissible way of circumventing the Zahn rule against aggregation of claims." Fenster v. Schneider, 636 F.2d 765, 767 (D.C. Cir. 1980) (citing Snow, 561 F.2d 787). Despite the obvious tension between the cost-to-defendant rule and the non-aggregation principle, the court did not find it necessary to resolve the conflict presented by the suggestion made in Committee for GI Rights.

In National Organization for Women v. Mutual of Omaha Ins. Co., 612 F. Supp. 100, 108 (D.D.C. 1985), the court directly addressed the issue that is presented here. The court ultimately concluded that applying the cost-to-defendant test in an action seeking both injunctive relief and damages "would undermine the holdings of Zahn and Snyder." Id. at 108. The court noted that a contrary conclusion "would allow a plaintiff who has no claim for the requisite compensatory damages merely to request injunctive relief, assign to that request a value measured in terms of defendant's compliance, and then litigate in the federal courts." Id. Finding that outcome to be contrary to the longstanding directive that federal jurisdiction should be strictly interpreted, the court declined to apply the cost-to-defendant test to the diversity action before it. For the same reasons, this Court agrees that the cost-to-defendant test is inapplicable to the current diversity action. That result is, moreover, consistent with the general rule that the proper measure of the amount in controversy is from the perspective of the relief sought by the plaintiff. See Ericsson

-12-

GE Mobile Commc'n, Inc. v. Motorola Commc'n & Elec., Inc., 120 F.3d 216, 218 (11th Cir. 1997) (noting "that the majority of federal courts have chosen to use the plaintiff-viewpoint rule").

Even assuming arguendo, however, that the D.C. Circuit adheres to the cost-to-defendant analysis in diversity actions and that AOL accurately values its costs of compliance with an injunction, the amount in controversy still would not surpass the jurisdictional threshold. See Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150, 153-54 (D.D.C. 2007). AOL argues that it would need to create and integrate new price plans into its existing billing systems if it were enjoined from offering and automatically debiting a $23.90 or $25.90 dial-up ISP plan.[2] To make and incorporate these changes, AOL calculates that its time and resources would total $255,800. Def.'s Am. Not. of Removal Ex. E (Supp. Decl. of John Baumeister) ¶ 9. As the Seventh and Tenth Circuits have determined, when a court looks to the compliance costs of a defendant to determine the amount in controversy in an action where separate and district claims are presented on behalf of multiple parties, "the cost running to each plaintiff must meet the amount in controversy requirement." Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 898 (10th Cir. 2006); accord In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599, 609 (7th Cir. 1997). Here, based on AOL's own calculations, the cost running to each District of Columbia consumer is $8.99, an amount far below the jurisdictional requirement.

---

[2]Breakman argues that the requested injunctive relief "does not require AOL to cease offering its higher priced Dial-Up plans, rather it requires AOL to inform its customers that they can get the Dial-Up service for significantly less money." Pl.'s Mem. at 13. Breakman asserts that this could be accomplished in a low-cost manner by sending a mass e-mail disclosing the material facts to AOL's established customer base. Id.

### 3.    Punitive Damages and Attorneys' Fees

In AOL's opposition to Breakman's amended motion to remand, AOL expresses surprise that "Breakman does not address why his claim for attorneys' fees and punitive damages should not be considered for this Court's amount in controversy determination."  Def.'s Opp. at 24-25. This is not surprising at all, however, in light of the fact that AOL's amended notice of removal failed to allege that punitive damages and attorneys' fees supported diversity jurisdiction.  In Your Girl Friday, LLC v. MGF Holdings, Inc., 2006 WL 1028959 (D.D.C. Apr. 18, 2006), a defendant similarly attempted in his reply to add attorneys' fees as a factor for establishing the amount in controversy.  Although the court noted that "jurisdiction must be established in the notice of removal," it still considered and rejected the defendant's late argument.  Id. at *2 n.1. Similarly here, the Court will address AOL's late reliance on punitive damages and attorneys' fees, but finds neither argument persuasive.

Because punitive damages are meant to punish and deter, AOL argues that any punitive damages awarded here will necessarily exceed $75,000 in the aggregate.  Once again, however, in light of the well-established non-aggregation principle, AOL's argument does not carry the day.  "[T]he principle annunciated in Snyder and Zahn 'bars the aggregation of punitive damages claims absent a prior determination that the underlying claim -- the basis on which such damages are sought -- asserts a single title or right.'"  Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 765 (8th Cir. 2001).  Here, there is no single title or right at stake because each individual District of Columbia consumer could bring his own claim against AOL.  As Breakman points out, "each consumer is entitled to an award and if some consumers do not accept such an award, the remaining consumers' share is not increased."  Pl.'s Mem. at 11.  Because the underlying

claims are separate and distinct, punitive damages should be apportioned to each consumer.  See

Morrison, 228 F.3d at 1264 (stating that an award of punitive damages must be divided equally

among all plaintiffs with separate and distinct claims to "determine the proper amount in

controversy for each").  Hence, AOL's speculation that a lump sum punitive damages award

would exceed $75,000 does not satisfy the jurisdictional requirement when allocated among

28,541 consumers.

       AOL next correctly states that attorneys' fees may be considered as part of the amount in

controversy when they are provided for by statute or contract.  See Griffin v. Coastal Int'l Sec.,

Inc., 2007 WL 1601717, at *3 (D.D.C. June 4, 2007) ("Courts in this District have determined

that attorney's fees do not count towards the amount in controversy requirement unless they 'are

provided for by a contract in issue or by a statute in controversy.'") (citation omitted).  Here, it is

undisputed that the DCCPPA does specifically allow for recovery of reasonable attorneys' fees.

However, AOL's argument relating to the amount recoverable is based on pure conjecture.  AOL

admits that it simply "speculates that a private attorney general action of this magnitude could

easily generate attorneys' fees in excess of $75,000."  Def.'s Opp. at 26.  Numerous courts have

held that a "defendant's conjecture regarding the possible amount of fees is inadequate to support

an assertion of diversity jurisdiction."  Your Girl Friday, LLC, 2006 WL 1028959, at *2 (citing

Hohn v. Volkswagen, 837 F. Supp. 943, 945 (C.D. Ill.1993) (declining to exercise removal

jurisdiction and stating that "jurisdiction cannot be based upon probabilities, surmise or

guesswork")); see also Lutz v. Protective Life Ins. Co., 328 F. Supp. 2d 1350, 1356 (S.D. Fla.

2004) (remanding an action for failing to establish the requisite amount in controversy where the

defendant "only guesses at the hourly fee collected by Plaintiff's attorney and merely provides an

affidavit from an attorney who opines that the attorney's fees in this case will exceed $75,000").

Moreover, the Court is not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount in controversy requirement depends upon a lump sum award of attorneys' fees. Because this Court strictly construes the scope of its removal jurisdiction, and because the non-aggregation principle logically should extend to claims of attorneys' fees, this Court agrees with other circuits that have so concluded. For example, in Kessler v. National Enterprises, Inc., 347 F.3d 1076, 1080 (8th Cir. 2003), the Eighth Circuit assumed that fees could be considered in satisfying the amount in controversy, but noted that "the fees 'cannot be aggregated to meet the amount-in-controversy requirement' and must be determined on a pro rata basis." And in Morrison, the Eleventh Circuit explained that where an individual plaintiff could bring suit and recover attorneys' fees if successful, a group of similar plaintiffs had separate and distinct rights to recover attorneys' fees that could not be aggregated to determine the amount in controversy. 228 F.3d at 1267; see also Nat'l Org. for Women, 612 F. Supp. at 109 (concluding "that the amount of requested attorneys' fees cannot be aggregated for determining the jurisdictional amount").

Hence, AOL's argument regarding the amount of attorneys' fees at stake is speculative. Moreover, attorneys' fees should be apportioned among all of the consumer plaintiffs. The Court therefore concludes that attorneys' fees do not factor in to the amount in controversy required for diversity jurisdiction.

## III.   Breakman's Motion for an Award of Costs and Expenses

Under 28 U.S.C. § 1447(c), a court "may require payment of just costs and any actual expenses, including attorney fees," when an action is remanded. Breakman argues that he should

be awarded the costs and expenses he incurred as a result of AOL's improper removal of this action because "the Class Action Fairness Act clearly is not applicable to this case" and because "AOL has failed to show the citizenship of AOL, as it is required to do, and has failed to show that the amount in controversy exceeds $75,000."  Pl.'s Mem. at 18.

In Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005), the Supreme Court addressed the proper standard for an award of attorney fees under 28 U.S.C. § 1447 and held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."  Although AOL concedes that certain errors were made in its notice of removal, the Court does not find that AOL lacked an objectively reasonable basis for its arguments.  As AOL points out, "there is no clear, controlling case law" from the D.C. Circuit, which explains how a representative action under the DCCPPA should be treated for purposes of 28 U.S.C. § 1332.  Def.'s Opp. at 32.  The Court concludes that an award of costs and expenses is not warranted under the circumstances.

## CONCLUSION

Breakman chose the D.C. Superior Court as the proper forum for this suit.  The one-count complaint alleges an action based upon the DCCPPA, which authorizes "[a] person, whether acting for the interests of itself, its members, or the general public" to bring an action "seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia."  D.C. Code § 28-3905 (k)(1).  Because this District of Columbia statute expressly authorizes a private attorney general suit such as this one, this is not a class action to which the Class Action Fairness Act applies.  Furthermore, all of the consumers who will benefit from this action, if it is successful, are in the District of Columbia.  Based upon AOL's own calculations,

-17-

and applying the well-established non-aggregation principle, the most that a consumer could recover in actual and statutory damages is $1,628.63.  Even when a reasonable amount is estimated and added for punitive damages and attorneys' fees, the total for each consumer falls well short of $75,000, the minimum amount in controversy required for diversity jurisdiction. AOL has therefore not met its burden of establishing that this Court has original jurisdiction over this suit.  Hence, the matter must be remanded to the Superior Court of the District of Columbia. A separate order accompanies this memorandum opinion.


                                        /s/
                         _____
                              JOHN D. BATES
                         United States District Judge


        Dated: April 17, 2008


                                        -18-